**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

VOTER REFERENCE FOUNDATION, LLC,

and

HOLLY STEINBERG,

        **Plaintiffs,**

v.                            **Case No: 1:22-cv-00222-JB-KK**

HECTOR BALDERAS, in his official capacity as New Mexico Attorney General,

and

MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,

        **Defendants.**

---

### DEFENDANTS' RESPONSE TO
### PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

Olga M. Serafimova
Senior Civil Counsel
P.O. Drawer 1508
Santa Fe, NM 87501-1508
(505) 490-4060
(505) 490-4046
oserafimova@nmag.gov

*Counsel for Defendants*
*Attorney General Hector Balderas and*
*Secretary of State Maggie Toulouse Oliver*

## I.      INTRODUCTION

Voter Reference Foundation, LLC ("VRF") seeks to upload on its website the name, residential address, party affiliation, voting history, and year of birth of each and every registered New Mexico voter. Doing so would constitute a violation of NMSA 1978, § 1-4-5.6.

While VRF had previously uploaded New Mexico's statewide voter data onto its website, it took it down on March 28, 2022. Further, while the Secretary of State has referred the matter to the Attorney General for review and investigation, no charges have been filed against VRF. Nevertheless, Plaintiffs ask this Court to disrupt the status quo by allowing them to repost the highly sensitive data at issue.

All four factors considered when deciding a preliminary injunction motion—the likelihood of success on the merits, the injuries to Plaintiffs and the State, and the public interest—weigh against the extraordinary relief requested. As a result, Plaintiffs do not come close to the showing needed to obtain a preliminary injunction—especially a disfavored injunction that would disrupt the status quo and provide the full relief Plaintiffs could obtain on the merits.

## II.     FACTUAL BACKGROUND

### a.  Relevant Laws

Under New Mexico's Voter Records System Act, NMSA 1978, §§ 1-5-1 through 1-5-31, the Secretary of State maintains a centralized voter registration database containing a file for each registered voter in New Mexico. NMSA 1978, § 1-5-30(A). Each voter file in turn contains "all voter information required by law and by the secretary of state that has been extracted from the certificate of registration of each voter in the county[.]" 1.10.35.7. NMAC. That information includes each voter's "name, gender, residence, municipality, post office, county of former

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **1**

registration, date of birth, political party affiliation, zip code, telephone number at the applicant's option[,] . . . a driver's license or state identification number . . . [, and] full social security number [.]" NMSA 1978, § 1-4-5.4(B); *see also* 1.10.35.8(4) NMAC ("All registrant detail and statutorily required data must be entered from the certificate of registration into the voter file including: name, full social security number (SSN), physical address, DOB, and an image of the signature.").

Both the integrity and privacy of voter files are protected by law. For example, the voter records system must "provide security and protection for all information in the central database and monitor the central database to ensure the prevention of unauthorized entry." NMSA 1978, § 1-5-30(B)(4). "All voter files [must] be stored to safeguard them from loss, damage or unauthorized alteration[,]" NMSA 1978, § 1-5-16(A), and in each county, the original certificates of registration must be kept locked except when used by authorized persons, NMSA 1978, § 1-5-4.

Further, the Secretary of State and county clerk offices are required to "take measures to minimize the risk of unauthorized disclosure, unauthorized acquisition, unauthorized access or other situation that would provide access to voter registration records outside what is allowable by law[,]" including by keeping authorized users' usernames and passwords confidential, disabling user accounts immediately upon an authorized user's resignation or termination of employment, conducting monthly audits of authorized user accounts, restricting access to voter registration data to employees with a "need to know," and prohibiting the unencrypted electronic transfer of such data, among others. 1.10.35.11 NMAC. For online voter registrations, "[t]he secretary of state shall ensure that the web sites used for electronic voter registration are secure and that the confidentiality of all users and the integrity of data submitted are preserved." NMSA 1978, § 1-4-18.1(H)

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **2**

In addition, under the Voter Records System Act, all employees with access to voter files are prohibited from allowing "unauthorized access and unauthorized reproduction" of the voter files and may only provide copies to "the secretary of state, the county clerk or their designated agents." NMSA 1978, § 1-5-21(B), (C). Further, all employees with access to voter files are prohibited from "selling, loaning, providing access to or otherwise surrendering of the voter file, duplicates of the file or a part of the file . . . to anyone not authorized by the Voter Records System Act to have possession of the file." NMSA 1978, § 1-5-22(A). The unlawful destruction or alteration of voter files, defined as "the unauthorized destruction of, the unauthorized alteration of, the erasure of information from or the rendering unusable for their lawfully intended purpose . . . or parts thereof[,]" is likewise prohibited. NMSA 1978, § 1-5-23; *see also* NMSA 1978, § 1-4-5(E) ("A person who unlawfully copies, conveys or uses information from a certificate of registration is guilty of a fourth degree felony.").

