IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| VOTER REFERENCE FOUNDATION, LLC, ) <br> ) <br> and ) <br> ) <br> HOLLY STEINBERG, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> ) <br> HECTOR BALDERAS, in his official ) <br> capacity as New Mexico Attorney General, ) <br> ) <br> and ) <br> ) <br> MAGGIE TOULOUSE OLIVER, in her ) <br> Official capacity as New Mexico ) <br> Secretary of State, ) <br> ) <br> Defendants. ) | CASE NO: 1:22-cv-00222-JB-KK <br><br> PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION <br><br> HEARING: MAY 17, 2022 at 2:30 P.M. |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

**GRAVES GARRETT LLC**
Edward D. Greim
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com

**HARRISON, HART & DAVIS, LLC**
Carter B. Harrison IV
924 Park Avenue SW, Suite E
Albuquerque, NM 87102
Tel: (505) 369-6599
Fax: (505) 341-9340
carter@harrisonhartlaw.com


Counsel for Plaintiffs Holly Steinberg
and Voter Reference Foundation

I.  **Introduction**

VRF wants to speak and associate with New Mexico voters by sharing voter data for a specific, election-related purpose. That purpose seemed to be legal in New Mexico: to foster transparency, integrity, and ultimately, participation in elections. Yet the Secretary claimed this "impugned" (not endangered) her work with voter data. She criminally referred VRF to the Attorney General. Facing an injunction to halt their content-based regulation of speech, Defendants now float a novel defense: that New Mexico has no content-based restrictions on sharing data, because it completely bans such sharing in the first place. Under that reading, VRF *committed a felony* as soon as it received the data from its public records vendor, Local Labs, and therefore lacks standing to even begin to worry about whether it can speak about the data for election-related purposes. Defendants base nearly their entire defense on this theory. It is wrong. New Mexico has no such ban. Instead, it does indeed allow sharing, but it is based on the content of the speech. It is that Use Restriction that actually applies here, and it is clearly the content of VRF's speech that spurred Defendants to single them out. An injunction should issue.

II. **Defendants' Factual Background Is Materially Incorrect**

Defendants' entire argument hinges on a material misstatement of the law. New Mexico simply *does not* impose a blanket ban on requesters' sharing of voter data. *See* Defendants' Response to Plaintiff's Motion for Preliminary Injunction ("Def. Br.") at 4, 8. Instead, the law *allows* sharing but requires that it be for a permissible use. This ensures that groups like political parties, campaigns, data collection firms, and nonprofits like VRF can share voter data for governmental, campaign, and election purposes, but not "unlawful," commercial purposes:

> Each requester of voter data, mailing labels or special voter lists shall sign an affidavit that the voter data, mailing labels and special voter lists shall be used for governmental or election and election campaign purposes only and shall not be made available or used **for unlawful purposes**.

1

NMSA § 1-4-5.5(C) (emphasis added). [1]

Defendants wrongly argue that this restriction only governs requesters' *private use*. When it comes to *disclosing* the data, they say, it is a crime to do so at all. Thus, Defendants claim that all requesters must promise, on pain of prosecution, not to "sell, loan, provide access to, or otherwise surrender voter information received as a result of this request," "regardless of its intended use." Def. Br., 4, 8. That is simply not the law. Indeed, Defendants back their claim not by citing a statute, but instead, by block-quoting the Secretary's own recently reworked "Request Form." *Id*. The Secretary's new form is not law. In fact, it misstates the law. Turning to the statutes, the only similar text appears in section 1-5-22(A). And here is the source of Defendants' error, which infects their entire brief: that provision clearly does not apply to requesters like VRF and political parties. Instead, it applies only to disclosures "by" particular categories of individuals: state and county workers, and "data processors"[2] (certain government contractors):

> Unlawful disposition of voter file consists of the willful selling, loaning, providing access to or otherwise surrendering of the voter file, duplicates of the file or a part of the file **by a data processor**; a data processor's **agent or employee**; a **state or county officer**; or a state or county officer's **deputy, assistant, employee or agent to** anyone not authorized by the Voter Records System Act to have possession of the file.

