## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **VOTER REFERENCE FOUNDATION,** | ) | |
| **LLC** and **HOLLY STEINBERG** | ) | **CASE NO: 1:22-cv-00222-JB-KK** |
| | ) | |
| Plaintiffs, | ) | |
| **v.** | ) | **PLAINTIFF'S OPPOSITION TO** |
| | ) | **DEFENDANT'S EMERGENCY** |
| | ) | **MOTION TO QUASH SUBPOENA** |
| **HECTOR BALDERAS**, in his official | ) | |
| capacity as New Mexico Attorney General, and | ) | |
| **MAGGIE TOULOUSE OLIVER,** in her | ) | |
| Official capacity as New Mexico | ) | |
| Secretary of State, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### EMERGENCY MOTION TO QUASH SUBPOENA

COMES NOW Plaintiff Voter Reference Foundation, LLC ("VRF"), by and through counsel, and for its opposition to Defendant Secretary of State Maggie Toulouse Oliver's motion to quash the subpoena served upon her by VRF on April 29, 2022, states as follows:

1. Secretary of State Maggie Toulouse Oliver (the "Secretary") was intimately involved in the events giving rise to this litigation. She sought publicity for, and political gain from, her attacks on Plaintiff Voter Reference Foundation, LLC ("VRF"). She has held herself out to the public as a guardian of the state's voter data. She claims to be a trustworthy arbiter of which kinds of speech about the data are good, and which are "nefarious" or "misinformation," which in her view, is criminal. Now, she fights VRF's efforts to have her testify at the upcoming preliminary injunction hearing. Yet notably absent from her motion are any claims that she lacks personal knowledge of or involvement in the key issues in this case.

2. The key issues on which she will provide testimony include:

- The facts and circumstances supporting her decision to reach beyond the text of New Mexico's statutory scheme for allowing access to and use of voter data, including her decision to adopt and implement the Use Restrictions;

- The facts and circumstances underlying her decision to eliminate "election-related" speech as a permissible use under the law, and her decision to label certain types of speech that uses the data as "nefarious" and "misinformation" if it "impugns" her work in maintaining the database;

- The factual and legal basis for her own decision that VRF's speech regarding the data is unlawful under her Use Restrictions;

- The reason for her subsequent referral of VRF to the Attorney General for investigation, her failure to notify VRF regarding her interpretation of the law, and her decision to make her position known by coordinating with a partisan progressive publication, ProPublica, and then re-tweeting and promoting the ProPublica article;

- Her own individual social media and public statements in which she expresses her views on all of the above topics, which include the statements attached as Exhibit A.

3. The Secretary is a defendant in this lawsuit because of her direct and very public role in labeling VRF's protected speech as criminal acts.[1] The Secretary did not find it a burden to talk with ProPublica reporters about VRF, to trumpet the resulting ProPublica article on her social media, or to make other public statements regarding the scope of the statute at issue or this lawsuit. But now that Plaintiffs wish to procure her testimony under oath in order to explore the factual

---

[1] Further, although it will not be inquired into given the limited purpose of the upcoming hearing, the Secretary has upon information and belief also been personally involved in coordinating an investigation against VRF with other states who share her antagonistic viewpoint regarding VRF's speech.

basis for all of these statements and her direct personal involvement, the Secretary pleads that the burden is too much to bear.

4.  Rule 45 authorizes Plaintiffs to issue subpoenas to compel the attendance of witnesses at the upcoming preliminary injunction hearing. Defendants do not contest this. However, the Secretary claims that VRF's subpoena is an attempt to circumvent the discovery rules because it asks her to bring copies of her social media posts and public statements regarding Plaintiffs and the issues involved in this lawsuit. "A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises may be included in a subpoena commanding attendance at a deposition, hearing, or trial, or may be set out in a separate subpoena." FRCP 45(a)(1)(C); see also FRCP 45(c)(2)(A). The Secretary claims that Rule 26(d)(1) prohibits a subpoena to testify and produce documents at a hearing if the hearing occurs before the Rule 26(f) conference. Rule 26(d)(1) states: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." The Court ordered a hearing on Plaintiffs' preliminary injunction motion. Dkt. 17. Plaintiff subpoenaed the Secretary pursuant to Rule 45, which permits a subpoena that commands both attendance and the production of documents. FRCP 45(a)(1)(C). Rule 26(d)(1) prohibits "early discovery" unless "authorized by these rules…" Because the command to produce documents is indeed "authorized under these rules"—that is, by Rule 45—it is not prohibited by Rule 26(d)(1).

