# Exhibit B

3RD JUDICIAL DISTRICT COURT
Case 1:22-cv-00222-JB-KK   Document 25-2   Filed 05/10/22   Page 2 of 15 DONA ANA COUNTY NM
FILED IN MY OFFICE
1/18/2018 4:08:23 PM
DAVID S. BORUNDA
Joseph Martinez

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT COURT

GRANT PIERCE, as the PERSONAL
REPRESENTATIVE of the ESTATE OF
PAULINE PIERCE,
            **Plaintiff,**

v.
                                        D-307-CV-2013-00502
                                        Hon. Judge Manuel I. Arrieta

REHABILITATION HOSPITAL OF
SOUTHERN NEW MEXICO, INC. and
ERNEST HEALTH, INC.
            **Defendants.**

## SPECIAL MASTER'S FOURTH REPORT AND RECOMMENDATION

**THIS MATTER** comes before the Special Master pursuant to the Court's Stipulated Order Appointing Special Master filed on June 24, 2016, and the Court's Stipulated Order Clarifying Issues Referred to Special Master filed February 7, 2017. In this lawsuit, Plaintiff Grant Pierce, as the Personal Representative of the Estate of Pauline Pierce (hereinafter Plaintiff), has brought claims against Defendants Rehabilitation Hospital of Southern New Mexico and Ernest Health, Inc. (hereinafter RHSNM, EHI or Defendants) alleging medical negligence resulting in injury and death as a result of decedent Pauline Pierce's fall in her hospital room at RHSNM on July 16, 2012. Among the claims alleged by Plaintiff is a claim for corporate negligence.

The parties have a dispute regarding the deposition of two of EHI's executive officers and its external CPA. Before the Special Master is Defendant Ernest Health, Inc.'s Motion for Protective Order Regarding Plaintiffs' Proposed Deposition of its Chief Executive Officer, Chief Financial Officer and External Certified Public Accountant (Referred to Special Master) filed on

September 19, 2017 (hereinafter Motion). Plaintiff filed his Response to Defendant Ernest Health, Inc.'s Motion for Protective Order Regarding Plaintiff's Proposed Deposition of its Chief Executive Officer, Chief Financial Officer, and External Certified Public Account (referred to Special Master) (hereinafter Response) on October 3, 2017. EHI filed its Reply in Support of Defendant Ernest Health, Inc.'s Motion for Protective Order Regarding Plaintiff's Proposed Depositions of its Chief Executive Officer, Chief Financial Officer and External Certified Public Accountant (referred to Special Master) (hereinafter Reply) on October 23, 2017.

EHI's Motion seeks a protective order barring Plaintiff from taking the deposition of its Chief Executive Officer Darby Brockette, (hereinafter Brockette), Chief Financial Officer Keith Longson (hereinafter Longson) and it external Certified Public Accountant (hereinafter CPA). EHI is asking the Court to grant its protective order for the following reasons: (1) Brockette and Longson have no unique personal knowledge of relevant facts; (2) as senior corporate executives, Brockette and Longson should be protected from the burden of deposition unless absolutely necessary and not until Plaintiff has pursued less intrusive means of discovery; and (3) Plaintiff seeks the depositions of Brockette and Longson for illegitimate reasons. *Motion* at 5. In support of the Motion, EHI attaches essentially identical affidavits from Brockette and Longson which provide in pertinent part as follows:

- EHI is the parent corporation of Rehabilitation Hospital of Southern New Mexico ("RHSNM").

- EHI has never directed or controlled the day-to-day operation of RHSNM.

- EHI has never directed or controlled the patient care provided at RHSNM.

- Neither Brockette nor Longson have any personal knowledge about the care of patients at EHI-affiliated hospitals, including but not limited to Pauline Pierce and Jacqueline McLean.

- Neither Brockette nor Longson have any personal knowledge regarding facts underlying lawsuits brought against RHSNM or EHI, including but not limited to the lawsuits brought by Pauline Pierce and Jacqueline McLean.

- Neither Brockette nor Longson prepared or reviewed incident reports or Notices of Potential Claim Litigation ("NOPC").

- Neither Brockette nor Longson have any personal knowledge regarding the specifics of EHI's or RHSNM's fall prevention policies, programs or other efforts to improve the quality of patient care at EHI-affiliated hospitals.

- Neither Brockette nor Longson have any personal knowledge regarding specific EHI-affiliated hospitals' fall rates.

- Neither Brockette nor Longson participated in the reporting of sentinel events at any EHI-affiliated hospital.

- Neither Brockette nor Longson prepared RHSNM or EHI's balance sheets, profit and loss statements, federal or state income tax returns or other financial records. *Exhibit B and Exhibit C to Motion.*

Plaintiff has already deposed several facts witnesses, as well as, RHSNM's Director of Compliance, Roy Rivas; current CEO, Sabrina Martin; EHI's CEO and former RHSNM CEO, Tony Hernandez; and EHI's Senior Vice Present of Regulatory Compliance (quality and risk

3

Case 1:22-cv-00222-JB-KK   Document 25-2   Filed 05/10/22   Page 5 of 15

management), Denise Kahn.

