# *Voter Reference Foundation and Holly Steinberg v. Hector Balderas and Maggie Toulouse Oliver*, 1:22-cv-00222-JB-KK

Preliminary Injunction—Plaintiffs' Argument

June 15, 2022



# Timeline

- **March 29, 2021 (Ex A)**: **Local Labs:** "the requestor will not use or make available to others to use the requested material for purposes other than governmental, election, research and campaign purposes under penalty of law."

- **December 16, 2021**: the New Mexico data goes live. What do users see? Election-related use; Local Labs. **Swoboda Tr. 66:23-68:12**.

- **December 14 (P2)**: VRF contacts SOS regarding a discrepancy between the number of people on the rolls shown as having voted, and the number who are reported to have voted. The SOS never answers.

- **December 16 (P1)**: VRF issues a press release noting the discrepancy and cautioning that while it doesn't mean fraud, it does indicate "issues" with recordkeeping.

- **December 16 (P7-8)**: ProPublica brings the release to the SOS's attention and asks for comment. SOS immediately accuses VRF of disinformation (only to ProPublica) and tells ProPublica VRF had never asked to confer.

# Timeline

- **December 21 (P7, p.2)**: Alex Curtas sends ProPublica the criminal referral, and says:

    The issue relates to the transfer and publication of the voter data. This is the crux: "We do not believe providing this personal voter data on a private website **that intends to spread misinformation** about the 2020 General Election **meets the definition of appropriate use** as either for a "**governmental purpose**," "**election related**," or "**election campaign purposes**."

- **December 21 (Joint Ex. C-1)**: Sharon Pino writes the criminal referral:
    - "Swift action is needed as voter data can quickly be manipulated and **used to spread election misinformation**."
    - ProPublica receives the referral the day it was made; VRF **just** received it.

- **January 26, 2022 (Ex. P11):** AG refers VRF to the FBI.

- **March 11 (Ex. P4):** "Hi [Ms. Vigil and Pino]: Per Dylan's contact with the AG, **we are not fulfilling records requests from VoteRef**… The request is clearly trying to create an aggregate picture of the voter rolls on election day 2020…"

# Timeline: February 10/14, 2022

The Secretary of State's office makes a major change, bringing the forms out of compliance with the law, but now claims **all versions** of the forms have always followed state law. **Vigil Tr. 141:16-142:4.**

# Lippert/Local Labs Form (Ex. A)          # Current/Feb. 14 Form (Ex. J)




**Left form (Ex. A):**

## Voter Data Request Form
Please select one of the following:

_X_ Electronic File     ___ Printed List     ___ Mailing Labels

## VOTER INFORMATION AUTHORIZATION
**NOTE:** Minimum charge for any request is $25.00

### Please indicate the purpose of this request:
☐ Governmental Use     ☐ Campaign Use     ☒ Election Related

### Please indicate the type of file that you are requesting:
☒ Statewide     ☐ District _____
☐ County(s) _____
☐ Other: _____

### Please indicate all information that you are requesting:
**NOTE:** All files come with registrant name, address (both physical and mailing), year of birth, party affiliation, precinct assignment, jurisdiction and registrant ID number. Any additional fields must be indicated below.

☒ Districts
(all districts associated with a voter)
☒ Voting History
(elections a voter has participated in)
☒ Method Voted
(i.e. absentee, early or Election Day)
☐ Other*: _____

*If you request information that is not available in the voter system you will be notified before request is fulfilled.

### Information of Requestor
Name: David Michael Lippert     Organization: Local Labs
Address: 1611 Melrose Ave., St. Louis Park, MN 55426     Phone: ( 952 ) 905 - 8078
Email Address: mike.lippert@locallabs.com     Date: 03 / 29 / 2021

### Authorization
Unlawful use of the information requested on this form shall consist of willful selling, loaning, providing access to or otherwise surrendering, duplicating or alteration of information as stated in the Voter Records System Act (§1-5-1 through 1-5-31 NMSA 1978).

I hereby swear that the requestor will not use or make available to others to use the requested material for purposes other than governmental, election, research and campaign purposes under penalty of law.

_DMLippert_
**Signature of Requestor**

### For Office Use Only
Total Cost: $_____     Date Received: _____/_____/_____     Date Completed: _____/_____/_____
Comments: _____     Receipt Number: _____

---

**Right form (Ex. J):**

## Voter Data Request Form
Please select one of the following:

___ Electronic File     ___ Printed List     ___ Mailing Labels

## VOTER INFORMATION AUTHORIZATION
**NOTE:** Minimum charge for any request is $15.00

### Please indicate the purpose of this request
Please provide a description of your intended use of voter data:     ☐ Campaign Use     ☐ Governmental Use
_____
_____
_____

### Please select the jurisdiction that you are requesting:
☐ Statewide     ☐ District _____
☐ County(s) _____
☐ Other: _____

### Please indicate all information that you are requesting:
**NOTE:** All files come with registrant name, address (both physical and mailing), year of birth, party affiliation, precinct assignment jurisdiction and registrant ID number. Any additional fields must be indicated below.