While New Mexico law does provide for the public disclosure of voter data, such disclosures are highly limited and regulated. Under NMSA 1978, § 1-4-5.5(A), "[t]he county clerk or secretary of state shall furnish voter data . . . only upon written request to the county clerk or secretary of state and after compliance with the requirements of this section[,]" and under NMSA 1978, § 1-5-3(B), the Secretary of State is required to maintain a detailed log "containing all transactions regarding requests for current registration lists of state voters."

Further, "[e]ach requester of voter data . . . shall sign an affidavit that the voter data . . . shall be used for governmental or election and election campaign purposes only and shall not be made available or used for unlawful purposes." NMSA 1978, § 1-4-5.5(C). In turn, under NMSA 1978, Section 1-4-5.6, "[e]ach and every unlawful use of voter data[,]" defined as "the knowing

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **3**

and willful use of such information for purposes prohibited by the Voter Records System Act[,]"

is a fourth degree felony punishable by a $100 fine for each line of voter information unlawfully

used.

Incorporating all of these provisions, the affidavit created by the Secretary of State states:

Unlawful use of the information requested on this form shall consist of willful selling, loaning, providing access to or otherwise surrendering, duplicating or alteration of information as stated in the Voter Records System Act (§1-5-1 through 1-5-31 NMSA 1978).

I hereby swear that the requestor will not: (INITIAL EACH)

___ sell, loan, provide access to, or otherwise surrender voter information received as a result of this request.
___ alter voter information received as a result of this request.
___ use voter information for any purpose other than those authorized on this form.
___ use voter information for any commercial purposes.

*See Verified Complaint*, filed 03/28/2022 (ECF Doc. #1), Exhibit B. Therefore, under New

Mexico's Election Code, only persons or entities who actually submit the requisite affidavit may

receive a copy of any New Mexico voter data derived from the voter registration system, and use

of that data is limited to governmental and election or election campaign related purposes only.

Once a proper request for voter data is received, the only information exempt from

disclosure consists of "voters' social security numbers, codes used to identify agencies where

voters have registered, a voter's day and month of birth or voter's telephone numbers if prohibited

by voters." NMSA 1978, § 1-4-5.5(B); *see also* NMSA 1978, 1-4-50. The only way for a living

person to prevent the disclosure of their remaining, extensive voter file information pursuant to a

records request is to cancel their voter registration. *See* NMSA 1978, §§ 1-4-3, 1-4-30, 1-5-5(D).

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **4**

### b. Relevant Facts

The facts of this case are simple, yet in need of clarification. VRF wishes to upload to its website New Mexico voter data for every registered voter in New Mexico. *See Plaintiffs' Suggestions in Support of Motion for Preliminary Injunction*, filed 03/28/2022 (ECF Doc. # 4) ("Memorandum"), at 1-2. Plaintiff Holly Steinberg ("Steinberg") in turn wishes to have free and convenient access to New Mexico voter data via VRF's website. *Memorandum* at 2. Neither VRF nor Steinberg, however, ever submitted a request to the Secretary of State or any county clerk for any voter data. Rather, the Secretary of State's records reveal that the voter data here at issue were requested by, and released to, one David Michael Lippert in association with an entity called Local Labs, not VRF. *See* Exhibits 1, 2. Therefore, VRF's assertion that, "[u]ntil March 28, 2022, the [w]ebsite included New Mexico voter information *which VRF acquired under § 1-4-5.5*" is false. *Memorandum* at 8 (emphasis added); *see also Verified Complaint*, ¶ 42 ("Until March 28, 2022, the Website included New Mexico voter information *which VRF acquired from the State under § 1-4-5.5*.") (emphasis added).