*Id*. (emphasis added). Defendants also cite § 1-4-5.6(A) as if it breathes some additional meaning into § 1-5-22. It does not. It simply states that the mere violation of a code section (like section 1-5-22) is not "unlawful" unless it is knowing and willful. VRF cannot have broken this law.[3]

---

[1] "'Governmental purposes' means noncommercial purposes relating in any way to the structure, operation or decision-making of a federal, state or local government." § 1-4-5.5(E)(2). "'Election campaign purposes' means relating in any way to a campaign in an election conducted by a federal, state or local government." § 1-4-5.5(E)(1).
[2] Neither VRF nor Local Labs is a "data processor," defined as "a data processing facility and its associated employees and agents contracted to provide data processing services required by the Voter Records System Act." § 1-5-2(D).
[3] It provides: "Unlawful use of voter data, mailing labels or special voter lists consists of the knowing and willful use of such information for purposes prohibited by the Voter Records System Act [Chapter 1, Article 5 NMSA 1978]." In turn, § 1-4-5.6(B) provides a penalty of $100 for each line of voter information unlawfully used, and § 1-4-5.6(C) clarifies that each unlawful use is a separate offense.

2

Defendants also misstate the material facts. As a service to users, VRF displayed email correspondence on its website which clearly disclosed that the data came from the Secretary of State via Local Labs. See Ex. E, Dec. of Gina Swoboda, ¶5. VRF used Local Labs, one of many firms that specialize in gathering public records data, in its efforts across the country. *Id.*, ¶9. Indeed, the Secretary has long made the same voter data available to many other well-known firms like Local Labs that openly gather and aggregate voter information for their own clients, typically for either progressive (Catalist) or conservative (Data Targeting, Inc.) political purposes. *See* Ex. 2 to Ex. E. The Secretary's claim that Local Labs' purchase of data to share with VRF is illegal or nefarious is simply not credible given her longstanding practice with a long list of other firms.

Here, VRF reviewed New Mexico law to confirm that its intended use of the data for election purposes was allowed under § 1-4-5.5(C) before asking Local Labs to obtain the data. *Id.*, ¶8. Crucially for this case, the "Old Form" (Def. Br., Ex. 1) tracks the Election Law; the "New Form" (Ver. Comp., Ex. B) does not. For example, in the Old Form, which Local Labs signed to gather the data used by VRF, the requester checks one of three boxes to indicate how the data will be used: "Governmental Use," "Campaign Use," or "Election Related," which tracks the text of section 1-4-5.5(C) ("governmental or election and election campaign purposes"). For VRF, the "Election Related" box was checked. See Ex. 1 to Defs. Br. The New Form eliminates the third box, removing "Election Related" as a permissible category of content for data-related speech.

The Authorization is also greatly changed. On the Old Form which applied to VRF and Local Labs, the Authorization stated that "the requestor will not use or make available to others to use the requested material for purposes other than governmental, election, research and campaign purposes under penalty of law." *See* Def. Br., Ex. 1. On the New Form, the requester must swear that it will not "sell, loan, provide access to, or otherwise surrender voter information received as

3

a result of this request," *regardless of the use*. *See* Br. at 4 (citing Complaint, Ex. B). The Secretary created the New Form in February 2022, long after VRF's vendor signed it.[4] The New Form is not the law. It does, however, support the Secretary's public attacks on VRF and her theory of defense in this case. It is ironic, to say the least, that Defendants attack VRF for a "lack of candor."

### III. The Requested Injunction Is Not Disfavored

Defendants claim that because preliminary relief would alter the status quo and award Plaintiffs all the relief they could obtain in an as-applied challenge, it is "disfavored," requiring a "strong showing" of the four injunctive relief factors. Br. 8-9 (citing *Free the Nipple-Ft. Collins v. City of Fort Collins*, 916 F.3d 792, 792 (10th Cir. 2019). But here, preliminary relief would preserve, rather than alter, the status quo by ensuring that Defendants will not take additional action against VRF and Steinberg for their speech while the case is pending. VRF will be free to choose to re-post its data and Plaintiffs will be able re-engage in speech using the data, which was the status quo before Defendants' threats chilled Plaintiffs' speech. Plaintiffs do not ask the Court to order that Defendants take any action to post the data themselves (a mandatory action that would disturb the status quo), nor do they ask for "all the relief the [Plaintiffs] could expect from a trial win" (*id*. at 797). Thus, Plaintiffs need only show a substantial likelihood of success on the merits under the normal standard, but as shown below, Plaintiffs meet even the heightened threshold.