5.  The Secretary's objection to appearing at the hearing to provide live testimony is based on speculation that the "apex doctrine" would prevent VRF from deposing the Secretary at this point in the proceeding under Rule 26. Thus, she claims she cannot be called to testify at the hearing,

though later in the motion, the Secretary concedes that the "apex doctrine" has not been applied to a Rule 45 subpoena compelling the testimony of a government official.

6.   The apex doctrine has not been adopted in this Circuit. See *United States v. Rosenschein*, No. CR 16-4571 JCH, 2020 WL 3288125, at *3 (D.N.M. June 18, 2020) ("The Tenth Circuit Court of Appeals has not adopted the apex doctrine."). [2] It has been applied only rarely in this District in cases where the individual seeking protection clearly has no personal knowledge of the facts relevant to the lawsuit. In the only case in this District cited by the Secretary in which the doctrine was applied, the CEO of Ocean Spray demonstrated a complete lack of personal knowledge regarding the facts relevant to suit, which were typically handled by a vice president. *El Pinto Foods, LLC v. Ocean Spray Cranberries, Inc.*, 2014 WL 11515031, at * 1 (D.N.M. Apr. 21, 2014). The plaintiff seeking to depose the CEO did not seem to contest the professed lack of personal knowledge, but nevertheless insisted that it was entitled to test the CEO's claimed lack of knowledge and test the credibility of other defense witnesses by comparison to the CEO's testimony. *Id.*

7.   The circumstances here could not be more different. The Secretary takes great care to deny personal knowledge of certain limited facts in her motion. See Mtn. to Quash, ¶9 ("…[T]o the extent VRF wishes to question the Secretary of State regarding voter data requests generally or a specific voter data request, the Secretary of State would have no personal knowledge about these issues."). But her omission is itself telling. She does not deny personal knowledge of the policies

---

[2] New Mexico state law also does not recognize the "apex doctrine". *See* Special Master's Rep., filed Jan 18, 2018, *Pierce v. Rehab. Hosp. of Southern N. M., Inc.*, D-307-CV-2013-00502, at 7 (Torgerson, J) ("As noted above, there is no controlling authority in New Mexico and even if the 'apex' doctrine were to apply, the cases cited by EHI allows for discovery if the deponent has unique personal knowledge' or 'unique or superior knowledge' of the relevant facts or discoverable information.")(Exhibit B); *Enloe v. Atl. Specialty Ins. Co., et al.,* D-132-CV-2015-00082 (Feb. 6, 2018), at 3 (Shaffer, J.) ("The Apex doctrine is not the law of New Mexico…")(Exhibit C); *In the Matter of the App. of Pub. Serv. Co. of New Mexico,* 2015 WL 5003483, at *3 (Aug. 19, 2015) ("The Apex Doctrine has not been adopted in New Mexico, but, even if it were, the doctrine would not justify the prevention of the depositions."). Thus, the Secretary requests greater protection from this Court than the courts of her own state would provide.

of her office which gave rise to the Use Restrictions being challenged in this lawsuit. She does not deny personal knowledge of her own publicly-expressed conclusion that VRF's protected speech is unlawful. She does not deny personal knowledge of her referral of VRF to the Attorney General. And she does not deny personal knowledge of her own social media posts, public statements, or contributions to the ProPublica article.

8.   Even if this Circuit followed the apex rule, nearly every application of that rule is premised on the high-ranking official's lack of personal knowledge regarding the facts at issue in the lawsuit and the availability of some alternative source to ascertain the same facts sought from the official. See Mtn. to Quash, ¶6 (citing *El Pinto Foods, LLC*, 2014 WL 11515031 at * 1 (factors considered include: (1) the executive has no personal knowledge of the issues in dispute, (2) the information sought from the executive can be obtained from another witness, (3) the information sought can be obtained through an alternative discovery method…)); see also *Tierra Blanca Ranch High Country Youth Program v. Gonzales*, 329 F.R.D. 694, 697 (D.N.M. 2019) (presumption that high-level official's deposition represents a significant and undue burden is "rebutted where the official '(1) possesses special or unique information relevant to the issues being litigated, and (2) the information cannot be obtained by a less intrusive method, such as through written discovery or by deposing lower-ranking employees.').