Based on the affidavits, EHI argues that Brockette and Longson have no personal knowledge whatsoever about: (1) the care of patients at EHI-affiliated hospitals, including the care Mrs. Pierce received at RHSBN; (2) facts regarding the underlying lawsuits brought against RHSNM or EHI, including this lawsuit; (3) the specifics of EHI's or RHSNM's fall prevention policies, programs or other efforts to improve the quality of patient care at EHI-affiliated hospitals; and (4) EHI-affiliated hospitals' fall rates. They do not prepare or review Incident Reports or Notices of Potential Claim Litigation, nor do they participate in the reporting of sentinel events at any EHI-affiliated hospital. Finally, neither Brockette nor Longson prepare or review any of the financial documents that are or have been ordered to be produced to Plaintiff to show RHSNM or EHI's net worth for purposes of punitive damages. *Motion* at 3.

To support its legal argument EHI relies on the Court's ability to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Rule 1-026 NMRA. EHI also makes reference to Rule 1-026(B)(2)(a) to argue that the Court may limit the use of discovery if "the discovery sought . . . is obtainable from some other source that is more convenient, less burdensome or less expensive." *Motion* at 4-5. In addition, EHI argues that under the "apex" doctrine, the deposition of senior or high-level executives may only be taken only if "the deposition is necessary method of obtaining that person's 'unique personal knowledge' of relevant facts." *See Cmy. Fed. Sav. & Loan Ass'n. v. Fed. Home Bank Bd.*, 96 F.R.D. 619, 621-22 (D.D.C. 1983) (emphasis added) or the "official has 'unique or superior knowledge of discoverable information," *Elvig v. Nintendo of Am., Inc.* No. 08-CV-02616, 2009 WL 2399930 (D. Colo. July 3, 2009) (emphasis added). *See also Baine v. General Motors Corp.* 141 F.D.R. 332 (M.D. Ala. 1991). In addition, Plaintiff must first demonstrate that the information

4

sought cannot be obtained through lower level employees or other less intrusive means. *Rodriquez v. SLM Corp.,* No. 3:07CV 1866, 2010 WL 1286989 (D. Conn. March 26, 2010). Finally, EHI argues the deposition should not be allowed "without a showing, after a good faith effort to obtain the discovery through less intrusive means, that there is reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence and that the less intrusive methods of discovery are unsatisfactory, insufficient or inadequate." *Id.* at 176 (quoting *Crown Cent. Petroleum Corp. v. Garcia,* 904 S.W.2d 125, 128 (Tex. 1995). *Motion* at 5-7. The problem with EHI's argument is that as it admits, "New Mexico Courts have not yet addressed the issue." *Motion* at 5. Plaintiff argues that the "apex" doctrine is contrary to New Mexico law which provides that "discovery is permitted as to matters that are or may become relevant or might conceivably have a bearing on the subject matter of the action, or where there is any possibility or some possibility that the matters inquired into will contain relevant information." *United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 173 629 P.2d 231, 249 (S. Ct. 1980). Plaintiff also cites a case that has rejected the application of the "apex" doctrine noting it arguably conflicts with the rules of discovery. *Citigroup, Inc. v. Holtsberg,* 915 So.2d 1265, 2005 Fla. App. LEXIS 19973.

In support of allowing the deposition of Brockette, Plaintiff lists the various positions that Brockette has held with RHSNM or EHI during the relevant time period including President, Secretary and board member of RHSNM and CEO of EHI and say it should be allowed to question him about what he knew or didn't know and what he did or didn't do in view of their claim of corporate negligence. *Response* at 4-9. Plaintiff states that Brockette was President of RHSNM from 2006 to February 2012 and points out that Miranda's case (2006), the Rivera case (2010) and this case (2012) occurred during that time frame. "He also held titles as an administrator and as director for the very corporation being sued (RHSNM), and he held titles and roles as the head of