☐ Districts
(all districts associated with a voter)
☐ Voting History
(elections a voter has participated in)
☐ Method Voted
(i.e. absentee, early or Election Day)

### Information of Requestor
Name: _____     Organization: _____
Address: _____     Phone: ( ) - _____
Email Address: _____     Date: _____/_____/_____

### Authorization
Unlawful use of the information requested on this form shall consist of willful selling, loaning, providing access to or otherwise surrendering, duplicating or alteration of information as stated in the Voter Records System Act (§1-5-1 through 1-5-31 NMSA 1978). I hereby swear that the requestor will not: (INITIAL EACH)

_____ sell, loan, provide access to, or otherwise surrender voter information received as a result of this request.
_____ alter voter information received as a result of this request.
_____ use voter information for any purpose other than those authorized on this form.
_____ use voter information for any commercial purposes.

**Signature of Requestor**
_____

### For Office Use Only
Total Cost: $_____     Date Received: _____/_____/_____     Date Completed: _____/_____/_____
Comments: _____     Receipt Number: _____

Revised: 02/14/2022

# Lippert/Local Labs Form (Ex. A)

# Current/Feb. 14 Form (Ex. J)

**EXHIBIT A**

### Voter Data Request Form

Please select one of the following:

_X_ Electronic File   ___ Printed List   ___ Mailing Labels

**EXHIBIT J**

### Voter Data Request Form

Please select one of the following:

___ Electronic File   ___ Printed List   ___ Mailing Labels

## VOTER INFORMATION AUTHORIZATION
**NOTE:** Minimum charge for any request is $25.00

### Please indicate the purpose of this request:

☐ Governmental Use            ☐ Campaign Use            ☒ Election Related

## VOTER INFORMATION AUTHORIZATION
**NOTE:** Minimum charge for any request is $15.00

### Please indicate the purpose of this request
Please provide a description of your intended use of voter data:

☐ Campaign Use
☐ Governmental Use

_____
_____
_____
_____

### Information of Requestor

Name: David Michael Lippert      Organization: Local Labs
Address: 1611 Melrose Ave., St. Louis Park, MN 55426      Phone: ( 952 ) 905 - 8078
Email Address: mike.lippert@locallabs.com      Date: 03 / 29 / 2021

### Information of Requestor

Name: _____ Organization: _____
Address: _____ Phone: (___) ___ - ___
Email Address: _____ Date: ___/___/___

### Authorization

Unlawful use of the information requested on this form shall consist of willful selling, loaning, providing access to or otherwise surrendering, duplicating or alteration of information as stated in the Voter Records System Act (§1-5-1 through 1-5-31 NMSA 1978).

I hereby swear that the requestor will not use or make available to others to use the requested material for purposes other than governmental, election, research and campaign purposes under penalty of law.

_DMLippert_ (signature)

Signature of Requestor

### Authorization

Unlawful use of the information requested on this form shall consist of willful selling, loaning, providing access to or otherwise surrendering, duplicating or alteration of information as stated in the Voter Records System Act (§1-5-1 through 1-5-31 NMSA 1978). I hereby swear that the requestor will not: (INITIAL EACH)

___ sell, loan, provide access to, or otherwise surrender voter information received as a result of this request.
___ alter voter information received as a result of this request.
___ use voter information for any purpose other than those authorized on this form.
___ use voter information for any commercial purposes.

Signature of Requestor

_____

# Timeline: Press Campaign

- **P9: on March 4, Curtas tells the Alamogordo Daily News:** "If any [organization] requested and received voter data…or made available to a third party for an unlawful purpose, we intend to make a criminal referral…**as we have against other nefarious actors.**"

- **Ex. D: On March 7**, ProPublica's article ran with several quotes from the Secretary.

  > In New Mexico, Secretary of State Maggie Toulouse Oliver also said the undertaking is not an allowable use of voter data. By state law, she said, the rolls can only be used for governmental or campaign purposes.

  > "Having voter registration data 'blasted out across the internet' violates state law limiting use of the voter rolls solely for campaign or  government activities," she said.

- **Ex. E: On March 8**, the Secretary calls the article an "Important, in-depth piece… re: coordinated cross-country attempt to impugn the integrity of our voter rolls."