Specifically, on or about March 29, 2021, Mr. Lippert submitted a signed affidavit requesting the name, address, year of birth, party affiliation, precinct assignment, jurisdiction, registrant ID number, voter history, method of voting (absentee, early, or election day), and all districts associated with each and every registered voter in the State of New Mexico. *See* Exhibit 1. Mr. Lippert provided a Minnesota street address and telephone number. *Id.* Under "Organization," he listed "Local Labs," and included an email address ending in @locallabs.com. *Id.* Then, on or about April 14, 2021, Mr. Lippert submitted payment for this request in the amount

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **5**

of $5,378.12, providing the same street address, telephone number, and email address ending in @locallabs.com. *See* Exhibit 2.

According to its website, Local Labs is "a leading collector and publisher of community-level public records for news publishers." Exhibit 3. Neither the paperwork it submitted, nor its website contain any mention of VRF. *See* Exhibits 1, 2, 3. Nevertheless, the Secretary of State's investigation has revealed that Local Labs was the source of the New Mexico voter data originally uploaded to VRF's website. *See* Exhibit 4.

Because VRF never submitted a request for voter data under Section 1-4-5.5, its First Amendment claim does not implicate Subsection (C)'s restrictions on the use of such data ("Use Restrictions") as preconditions to obtaining the data. VRF already has the data—it obtained it unlawfully from an alternate source, Local Labs. Rather, VRF's claim falls under Section 1-4-5.6, because that section prohibits the *publication* of voter data on the VRF (or any) website—a prohibition that does not depend on the data's intended use separate from or subsequent to publication. Because Section 1-4-5.6 is constitutional as applied to VRF, the Motion for Preliminary Injunction should be denied.

Like VRF, Steinberg never submitted a request for voter data. *See Memorandum* at 2. Rather, her claim appears to be premised on her desire for more convenient and free access to this data via VRF's website. *Id.* Because such a claim does not implicate the First Amendment, the Motion for Preliminary Injunction should be denied.

### III.    STANDARD FOR PRELIMINARY INJUNCTION

Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal. *Planned Parenthood of Kansas v. Andersen*, 882 F.3d 1205, 1223

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **6**

(10th Cir. 2018). "To succeed on a typical preliminary-injunction motion, the moving party needs to prove four things: (1) that she's substantially likely to succeed on the merits, (2) that she'll suffer irreparable injury if the court denies the injunction; (3) that her threatened injury (without the injunction) outweighs the opposing party's under the injunction, and (4) that the injunction isn't adverse to the public interest." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (internal quotation marks and citations omitted).

Even though all preliminary injunctions are extraordinary remedies, certain classes of preliminary injunctions are particularly disfavored "and so require more of the parties who request them." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). A "disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Id.* "To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a 'strong showing' that these tilt in her favor." *Id.* (citation omitted). In particular, parties seeking a disfavored injunction "are not entitled to rely on [the Tenth] Circuit's modified-likelihood-of-success-on-the-merits standard" that permits a party to make a lesser showing of likely success where the balance of harms tips in its favor. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975–76 (10th Cir. 2004) (en banc), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

Plaintiffs' requested relief falls into the second and third categories of disfavored injunctions. Plaintiffs are asking to change the status quo by requesting to repost the voter data at issue on the VRF website. Also, a preliminary injunction would grant Plaintiffs all of the relief

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **7**

that they could obtain in an as-applied challenge, allowing them to make otherwise private voter data public on the internet. Because Plaintiffs do not meet the heightened burden necessary to justify such extraordinary, disfavored relief, the Motion for Preliminary Injunction should be denied.

## IV.    ARGUMENT

### a.  Plaintiffs Are Unlikely to Prevail on the Merits.

#### i)      VRF Is Unlikely to Prevail on Its First Amendment Claim.

VRF's claim is premised on the fact that "VRF desires to post and distribute New Mexico Voter Information online." *Verified Complaint*, ¶ 69. However, VRF has no First Amendment right to publish information obtained *unlawfully* from government records.

First, Section 1-4-5.6 prohibits both Local Labs' presumptive sale of New Mexico voter data to VRF and VRF's subsequent wholesale publication of that voter data on its website. Again, under Sections 1-4-5.6 and 1-5-22(A), any person or entity who knowingly and willfully sells, loans, provides access to (including on a website), or otherwise surrenders New Mexico voter data obtained from the voter registration system—regardless of its intended use—is guilty of a fourth degree felony punishable by a fine.