### IV. VRF Has a First Amendment Right to Publish this Lawfully Obtained Data

#### a. VRF is injured by Defendants' selective exclusion of "election-related" speech as a permissible use of the data

VRF—no less than campaigns who use data gathered by Catalist or other data requesters—is permitted by New Mexico law to use voter data for the "Election Related" "purpose" disclosed

---

[4] The new form states that it was revised on February 14, 2022. Verf. Comp., Ex. B. The form submitted by Local Labs is dated March 29, 2021. Defs. Br., Ex. 1.

by its data purchaser, Local Labs, on its request form. See Def. Br., Ex. 1. It is simply untrue that Catalist, Local Labs, or any other entity is "guilty of a fourth-degree felony" when it shares voter data with a campaign or with VRF. Def. Br. at 8. It is similarly untrue when VRF shares voter data with the public for election-related uses. As explained above, New Mexico regulates private parties' access to, and sharing of, voter data by examining the proposed use of the data. Specifically, state law requires that data be used for "governmental or election and election campaign purposes only and shall not be made available or used for unlawful purposes." *See* NMSA § 1-4-5.5(C). This limitation allows for free speech in campaigns and in election-related communications by VRF and its citizen-associates like Ms. Steinberg. It also inhibits use of the data for commercial solicitation and harassment. There is simply no ban on a requester disclosing data to a client or other party; any such use need only meet the content-based criteria set forth in § 1-4-5.5(C). The ban on disclosure that Defendants claim applies to everyone under the sun (Def. Br. at 8) actually only applies to government workers and data processors. *See* § 1-5-22(A).

Defendants do concede, however, that they believe VRF's sharing of voter data for election-related purposes is a form of disclosure that is "criminal," and concede that the prohibition on disclosure "is a direct regulation of speech." Def. Br. at 8.[5] Further, Defendants' ban on VRF's speech directly impacts Plaintiff Steinberg, who has a right to receive VRF's speech regarding the voter data VRF has compiled. *Martin v. City of Struthers, Ohio,* 319 U.S. 141, 143 (1943) (First Amendment "embraces the right to distribute literature, and necessarily protects the right to receive it."). There is no question, then, of First Amendment injury. The only question is the degree of scrutiny, which depends in part on whether the ban is content-based. As shown below, it is.

---

[5] *See also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct.").

### b. The Use Restrictions are Content-Based

New Mexico criminalizes VRF's disclosure and use of voter data VRF *lawfully* received precisely *because* Defendants see VRF's content as not being for a lawful use, even if it is an "election-related" use—the option that Local Labs checked on the Old Form. VRF will use the data to speak and associate with supporters via the internet regarding the integrity and operation of New Mexico's voter rolls. At a minimum, Defendants are targeting VRF based on the content of its speech; more likely, they are targeting Plaintiffs on the basis of viewpoint.

A regulation of speech is facially content-based if it "target[s] speech based on its communicative content" – that is, if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

> This commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys…Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, **defining regulated speech by its function or purpose.** Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

*Id.* at 163-4 (internal citations omitted) (emphasis added).[6]

Under *Reed*, section 1-4-5.5 uses "function or purpose" to decide what speech is lawful: data can be shared "for **governmental** or **election** and **election campaign purposes only** and shall not be made available or used for unlawful purposes" (emphasis added). The Secretary's New Form further refines the test to prefer "campaign" and "governmental" speech and prohibit VRF's "election" related speech under threat of criminal penalty. Thus, the Use Restrictions turn wholly

---

[6] The Supreme Court applies strict scrutiny to an additional category of laws that, though facially content neutral, (1) cannot be justified without reference to the content of the regulated speech or (2) were adopted by the state because of disagreement with the message the speech conveys. *Id.* at 164 (citing *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989)). Defendants ignore the first category of restrictions – those that are facially content based – incorrectly claiming that "the principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech because of agreement or disagreement with the message it conveys." Br. 10-11 (citing *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 949 (7th Cir. 2015). But, as the Supreme Court stated in *Reed* and *Ward*, that is a secondary inquiry, undertaken only if a regulation is not facially content-based.