9.   Without denying personal knowledge of her own involvement in the events giving rise to this dispute, the Secretary offers two alternative sources from which VRF could ascertain relevant evidence without requiring the Secretary's testimony. First, she concedes that her own statements are admissible against her under FRE 801(2)(A) – subject to the rules governing relevance and authentication. Mtn. to Quash, ¶7. Thus, she appears to contend that VRF could simply enter her written statements – that is, her Tweets and Facebook posts – into evidence at the hearing as a

substitute for her live testimony. She also argues that Mandy Vigil, who was also subpoenaed by VRF to provide testimony at the hearing, has personal knowledge about voter data requests to the Secretary's Office, the only topic about which the Secretary denies having personal knowledge. These contentions regarding the alternative sources of information from which VRF could elicit testimony and evidence tellingly gloss over the subject matters about which the Secretary and the Secretary alone has knowledge. The Secretary does not contend that Ms. Vigil has knowledge regarding the policies of the Secretary's office which gave rise to the Use Restrictions, the Secretary's decision that her office would treat VRF's protected speech as unlawful, the Secretary's referral of VRF to the Attorney General for investigation, or the Secretary's social media posts and public statements about all of these topics.

10. Finally, the Secretary argues that the burden of appearing to testify cannot be justified given the state of emergency in New Mexico caused by the recent wildfires coinciding with in-person voting for the 2022 primaries. VRF and its supporters, including Plaintiff Steinberg, a New Mexico resident, are themselves affected by the current natural disasters and understand that it is likely impacting the personal and professional lives of New Mexicans. Therefore, in an attempt to alleviate the burden claimed by the Secretary, VRF offered alternative accommodations, including that the Secretary could be deposed remotely at a convenient time for her and deposition excerpts could be offered at the hearing; or that for present purposes, Deputy Secretary of State Sharon Pino (who, on information and belief, personally drafted the referral) and communications director Alex Curtas be made available to testify in the Secretary's stead. These offers were not accepted.[3]

---

[3] To ensure that witnesses with at least some knowledge of the key issues appear at the hearing, Plaintiffs have served subpoenas on Ms. Pino and Mr. Curtas for their appearances at the hearing. Plaintiffs understand the Defendants may object to the subpoena to at least Ms. Pino, and possibly also Mr. Curtas, as being themselves covered by the "apex doctrine." As of this filing, no motion to quash has been served.

11. In the end, the Defendants are simply trying to shield the witnesses who decided to import viewpoint and content-based restrictions into the law, to enforce those against VRF, and to publicize and reap political gain from doing so. The major policy and enforcement decisions that the Secretary has so publicly and proudly made are hers, not those of lower-level office staff.

12. VRF must meet certain factual and legal burdens at the hearing and due process requires that it be able to compel the attendance of witnesses necessary to meet those burdens. The entire hearing in this case is set to take no more than two and a half to three hours, with the Secretary's testimony comprising only a fraction of that time. This relatively minor burden is neither undue nor unjustified given the Secretary's personal involvement in the events giving rise to this litigation. The subpoena should not be quashed.

For the foregoing reasons, Plaintiff Voter Reference Foundation, LLC respectfully requests that the Court deny Defendant Secretary of State Maggie Toulouse Oliver's Emergency Motion to Quash.

Respectfully submitted this 10th day of May 2022.

**GRAVES GARRETT, LLC**
*/s/ Edward D. Greim*
Edward D. Greim
Missouri Bar No. 54034
*Admitted Pro Hac Vice*
GRAVES GARRETT LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com

and

**HARRISON, HART & DAVIS, LLC**
*/s/ Carter B. Harrison IV*
Carter B. Harrison IV
924 Park Avenue SW, Suite E
Albuquerque, NM 87102
Tel: (505) 369-6599
Fax: (505) 341-9340
carter@harrisonhartlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Carter B. Harrison IV, certify that on May 10, 2022, a copy of Plaintiffs' Opposition to Defendant's Motion to Quash was filed with the Clerk of the Court using the CM/ECF system, which sent notification to the following via e-mail:

Olga M. Serafimova
Senior Civil Counsel
P.O. Drawer 1508
Santa Fe, NM 87501-1508
(505) 490-4060
(505) 490-4046
oserafimova@nmag.gov

*/s/ Carter B. Harrison IV*
Carter B. Harrison IV