5

the company and board director and hiring administrator and head evaluator for the company that was supposed to be overseeing RHSNM, and overseeing the doctors at RHSNM, and overseeing the compliance officer in charge of keeping RHSNM in line. And he didn't do this job." *Response* at 11-12. Plaintiff goes on to argue "[H]is lack of knowledge is evidence -- evidence of culpable mental state -- and Plaintiff has the right to discover just how ignorant he kept himself. Two very famous cases in New Mexico jurisprudence on punitive damages, *Grassie* and *Clay*, hold that the 'culpable mental state of a corporation . . . may be inferred from the very fact that one employee could be ignorant of the acts of omissions off other employees with potentially disastrous consequence.' *Grassie v. Roswell Hosp. Corp.*, 2011-MCA-024, ¶¶99, 150 N.M. 283, 258 P.3d 1075; *Clay v. Ferrellgas, Inc.*,1994-NMSC-080, ¶20, 118 N.M. 266, 881 P.2d 11, 17 n.4 (N.M. 1994)." *Response* at 12-13. Finally, Plaintiff argues "[T]he fact that Darby Brockette now claims that he has, since 2014 or so, withdrawn from active and direct management of RHSNM, does not mean that his knowledge -- or better yet, lack of knowledge of what went on when he had a duty to know -- is not relevant. He held vital and pivotal roles at RHSNM. He also managed EHI, the company who was the licensee for all care at the Rehab Hospital from 2005 until well into 2012. His company and he directly oversaw doctors, compliance officers, administrators, those in governing body roles. He was a critical cog in the management wheel for RHSNM, and for EHI's governance of RHSNM -- or at least he should have been -- but he wants to portray himself as 'above it all.'" *Response* at 13.

The Special Master agrees with Plaintiff that neither the New Mexico Rules of Civil Procedure nor the case law require a party requesting discovery to first establish that the information being sought is not available from some other person or source. In New Mexico "discovery is permitted as to matters that are or may become relevant or might conceivably have

6

a bearing on the subject matter of the action, or where there is any possibility or some possibility that the matters inquired into will contain relevant information." *United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 173 629 P.2d 231, 249 (S. Ct. 1980). As noted above, there is no controlling authority in New Mexico and even if the "apex" doctrine were to apply, the cases cited by EHI allows for discovery if the deponent has "unique personal knowledge" or "unique or superior knowledge" of the relevant facts or discoverable information. Under the circumstances, the Special Master will evaluate the Motion under Rule 26(B)(1) and (2). In doing so, the Special Master is of the opinion that the Plaintiff has demonstrated a good faith basis for wanting to take the deposition of Brockette. EHI has made no showing that the deposition of Brockette would unnecessarily disrupt his work or that his testimony would be redundant. The Plaintiff has taken the depositions of other less senior employees and engaged in extensive written discovery. What the Plaintiff is seeking now is Brockettee's "unique personal knowledge" and/or his "unique and superior knowledge" and there is no other less intrusive means to obtain that information. In fact, there is no other source for the information being sought from Brockette since it involves <u>his</u> personal knowledge of what he knew or what he did not know and what he did or did not do. Therefore, the Special Master will deny the Motion as it relates to Brockette.

The question then becomes should any guidelines or limitation be placed on what Plaintiff can question Brockette about. It appears from the sampling of questions that were asked of EHI's current Chief Operating Officer, Tony Gonzales, that counsel form Plaintiff has either read the book, "Reptile: The 2009 Manual of the Plaintiff's Revolution" by David Ball and Don Keenan, or gone to "reptile school."[1] It will ultimately be up to the Court to decide whether to let the

---

[1] "Reptile strategy has taken the plaintiffs' bar by storm. The Reptile theory asserts that you can prevail at trial by speaking to, and scaring, the primitive part of jurors' brains, the part of the brain they share with reptiles. The Reptile strategy purports to provide a blueprint to succeeding at trail by applying advanced

7

"reptile" into the courtroom at trial. However, the deposition of Brockette will be taken in accordance with the New Mexico Rules of Civil Procedure.

In its Reply, EHI also seeks to limit the ability of counsel for Plaintiff's to ask Brockette to express opinions regarding EHI's alleged negligence. Rule 11-701 of the New Mexico Rules of Evidence limits the admission of lay opinion testimony as follows:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is

   A. rationally based on the witness's perception.
   B. helpful to clearly understanding the witness's testimony or to determining a fact in issue, and
   C. <u>not based on scientific, technical, or other specialized knowledge with the scope of Rule 11-70 NMRA.</u>

*Rule 11-701 NMRA.* (emphasis added). "Under Rule 11-701 and New Mexico case law, the 'foundation required' for admitting lay opinion testimony is 'a showing of first-hand knowledge on the part of the witness, and rational connection between the observations made and the opinion formed.'" *Reply* at 7. The Special Master agrees with EHI that "[o]pinions regarding the proper management and operation of hospitals and hospital systems obviously require specialized

---

neuroscientific techniques to pretrial discovery and trail. The fundamental concept is that the reptile brain is conditioned to favor safety and survival. Therefore, if plaintiffs' counsel can reach the reptilian portion of the jurors' brains, they can influence their decisions; the jurors will instinctively choose to protect their families and community from danger through their verdict. Thus, the focus of the plaintiff's case is on the conduct of the defendant not the injuries of the plaintiff. The jurors are not interested in plaintiff's injury, even when severe, according to the theory. Rather, the only truly effective way to engage jurors is to demonstrate how the defendant's conduct endangers the jurors and their families." *Plaintiffs' bar embraces reptile strategy and defense bar responds.* Epstein Becker Green, Lexology.

knowledge and are the domain of expert witnesses." *Reply* at 7. As far as the Special Master knows, Brockette has not been identified as an expert witness. Therefore, any opinion testimony from Brockette will be limited to lay opinion testimony pursuant to Rule 11-701 NMRA.