- **Ex. F: On Feb. 9**, the Secretary claims: "One of the main points of misinformation…claims that voter rolls are not regularly cleaned and thus the integrity of our elections is questioned. This is a pernicious bit of misinformation that leads people to question the outcomes of our elections…"

# Timeline: SOS "use" standards

- **March 2 (Ex. G):** "This data can only be obtained by certain groups, like academic organizations and political parties. The New Mexico Audit Force is not one of these specified groups…"

- **March 3 (Ex. E):** "Voter data is protected from malicious actors & voter data can ONLY be obtained for election campaign or government/academic purposes by signing an affidavit & paying a fee."

# Legal Issues: Merits

- Five Theories Apply
  - First Amendment Overbreadth: If all sharing of data is banned, this restriction prohibits far more speech than justifiable by any legitimate scope.
  - First Amendment Violation: Content or Viewpoint-Based Ban on Speech
  - First and Fifth Amendment Vagueness
  - Prior Restraint: *de facto* licensing regime
  - First Amendment Retaliation: we've just learned that the SOS is retaliating by not fulfilling any requests (not presented now)

# Merits: Overbreadth

1. Sharing data is speech; Defendants concede this is a direct regulation of speech.

2. Reach of a total ban is substantial judged in relation to legitimate sweep. *Broadrick v. Oklahoma*, 413 U.S. 615 (1973).

3. Assume that a statute could limit commercial purposes. Both state defendants, through Ms. Vigil and Ms. Serafimova, will take adverse action based on the theory that it prohibits **all** sharing.

# Vigil: all sharing prohibited, period.



# AG: criminal liability is for sharing

# Banning all sharing is vastly overbroad

1. Voters cannot band together to share the data with each other; each must pay for the data and refrain from sharing with any other person to check their work or compare notes.
2. Also bans:
    1. parties sharing with candidate campaigns of the party's candidates;
    2. a party sharing with an allied group that is technically a separate organization from the party (Otero example);
    3. a party sharing with non-contractor, non-employee volunteers;
    4. one candidate campaign sharing with an allied campaign;
    5. political firms sharing with clients (Catalist, P5, Swoboda Tr. 69:19-70:14);
3. Every recipient is a spoke and the SOS is the hub; no meaningful discussion of the data, which requires disclosing the data itself, can occur between the spokes. The SOS controls the data and the conversation through (a) non-sharing or (b) criminal referrals and threats; the AG fully backs the SOS's theory by intensive criminal investigation of referrals and cooperation with sympathetic AGs.

# Banning all sharing is unnecessary

- Nothing is stopping the state from enacting a statute to allow prosecution of any use that can be constitutionally prohibited. A system requiring affidavits and prosecution of false statements is unwieldy and indirect.

- Requirement that providers of data give notice of New Mexico's restrictions (which VRF does).

- Sharers of data could be required to collect identifying information on users and provide in the event of an investigation. This is less burdensome than the state's new, non-statutory requirement that every user (not just requester) of data sign an affidavit.

- Does SOS really use the affidavits? Vigil: Doesn't request any additional info. Doesn't investigate. Waits for complaints. Doesn't follow up on all the information it receives.

# Content or Viewpoint-Based Ban

Claim that Defendants are merely enforcing plain language of statute, which criminalizes all sharing, is a recent fabrication.

- Statutory analysis is wrong.
- If correct, then a large swath of current uses are criminal but unpunished and uninvestigated, while the AG refers VRF to the FBI.
- Contradicted by forms, including Local Labs' form.
- Forms changed recently, after referral and just before story.

# Content or Viewpoint-Based Ban

- SOS admits this is a direct restriction on speech.

- Applies to particular speech because of content or viewpoint expressed, including "purpose" based restrictions. *Reed v Town of Gilbert*, *Ward v. Rock Against Racism*.

- SOS clearly referred VRF because it believed "misinformation" was not "government-related," "election-campaign-related," or an "election use." Curtas statements; Pino referral. The AG seizes upon the case with vigor.

- Fails strict scrutiny: no compelling interest, not narrowly tailored to meet that interest.

# Statutory Interpretation Flawed

A. Unlawful use of voter data, mailing labels or special voter lists consists of the knowing and willful use of such information for purposes prohibited by the Voter Records System Act [Chapter 1, Article 5 NMSA 1978].

B. Any person, organization or corporation or agent, officer, representative or employee thereof who commits unlawful use of voter data, mailing labels or special voter lists is guilty of a fourth degree felony and upon conviction shall be fined one hundred dollars ($100) for each and every line of voter information that was unlawfully used.

C. Each and every unlawful use of voter data, mailing labels or special voter lists constitutes a separate offense.

NMSA 1-4-5.6

Each requester of voter data, mailing labels or special voter lists shall sign an affidavit that the voter data, mailing labels and special voter lists shall be used for governmental or election and election campaign purposes only and shall not be made available or used for unlawful purposes. NMSA 1-4-5.5C.