Defendants agree that Section 1-4-5.6's "prohibition on *disclosing* [New Mexico voter data] is a direct regulation of speech." *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 949 (7th Cir. 2015) (emphasis in original).  As such, "[t]he appropriate standard of review . . . hinges on whether the regulation is content based, which requires us to apply strict scrutiny, or content neutral, which demands only an intermediate level of scrutiny[.]" *Id.*

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **8**

"[D]isclosures that are prohibited by virtue of the source, rather than the subject matter are easily categorized as content neutral." *Id.* In *Dahlstrom*, the Seventh Circuit held that the Driver's Privacy Protection Act ("DPPA"), which prohibits the knowing "disclosure [of] personal information[ ] from a motor vehicle record, for any use not permitted under [the DPPA,]" 18 U.S.C. § 2722(a), did not violate the First Amendment. The Court reasoned that "[t]he DPPA proscribes only the publication of personal information that has been obtained from motor vehicle records. The origin of the information [was] thus crucial to the illegality of its publication—the statute is agnostic to the dissemination of the very same information acquired from a lawful source." 777 F.3d at 949. While *Dahlstrom* acknowledged that "[t]he DPPA . . . presents a hybrid question—in which the illegality of a disclosure is determined by a combination of source (motor vehicle records) and subject matter (personal identifiable information)[,]" it nevertheless concluded that, "because the Act permits publication of identical information so long as that information flows from a source other than driving records, it implicates the First Amendment rights of the restricted party to a far lesser extent[.]" *Id.*, at 950 (internal quotations and citation omitted); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (upholding the constitutionality of a protective order allowing a party to "disseminate the identical information covered by the . . . order as long as the information is gained through means independent of the court's process").

*Dahlstrom* went on to hold that "the DPPA is content neutral because its public safety goals are unrelated to the content of the regulated expression." *Id.* (internal quotations, alterations and citation omitted). "The principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech because of agreement or disagreement with the

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **9**

message it conveys." *Id.* (internal quotations, alterations and citation omitted). The Court found that "Congress crafted the DPPA's limitation on disclosure of personal information not because it disagreed with the message communicated by drivers' personal details, but in order to keep individuals' identifying information out of the hands of potential stalkers." *Id.*

Like the DPPA, Section 1-4-5.6's (and, by incorporation by reference, Section 1-5-22(A)'s) prohibition on disclosure of New Mexico voter data is also content neutral. It only applies to voter data obtained from New Mexico's mandatory voter registration system and is completely agnostic to the dissemination of the very same information—a voter's name, gender, address, party affiliation, voting history, etc.—acquired from a different source, including directly from the voter. The New Mexico Legislature's goal of protecting voter privacy in order to foster trust in the voter registration system, thereby increasing voter registration, which is evident from the multiple security and privacy restrictions in the Voter Records System Act, *see supra* at 2-4, is completely unrelated to the actual contents of any given voter file and, therefore, is unrelated to the *message* communicated by voter data.

"As a content-neutral regulation, [Section 1-4-5.6's] limitation on disclosure will withstand First Amendment scrutiny if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest[.]" *Dahlstrom*, 777 F.3d at 952. Section 1-4-5.6's prohibition on disclosure of New Mexico voter data furthers at least four important state interests:

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **10**

- It ensures that only individuals who sign the requisite affidavit and, therefore, are made explicitly aware of the permissible uses of New Mexico voter data, have access to such data;

- It ensures payment of reasonable fees for the production of voter data, which fees subsidize the mandatory voter registration system;

- It encourages voter registration by ensuring voters that their voter data will only be disclosed on a need-to-know basis and under penalty of perjury, thereby fostering trust in the registration system by protecting registered voters from unwanted solicitations, harassment, and abuse; and

- Because voter data produced at any single moment represents a "snapshot" of the voter files as of that moment, whereas voter files may change in the future, thereby rendering the produced voter data no longer accurate, disseminating voter data may lead to disinformation, which would further erode voter confidence in the voter registration system.

Unquestionably, these are important state interests and are unrelated to the suppression of free expression. *Dahlstrom*, 777 F.3d at 954 (recognizing that the government has a substantial interest in privacy protection); *Van Allen v. Cuomo*, 621 F.3d 244, 249 (2d Cir. 2010) (observing that " the state has a legitimate interest in encouraging new voter registration" and participation in the electoral process); *R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 51 F. Supp. 2d 107, 113 (D.R.I. 1999) (recognizing the state's legitimate and substantial interest in protecting privacy rights of citizens by establishing appropriate limitations on access to or use of personal information citizens are compelled to furnish to government agencies).