6

on the message and purpose of the speech. Using the voter data to advocate for Secretary Oliver's reelection (a "campaign" purpose) is permitted; using that same data to criticize the Secretary's maintenance of the voter rolls (perhaps, a disfavored "election" related purpose) is not.

As noted above, the Defendants at one time gave VRF's election related speech the same privileged status as "campaign" and "governmental." This was required by law: "election related" speech is the middle of three content-based categories of speech permitted under § 1-4-5.5(C) ("governmental or election and election campaign purposes"). Defendants seemed to allow groups to use voter data for election related purposes, including the category as one of three boxes (along with "governmental" and "election campaign") on the Old Form. Indeed, this was the purpose checked by VRF's data buyer, Local Labs. But once VRF's work became public, things changed.[7]

After making a criminal referral to the Attorney General in December 2021, and just before publicly attacking VRF in conjunction with the progressive group ProPublica in March 2022, the Secretary quietly retired the Old Form. Her New Form removed "election-related" as a permissible use of the data—and therefore as a permissible category of content for speech.[8] She also excised text that, tracking the statute, had *allowed* sharing of the data for "governmental, election, research and campaign purposes," and instead prohibited all sharing. *Id.* The message is clear: Defendants will not stand for any use or sharing of the voter data that, like VRF's, is "election-related."

The Defendants' brief all but admits this animus in its discussion of "state interests." (Def. Br. 11) Defendants argue that their new restrictions ensure disclosure on a "need-to-know" basis. But Defendants decide who "needs to know" by restricting speech about the data based on the function or purpose of the speech: textbook content or viewpoint-based regulation. Thus, campaigns and their targeted voters, and progressive for-profit firms like Catalist who aggregate

---

[7] There is a third form which came between the Old and New forms and is the most permissive. See Ex. 3 to Ex. E.
[8] Compare Def. Br., Ex. 1 to Ver. Compl., Ex. B.

and share data with clients, "need to know" the data for their speech; not so for VRF and New Mexico voters like Holly Steinberg who want to use it to ensure the integrity of data rolls. Defendants' state interest in avoiding "disinformation" veers even more blatantly into viewpoint discrimination. Defendants fear VRF's sharing of voter data to promote transparency and voting will instead cause "disinformation," leading voters to unfairly criticize the Secretary's voter data system.[9] This is another echo of the Secretary's attacks on prior requesters, substituting the statute's three permissible content categories with her own judgment on whether the requester is destined to engage in "nefarious" speech with the data. See Ver. Comp., Exs. C-D. In short, the restrictions are content or viewpoint based, and must therefore pass strict scrutiny.[10]

Finally, Defendants may claim that their jettisoning of election-related speech as a permissible use did not cause their attack on VRF; they were merely trying to enforce their (errant) but content-neutral belief that requesters cannot share voter data for any reason. As shown above, that is not the law. The Secretary's longstanding use of the Old Form, which allowed disclosure for permitted uses and was signed by Local Labs, was kept in force by the Secretary for months after she criminally referred VRF. And it is also belied by the Secretary's decision to sell data to for-profit firms like Catalist and others, whose well-publicized business model is to gather and sell voter and other public data to their clients, many of whom are not campaigns. The "all sharing is

---

[9] The Secretary's concerns regarding outdated data are unfounded, as VRF discloses the ripeness of its data by listing the date on which the data was obtained from the state. See Ex. E, ¶10. A user of the Website is made aware of exactly how old or "stale" the data is. See also Verf. Compl., ¶39.

[10] For all of these reasons, Defendants' application of New Mexico law bears no resemblance to the Driver's Privacy Protection Act ("DPPA"), at issue in an out-of-Circuit case, *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 949 (7th Cir. 2015). Unlike New Mexico law, the DPPA involved a true ban on disclosure to private parties, and the subject matter of the ban—personal identifiable information for five officers—coincided with the government's interest on the facts of that case. The newspaper challenging the ban had in fact illegally obtained the information, unlike the situation here. Additionally, the Court found little burden, as the protected personal information—physical description data like height and weight—was for five police officers and was easily ascertainable from public pictures. *Id*. at 953-954. The court emphasized that on different facts, the DPPA may not survive an as-applied challenge. *Id*. at 954.

illegal" excuse seems to be raised only when content or viewpoint-based targeting is alleged—itself proof that Defendants have an unlawful animus to hide.