Rule1-26-B(2)(a) allows the Court (or here the Special Master) to limit discovery that is "unreasonably cumulative or duplicative" and Rule-1-26-C allows the Court (or here the Special Master) "to protect a party or person from annoyance, embarrassment, oppression" . . . including . . . (5) barring or limiting inquiry into certain matters." Finally, Rule 1-30-D(3) provides "At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or is such manner as unreasonably to annoy, embarrass or oppress the deponent or party, the court in which the action is pending or the court in the county where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Paragraph C of Rule 1-026 NMRA." Therefore, the deposition of Brockette will be taken under the following conditions and with the following limitations:

1. The scheduling of the deposition of Brockette will be coordinated with the Special Master so that the Special Master can attend by telephone should issues about the scope of the questioning come up during the deposition (there will be no charge by the Special Master);
2. The deposition will be limited to three hours;
3. The questions to Brockette can only cover the time period January 1, 2006 to July 16, 2012;
4. Brockette cannot be questioned about the Defendants' discovery responses in this litigation unless he was responsible for or in some way involved in providing the

9

information contained in the discovery response; and

5. Any opinion testimony of Brockette will be limited to lay witness opinions pursuant to Rule 11-201 NMRA.

The request for the deposition of Longson and the CPA seem to center around financial issues. For example, Plaintiff says in his Response that Longson "will know how much" EHI makes "overseeing" RHSNM and how much "EHI charges each of its hospitals for the 'evaluation' and 'compliance' services that EHI gives to each hospital." *Response* at 9. Plaintiff also argue that Longson "will be able to answer questions that help Plaintiff understand the financial records" of EHI. *Response* at 10. Plaintiff's only comment regarding the CPA is that he "likely" will be able to answer questions about the financial records. The Special Master agrees with EHI that questions about EHI's oversight, evaluation and compliance charges can be addressed in a few directed interrogatories. The Special Master also agrees with EHI that the Plaintiff has not shown a need to take the deposition of Longson or the CPA. The Special Master has already ruled that EHI and RHSNM must produce their state and federal tax returns for the years 2014, 2015 and 2016 and their "unaudited financial statements" that were provided to Ernest Holding, Inc. for 2014, 2015 and 2016. *See Stipulated Order on Special Master's Second Report and Recommendation on Defendants' Net Worth and Punitive Damages Discovery* filed October 3, 2017 and *Addendum to Special Master's Second Report and Recommendation* filed January 2, 2018. The production of documents pursuant to these prior rulings should be sufficient to show the Defendants' net worth in the event the Court allows the issue of punitive damages to go to the jury. Therefore, the Special Master will grant the Motion as it relates to Longson and the CPA.

10

## Recommendation

The Special Master recommends that the Motion be granted in part and that Plaintiff not be allowed to take the deposition of Longson and the CPA. The Special Master recommends that the Motion be denied as it relates to Brockette and that Plaintiff be allowed to take the deposition of Brockette under the following conditions and with the following limitations:

1. The scheduling of the deposition of Brockette will be coordinated with the Special Master so that the Special Master can attend by telephone should be issues about the scope of the questioning come up during the deposition (there will be no charge by the Special Master);

2. The deposition will be limited to three hours;

3. The questions to Brockette can only cover the time period January 1, 2006 to July 16, 2012;

4. Brockette cannot be questioned about the Defendants' discovery responses in this litigation unless he was responsible for or in some way involved in providing the information contained in the discovery response; and

5. Any opinion testimony of Brockette will be limited to lay witness opinions pursuant to Rule 11-701 NMRA.

_____
Alan C. Torgerson
Special Master



## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2018 I electronically submitted the foregoing to the Honorable Manuel I. Arrieta and Counsel listed below. Also, the original was submitted to the Honorable Manuel I. Arrieta by regular mail.

Jerome O'Connell, Esq.
1020 S. Main St.
Las Cruces, NM 88005
(575) 524-7809
Jerome@lilleyandoconnell.com

Joel T. Newton, P.A.
Joel Newton, Esqu.
1020 S. Main St.
Las Cruces, NM 88005
(575) 8202
jnewton@zianet.com
*Co-Counsel for Plaintiff*

Rick Beitler, Esq.
Glenn Beard, Esq.
PO Box 1888
Albuquerque, NM 87103
(505) 765-5900
RBietler@rodey.com
GBeard@rodey.com

Alan C. Torgerson
Special Master

12