A. Unlawful disposition of voter file consists of the willful selling, loaning, providing access to or otherwise surrendering of the voter file, duplicates of the file or a part of the file by a data processor; a data processor's agent or employee; a state or county officer; or a state or county officer's deputy, assistant, employee or agent to anyone not authorized by the Voter Records System Act to have possession of the file.          NMSA          1-5-22A.

# 2011 Amendment to Article 5, the Voter Records System Act

• Until 2011, the current statutes at § 1-4-5.5 and § 1-4-5.6 were part of Article 5, the Voter Records System Act codified at § 1-5-24 and § 1-5-25

• Recompiled pursuant to S.B. 403; fiscal impact report stated: "Belongs in Article 4: Registration of Electors, not Article 5: Automated Voter Records System."

• "Purposes" in § 1-4-5.6 refer to the same "purposes" outlined in § 1-4-5.5: governmental or election and election campaign purposes

# Did Defendants dodge Section 1983 by misapplying their own statute?

- Elements of 42 U.S.C. 1983:
  - **under color of any statute**, ordinance, **regulation, custom, or usage**, of any State or Territory...
  - Subjects… any citizen of the United States or other person…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.
  - shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…
- **What matters here is the regulation, custom, or usage that the state Defendants now claim to be applying, even if it is errant and cannot be found in a legislative pronouncement.** *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 171 (1970): "This interpretation of custom recognizes that settled practices of state officials may, by imposing sanctions or withholding benefits, transform private predilections into compulsory rules of behavior no less than legislative pronouncements…. For state action purposes it makes no difference of course whether the racially discriminatory act by the private party is compelled by a statutory provision or by a custom having the force of law—in either case it is the State that has commanded the result by its law."

# *Dombrowski v. Pfister*, 380 U.S. 479 (1965)

Louisiana statute requires members of organizations seeking to overthrow the government to register.

Plaintiffs, with civil rights group SCEF, were threatened with prosecution for failing to register, on the theory that they were really Communist Party front groups.

They brought overbreadth and vagueness challenges, and alleged officials misapplied the statute in order to chill their speech.

"The District Court also erred in holding that it should abstain pending authoritative interpretation of the statutes in the state courts, which might hold that they did not apply to SCEF, or that they were unconstitutional as applied to SCEF." *Id.* at 489.

Where Plaintiffs alleged the state relied on the statutes as a pretext to harass them with threats of enforcement, "the interpretation ultimately put on the statutes by the state courts is irrelevant" because it "would not alter the impropriety of appellees' invoking the statute in bad faith to impose continuing harassment in order to discourage appellants' activities…" *Id.* at 490.



# Defendants Cannot Meet Strict Scrutiny: the 4 state interests fail

*1. Ensuring individuals sign the affidavit and know the permissible uses.*

> Unclear that the problem is serious; a total ban isn't narrowly tailored

*2. Collection of fees.*

> Not compelling; a ban is not narrow.

*3. Helps voters to know disclosure is only on a "need to know" basis*

> No evidence; assumes the conclusion; ban won't solve; SOS itself misstates rules in public statements.

*4. Combats misinformation because data gets stale.*

> Same problems as 3; doesn't apply to VRF.

# Merits: Retaliation

1. Constitutionally protected conduct.

2. Retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and

3. A causal link between the constitutionally protected conduct and the retaliatory action.

*Nieves v. Bartlett*, 139 S.Ct. 1715 (2019).


Here, the SOS has retaliated by (a) criminal referral and (b) refusing to fulfill lawful requests for data to explain the discrepancy in SOS data. The AG presses the investigation and has tried to refer to the FBI and work with other states. This reasonably caused VRF to take down its data. Retaliation continues.

# Preliminary Injunction: Remaining Factors

1. Irreparable harm to Plaintiffs: *Elrod v. Burns*

2. Lack of harm to others

3. Public interest

   The statute, 1-4-5.5, properly interpreted, weighs the competing interests of the public. Injunctive relief would simply restore the status quo in which data could be shared by the requestor for election-related purposes.

# The Injunction that Should Issue

- Defendants, and all those in active concert or participation with them who receive actual notice of the injunction, are prohibited until further notice from:
  - taking any steps to investigate, threaten, cite, charge, prosecute, or punish VRF, Steinberg, or their agents, employees, officers, or those in privity with them, under N.M. Stat. 1-4-5.5, 1-4-5.6, or 1-5-22, for
    - the use or sharing of New Mexico voter data;
    - so long as the purpose of the use or sharing is to engage in or foster communications or analysis regarding officials' conduct of New Mexico elections or regarding New Mexico's maintenance of its voter lists and election systems.