These interests are furthered by the prohibition on all disclosure, because allowing *any* dissemination of New Mexico voter data outside the regulatory process would (i) take the data outside the protections afforded by the mandatory affidavit; (ii) result in no fees being paid to the State; (iii) expose registered voters to potential unwanted solicitations, harassment, and abuse; and (iv) eventually result in stale information being publically available. *See Fusaro v. Howard*, 19

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **11**

F.4th 357, 370 (4th Cir. 2021) (recognizing that limiting access to a state's voter list furthers the state's interest "to promote voter registration while minimizing abuse of the [l]ist . . . . The State has determined that its citizens should not face an onslaught of communication or solicitation irrelevant to the electoral process as the price of participation in the electoral process."). For the same reason, the incidental restriction on VRF's desire to upload unlawfully obtained New Mexico voter data on its website is no greater than is essential to the furtherance of these interest—again, *any* dissemination of New Mexico voter data outside the legislatively prescribed process would completely frustrate each of the State's important interests.

On the other hand, VRF is free to compile any and all of the information contained in the voter registration system voter files from other sources, including by polling New Mexico residents directly. While doing so would be less convenient than obtaining the information from the voter registration system, the First Amendment does not protect convenience; after all, the Legislature "could decide not to give out [voter data] at all without violating the First Amendment." *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32 (1999) (upholding a state statute that placed conditions on public access to arrestees' addresses); *see also Fusaro*, 19 F.4th at 369 (finding the fact that a voter list is "uniquely cheap and powerful tool" insufficient to carry a challenge to Maryland's statute limiting the use of voter data).

VRF additionally alleges that it "plans to seek the same data from the Secretary after the November 2022 elections[.]" *Memorandum* at 9. To the extent VRF's allegation is that it will not use the services of a third party in requesting New Mexico voter data, VRF's act of obtaining such data from the Secretary of State with the intent to upload it on its website would still be illegal. After all, VRF would be required to attest that it will not "provide access to . . . voter information

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **12**

received as a result of this request[,]" *Verified Complaint*, Exhibit B. Given VRF's admitted intent to upload the data, such attestation would be false. Therefore, the line of cases addressing the publication of information obtained *lawfully* does not control. *See Dahlstrom*, 777 F.3d at 950-52, *and cases discussed therein*. Rather, the same analysis would apply—because Section 1-4-5.6 is a content-neutral regulation that furthers important state interests unrelated to free expressions that only incidentally burdens VRF's speech, it does not violate the First Amendment.

ii)    **Steinberg Is Unlikely to Prevail on Her First Amendment Claim.**

Steinberg's First Amendment claim is premised on her desire for free and, in her estimation, more convenient access to New Mexico voter data derived from the voter registration system. *See Memorandum* at 2 ("Steinberg wishes to use the New Mexico data that VRF had posted on its [w]ebsite . . . . Because VRF has been forced to remove the data, she cannot access the data without incurring the unreasonably high cost . . . [, and] even then, she cannot build the interface that VRF uses on its [w]ebsite."). Steinberg does not provide any authority that would suggest a First Amendment violation in this context. *See Memorandum* at 2, 9-10, 15. In any event, to the extent Steinberg's claim is that she has a First Amendment right to *receive* New Mexico voter data from VRF, regardless of how VRF obtained said data, Section 1-4-5.6 does not impose criminal liability on someone in Steinberg's position, *i.e.*, someone who merely receives such data from a third (VRF), but does not herself violate Section 1-4-5.6 by further distributing the data.

Alternatively, to the extent Steinberg's challenge is to the constitutionality of Section 1-4-5.5(C)'s Use Restrictions, her claim is not ripe. As discussed previously, like VRF, Steinberg never submitted a request for voter data under Section 1-4-5.5. Further, Steinberg has admitted that "she does not have the means or desire to independently pay for the data set[.]" *Memorandum* at 9.

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **13**

Therefore, Steinberg's First Amendment claim amounts to a request for an advisory opinion—*if* she were *ever* willing and able to obtain the data at issue from the Secretary of State, would criminal liability premised on Steinberg's suggested use be constitutional? This Court should refuse to answer this hypothetical question,[1] especially in ruling on a motion for preliminary injunction.