### c. The Use Restrictions Fail Strict Scrutiny

The Use Restrictions, as content-based regulations of speech, can stand only if they survive strict scrutiny "'which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest…'" *Reed,* 576 U.S. at 171 (citing *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,* 564 U.S. 721, 735 (2011)). It is Defendants' burden to demonstrate both that the asserted interests are compelling and that the Use Restrictions are narrowly tailored to achieve those interests. Defendants have not made either showing.

Though they largely hide behind their false claim that VRF unlawfully obtained the information at issue and therefore no constitutional rights are implicated, Defendants assert four interests which they claim justify the "prohibition on all disclosure" of voter data: (1) limiting access to those who are explicitly aware of the permissible uses of New Mexico voter data via the requisite affidavit; (2) ensuring payment of reasonable fees for production; (3) encouraging voter registration by ensuring that voter data is disclosed only on a need to know basis under penalty of perjury; and (4) avoiding "disinformation" that might arise from the review of stale data. Br. at 11.[11] As addressed above, the third and fourth asserted interests are merely mechanisms to favor some speech to the detriment of others based on content or viewpoint. See Sect. IV(b).

The first asserted interest is adequately addressed by the language of the statute itself, which states the three permissible uses of the voter data. The Secretary's New Form actually

---

[11] Plaintiffs note that these are the interests that Defendant asserted to justify the absolute prohibition on sharing voter data which they erroneously claim arises under section 1-5-22 despite the plain language of that statute applying to only a narrow class of government employees and agents. That section is not the subject of Plaintiffs' challenge; section 1-4-5.5 is. Because Defendants have failed to offer any state interests justifying the restrictions in 1-4-5.5, the Use Restrictions cannot survive strict scrutiny. Plaintiffs address the interests asserted by Defendants merely to demonstrate that the asserted interests themselves border on content and viewpoint-based discrimination. Plaintiffs do not concede that Defendants have made any showing as to the propriety of the restrictions in section 1-4-5.5.

undermines rather than advances this interest, as it imposes restrictions in excess of what the law allows and falsely suggests to signers that it is consistent with the law. As applied to VRF, this interest was satisfactorily addressed because VRF undertook an independent review, confirming its intended use complied with the law before it asked Local Labs to request the data. Ex. E, ¶8. No interest was subverted by VRF going directly to the source of the restrictions – the statutes themselves – as compared to reviewing the Secretary's form. Additionally, VRF requires its own users to agree to follow data usage restrictions before they can view data.[12] The state's interest in making its laws known has not been compromised. As to the second asserted interest, the generation of revenue is not a sufficiently compelling interest to impose this severe burden on Plaintiffs' First Amendment rights. The State essentially argues that it should be paid twice for the same data, as Local Labs did pay $5,378.12 to acquire the data on VRF's behalf. Def. Br., Ex. 2.

In addition to bordering on content-based discrimination, the third asserted interest – disclosure on a need-to-know basis under penalty of perjury – is adequately protected by the prohibition on unlawful use found in section 1-5-5.6. The restriction on unlawful use of voter data in section 1-5-5.6 applies to any person that violates the voter records law, regardless of whether they are the same person that requested the data in the first instance. That prohibition is enforceable via criminal penalties, thus the claimed necessity of having a signed affidavit so that the State can enforce a violation via a perjury prosecution is redundant rather than compelling.

### V.    Steinberg Has a First Amendment Interest in Receiving the Information at Issue

Plaintiff Steinberg cannot receive the information that VRF attempts to communicate because the State's selective interpretation and application of the law has effectively silenced VRF. *See Struthers*, 319 U.S. at 148-9 (striking ban on door-to-door circulation of handbills and circulars

---

[12] Verf. Compl., ¶40; Answer ¶40 (admitted).

in part for failure to consider the constitutional rights of those desiring to receive the information); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas. 'This freedom (of speech and press) necessarily protects the right to receive…") (citations omitted). "In the First Amendment context [] a plaintiff need not be subject to a speech restriction in order to have standing to advance a challenge. First Amendment protections extend to both speakers and listeners, the latter having a right to receive information and ideas." *Kansas Jud. Rev. v. Stout*, 519 F.3d 1107, 1115 (10th Cir.). In the same way, the Constitution protects Ms. Steinberg's right to receive the information that VRF attempts to share, particularly given that the information touches on matters of the utmost public concern.