### iii)  Plaintiffs Are Unlikely to Prevail on their Prior Restraint, Void for Vagueness, and Overbreadth Claims

Plaintiffs' remaining claims premised on the doctrines of prior restraint, void-for-vagueness, and overbreadth, all challenge the constitutionality of Section 1-4-5.5(C)'s Use Restrictions. *See Memorandum* at 16-22. As explained previously, however, the Use Restrictions have no bearing on VRF's claim that it has a constitutional right to *publish* New Mexico voter data on its website. *See supra* at 8. Section 1-4-5.6, which incorporates by reference Section 1-5-22 of the Voter Records System Act, prohibits "the willful selling, loaning, providing access to or otherwise surrendering" of voter data regardless of any intended use and, as such, is completely unrelated to Section 1-4-5.5(C)'s Use Restrictions.

Also as discussed previously, given Steinberg's admissions that she has never submitted a request for voter data under Section 1-4-5.5, is unable to pay the fee, and does not intend to ever submit such a request, her challenges to the Use Restrictions are not ripe and highly speculative. *See supra* at 13.

---

[1] While Steinberg refers to the fees as "unreasonable," she does not cite any authority that would suggest a challenge to the constitutionality of the Secretary of State's payment structure.

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **14**

**b. It Is the New Mexico Public, Not Plaintiffs, Who Will Suffer Irreparable Injury.**

Relying on general First Amendment principles, and without providing any analysis, Plaintiffs assert that, absent a preliminary injunction allowing them to repost the unlawfully obtained voter data of each and every New Mexico registered voter to VRF's website, they will suffer irreparable injury. *See Memorandum* at 22. Quite the opposite is true—disturbing the status quo by allowing the data to be made public would destroy the State's primary interest at issue in this case: to encourage voter participation by ensuring the privacy of voter data with very limited exceptions, thereby fostering trust in the mandatory voter registration process. *See U.S. v. Miami University*, 294 F.3d 797 (6th Cir. 2002) ("Once personally identifiable information has been made public, the harm cannot be undone.").

The fact that VRF gained access to the voter data unlawfully—and failed to disclose the same to this Court—cannot be understated. Had it not done so, VRF would have no information at present to post ("speak about") on its website. Plaintiffs should not be rewarded for their lack of candor by granting them all the relief they seek at the preliminary injunction stage.

**c. Releasing the Unlawfully Obtained Voter Data Is Contrary to the Public Interest.**

Finally, granting the requested preliminary injunction would be contrary to the public interest. Should the voter data of each and every New Mexico registered voter be released on the internet, common knowledge dictates that attempting to claw it back subsequently would be practically impossible. Trust in the voter registration system would be eroded. Given the breath of the information at issue and the significant uncertainty as to Plaintiffs' likelihood of success, New Mexicans' statutorily recognized right to privacy in voter data—that is, personal information they

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **15**

are required by law to provide as a precondition to exercising their right to vote—should be protected until the case is decided conclusively on the merits.

## V.    CONCLUSION

Plaintiffs ask this Court to disrupt the status quo by allowing them to post unlawfully obtained voter data for each and every New Mexico registered voter on a public website. Granting the requested extraordinary relief would cause New Mexico irreparable harm, as it would destroy its ability to protect the privacy of this data and erode public trust in its mandatory voter registration system, thereby frustrating its significant interest in encouraging voter registration and participation. Given that Plaintiffs are considerably unlikely to succeed on the merits of their First Amendment claims, the motion for preliminary injunction should be denied.

Respectfully submitted,

By: *Olga Serafimova*
Olga M. Serafimova
Senior Civil Counsel
P.O. Drawer 1508
Santa Fe, NM 87501-1508
(505) 490-4060
(505) 490-4046
oserafimova@nmag.gov

*Counsel for Defendants*
*Attorney General Hector Balderas and*
*Secretary of State Maggie Toulouse Oliver*

## CERTIFICATE OF SERVICE

I certify that on April 14, 2022, I served the foregoing on counsel of record for all parties via the CM/ECF system.