VI.     **The Remaining Claims Should Prevail on the Merits**

Defendants fail to contest the merits of Plaintiffs' remaining arguments, including that the Use Restrictions are void for vagueness, overbroad, and function as prior restraints. Instead, they rely entirely on standing, claiming that under their errant reading of New Mexico law, Plaintiffs are subject to a total ban on disclosure under section 1-5-22, rather than the content-based Use Restrictions governing publication in section 1-4-5.5 (the true subject of this case). Def. Br., 14.

Yet Defendants' recent contortions to avoid addressing these other theories only serve to highlight their vitality. Plaintiffs argued that if "election-related" speech like their own is not allowed under section 1-4-5.5 and is instead criminal conduct, then that section is too vague to provide notice. Defendants only underscore that argument by completely failing to take a position on this key point—even after citing *in the same brief* both an Old Form and a New Form, each drafted by the Secretary, that take diametrically opposing views on this question. Likewise, if the law is overbroad as correctly interpreted, Defendants stretch it beyond the breaking point to criminalize even the re-selling of data to campaigns by well-known firms like Catalist and i360. Finally, the very fact that Defendants apparently apply some unknown criterion (the fear of

11

"disinformation" that would criticize the Secretary, perhaps?) to ban sharing by Local Labs and VRF, but not by Catalist and others who resell the data, suggests that the evils of a presumptively invalid prior restraint are at work. Defendants' bold misreading of the law has neither fixed their content or viewpoint discrimination problem, nor avoided Plaintiffs' other theories.

### VII. All Remaining Factors Support an Injunction

Defendants' discussion is hamstrung by their serious mistake of law and consequent claim that VRF participated in a felony as soon as it received data from Local Labs. In fact, VRF had every right to receive and share the data as part of its plan to educate the public on New Mexico's voter rolls, and improve election integrity, transparency, and participation. Complaining that this open discussion "impugns" the Secretary's work on the rolls, Defendants want to criminalize and silence that speech. The merits, public interest, and equities are rarely clearer. In the First Amendment context, "the likelihood of success on the merits will often be the determinative factor" because of the seminal importance of the interests at stake. *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016) (citation omitted). Additionally, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury", *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and the public interest favors vindicating First Amendment freedoms. *Pac. Frontier v. Pleasant Grove City,* 414 F.3d 1221, 1237 (10th Cir.2005). If the Court agrees that Plaintiffs are likely to prevail on any of their First Amendment theories, the requested injunction should issue to safeguard the important rights at stake.

### CONCLUSION

For the foregoing reasons, Plaintiffs are likely to succeed on the merits of their First Amendment claims and the Court should issue the requested injunction.

Respectfully submitted this 28th day of April 2022.

                                              **GRAVES GARRETT, LLC**
                                              */s/ Edward D. Greim*
                                              Edward D. Greim
                                              Missouri Bar No. 54034
                                              *Admitted Pro Hac Vice*
                                              GRAVES GARRETT LLC
                                              1100 Main Street, Suite 2700
                                              Kansas City, Missouri 64105
                                              Tel.: (816) 256-3181
                                              Fax: (816) 222-0534
                                              edgreim@gravesgarrett.com

                                              **HARRISON, HART & DAVIS, LLC**
                                              */s/ Carter B. Harrison IV*
                                              Carter B. Harrison IV
                                              924 Park Avenue SW, Suite E
                                              Albuquerque, NM 87102
                                              Tel: (505) 369-6599
                                              Fax: (505) 341-9340
                                              carter@harrisonhartlaw.com

                                              *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

     I, Carter B. Harrison IV, certify that on April 28, 2022, a copy of Plaintiffs' Reply in Support of Motion for Preliminary Injunction was filed with the Clerk of the Court using the CM/ECF system, which sent notification to the following via e-mail:

Olga M. Serafimova
Senior Civil Counsel
P.O. Drawer 1508
Santa Fe, NM 87501-1508
(505) 490-4060
(505) 490-4046
oserafimova@nmag.gov

                                              */s/ Carter B. Harrison IV*
                                              Carter B. Harrison IV