/s/ *Olga Serafimova*
Olga Serafimova

*VRF et al. v. Balderas et al.*, Case No. 1:22-cv-00222-JB-KK
Defendants' Response to Plaintiffs' Motion for Preliminary Injunction
Page **16**



# EXHIBIT 1

**Voter Data Request Form**

**Please select one of the following:**

_X_ Electronic File    ____ Printed List    ____ Mailing Labels

# VOTER INFORMATION AUTHORIZATION
**NOTE:** Minimum charge for any request is $25.00

## Please indicate the purpose of this request:

☐ Governmental Use          ☐ Campaign Use          ☒ Election Related

## Please indicate the type of file that you are requesting:

☒ Statewide                                    ☐ District _____
☐ County(s) _____
☐ Other: _____

## Please indicate all information that you are requesting:

**NOTE:** All files come with registrant name, address (both physical and mailing), year of birth, party affiliation, precinct assignment, jurisdiction and registrant ID number. Any additional fields must be indicated below.

☒ Districts                    ☒ Voting History                    ☒ Method Voted
(all districts associated with a voter)    (elections a voter has participated in)    (i.e. absentee, early or Election Day)

☐ Other*: _____

*If you request information that is not available in the voter system you will be notified before request is fulfilled.

## Information of Requestor

Name: David Michael Lippert    Organization: Local Labs
Address: 1611 Melrose Ave., St. Louis Park, MN 55426        Phone: ( 952 ) 905 - 8078
Email Address: mike.lippert@locallabs.com              Date: 03 / 29 / 2021

## Authorization

Unlawful use of the information requested on this form shall consist of willful selling, loaning, providing access to or otherwise surrendering, duplicating or alteration of information as stated in the Voter Records System Act (§1-5-1 through 1-5-31 NMSA 1978).

I hereby swear that the requestor will not use or make available to others to use the requested material for purposes other than governmental, election, research and campaign purposes under penalty of law.

**Signature of Requestor**

## For Office Use Only

Total Cost: $ _____    Date Received: _____ / _____ / _____    Date Completed: _____ / _____ / _____
Comments: _____    Receipt Number: _____

STATE OF NEW MEXICO

## MAGGIE TOULOUSE OLIVER

SECRETARY OF STATE

**PAYMENT RECEIPT**

# EXHIBIT 2

**DAVID LIPPERT**
**1611 MELROSE AVE**
**ST LOUIS PARK, MN 55426**

PAYMENT RECEIPT NUMBER:                                     **2016893261**

### FILER INFORMATION

| Filer Name: | Filer Id: |
|---|---|
| **DAVID LIPPERT** | **000306347** |

### BILLING INFORMATION

| Name and Address: | Billing Id: |
|---|---|
| **DAVID LIPPERT**<br>**1611 MELROSE AVE**<br>**ST LOUIS PARK, MN 55426** | **000306347** |
| Email: | Telephone Number: |
| **MIKE.LIPPERT@LOCALLABS.COM** | **(952) 905-8078** |

### TRANSACTION DESCRIPTION

| Transaction Category: | Transaction Item: | Filing Date / Time: |
|---|---|---|
| **Miscellaneous** | **Misc Item** | **4/14/2021 8:00:00 AM** |
| Workorder Number: | Total Quantity: | |
| **2016893261** | **1** | |

### PAYMENT INFORMATION

| Fee Amount: | Payment Total: | Amount Due: |
|---|---|---|
| **$5378.12** | **$5378.12** | **$0.00** |
| Prepaid Account Balance: | Payment Type: | |
| **$0.00** | **Pre-Paid Account** | |

LOCAL LABS (/)                                                    home (/)

# EXHIBIT 3

LOCAL LABS

# data. foia. content.

# What We Do.                          Contact

Since 2006, Local Labs has been a leading collector and
publisher of community-level public records for news
publishers. Our clients include the largest media companies in

contact@locallabs.c

# Areas of Practice

### PUBLIC RECORD COLLECTION SERVICES

Local Labs is constantly collecting public records from federal, state governments as well as local governments, departments, and administrations of all sizes.

### FREEDOM OF INFORMATION REQUEST SERVICES

Most data Local Labs collects isn't available online, therefore we are continually submitting FOIA requests to governments of all sizes for their records in the public domain.

### PUBLIC RECORD PROCESSING & NEWS PRODUCTIZATION

Not all data comes in the same form or even digitally. Local Labs cleans and normalizes data for easier processing. We then use this data to create content for our clients.

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."

— UNITED STATES SUPREME COURT

# Let's Chat.

Have questions about Local Labs' services? Want to partner with us? Use the form below to contact us. Please provide your name, email, phone number, company name and reason for inquiry. Be as detailed as possible.

Name *

First Name

Last Name

Email Address *

Phone

(###)

###

####

Company *

How Can We Help? *

SUBMIT

EXHIBIT 4

