```
 1              IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF NEW MEXICO

 3

 4    VOTER REFERENCE FOUNDATION, et al.,

 5         Plaintiff,

 6         VS.                        NO. CV-22-00222 JB/KK

 7    Hector Balderas, Attorney General
      for the State of New Mexico, et al.,
 8
           Defendants.
 9

10                      VOLUME 2

11                    ZOOM HEARING

12

13         Transcript of Motion for Preliminary Injunction
      Proceedings before The Honorable James O. Browning,
      United States District Judge, Albuquerque, Bernalillo
14    County, New Mexico, commencing on June 15, 2022.

15

      For the Plaintiff:  Mr. Eddie Greim; Mr. Matt Miller;
16    Mr. Carter Harrison

17    For the Defendant:  Ms. Olga Serafimova; Mr. Dylan
      Lange
18

19

20

21

22         Jennifer Bean, FAPR, RDR, RMR, CCR
                United States Court Reporter
23              Certified Realtime Reporter
                   333 Lomas, Northwest
24              Albuquerque, NM  87102
                Phone:  (505) 348-2283
25                 Fax:  (505) 843-9492
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Good morning everyone.  I
 2   appreciate everybody making themselves available to
 3   me this morning.
 4              The Court will call Voter Reference
 5   Foundation, LLC, et al., versus Hector Balderas,
 6   et al., Case Number 22-CV-0222 JB/KK.
 7              If counsel will enter their appearances for
 8   the plaintiffs.
 9              MR. GREIM:  Your Honor, Eddie Greim and
10   Matt Miller, Graves Garrett, Kansas City, Missouri,
11   for the plaintiffs.
12              THE COURT:  Mr. Greim, good morning to you.
13   Mr. Miller, good morning to you.  And I think I also
14   see Mr. Harrison there.  So Mr. Harrison, good
15   morning to you.
16              All right.  And for the defendants.
17              MS. SERAFIMOVA:  Good morning, Your Honor,
18   Olga Serafimova for the defendants.
19              THE COURT:  All right.  Ms. Serafimova,
20   good morning to you.
21              All right.  Anyone else needs or wants to
22   enter an appearance?
23              All right.  I think that Mr. Greim --
24              MR. GREIM:  Your Honor, before we go, there
25   is a guest with us today, I just wanted to announce.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    They won't be appearing.  But we have two summer
 2    associates, Claire Hausman and Rachel Owings, who are
 3    at the University of Missouri.  So if everyone sees a
 4    "Chausman," that is one of them.  So she will be with
 5    us today, not appearing though.
 6              THE COURT:  All right.  Ms. Hausman, good
 7    morning to you.  And who was the other one, Mr.
 8    Greim?
 9              MR. GREIM:  Rachel Owings.
10              THE COURT:  All right.  Ms. Owings, good
11    morning to you.
12              All right.  Mr. Greim, I think you were
13    going to present more witnesses or evidence, so I'll
14    let you start the proceedings this morning.
15              MR. GREIM:  Thank you, Your Honor.
16              We're going to start with Ms. Vigil, who is
17    still with us today.  After I finish with her,
18    Ms. Pino will go, and I think Ms. Serafimova will put
19    her on, and I will sort of do my cross and my own
20    direct of her as a witness together.  And I think
21    that will save us some time.
22              THE COURT:  All right.  Ms. Vigil, I'll
23    remind you that you're still under oath.
24              Mr. Greim, if you wish to continue your
25    direct examination of Ms. Vigil, you may do so at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    this time.
 2                     MANDY VIGIL,
 3         after having been previously sworn under oath,
 4         was questioned and testified further as follows:
 5              DIRECT EXAMINATION (Continued)
 6    BY MR. GREIM:
 7         Q.   Ms. Vigil, you recall, when we spoke about
 8    a month ago, we talked about forms quite a bit?  Do
 9    you remember that?
10         A.   I do.
11         Q.   All right.  And it's true, isn't it, Ms.
12    Vigil, that when you receive a form from a requester
13    for voter data, you don't go and investigate the
14    underlying information; correct?
15         A.   Correct.
16         Q.   And you'll even accept older versions of
17    your forms; correct?
18         A.   Correct.
19         Q.   And that would include even Exhibit A,
20    which was the form submitted by Mr. Lippert on behalf
21    of Local Labs in this case; right?
22         A.   Correct.
23         Q.   And one purpose of the affidavit in the
24    form is for users to understand the legal
25    requirements for the use and sharing of data; isn't
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                               e-mail: info@litsupport.com

1    that right?

2         A.   Right.  The affidavit is a required form in

3    the statute.  But yes, the contents are created with

4    the intent to provide guidance.

5         Q.   Okay.  I want to switch gears a little bit

6    and talk about something we skipped over last month.

7    And that is the Secretary of State's statements, and

8    also statements that appear on the Secretary's

9    website about voter data.  Okay?

10        A.   Okay.

11        Q.   So first, I'm going to ask you to take a

12   look at Plaintiffs' Exhibit 3.  And Mr. Miller,

13   whenever we refer to an exhibit, rather than sharing

14   a screen, he's going to drop that into the chat.

15             MR. GREIM:  You know, before we go further,

16   I see that one of the later witnesses has logged in,

17   and we had an agreement that we were going to observe

18   the rule here.  I see Ms. Pino is on right now.

19             MS. SERAFIMOVA:  Yes, I think she must have

20   just logged in.  And I'm sorry, Ms. Pino, if I failed

21   to clarify.  As a witness, you cannot be present

22   right now.  But I'll let you know when it's your

23   turn.

24             MS. PINO:  Yes.  I'm sorry, they usually

25   keep me in a waiting room until I'm called, and for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  whatever reason it let me straight in.  So I will log

2  out and just wait for somebody to notify me.

3           MS. SERAFIMOVA:  Thank you.

4           MR. GREIM:  Okay.  I understand the chat

5  option may not be enabled here.

6      Q.  So let's -- Ms. Vigil, do you have access

7  to Plaintiffs' Exhibit 3?

8      A.  I can pull that up in an email if you give

9  me just a moment.  Plaintiffs' Exhibit -- what

10 number?

11     Q.  Three.  Okay.  Are you there?

12     A.  I am.  It is opening right now.

13          MR. GREIM:  Is the Court able to see the

14 exhibits right now?

15          THE COURT:  I can find them in the book.  I

16 don't see them on the screen.

17          MR. GREIM:  I think I may be able to screen

18 share after all.  So I think I've just done it.  Can

19 everyone see Exhibit 3?

20          THE COURT:  The Court can.

21          MR. GREIM:  Okay, great.

22     Q.  So Ms. Vigil, are you able to see Exhibit 3

23 as well?

24     A.  I am.

25     Q.  Okay.  And so the only trick here is that I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think I have to be the one that scrolls through it.

2    So I'm just going to go through slowly.  I don't

3    think you're able to do that.  Tell me if you can.

4        A.   No.

5        Q.   Okay.  I'm just going to slowly go through.

6    I'm going to represent to you that before our last

7    hearing, we just took this shot of the Secretary of

8    State's website, and particularly went to the spot

9    that talks about voter data information.  Now, we

10   pulled this down and disclosed it to your counsel and

11   to all parties last month.  Have you seen this

12   exhibit before?

13       A.   I have.

14       Q.   Okay.  And so do you recognize this as a

15   true and accurate shot from the Secretary of State's

16   website?

17       A.   Yes.

18       Q.   I'm going to direct you to -- we'll go

19   right here.  I'm going to try to move my cursor over.

20   Do you see there is an area that says, "State of New

21   Mexico vote data information request," and then it

22   talks about making a request.  You'll see this middle

23   paragraph it talks about something called SERVIS?

24       A.   Um-hum.

25       Q.   It describes what can be purchased.  Do you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1   see it says, "SERVIS data may be purchased for
 2   government and campaign purposes only."  Did I read
 3   that right?
 4        A.   You did.
 5        Q.   And then, if you go down to the bottom of
 6   that paragraph, it says, "Anyone who purchases SERVIS
 7   data must sign an authorization form (PDF format)
 8   swearing the data will not be made available for, or
 9   used for commercial or unlawful purposes."  Did I
10   read that correctly?
11        A.   You did.
12        Q.   Now, are those true statements?
13        A.   They are.
14        Q.   I'm going to focus on the last sentence in
15   this paragraph.  "Anybody who purchases SERVIS data
16   must sign the authorization form."  And here's what
17   it says they swear to:  "That the data will not be
18   made available for, or used for commercial or
19   unlawful purposes."
20             Now, that sentence does not say that you
21   must sign an authorization form swearing the data
22   will not be made available, does it?
23        A.   I think it's encompassed in the unlawful
24   purpose.  But those specific words are not there.
25        Q.   So, in other words, the Secretary of State
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    reads this as, you know, the data not being made

2    available for an unlawful purpose means the data

3    can't be made available at all?  Is that your

4    testimony?

5        A.   No.  I think that this is a high-level

6    statement.  And I think, when you look at the form,

7    there are more details.  But I don't think this is

8    meant to restate every item in the statute.

9        Q.   Okay.  So is it your testimony that that

10   sentence is not fully accurate then?

11       A.   I think it is an accurate statement.  I do

12   think it does not go into the same detail that we do

13   on the authorization form.

14       Q.   Okay.  Let me ask you this:  Can the data

15   be made available for some lawful purposes?

16       A.   I think that the data can be made available

17   within an organization that appropriately requests

18   and receives the data.

19       Q.   Okay.

20       A.   So the data is provided to individuals or

21   organizations that appropriately request it.  So the

22   data is provided.

23       Q.   So the Secretary of State's position is

24   that the organization can make the data available to

25   itself?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      A.   Correct.   The requester -- anyone that is

2  requesting the data may receive and utilize the data.

3      Q.   Okay.   And on the form it asks the

4  requester to disclose an organization; correct?

5      A.   It does.

6      Q.   Okay.   And so the Secretary of State's

7  interpretation is that the data can be disseminated

8  within the organization but not outside of the

9  organization?

10     A.   Yeah, if there is a new requester, a new

11 individual, a new organization, then they need to

12 also request it for themselves.

13     Q.   Let me ask you about the first line.   It

14 says, "The data may be purchased for government and

15 campaign purposes only."   I don't see anything in

16 there about "election related."   Why is that word not

17 in the first sentence?

18     A.   I don't think there is a specific reason.

19 I think it's just an assumption that this section of

20 the website is relating to all elections.   That is

21 what we do in our office.

22     Q.   Okay.   But could someone request the data

23 for a government purpose that is not election

24 related?

25     A.   There is a specific definition of

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492

PROFESSIONAL COURT                           e-mail: info@litsupport.com
REPORTING SERVICE

1    governmental purpose.

2        Q.   Right.

3        A.   So it doesn't require it to be election

4    specific for the government.

5        Q.   Right.  So government related is not really

6    a subset of election related, it's an independent

7    category; correct?

8        A.   I think that it does provide for the

9    government to use it outside of an election purpose,

10   correct.

11       Q.   Okay.  So are there any -- and I asked you

12   this before; we had a hard time nailing down an

13   answer -- are there any election-related purposes

14   that are not government and not campaign purposes

15   that are permissible?

16       A.   No, I think that the two statutory

17   definitions really encompass any election-related

18   purpose.  So between the two, that should cover all

19   of the appropriate uses of the data.

20       Q.   Okay.  Well, your answer had two parts to

21   it.  So first you said that government and campaign

22   encompasses any election-related purposes, then you

23   said that government and campaign encompasses all the

24   permissible uses.  And so possibly those two

25   statements are in conflict, and I want to spend a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    little time with you on that.

2            What if there is an election-related use

3    that is to study the way the election was run, so

4    it's not to advance anyone's campaign.  Is that a

5    permissible use?

6        A.   So I think adding a specific hypothetical

7    question would certainly require some legal analysis

8    with our general counsel.  But, again, I feel like

9    election -- anything election related is encompassed

10   by either an election administrator, which would be

11   the government, and/or an election campaign, or

12   somebody that is engaging in the election in some

13   form.  So those two definitions really do cover any

14   sort of election-related purpose.

15       Q.   Okay.  All right, let's move ahead.

16            I'm now going to take you to Exhibit G,

17   which is one of our joint exhibits.  I will try to

18   pull that up now.  Can everyone see Exhibit G?

19            THE COURT:  The Court can.

20       A.   Yes.

21       Q.   Very good.  So I'm going to just slowly

22   scroll through.  I'm going to represent to you that

23   this has been admitted by the parties as a joint

24   exhibit.  And this is a news release issued by the

25   Secretary of State on March 2, 2022.  And the contact

SANTA FE OFFICE                                                  MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                              1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

```
 1    is Alex Curtas, who had been a witness, but we are

 2    not calling him anymore.

 3              So as I slowly scroll through, you'll see

 4    this is something about something called the New

 5    Mexico Audit Force, an entity that was involved in

 6    Otero County.  And I'm just going to ask you as I

 7    slowly scroll through, do you recognize this

 8    document?

 9        A.    I'm familiar with that advisory.

10        Q.    And did you have a roll in drafting it?

11        A.    Not the content, not the exact language,

12    but certainly I was part of conversations as to why

13    it was necessary.

14        Q.    Okay.  I'm going to take you to -- and by

15    the way, to your knowledge, is all the information in

16    this accurate?

17        A.    Yes.

18        Q.    Okay.  Let's look at this first bullet

19    point.  Again, this is from March 2, so about four

20    months ago.  The second sentence of the first bullet

21    point on page 3 says, "This data can only be obtained

22    by certain groups, like academic organizations and

23    political parties."  And then I think there is

24    supposed to be a period.  It says, "The New Mexico

25    Audit Force is not one of these specified groups, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    has not obtained New Mexico voter data from our

2    office."  Okay, did I read that correctly?

3        A.   You did read that correctly.

4        Q.   Now, I'm going to ask you about this idea

5    that it can only be obtained by certain groups.  Is

6    there any reference to particular groups in the

7    statute?

8        A.   No, I think we've covered the two

9    definitions that guide who can receive the data and

10   under what circumstance.

11       Q.   Is it true that only certain groups can

12   receive the data?

13       A.   I think that the more appropriate

14   description would be that there is a specific process

15   that needs to be followed to receive the data.

16       Q.   Okay.  So there is nothing special about

17   academic organizations that makes them able to

18   receive the data; correct?

19       A.   Nothing in the statute specifically.

20       Q.   Okay.  Now, it says, "The New Mexico Audit

21   Force is not one of these specified groups."  Now, is

22   that the reason why the New Mexico Audit Force was

23   referred for criminal prosecution that it was not one

24   of the specified groups?

25       A.   No, it was really the way that the data was

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                          (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492
                                                                                        1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  being utilized, and the fact that they had not

2  requested the data directly.  So we have no idea

3  where they received the data.  That was an issue.

4  And also the way that it was being utilized to

5  essentially intimidate voters.  That was the problem.

6       Q.   I see.  And so it was something about the

7  use that was inappropriate?

8       A.   And the fact that they did not request that

9  data from our office.

10      Q.   Okay.  I understand your position on that.

11  I'm going to focus on that first point.  So did you

12  receive information that they were intimidating

13  voters?

14      A.   We did.

15      Q.   Okay.  And how did you receive that

16  information?

17      A.   We received that information both through

18  the county clerk's office, who was receiving voter

19  calls.  We received direct voter calls.  And there

20  was also social media information that was being

21  circulated that we were aware of.

22      Q.   Give me an example of what kind of

23  intimidation, what counts as intimidation?

24      A.   So there is a specific statutory definition

25  of intimidation, that, if you'd like, we can look at

SANTA FE OFFICE                                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                                   Albuquerque, NM 87102
(505) 989-4949                                                                                                    (505) 843-9494
FAX (505) 843-9492                                                                                       FAX (505) 843-9492
                                                                                                                 1-800-669-9492
                                                                                                       e-mail: info@litsupport.com



1    that.  But in this case, the voters were being told

2    that they were, first of all, representing a

3    government entity, which was not accurate.  So that

4    was of concern that they were misrepresenting and

5    really identifying themselves as a trusted government

6    entity in that community, which was false.  So making

7    a false statement was of concern.

8              And then, at that point, inquiring as to if

9    this person voted, how they voted, who they voted

10   for, information that was not required of the voter,

11   and was being presented as if it was a requirement to

12   answer these individuals, because they were

13   representing a government entity.

14        Q.   Was the group hired by the county

15   government?

16        A.   There was a contract with the county

17   government between this entity.

18        Q.   Were the voters threatened in some way?

19        A.   I don't have a specific example, but I

20   certainly watched a video that was circulated on

21   social media.  And that individual felt very

22   uncomfortable, felt very concerned that their data

23   was publicly available, and they didn't understand

24   how or why it was made available, and they didn't

25   understand if they had to answer, or why this person

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   was in front of them.  So there was a lot of concern
 2   and confusion.  And in this case that voter did feel
 3   strongly that they were being intimidated.
 4       Q.   Okay.  And so let me ask you, then, would
 5   you agree that the Audit Force, that the category of
 6   work that they were doing was election related?
 7       A.   You know, it did pertain to gathering
 8   information about an election.
 9       Q.   Okay.  And would you agree that it related
10   to the government's operation of the election in
11   Otero County?
12       A.   No.  This case -- you know, we did look
13   into the contract in particular.  And the Commission
14   was not in contract with these individuals to do what
15   they were calling a canvass.  So that was something
16   that they did on a voluntary basis, and it was not
17   part of their contract with that entity.  So I do not
18   feel like they were doing the work of the government,
19   no.
20       Q.   Okay.  Well, I'm not asking if they did the
21   work of the government.  Were they investigating the
22   conduct of the election, though?
23       A.   In particular, by canvassing and
24   intimidating voters, I do not believe that would have
25   aligned with a government purpose, no.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Okay.  And the reason that you call this
 2   "intimidation" is that they stated that they were in
 3   a position of authority, and there was an allegation
 4   that they asked people who they voted for?
 5        A.   And they were physically appearing at
 6   someone's door, and nobody had any idea why they were
 7   there.  And they were in the video that I observed,
 8   you know, aggressive in that nature.
 9        Q.   Okay.  So you watched a video of an
10   interaction between someone?
11        A.   An Otero County voter and a representative
12   of the New Mexico Audit Force.
13        Q.   Okay.  So someone recorded one of these
14   interactions?
15        A.   Correct.
16        Q.   And so in the Secretary of State's view, is
17   that a reason under the statute to deny access to the
18   data?
19        A.   I don't think it would be about receiving
20   data.  Again, once you have the data, if you've
21   received it through the appropriate statutory
22   process, and then you go on to use it in a way that
23   is unlawful, those are two separate things.  So you
24   can receive data lawfully, and then, if you choose to
25   use it unlawfully, those are two separate paths.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    I understand.  I'm asking you about the
 2   first thing.  If this New Mexico Audit Force comes
 3   back and says, Okay, there has been a primary --
 4   which I understand there has been recently in New
 5   Mexico -- we want to now understand whether that was
 6   run properly; can we -- you know, we're going to
 7   directly request the voter list.  Would their past
 8   conduct be a reason to deny them access under the
 9   statute?
10        A.    I would definitely need to seek guidance
11   from my general counsel in particular.  I think if we
12   had certainty that they were going to use that data
13   to, again, intimidate voters, it would absolutely
14   have to be something we would consider.
15        Q.    Who decides whether there has been
16   intimidation by the way?  Whose call is that to make?
17        A.    I think it's probably -- you know, our
18   office does have some authority to gather facts.
19   Ultimately, we are not a law enforcement agency.  So
20   anytime we have a concern with the law potentially
21   being violated, we at that point would refer it to
22   the Attorney General, who does have the resources to
23   truly investigate, and then move forward if there is
24   a determination that there is a violation.
25        Q.    Let me change this to a hypothetical now.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Let's say that the New Mexico Audit Force brings in,

2    you know, new people, and they knock on doors.  They

3    obtain the list from you, and they knock on doors of

4    people who are listed as having voted, and they say:

5    Hello, I'm with the New Mexico Audit Force -- or

6    whatever their name is -- and I'm here to ask whether

7    you voted.  Voter records show that you did, and I'd

8    like to ask you whether you, in fact, voted.  Would

9    that be a lawful use of the data?

10         A.   I think, as long as it doesn't rise to the

11   level of intimidating the voter, there is not a

12   prohibition on using the data to interact with

13   voters.

14         Q.   What if they shared some of the data; for

15   example, by telling the voter that the record shows

16   that they voted, is that disclosure prohibited under

17   the statute?

18         A.   Disclosing that the voter participated?

19         Q.   Right.

20         A.   That disclosure is not prohibited.

21         Q.   Why not?

22         A.   There is not a strict prohibition.  That is

23   public information.  There is no way that anyone, you

24   know, knows how you voted, what selection you made.

25   But the fact that you participated in an election is

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                          (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  public information.

2      Q.   So someone sharing information about who

3  voted is not a violation of the law?

4      A.    There is protected information and there is

5  public information.  And I think that when you are,

6  you know, definitely interacting with someone about

7  their own information, right, you're having a

8  conversation with a voter, there is not necessarily a

9  strict prohibition.  If I'm handing over a list of

10  all voters, that's different, Mr. Greim.

11      Q.   Okay.  So is there an exception, then --

12  we've heard the testimony before that all sharing,

13  regardless of the use, of the voter data is

14  prohibited.  So is there an exception for someone

15  sharing data with the voter himself or herself?

16      A.   I don't know of a specific exception.  And

17  I think that the scenario that you described to me

18  was one individual having a conversation about their

19  specific information.

20      Q.   Exactly.  And my question is -- I don't see

21  an exception for that in the statute, but it sounds

22  like the Secretary of State believes there is one.

23  And I'm just asking, you know, where is that?  Is

24  there some other part of the law that provides that

25  exception?

SANTA FE OFFICE                                                                                MAIN OFFICE
119 East Marcy, Suite 110                                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                      Albuquerque, NM 87102
(505) 989-4949                                                                                    (505) 843-9494
FAX (505) 843-9492                                                                        FAX (505) 843-9492
                              BEAN                                                            1-800-669-9492
                              & ASSOCIATES, Inc.                              e-mail: info@litsupport.com
                              PROFESSIONAL COURT
                              REPORTING SERVICE

1     A.   No.

2     Q.   That's just the Secretary's chosen method

3  of enforcing the statute?

4     A.   Not necessarily.  I think that we are just

5  discussing one specific scenario in particular, and

6  that's what my response was to.

7     Q.   Okay.  Well, we'll try a few more scenarios

8  later and see if there are other exceptions that

9  maybe aren't in the statute.

10        Let's move on to Exhibit E.  Now, this may

11  be just a bit blurry, but I'm showing you what we've

12  marked as Joint Exhibit E.  I don't see the exhibit

13  stamp on this one.  But it is the right one.  Okay.

14  I'll hold that -- yeah, this is definitely -- I'll

15  hold out to you that this is Joint Exhibit E.  So --

16  and this is something that's already been admitted

17  here by both parties.

18        Do you recognize these tweets from the New

19  Mexico Secretary of State?  I'll just show you one,

20  then the other.  This is the first.

21     A.   Yeah, I don't -- you know, I don't observe

22  every single tweet, but this looks like it is from

23  our website.

24     Q.   Who drafts these tweets?

25     A.   Alex Curtas, our communications director.

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                       (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   And who ensures that they're accurate?
 2          A.   I don't know who reviews them before they
 3     go out.  I would assume Sharon Pino, who is our
 4     Deputy Secretary.  But I do not review every single
 5     tweet.
 6          Q.   Okay.  I'm going to start with this one.
 7     I'm just going to ask you:  You'll see the Secretary
 8     of State is shown as a saying, "Voter data in New
 9     Mexico is protected from malicious actors, and voter
10     data can only be obtained for election campaign or
11     government/academic purposes by signing an affidavit
12     and paying a fee."  Now, is that accurate?
13          A.    I think there is a use of "academic," which
14     isn't necessarily in the statute.  I don't think it's
15     prohibited.  But again, academic is a term that's not
16     specifically defined in the voter data section.
17          Q.   How does the Secretary of State's Office
18     apply that term "academic"?
19          A.   We have not, in particular, had to make a
20     determination on that term.
21          Q.   Okay.  Well, do you know where this comes
22     from?  Why the Secretary is telling people academic
23     is another legitimate purpose?
24          A.   Again, I didn't review or draft this tweet.
25          Q.   Okay.  So who at the Secretary of State's
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

24

```
 1    Office can explain this to us?
 2         A.   I would assume that Alex would be able to
 3    explain that.
 4         Q.   Okay.  Let's see, I'm skipping ahead a
 5    little bit, but I'm going to move down to the next
 6    tweet.  And I'll represent to you that this is
 7    referring to the ProPublica article that sort of
 8    launched our controversy here.  The date of this
 9    tweet is March the 8th.  Do you see that?
10         A.   I do.
11         Q.   And you'll see that the Secretary of State
12    sends it out.  She says, "Important in-depth piece
13    from ProPublica regarding coordinated cross-country
14    attempt to impugn the integrity of our voter rolls."
15    Do you see that?
16         A.   I do.
17         Q.   Now, to impugn the integrity of the voter
18    rolls is not to actually damage the voter rolls; is
19    it?
20         A.   You know, again, I didn't participate in
21    drafting this tweet, nor do I have information as to
22    where the details of this content is coming from.  I
23    didn't read the article.
24         Q.   Okay, that's fair.  That's fair.  Let me
25    ask you:  I mean, is it your position that VRF, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    our client has impugned the integrity of the New
 2    Mexico's voter rolls?
 3         A.   I don't have a position on that.
 4         Q.   Okay.  You don't know whether they did or
 5    did not?
 6         A.   I have not read this article, which I think
 7    that is specifically what that tweet is referring to.
 8    So I don't feel prepared to respond to anything
 9    contained in that article, or our office's
10    interpretation of the article.
11         Q.   Do you know what "impugn" means?
12         A.   Yes.
13         Q.   Okay.  What's your definition of impugn?
14         A.   If you'd like to share with me what you
15    understand that to mean, that's probably a better
16    approach.
17         Q.   Okay.  We can go either way.  That's all
18    right.  I don't want to prolong this.  You know, to
19    impugn the integrity, I would say is to criticize or
20    to cast into doubt the integrity of the voter rolls.
21    And it's probably a degree of severity a little above
22    what I said.
23              So let me ask you this:  Has Voter
24    Reference Foundation, you know, cast into doubt the
25    integrity of the voter rolls?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      A.    Again, you know, I didn't read the article.

2  But what I do know is that there was statements made

3  on VoteRef's website, in particular, that spoke to a

4  discrepancy.  And I think using the term

5  "discrepancy" was an inappropriate use of the term

6  and interpretation of the data.

7           So in that case, yes, I think there was

8  doubt cast, and it was really analyzed in a way that

9  had incomplete information.  So I don't think it was

10  presented in a way that provided clarity to a reader

11  about website content.  And I do think it

12  inappropriately called it a discrepancy.

13      Q.    Okay.  Now, we talked before about the

14  Secretary of State's view that this Audit Force

15  engaged in intimidation, and that that would be a

16  reason to deny future access to the voter data.  Do

17  you think that VRF's conduct is similar to the Audit

18  Force's conduct, a reason to deny Voter Reference

19  Foundation access to the voter rolls in the future?

20      A.    Number one, I think to clarify my previous

21  response when we were discussing New Mexico Audit

22  Force, they have not requested the data, number one.

23           And number two, their specific use and the

24  examples that we discussed did appear to be

25  intimidating to voters.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          And so the purpose of the advisory was to

2     provide clarity to voters as to what the law provides

3     for, what they do and do not have to respond to, so

4     that everyone had the information to handle someone

5     at their door as they felt appropriate.  Now, you're

6     asking me if Voter Ref has engaged in voter

7     intimidation?

8          Q.   No.  No, my question is whether Voter Ref's

9     conduct that we just, that you just described, would

10    form a basis for refusing Voter Ref access to the

11    data that makes a future request.

12         A.   So Voter Ref is not the same as New Mexico

13    Audit Force, from my perspective.  Their use in this

14    case is the fact that they are distributing the data.

15    Making it available on the Worldwide Web is the issue

16    in particular with VoteRef.

17         Q.   Okay.  So your testimony, then, is that

18    criticism of the voter rolls that you deem to be

19    inaccurate or unfair should not be a basis to deny

20    Voter Reference Foundation access to the data?

21         A.   Our concern, in particular, is the fact

22    that it's being -- that the voter information is

23    being made public.  You are correct.

24         Q.   Okay.  So the answer to my question is yes,

25    then; is that right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   The fact that they're analyzing the data is

2   not a concern.  The fact that they are posting

3   publicly voter information is the concern.

4       Q.   So if someone were to say that the fact

5   that Voter Reference Foundation took data and blasted

6   it out across the internet, and that's what violates

7   state law, limiting use of the voter rolls solely for

8   campaign and government activity, that wouldn't be

9   strictly accurate in your view, would it?

10      A.   I'm sorry?  Can you restate your question?

11      Q.   Sure.  You know what, that's a hard

12  question.  I'll just strike that.  We'll move on.

13           I want to go back to -- I do want to go

14  back to a few hypotheticals, though, to see what

15  other exception may exist.  And then, you know, we'll

16  have a few questions after that, and then I'll be

17  done with you.

18           So political parties can get the data;

19  correct?

20      A.   Correct.

21      Q.   The Democratic Party gets the data; right?

22      A.   All parties get the data.

23      Q.   So, for example, could they share it with

24  the Secretary of State's campaign?

25      A.   I think they can the share it within their

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   organization.

 2        Q.   Can a democratic candidate as part of a

 3   Democratic Party organization, or is that a separate

 4   entity that has to separately pay for the

 5   information?

 6        A.   I think, if it's within the party that

 7   they're sharing it, that is still within the

 8   organization.  So any party could share it within

 9   their party.

10        Q.   Okay, including with candidates?

11        A.   Correct.

12        Q.   And candidate campaigns?

13        A.   Correct.

14        Q.   Okay.  What about a party sharing it with

15   volunteers, who are not employees or contractors;

16   they just answered an ad, and show up one day, and,

17   you know, go door to door, would the volunteer --

18   could they share the data with the volunteers?

19        A.   Again, you know, I think that our analysis

20   has reached the level of within the organization.  So

21   if we had factual based scenarios, and it needed to

22   be reviewed by an attorney, that would be something

23   that I would check in with the attorney.

24             What I feel confident in stating is that

25   within the organization is not going to be viewed as
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    an unlawful sharing of the information.

2        Q.   Okay.  So the answer on the volunteers is

3    you'd have to check with an attorney?

4        A.   Correct.

5        Q.   Go ahead.

6        A.   I'm good.  Thank you.

7        Q.   And so, presumably, people, regular

8    citizens who want to comply with these, also probably

9    have to talk to an attorney as well to understand how

10   to comply with this?

11       A.   I think anyone can talk to an attorney if

12   they feel the need to.  I don't think that is what I

13   just stated.  I think I -- our office has an

14   obligation to make sure we're following the statute

15   in all cases.  So if there is ever an area where I

16   need clarity, I will seek guidance from an attorney.

17       Q.   Let's go back to your next -- the other

18   issue.  We talked about Otero County earlier.  It

19   sounds like there is an exception for a canvasser to

20   discuss someone's information with the voter

21   themselves.  That's how the Secretary of State would

22   view it; correct?

23       A.   I think that there is not a statutory

24   exception, Mr. Greim.  And I think that we are not,

25   you know, going to be witnessing every instance of

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                        1-800-669-9492
                                                 e-mail: info@litsupport.com




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    somebody having a conversation.  So, in particular, I
 2    don't think we would take an action against someone
 3    having a conversation with a voter.
 4         Q.   Okay.  What about if an individual has a
 5    conversation with a voter about that person's spouse
 6    or other members of the household, does that
 7    exception still apply?
 8         A.   Again, I said there is no legal exception
 9    in the statute for sharing the data.
10         Q.   Right.  You're just saying you wouldn't
11    refer it for criminal prosecution?
12         A.   In the one specific scenario.
13         Q.   Okay.  Now, I'm asking you about a new
14    scenario.  What about other members of the household?
15         A.   And, again, when we are reviewing
16    somebody's use of voter data, it's going to be
17    factually based.  So I think we would need to get all
18    of the information, and I, alone, would not make that
19    decision.  And up to this point, we have not had to
20    do that analysis.
21         Q.   Okay.  So the answer is that the Secretary
22    of State's Office just can't tell us the answer right
23    now?
24              MS. SERAFIMOVA:  Objection, Your Honor.
25    That misstates her testimony.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Well, she can answer the

2  question.  So overruled.

3          A.   I don't think there is any difference in

4  the scenario you're describing, in that, yes, I would

5  seek guidance from my general counsel.

6          Q.   Okay.  Let me ask you now about an academic

7  paper that's exploring the way the election was run.

8  So one academic pays for the data, and writes a

9  paper, does a statistical analysis.  Then another

10  academic at a rival university, maybe, I don't know

11  New Mexico versus New Mexico State, another political

12  science professor says:  I don't agree with your

13  conclusions; you know, I want to write a review of

14  your article.  Can I see the data?  Okay?  So is it a

15  crime -- would you criminally refer the first

16  academic who shared the data with the second academic

17  who is trying to verify his conclusions?

18          A.   So, again, I think anyone who wants to

19  receive data, we've established that there is a

20  statutory process in which they need to complete an

21  affidavit.  In signing that affidavit, they are

22  agreeing to specific statutory terms that are defined

23  in Article 5.  And so anyone that has statutorily

24  received that data needs to comply.  And so, in that

25  case, a separate individual, a separate entity would



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    need to also comply with receiving the data.

2         Q.   Okay.  So the answer is it would be a

3    criminal referral, then, for the first academic to

4    share the data with the second academic?

5         A.   Again, if somebody is going outside of the

6    bounds of law, we have an obligation to consistently

7    apply that law.  And if we felt that they were

8    unlawfully using the data, we would refer it for a

9    review of a law enforcement agency.

10        Q.   Okay.  I only have a few more.  We could go

11   on for quite a while, but I won't go on forever,

12   okay.

13             Let's say a voter, like the Plaintiff Holly

14   Steinberg here, goes and buys the entire file; hires

15   programmers so she can use the data; runs her own

16   analysis.  And then she calls VRF and says:  Well,

17   here's what I found.  Now, VRF also has the data,

18   okay?  But Holly Steinberg shares the data that she

19   has with VRF as part of that discussion.  Is that a

20   criminal violation?

21        A.   I think my answer will be the same, if

22   you'd like me to restate it.  The data can be shared

23   within the same organization.  Otherwise, individuals

24   need to obtain that data directly.  And again, we've

25   established in prior conversation that that data is

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                              1-800-669-9492
                                                          e-mail: info@litsupport.com

```
 1    dynamic.  It is always changing, being updated.  So
 2    it is very unlikely that those two entities would
 3    have the same exact data at a point in time.
 4         Q.   What if they did have the exact same data
 5    set; they both downloaded them on April 13th at 4:50,
 6    is it a crime for one to share the data with the
 7    other?
 8         A.   There doesn't seem to be a need to share
 9    the same exact data, so I'm not clear as to how that
10    would be a real life scenario.  But my position
11    statutorily would not change.
12         Q.   The need would be checking to make sure
13    they have the same data.  They find that they did.
14    Would the sharing, though, if one still shared with
15    the other, so it's still a crime; correct?
16         A.   I think that my answer has not changed.
17         Q.   Okay.  Finally, what about a company that
18    buys the data, creates a database, and makes it
19    available to political clients for a fee, is that a
20    crime?
21         A.   I think that's definitely something that
22    appears to be sharing the data unlawfully.  If it's
23    outside of their organization, that is still the
24    issue.
25         Q.   Now, we've mentioned the company Catalist
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   last time, the very well-known progressive company
 2   that kind of pioneered this.  And we heard last month
 3   that no one in your office had heard of Catalist.
 4   Catalist has been requesting data from you for a long
 5   time.  And so, since last month, have you done
 6   anything to find out more about Catalist and what it
 7   does?
 8        A.   I have not.
 9        Q.   Okay.  Well, do you have any plans to, you
10   know, look into it, make a referral to the Attorney
11   General?
12        A.   I think, if we are made aware that they are
13   unlawfully using the data -- so I don't know if
14   that's your statement here today -- but if our office
15   is made aware, then we will look into it.
16        Q.   Okay.  So other than what we have told you,
17   what's it going to take for you to be made aware,
18   meet the "made aware" threshold here?
19        A.   I think you've asked me questions if I have
20   an awareness of how they use the data.  I have not.
21   And I have not directly heard from you how they use
22   the data.
23        Q.   Okay.  Let's take a look at Exhibit P5.
24             MS. SERAFIMOVA:  Your Honor, I'm going to
25   make an objection here.  P5 is hearsay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  Well, I haven't heard a
 2   question yet.  Let me -- just let me see what the
 3   question is.  All that's happened so far is Mr. Greim
 4   has directed the witness to an exhibit.  So let me
 5   see what the question is going to be.  Go ahead, Mr.
 6   Greim.
 7      Q.   Okay, sorry.  I paused to share screen.
 8   Okay, I've pulled it up.
 9          This is Exhibit P5 that was disclosed to
10   everyone last month.  And you've got a declaration
11   from us saying that we pulled this from the internet
12   directly from Catalist's website.  So I'm just going
13   to slowly scroll through, and show you what we have
14   pulled from Catalist.
15          Okay.  Now, I'm not offering this as
16   evidence to prove up what Catalist does.  I'm just
17   offering this as evidence that this exists on the
18   internet, and that a person who requests data
19   constantly from New Mexico, publicly says these
20   things.  So not the truth of the matter.  It's just
21   that they're saying it.
22          MS. SERAFIMOVA:  A couple of things, Your
23   Honor.  First, counsel is testifying by saying they
24   constantly request data.  There is no evidence in the
25   record about that.  Also, there is no foundation that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    this witness has seen this before.  And the -- (Zoom
 2    audio garbled).
 3              THE COURT:  Ms. Serafimova, we can't
 4    understand what you're saying.
 5              MS. SERAFIMOVA:  What do you mean, Your
 6    Honor?
 7              THE COURT:  Your internet connection is
 8    garbled.
 9              MS. SERAFIMOVA:  Okay.  Is it better right
10    now?  Okay.
11              So counsel stated that this was disclosed
12    to everyone.  I want to clarify it was disclosed to
13    me, as the attorney, as a potential exhibit.  He also
14    testified which is -- (Zoom audion garbled).
15              THE COURT:  Ms. Serafimova, we can't
16    understand what you're saying.  Your connection --
17              MS. SERAFIMOVA:  Let me dial in.  Would
18    that be okay?  If you give me a second.
19              MR. GREIM:  That's better.
20              MS. SERAFIMOVA:  Are you able to hear me
21    better now?
22              THE COURT:  Yes.
23              MS. SERAFIMOVA:  Wonderful.  Thank you for
24    your patience.
25              So a couple of things.  Mr. Greim stated
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that this exhibit has been disclosed to everyone.

2    I'd like to clarify it's been disclosed to me as the

3    attorney.

4           He also made a statement that Catalist --

5    I'm sorry, I kind of lost my train of thought in the

6    last few seconds -- constantly requests documents

7    from the Secretary of State's Office.

8           THE COURT:  Well, I'm concerned that what

9    you're doing here is beginning to coach the witness

10   how to respond.  I can consider hearsay on a request

11   for a preliminary injunction.  I'll let you argue the

12   weight of it and what's wrong with it.  But I think

13   that probably the witness -- Mr. Greim ought to have

14   a chance to ask the witness what she thinks about it

15   before you indicate what your thoughts are on it.  So

16   let me just --

17          MS. SERAFIMOVA:  But, Your Honor, if I may

18   make my record --

19          THE COURT:  Well, no, you're not making a

20   record.  I think you're trying to coach the witness

21   as to what to say.  So let me --

22          MS. SERAFIMOVA:  You can prevent her from

23   hearing me; correct?

24          THE COURT:  Well, let's just take the

25   witness -- let's just take the testimony, and then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    I'll take your objection.

 2              MS. SERAFIMOVA:  All right.

 3              THE COURT:  Go ahead, Mr. Greim.

 4    BY MR. GREIM:

 5        Q.    Okay.  And here's what I've done, listening

 6    to this, I've pulled up Joint Exhibit K, which is

 7    already in evidence.  We'll start with that.  Let me

 8    ask the witness:  You've seen Joint Exhibit K;

 9    correct?

10        A.    I have seen it, yes.

11        Q.    And tell us what this is.

12        A.    We're statutorily required to log any

13    request we receive for voter data.  So this is that

14    log.

15        Q.    Right, because it's important for the

16    public to know who is requesting voter data; correct?

17        A.    Correct.

18        Q.    And it's important for you to know that as

19    well; right?

20        A.    It's important that we know who has

21    requested it, yes.

22        Q.    Right.  Because, if someone who shouldn't

23    have the data or someone is misusing the data, you

24    might make a criminal referral, right?

25        A.    It creates a record.  So if we are made

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   aware of anything that needs further review, we have

2   the information to do so.

3        Q.   Okay.  So let's take a look at exhibit --

4   I'm sorry, page 2.  This is in two different formats.

5   This was given to us by you.  But let me take you

6   down, you'll see about three-quarters of the way

7   down, a Nicole Dunger at Catalist requested

8   Congressional District 1 voter history, and history

9   from 1990 to 2020.  So 30 years of data was requested

10  on July the 15th, 2021; is that right?

11       A.   I really can't see the document on your

12  screen.

13       Q.   I'm going to go ahead and really enlarge it

14  here.

15       A.   Thank you.

16       Q.   All right.  Now do you see Catalist on

17  there?

18       A.   I do, on July 15.

19       Q.   Right.  They requested a lot of data,

20  didn't they?

21       A.   They did request several years of data.

22       Q.   Okay.  And how much did they pay for it?

23       A.   I don't know if that column is referring to

24  the amount, but there is --

25       Q.   I see.  It looks like it refers to number

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492
                                                                                  1-800-669-9492
                                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1    of records; right?

2         A.    Correct.

3         Q.    Sorry, I zoomed it in so much, I've got to

4    scroll back and forth.  But it looks like something

5    like 1.3 million voter records?

6         A.    Agreed.

7         Q.    Okay.  And I assume this request was

8    processed; right?

9         A.    Does it indicate that it was delivered?

10   Sometimes we don't receive payment, would be a

11   consideration.

12        Q.    Okay.  Looks like it was delivered by email

13   and Kiteworks on 7/16.  Do you agree with me?

14        A.    I do.

15        Q.    Now, unfortunately, the more recent data we

16   got, they did not tell us the organization.  But you

17   see Nicole Dunger appears again here on December 22,

18   2021?

19        A.    I do.

20        Q.    And she again requested about the same

21   number of records, about 1.3 million records?

22        A.    Okay.

23        Q.    And it looks like she got statewide voter

24   data.  Do you see over here on the far side?

25        A.    Yes.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

42

```
1        Q.   Okay.  So you agree with me that Catalist
2   has been getting data -- we only saw one year; we see
3   that they've requested it twice in just that one
4   year; right?
5        A.   I do see them receiving it twice.
6        Q.   Okay.  Now, let me go back.  Let's take a
7   look at anybody who gets on the internet can pull up
8   and see who Catalist is.  And you see where it says,
9   "Who we are."  It says, "At Catalist you are a
10  partner in a collective, an innovator, and a
11  participant in the longest running data trust in
12  progressive politics."  Do you see that?
13       A.   I see the paragraph.
14       Q.   Right.  And by the way, let me ask you,
15  did -- so counsel did not show you Exhibit P5 before
16  just now?
17       A.   I have not seen it prior to right now.
18       Q.   Okay.  So you've seen all the joint
19  exhibits; right?
20       A.   I have seen stipulated exhibits that we
21  have discussed.  I don't know if it was in its
22  entirety.
23       Q.   Have you seen any of the exhibits that the
24  plaintiffs disclosed last month?
25       A.   We've seen -- I've seen lots of exhibits.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   You would have to be more specific.

 2        Q.   Okay.  But this exhibit here wasn't shown

 3   to you; correct?

 4        A.   No.

 5        Q.   Okay.  By the way, after all the talk about

 6   Catalist last month, did you have any discussion with

 7   anybody else in your office about what Catalist was

 8   or who it is?

 9        A.   I have not.

10        Q.   Do you know if anyone else did?

11        A.   I don't know.

12        Q.   Okay.  Let's go on.  It says -- this is the

13   middle of this large paragraph -- "We do this by

14   providing our data only to democrats and

15   progressives, and only for civic engagement purposes,

16   not for commercial for-profit use.  And we are able

17   to do so without threat of this data asset being

18   bought, sold, or traded for commercial or for-profit

19   purposes."

20            And it goes on, "What we do.  Catalist

21   compiles, enhances, stores, and dynamically updates

22   data on over 256 million unique voting age

23   individuals across all 50 states and the District of

24   Columbia.  Working with Catalist can help you build

25   membership, target, persuasive messaging, engage
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    activists, drive an issue agenda, and register or
 2    mobilize voters."  Did I read that right?
 3         A.   Um-hum.
 4         Q.   And then it goes on -- there is a page
 5    break -- and it gives you more detail.  The very last
 6    sentence says, "With the Catalist national database
 7    as the foundation, our products help our clients use
 8    their resources more efficiently and make a greater
 9    impact."  Did I read that right?
10         A.   You did.
11         Q.   Okay.  And then they go on in more detail
12    about some of their various products, and we won't go
13    through all that.
14              So let me ask you, assuming that what
15    Catalist says on its website is true -- and I know
16    that we don't know that it is, we haven't established
17    that in evidence here -- but wouldn't this sharing of
18    data violate New Mexico law?
19         A.   Again, I do not know the details of
20    Catalist.  You have shared this information with me
21    right here and now.  Outside of that, I do not know
22    anything more as to how they're actually using the
23    data received from New Mexico.  So I do not know how
24    they are using the data.
25         Q.   Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   Again, our position on the statutory
2    provisions do not change.
3         Q.   Well, I mean, that's what we're trying to
4    find out, though, because we've heard some different
5    things depending on our scenarios.  So I'm asking
6    you, if Catalist is selling the data to progressive
7    clients, how is that not a violation of New Mexico
8    law?
9         A.   I do not know if they're doing that, nor
10   has that been determined.  But any entity that has
11   requested the data should only be sharing that within
12   their entity, within the same organization.
13        Q.   Well, what would it take --
14        A.   That statement has not changed.
15        Q.   Okay.  What more would it take to spark the
16   Secretary of State's interest in Catalist to maybe
17   just begin an investigation to see what they're
18   doing?
19        A.   I don't think I'm asking for anything more.
20   You asked me if we have.  And I have not.  And we
21   have not received any complaint, nor any affirmative
22   information as to them unlawfully using the data.  So
23   at this point in time, I do not have that
24   information.
25        Q.   Okay.  And so do you have any plans to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    investigate what Catalist is doing?

2         A.   I think that I will happily share that

3    information with our leadership team, and we can make

4    the determination, reviewing the use.

5         Q.   Okay.  Do you have any plans to do that?

6         A.   Sure.

7         Q.   Okay.  So your testimony is that you're now

8    going to be sharing this information for a review by

9    the leadership team with the Secretary of State's

10   Office?

11        A.   That is correct.

12        Q.   Okay.  And you've made that decision during

13   your testimony today?

14        A.   Correct.

15        Q.   Okay.  I now want to kind of end up here

16   with an actual request that VRF has made to you.  So

17   I'm going to show you what we've marked as Exhibit

18   P4.  I'm sorry, I'm just a little slow on toggling

19   around here.

20             This is another exhibit that the plaintiffs

21   marked and gave to your counsel a month ago.  So I'm

22   going to ask you whether you have seen this Exhibit

23   P4 before?  I'm just going to slowly scroll through

24   it.

25        A.   I have seen this.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492
                                                      e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1        Q.   Okay.  Very good.  And so at the very top
2   you see that someone named Patrick Rostock is sending
3   you an email, copying Sharon Pino; right?
4        A.   Right.
5        Q.   Mr. Rostock says, "Hi Mandy and Sharon.
6   Per Dylan's contact with the AG, we are not
7   fulfilling records requests from VoteRef."  Did I
8   read that right?
9        A.   You did.
10       Q.   Okay.  And at this point this was a pending
11  records request from VoteRef, wasn't there?
12       A.   No, there was not.
13       Q.   Okay.  And I think I know why you're saying
14  that.
15            Let's scroll on down.  So at the very
16  bottom you'll see, on February 15, 2022, 4:06 p.m.
17  someone at data -- at VoterReferenceFoundation.com
18  wrote, "Dear Election Official, please provide us
19  with a total count by county precinct of any
20  registered voters who cast a ballot in the November
21  3, 2020" -- left out the word "election" -- who have
22  been subsequently placed in an inactive, canceled,
23  deleted, removed, or any registration status other
24  than active, or any voter that has been removed or
25  deleted from the voter rolls between November 3, 2020
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

48

1    and April 13, 2021."  Did I read that right?

2         A.    You did.

3         Q.    Okay.  And April 13, 2021, by the way, is

4    the date of the last data set that VRF had gotten

5    from the Secretary of State's Office; right?

6         A.    They have not received any data from our

7    office directly.

8         Q.    Okay.  Fair enough.  That's the data that

9    Local Labs received the data set that had been

10   provided to VRF; correct?

11        A.    I don't have that exact date, but that

12   sounds reasonable.

13        Q.    Okay.  And so this request was then

14   assigned to Patrick Rostock; correct?

15        A.    This is a Help Desk Ticket that, yes, was

16   assigned to Patrick.

17        Q.    Who is Patrick?

18        A.    He is a new staff member.  He's a

19   paralegal, and serves as the records custodian.

20        Q.    Okay.  So Patrick Rostock got this ticket

21   the following day, on February 16th; right?

22        A.    Yes.

23        Q.    So then, it looks like March 10th, several

24   weeks later, after having heard nothing back, VRF

25   asked again, "Good afternoon, can you please provide

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1   a status report.  Thank you."  And that goes to

2   Mr. Rostock; correct?

3        A.   Yes.

4        Q.   All right.  And then Mr. Rostock, the

5   following day, forwards this ticket on to you; right?

6        A.   He sent us an email.

7        Q.   So let me ask you this:  When someone

8   emails your office, do you typically ignore them

9   altogether unless they happen to have an affidavit

10  already filled out and attached to their request?

11       A.   I don't think there is a goal to ignore

12  someone who communicates with our office.

13       Q.   Okay.  Why was Voter Reference Foundation

14  ignored here?

15       A.   In this case, you know, Patrick, in working

16  with our general counsel, there was a determination

17  that this was neither a public -- a formal public

18  records request nor a normal voter data request.  At

19  this point in time, we had already engaged with the

20  law enforcement agency, and so we did seek their

21  guidance.  And at this point in time, it was

22  determined that we were not going to provide data.

23       Q.   Why not?

24       A.   Because we had already referred their use

25  of the data to a law enforcement agency.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Okay.  So is there a part of the statute

2   that says that if you referred someone for

3   prosecution, you don't answer their requests anymore?

4      A.   There is not a statutory provision that

5   requires us to respond in this case.  And there is

6   not a statutory provision that says you should not

7   respond.  That was a decision made based on the

8   information we had.

9      Q.   Okay.  So why would having referred them to

10   the AG -- and by the way, the AG had not actually

11   charged them at this point; correct?

12      A.   There is no charge that I have an awareness

13   of.

14      Q.   So why did the AG tell you not to respond?

15      A.   I can't speak to that.  I don't know.

16      Q.   Who does know?

17      A.   The Attorney General, I'm sure.

18      Q.   Well, who is the contact -- who did the

19   Attorney General speak to in your office?

20      A.   Typically, it goes to our general counsel.

21      Q.   So do you know whether there was

22   anything -- let me ask you this:  Why not just

23   respond to VRF and say that you need to submit an

24   authorization, here's a link to the form?

25      A.   It just was determined that we were not

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    going to be providing data at that point in time
 2    based on knowledge that it had already been published
 3    on a website.
 4         Q.   So you say, "based on knowledge it had
 5    already been published."  So you're assuming that
 6    this data would be published, you're just assuming
 7    that; right?
 8         A.   I think that there is currently an
 9    investigation taking place, in particular, about this
10    entity.  And so we did seek guidance on how to handle
11    this request in particular.  And we were provided the
12    guidance, as it is stated in the email, that we were
13    not to provide the data.
14         Q.   And you had no knowledge that this data was
15    going to be published, did you?
16         A.   Not at that point in time, that data had
17    not been received.
18         Q.   Okay.  And you have no knowledge today that
19    this data was going to be published; correct?
20         A.   If you're referring to the most recent
21    request from VoteRef --
22         Q.   No, I'm referring to this request.
23         A.   So this request does not provide any more
24    information than you've read to the Court.
25         Q.   And no one reached out to VRF to find out
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    whether they were going to publish it or not; right?
 2        A.   No.
 3        Q.   The answer was just to ignore them; right?
 4        A.   To not provide data.
 5        Q.   Okay.  So we'll have to ask the AG why they
 6    made this recommendation, and we'll have to ask
 7    someone else at the Secretary of State to understand
 8    why they accepted this advice; correct?
 9        A.   Correct.
10        Q.   Let me now ask you about the most recent
11    request that you started to talk about.  So about 19
12    days ago you received a notice and a request from our
13    office on behalf of VRF; correct?
14        A.   Correct.
15        Q.   Okay.  Let's pull that up.  Sorry, I
16    can't -- I'm trying to reduce the size of this so it
17    makes sense to us.
18             So this is what we marked as Exhibit P10.
19    Do you recognize this?
20        A.   I do.
21        Q.   I'm sorry, was the answer yes?
22        A.   Yes.
23        Q.   Okay.  And by the way --
24             MR. GREIM:  Okay, I move to admit P10.
25             THE COURT:  Any objection, Ms. Serafimova?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. SERAFIMOVA:  No objection.
 2              THE COURT:  All right.  Plaintiffs' Exhibit
 3      10 will be admitted into evidence.
 4         Q.   So you'll see at the end of this letter --
 5      I won't spend time on the notice in the beginning
 6      part, but you'll see that there is a request for
 7      records here.
 8              Now, no response has been made to this
 9      request; correct?
10         A.   Correct.
11         Q.   And there are actually two separate
12      requests; right?
13         A.   Right.
14         Q.   And VRF here says it is willing and ready
15      to execute the same affidavit that Local Labs
16      executed; correct?
17         A.   Correct.
18         Q.   Okay.  So why has New Mexico not responded
19      to this request?
20         A.   Number one, we are still within our
21      deadline to formally respond to this request.  But
22      more importantly, this request does provide
23      information as to this information again being
24      published online.  And again, as we've established,
25      that would be, in our interpretation, unlawful.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    so we cannot conspire to break the law.

2         Q.    Okay.   By the way, the deadline is

3    tomorrow; correct?

4         A.    I would have to confirm.

5         Q.    Okay.   Well, the deadline is 20 days, and

6    20 days would be tomorrow.   I mean, we can be very

7    sure about that, because it's dated May 27th; right?

8         A.    And I don't know the details of where that

9    20-day deadline is coming from.   I know that our

10   attorney has done some analysis, so there might be

11   some different review.   But I personally do not know

12   what that exact deadline is.

13        Q.    Okay.   Well, tell me this:   When does New

14   Mexico believe it's going to respond to these

15   requests?

16        A.    I know that our attorney has calendared

17   that deadline, and we will be responding within that

18   timeline.

19        Q.    And the response is going to be:   No,

20   because VRF says it will publish; correct?

21        A.    Correct.

22        Q.    Let's look at the actual request.   You will

23   see that under number one, we asked for a complete

24   list of any registered voters who cast a ballot in

25   the general election, the most recent one, who have

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                        1-800-669-9492
                                                                 e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    been placed on inactive, canceled, deleted, or

2    removed.  In other words, this is the same request

3    that was made back in February; right?  More or less

4    the same request?

5         A.   What request in February?

6         Q.   This is the request we just talked about,

7    Exhibit P4?

8         A.   So again, you know, we have taken the

9    position we have not received a formal request, with

10   the exception of what's up on the screen right now.

11        Q.   Okay, fair enough.  This is the same thing

12   you were asked for in February; correct?

13        A.   I'd have to double-check those -- the exact

14   data elements.

15        Q.   Okay.  You rely on the documents; right?

16        A.   Right.

17        Q.   Okay, fine.  And then the second one is for

18   current voter registration data; right?

19        A.   Correct.

20        Q.   Okay.  Now, you'll see the next paragraph

21   it says:  For the first project, which is the

22   publishing of the data, VRF intends to publish the

23   requested information online for election-related

24   purposes, but it will only publish the personal

25   information of voters online if VRF is granted relief

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                          1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                               e-mail: info@litsupport.com

1    here.  Do you see that?

2         A.   Is that in the first paragraph?

3         Q.   No, it's right after --

4         A.   Oh, I see it.  I see it.

5         Q.   Okay.  So --

6         A.   That's correct.

7         Q.   So VRF is telling you right here that it is

8    not going to publish the data unless it gets relief

9    from a court; right?

10             MS. SERAFIMOVA:  Your Honor, may I make an

11   objection on the record?  And I'm happy to do it

12   outside of the witness' hearing.

13             THE COURT:  Well, okay, we'll take her out

14   so she can't hear.

15             MR. GREIM:  You know what, Your Honor --

16   okay, she's gone.  Go ahead.

17             MS. SERAFIMOVA:  I mean, I think we're

18   spending a lot of time on this document.  But we

19   intend to appeal -- you know, if the motion for

20   preliminary injunction is granted, we intend to

21   appeal the ultimate decision; if it's not in our

22   favor, we intend to appeal.  So I want to make that

23   clear that -- and these are factors that I am

24   discussing with their general counsel, who is

25   preparing their response.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              So this is legal advice.  She doesn't have
 2     the level of knowledge or understanding to take those
 3     factors into account.  And what she's essentially
 4     communicating right now in response to Mr. Greim's
 5     questions is things that she has heard from her
 6     general counsel, from myself, in validating this
 7     request.  So I hope that --
 8              THE COURT:  Well, I think Mr. Greim has a
 9     right to find out what the Secretary's position is on
10     these issues, you know.  I guess, if you want to
11     instruct her not to testify and claim attorney-client
12     privilege, then we can sort of explore that.  But,
13     you know, people make decisions all the time, and
14     some of it includes talking to their counsel.  So I
15     guess I don't think there is anything objectionable
16     to the question.  So overruled.
17              All right.  Bring the witness back.
18              All right.  Mr. Greim.
19              MR. GREIM:  Thank you, Your Honor.  I think
20     the witness is still muted.  Or is that somebody
21     else?
22     BY MR. GREIM:
23          Q.  Ms. Vigil, are you here?
24          A.  Yes.
25          Q.  All right.  So my question with respect to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

58

1    the first piece is:  Do you see that we have said we

2    are not going to publish it online unless we are

3    granted relief from this Court or any other legal

4    proceeding.  Do you see that?

5        A.   That's for the first project, correct.

6        Q.   Right.  And so -- I mean, let me ask you:

7    Is the Secretary concerned that we will publish the

8    information anyway, you know, in violation of this

9    promise?

10        A.   I'm not clear on what the reference to

11   "first project" is.  Is that request number one?

12        Q.   No, let's go back.  Let's go back and be

13   very clear.  So we say there are two distinct

14   projects.  It's not really request number one.  For

15   its first project, just as VRF publishes voter data

16   for many other states, and as it recently published

17   voter data in New Mexico, VRF intends to publish the

18   requested information online for election-related

19   purposes.  So the first project is simply to publish

20   the requested information online, to do what we were

21   doing before.  Okay?  So that's the first project.

22   And we say we'll only do that if VRF is granted

23   relief in this case or any other legal proceeding.

24   Do you see that?

25        A.   I do.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Okay.  And so I don't understand the

2  Secretary's position, as you laid it out, that you

3  are afraid that VRF is going to publish the

4  information online.  And so my question to you is:

5  Does the Secretary believe that VRF will break this

6  promise and will publish the information anyway?

7      A.   My response has come from guidance and

8  direction from our counsel.

9      Q.   Okay.  I'll stop there with that.  So you,

10  yourself, don't have any information about why the

11  Secretary is claiming that VRF may publish the

12  information anyway?

13      A.   I don't think that statement has been made

14  at all, and I certainly have not made that statement.

15          Again, the request has been reviewed, and

16  based on our counsel's analysis, our understanding is

17  that we cannot conspire to publish this information,

18  because it would be against the statute.

19      Q.   And the Secretary will maintain that

20  position even if a court orders otherwise; is that

21  correct?

22      A.   I think we will follow a court order, as we

23  are required to.

24      Q.   Okay.  So for the second project, VRF

25  intends to analyze the records and it will publish

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                                              Albuquerque, NM 87102
(505) 989-4949                                                                          (505) 843-9494
FAX (505) 843-9492                                                                  FAX (505) 843-9492
                                                                                      1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                        e-mail: info@litsupport.com

1    its analysis online.  But it will do that without

2    disclosing the personal information of any individual

3    voter.  This is now in the second paragraph down at

4    the bottom of page 4.  So it says, "VRF will comply

5    with this nonpublic disclosure promise for the data

6    it uses on the second project regardless of whether

7    it prevails in the federal litigation."  Do you see

8    that?

9         A.   Yes.

10        Q.   So VRF here is telling you that no matter

11   what, for this second project, we are only going to

12   publish an analysis, and we're not going to publish

13   the voter data online.  Do you see that?

14        A.   I see that.

15        Q.   So what is the reason, then, for the

16   Secretary of State not producing the data?

17        A.   Again, given guidance from our counsel, and

18   reviewing of this request, that has been what we've

19   been provided guidance to do.

20        Q.   Okay.  So to understand why -- so we

21   understand the Secretary is going to say no to these

22   requests.  To understand why the Secretary will say

23   no, they're going to have to ask somebody else; is

24   that right?

25        A.   Our counsel has provided us guidance that

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1    in this understanding of this request, VRF intends to

 2    publish the voter data.  Therefore, they have

 3    instructed us not to provide the data because we

 4    would be violating the law.

 5        Q.   Okay.  But you can see that, for the second

 6    project, VRF is not going to publish the voter data;

 7    right?

 8        A.   I can only respond to what our attorney's

 9    guidance is at this point in time.

10        Q.   Okay.  Who is the person who can give us

11    some answers at the Secretary of State's Office here?

12        A.   We all received the same guidance.  You

13    know, if there is a further legal analysis that's

14    going to be completed, again, we will respond

15    formally as required.

16        Q.   Who made the decision not to -- to say no?

17    I understand that legal guidance was given, but who

18    actually made the decision to follow that guidance?

19        A.   It was just based off of the attorney's

20    guidance.  I don't think there was one specific

21    individual that was in agreement, based on that legal

22    guidance, of our leadership.

23        Q.   Okay.  Well, who is the lawyer?

24        A.   We have a general counsel named Dylan

25    Lange, and we have our counsel here, who is Olga.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

62

```
 1        Q.   Was Sharon Pino involved in that analysis?
 2        A.   She was.  I don't know about the legal
 3   analysis, but she was part of a conversation.
 4        Q.   Okay.  Well, I mean lawyers give advice,
 5   but ultimately somebody holds the buck -- the buck
 6   stops here.  So my question is where does the buck
 7   stop?  Who makes the decision to say no?
 8        A.   And I honestly do not recall one single
 9   individual that stated a final decision.  We just
10   were all in agreement based on a conversation, and
11   that was based on guidance from our attorneys.  So we
12   did not dispute the legal analysis of our attorneys.
13        Q.   Okay.  So the two attorneys are Mr. Lange
14   and Ms. Serafimova?
15        A.   Correct.
16        Q.   And who are the non-attorneys who came
17   together to make the decision?
18        A.   I recall I was part of the conversation,
19   Deputy Secretary of State, Sharon Pino, and the
20   Secretary, Maggie Toulouse Oliver.
21        Q.   Anyone else?
22        A.   I would certainly be happy to confirm.  My
23   memory -- I don't recall anyone else.
24        Q.   Okay.  Was the analysis given in a meeting
25   or in a memo?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    A verbal meeting.

2        Q.    When?

3        A.    I do not have that date.

4        Q.    Was it a week ago?  Two weeks ago?

5        A.    It was, I believe, prior -- we just had an

6    election last week -- so I believe it was prior to

7    the election.

8        Q.    Why did you choose to accept counsel's

9    advice?

10       A.    Because I trust their legal analysis.  And

11   I also understand the law.  And we have taken the

12   position that this information cannot be made

13   available online.

14       Q.    But what if someone promises that they're

15   not going to make it available online?  Do you

16   disregard that promise because you don't trust them?

17   Let me understand that better.

18       A.    I don't understand what the promise is.

19       Q.    Well, let's go back to the letter -- and I

20   won't spend much longer, I'm really grasping to

21   understand.  Let's look at the very bottom paragraph

22   on page 4.

23       A.    And Mr. Greim, I don't have anything more

24   to offer except that we will follow the guidance of

25   our attorneys.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   I'm sure you will.  I understand you will.

2  But I'm entitled to ask you why.  I'm not entitled to

3  ask you, I guess, their -- I suppose, legal

4  opinion -- but I'm entitled to ask you why you

5  applied that legal advice in the face of this letter?

6    A.   Because our concern is that the information

7  will be published.

8    Q.   Okay.  And do you agree with me that the

9  letter tells you the information will not be

10 published?

11   A.   I see that it intends to publish the

12 requested information online.

13   Q.   Okay.  Let's keep reading, though, right.

14 You're in the second to the last paragraph.  But you

15 didn't quite finish the sentence there, did you?

16   A.   And based on our conversation, the concern,

17 again, was that the information -- there is a

18 potential for the information to be published online.

19 That is the concern.  I don't have anything more that

20 I can add.

21   Q.   Okay.  Let's look closer, though, because

22 you're one of the three people who made the decision.

23 You can either choose to follow the lawyers' advice

24 or not; right?

25   A.   And we're --

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com



```
1             MS. SERAFIMOVA:  Your Honor, asked and
2    answered.
3             THE COURT:  Hold on.
4             MS. SERAFIMOVA:  This has been asked many
5    times and it has been answered repeatedly.
6             THE COURT:  Overruled.
7         Q.  Let's go back to the sentence.  Let me ask
8    you, you can choose not to follow the attorney's
9    advice; right?
10        A.  Sure.
11        Q.  Okay.  And the same thing goes for Ms. Pino
12   and Ms. Toulouse Oliver?
13        A.  And we are choosing to follow our
14   attorneys' advice.
15        Q.  Very good.
16        A.  Based upon the position that there is a
17   potential for this information to unlawfully be
18   published online.  And, therefore, we will not
19   provide it with an understanding that there is a
20   potential for it to be published online.
21        Q.  Right.  And where you and I part ways, I
22   think, is that you think that's the end of the
23   inquiry, and I think that's the beginning of the
24   inquiry.
25             So I'm going to ask you why you accepted
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    that, when you get this letter from us?  I'm going to
2    take you back to the sentence that we just were with.
3    Okay, so we're going to go back to that paragraph,
4    and we're going to keep reading until we get to a
5    period.  Okay?
6              MS. SERAFIMOVA:  Objection, Your Honor;
7    asked and answered.
8              THE COURT:  Overruled.
9         Q.   So we say, "VRF intends to publish the
10   requested information online" -- and I'm going to
11   keep reading, okay -- "for election-related purposes,
12   but it will only publish the personal information of
13   voters online if VRF is granted relief in" -- and
14   then you see this case is mentioned there -- "or in
15   any other legal proceeding"; right?  So the sentence
16   kept going.  Did I read that correctly?
17        A.   You did.
18        Q.   All right.  And so we say we will only
19   publish that if we're granted relief; right?
20        A.   Correct.
21        Q.   And you've just said that you will follow
22   any order of the Court; right?
23        A.   Yes.
24        Q.   Okay.  Now, if we're not going to publish
25   the information unless we prevail in a court
```



SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                     1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                          e-mail: info@litsupport.com

1    proceeding, how in the world does the Secretary of

2    State's Office believe that's engaging in a criminal

3    conspiracy to make the disclosure to us as required

4    under the law?

5            MS. SERAFIMOVA:  Objection; asked and

6    answered.

7            THE COURT:  Overruled.

8        A.   Mr. Greim, given the conversation and the

9    guidance of our attorney, that is the current

10   position.  Again, we have not formally responded to

11   this.  We are required to.  You have provided some

12   additional information that we will discuss with our

13   counsel, and we will make a formal response to this

14   request.

15       Q.   Okay.  Well, if you're still working on it,

16   that's one thing.  But to be clear, all I'm doing is

17   reading to you from the actual original request.  I

18   don't think I'm telling you anything new here today.

19   Are you learning something from reading the letter

20   with me?

21       A.   I think that there needs to be a follow-up

22   conversation.  That will occur.  We will review the

23   formal request.  That has not occurred yet.

24       Q.   Okay.  And it's due tomorrow, though;

25   right?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1      A.   Again, I think I already testified to the

2  fact that that is currently being handled by our

3  general counsel.  I don't have that date in front of

4  me.

5      Q.   All right.  And just to be clear, there is

6  no other reason that New Mexico is going to say no to

7  our response; right?  The only reason is that you

8  believe that we may publish it; right?

9      A.   If the information is going to be

10  published, yes, that is the concern.

11      Q.   Okay.  And there is no other concern;

12  right?

13      A.   Not at this point in time.

14      Q.   And by the way, the Secretary of State's

15  Office has not followed up to try to learn any

16  details about these projects or share its concerns

17  about publication with VRF, has it?

18      A.   Not to my knowledge.

19      Q.   Okay.  Now, is the Secretary of State still

20  encouraging the Attorney General to prosecute VRF?

21          MS. SERAFIMOVA:  Objection, Your Honor;

22  misstates the evidence; facts not in evidence.

23          THE COURT:  Well, I'll allow the question.

24  We can go into it on redirect.  But overruled.

25      A.   I have not directly had any additional

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    communication with the Attorney General.  We made the
 2    referral based on the information that you all have
 3    an awareness of.  And that is in their hands at this
 4    point in time.
 5         Q.   You haven't withdrawn the referral?
 6         A.   No.
 7         Q.   You haven't told the AG's Office that:  We
 8    actually think there may be some exceptions to the
 9    prohibition on sharing?
10         A.   There are no exceptions to the prohibition.
11    And no, we have not -- I have not directly engaged
12    with the Attorney General on this referral.
13              MS. SERAFIMOVA:  Your Honor, may I just
14    take a moment.  You know, when we scheduled this
15    hearing, Mr. Greim said he had 20 minutes left.  And
16    we are one hour and a half in.  And I have, you know,
17    plenty of questions to go over.  So --
18              THE COURT:  I'm concerned about it, too.  I
19    didn't want to have this hearing today.  I think I
20    explained my grandchildren were in town.  So I came
21    in today just to do this hearing.  And I'm getting
22    concerned about what's going on myself.
23              Let's take a break.  I need to give
24    Ms. Bean a break.  But I'm concerned about what's
25    taking place myself.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              All right.  We'll be in recess for about 15
 2    minutes.
 3              (The Court stood in recess.)
 4              THE COURT:  All right.  Ms. Vigil, I'll
 5    remind you that you're still under oath.
 6              Mr. Greim, if you wish to continue your
 7    direct examination of Ms. Vigil, you may do so at
 8    this time.
 9              MR. GREIM:  Your Honor, I think we're
10    actually all set with Ms. Vigil.  That was my last
11    topic.  I just couldn't get the words out before we
12    all signed off.  I do want to make sure that we've
13    moved for the admission of Exhibits 3, 4, and 5
14    before we get out of here:  3 was the website page
15    for the Secretary of State; 4 was the Patrick Rostock
16    email with Pino and Vigil; and 5 was the Catalist
17    page.
18              THE COURT:  All right.  Any objections to
19    those three exhibits, Ms. Serafimova?
20              MS. SERAFIMOVA:  (Zoom audio garbled).
21              THE COURT:  We can't hear what you're
22    saying.  You're giving us a lot of echo.
23              MS. SERAFIMOVA:  Your Honor, sorry, I was
24    in the waiting room with my phone, so that's why I
25    couldn't respond.  But can you hear me okay now?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Yes.
 2              MS. SERAFIMOVA:  Okay, wonderful.
 3              So Your Honor, no objection to 3 and 4.
 4    Objection to 5, again, hearsay, and no foundation for
 5    its effect on the listener.
 6              THE COURT:  Well, I'll go ahead and admit
 7    those.  I'll sort out in my findings of fact whether
 8    I can and should use number 5.  But I'll admit 3 and
 9    4 without conditions.  And 5, I'll take it subject to
10    objections and sort that out when I'm writing the
11    findings of fact and conclusions of law.
12              All right.  So you pass the witness, Mr.
13    Greim?
14              MR. GREIM:  I do.
15              THE COURT:  All right.  Ms. Serafimova, if
16    you wish to cross-examine Ms. Vigil, you may do so at
17    this time.
18              MS. SERAFIMOVA:  Thank you, Your Honor.
19                        CROSS-EXAMINATION
20    BY MS. SERAFIMOVA:
21       Q.   Okay.  So Ms. Vigil, I'll just jump right
22    in.  And starting from the beginning, I sent you
23    copies of all the exhibits; correct?
24       A.   You did.
25       Q.   Both before the prior hearing and yesterday
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   before this hearing?
2        A.   Yes.  I have received several exhibits.
3        Q.   And yesterday I supplemented with the
4   exhibits that plaintiffs added later in the day?
5        A.   Yes.
6        Q.   And I did ask you to review the exhibits
7   before each hearing; right?
8        A.   Right.
9        Q.   And I never told you not to read any
10  document or any information; is that right?
11       A.   No.
12       Q.   Okay.  But in our preparation, we did not
13  go over each and every document; is that true?
14       A.   That is true.
15       Q.   Now, also you were asked about Catalist and
16  why you didn't do anything, or you didn't look into
17  it since last time; correct?  And I'm paraphrasing,
18  of course.
19       A.   Correct.
20       Q.   Okay.  Did anything important happen
21  between the last hearing and today's hearing in the
22  world of the Secretary of State of New Mexico?
23       A.   Yes.  We conducted the primary election,
24  and that was on June 7, last Tuesday.
25       Q.   Okay.  And was that your primary focus
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    during this time?

 2         A.   Yes.

 3         Q.   Was there any reason -- did you

 4    intentionally not look into Catalist?

 5         A.   No.

 6         Q.   Did you think about Catalist at all?

 7         A.   To be honest, our focus was on all the

 8    tasks necessary to administer the election.

 9         Q.   And you looked at one portion of Catalist's

10    website, right, not the entire website?

11         A.   As far as the exhibit, that's the only

12    thing I've seen of their website.

13         Q.   Okay.  Now, if that exhibit that's P5 --

14    and we don't need to pull it up because I have a

15    hypothetical question -- but if that exhibit

16    contained language to the effect of:  You can see the

17    data that we received from the Secretary of State's

18    Office by clicking here, would that give you concern?

19         A.   If they were posting the voter data online,

20    yes, that is concerning.

21         Q.   Okay.  And that would be unequivocally a

22    violation, in your opinion?

23         A.   Yes.

24         Q.   And if that exhibit said something to the

25    effect:  You can buy a copy of the file that we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    received from the New Mexico Secretary of State's

 2    Office by, whatever the process is, would you find

 3    that unequivocally to be a violation of the Election

 4    Code?

 5         A.    Yes.

 6         Q.    And if that exhibit said:  We, Catalist,

 7    share every file we receive from the New Mexico

 8    Secretary of State's Office with I360 because we have

 9    the same ideological connection, would that be a

10    violation of the Election Code, in your opinion?

11         A.    Yes.

12         Q.    Okay.  But none of that was on there;

13    right?

14         A.    No.

15         Q.    And you don't actually know what their

16    product is?

17         A.    I do not.

18         Q.    And you don't know if the database they

19    mentioned contains information from other sources

20    other than secretaries of state?

21         A.    I don't know.

22         Q.    You have no idea what that product is?

23         A.    I have no idea.

24         Q.    Okay.  And then you were asked another

25    hypothetical:  If one academic uses voter data

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  obtained from your office, and then shares that voter

2  data with another academic, would that be a

3  violation.  And your answer was:  Yes, it appears

4  that it would be; correct?

5      A.  Correct.

6      Q.  And that answer is not dependent on the

7  topic of the first academic's paper, is it?

8      A.  No.  My understanding of that scenario was

9  sharing the actual data, the voter file.

10      Q.  And your answer was not dependent on the

11  topic of the second academic's paper?

12      A.  I have no idea what those topics are, no.

13      Q.  Okay.  So the content of those papers is

14  not relevant to you?

15      A.  No.

16      Q.  And the viewpoint that each hypothetical

17  academic may hold or express in their paper, that's

18  also not of concern to you?

19      A.  It is not.

20      Q.  Those are completely irrelevant subjects;

21  right?

22      A.  Correct.

23      Q.  Now, you were asked about sharing and if --

24  and let's say, if VRF discusses the data that they

25  receive from your office, if that would be a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    violation; right?
 2         A.    It was.
 3         Q.    Okay.  And the statute, 5.6, this is what
 4    we're talking about; right?
 5         A.    Correct.
 6         Q.    That statute says:  Selling, loaning,
 7    providing access to, or otherwise surrendering the
 8    voter data, that's our interpretation; correct?
 9         A.    Right.
10         Q.    It doesn't say discussing the data?
11         A.    It does not mention discussing the data.
12         Q.    So when someone requests voter data in
13    compliance with 5.5, they receive a file from your
14    office; correct?
15         A.    Yes.
16         Q.    So if I sign an affidavit, receive that
17    file, and then, you know, put it on a Drop Box and
18    let other people have access to it, would that be a
19    violation?
20         A.    Yes.
21         Q.    But me discussing what I saw in that file
22    and any discrepancies that I may have identified with
23    other people, would that be a violation?
24         A.    No.  It's specifically sharing the content
25    of the data, the file.  When I say "voter data," that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    is what I'm referring to.

2         Q.   Okay.  And if I make paper copies of the

3    file, thousands of pages, right, and I just hand them

4    out to people, would that be a violation?

5         A.   Yes.

6         Q.   Okay.  So let's talk about 5.6 a little

7    more.

8              You have heard Mr. Greim express the

9    position that in this case, you know, with respect to

10   VRF specifically, the Secretary of State's Office is

11   now advancing a so-called new interpretation of the

12   Election Code; right?

13        A.   Right.

14        Q.   And you been employed by the Secretary of

15   State's Office for how long?

16        A.   For 11 years.

17        Q.   Okay.  And during those 11 years, has the

18   Office's interpretation of 1-4-5.6 ever changed?

19        A.   It has not.

20        Q.   And what is that interpretation?

21        A.   So 1-4-5.6 refers to the use of voter data.

22   And within that same section it actually refers us to

23   a section in Article 5 that gives us the details on

24   prohibitions of using that data.  And in that case,

25   it then applies to everyone that would receive that

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                             1-800-669-9492



1    data from our office.  So we believe that there are

2    some prohibitions identified in the statute for how

3    that data may be used.  And mainly, you know, the

4    prohibitions identified in our affidavit.

5        Q.   Okay.  So that's the selling, loaning,

6    providing access to, and so on; correct?

7        A.   Yes.

8        Q.   And you mentioned the affidavit, so I will

9    pull up stipulated Exhibit 8, which is the oldest

10   version of the affidavit that we have in the record

11   in this case, if you just give me a second.  And

12   while I'm doing that, can you tell us -- so Exhibit

13   8 -- which is coming, I promise -- here it is -- was

14   this the version of the form that was in use when you

15   joined the Secretary of State's Office?

16       A.   Yes.

17       Q.   So we're talking about this first sentence

18   right here, right, under "Authorization."  And that

19   sentence is actually identical in all four versions

20   that we have on record in this case; correct?

21       A.   You're correct.

22       Q.   So I, A, J, and H.  So this language has

23   not changed since at least 2011; is that right?

24       A.   That's right.

25       Q.   Now, does this form ever go to data

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    processors?

2         A.    No.

3         Q.    In your 11 years, have you ever seen one of

4    these affidavits be signed by a data processor?

5         A.    I have not.

6         Q.    So data processors are not the intended

7    audience of this form?

8         A.    No.

9         Q.    So who is?

10        A.    Any member of the public that is requesting

11   data.

12        Q.    And it was your testimony that this

13   language informs requesters that they may not sell,

14   loan, provide access to, or otherwise surrender voter

15   data; am I correct?

16        A.    Correct.

17        Q.    Okay.  So this affidavit was updated in

18   February of this year; right?

19        A.    It was.

20        Q.    Okay.  And I'll just bring up -- I believe

21   this is the first update, but they're identical.  So

22   this is the February 5th of 2022 version; right?

23        A.    Correct.

24        Q.    So the sentence that we just discussed, the

25   first sentence, is identical; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    Yes.

2        Q.    But then you add these line items, I call

3    them, that each requester has to acknowledge, whether

4    by checking off -- yeah, okay?

5        A.    By initials.

6        Q.    Okay.  By initialing.  Oh, yes, you're

7    right.  Okay.  So if this first sentence already

8    informs the requester that they may not sell, loan,

9    or provide access to the information that they

10   receive by way of this affidavit, why did the Office

11   also include it as a separate line item?

12       A.    We added that just to provide clarity to

13   anyone that is completing this form, just as an

14   attempt to make sure that we're both educating and

15   providing them clear guidance on what they're

16   agreeing to.

17       Q.    And what triggered this update?

18       A.    Just feedback and working with other

19   election administrators, specifically our county

20   clerks, they're required to use this form.  There has

21   certainly been an increased request for data.  So in

22   just using it more and learning more about the

23   process, we received feedback that it would be

24   helpful to be clearer in this document.

25       Q.    So did this update have anything to do with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   either VRF, the VoteRef website, Local Labs, or this
 2   lawsuit, generally?
 3        A.   No.
 4        Q.   Okay.  So then if we can talk about 5.5 for
 5   a second, and I'll pull up State's Exhibit 4.  Give
 6   me just moment.  And you're familiar with that
 7   statute; right?
 8        A.   Yes.
 9        Q.   Here it is.  So here is Section 1-4-5.5.
10   Now, does this section -- tell me if you need me to
11   scroll up or down, I know you're familiar with it,
12   but does this section mention anywhere election
13   purposes?
14        A.   No.
15        Q.   Election-related purposes?
16        A.   No.
17        Q.   Anything to that effect?
18        A.   No.  There are just two definitions.
19        Q.   So paragraph C says, governmental or
20   election and election campaign purposes, right?
21        A.   I'm sorry, I didn't hear you entirely.
22        Q.   So paragraph C contains the phrase
23   governmental or election and election campaign
24   purposes, right?  We're looking at it right here?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Q.    And so this is really the only occurrence

2    of election kind of on its own; is that right?

3          A.    That's right.

4          Q.    And like you stated correctly, election

5    campaign purposes is defined, and governmental

6    purposes is defined.  But that's it; correct?

7          A.    Correct.

8          Q.    So does the Office believe that

9    definitions, which are (e)(1) and (e)(2), that these

10   are the controlling terms, the only defined terms?

11         A.    Those are the only defined terms, correct.

12         Q.    And is that why you updated the form in

13   2022, in February of this year, to remove "election

14   related"?

15         A.    Yes, to align with the statute.

16         Q.    Did you also at that time pursue a

17   statutory amendment to take out this term right,

18   "election," in paragraph C?

19         A.    We did.

20         Q.    Because it creates a little bit of an

21   ambiguity; right?

22         A.    Correct.

23         Q.    And what happened?  What was the result of

24   that process?

25         A.    So that provision -- actually, we were

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   successful.  It moved forward to the House.  It was

 2   not considered in the Senate, so it did not pass.

 3        Q.   Did it pass the House?

 4        A.   It did.

 5        Q.   And did it do so on the last day of the

 6   legislative session?

 7        A.   There was a time issue, correct.

 8        Q.   Okay.  So did either of these actions,

 9   taking "election related" out of the form and

10   pursuing the statutory amendment, did either of those

11   actions have anything to do, again, with VRF, any of

12   the plaintiffs, the website, this lawsuit, Local

13   Labs, any of that?

14        A.   No.

15        Q.   Then why did you pursue them?

16        A.   Again, in just -- kind of corresponding

17   with any other stakeholders, mainly our county

18   clerks, and just those that are utilizing, you know,

19   this form, and reviewing the statute, we felt like we

20   needed to provide clarity; that that was an

21   unnecessary term that was simply creating confusion,

22   so it was just part of cleanup.

23        Q.   And I'm sorry, I moved a little ahead.  Are

24   you able to see Exhibit H at this point on my screen?

25        A.   I'm still seeing the statute.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       Q.   Okay.  So forgive me, let me share that.

2    Okay.  So we'll look at Exhibit H, again, which is

3    the version that's been in use at least since 2011

4    and through 2020; right?  It was changed in 2021?

5       A.   Changed in January of '21, yes.

6       Q.   Okay.  All right.  So this was in use for

7    at least 10 years, starting at least in 2011, maybe

8    prior to that, but we don't know, because you were

9    not in the office before that; right?

10      A.   Right.

11      Q.   So you see that this form actually has

12   research as one of the purposes; right?

13      A.   I do.

14      Q.   And I represented to you yesterday in

15   preparation that research was actually part of

16   Section 5.5 up until 2011, when the legislature

17   changed the language; right?

18      A.   You did, you did share that.

19      Q.   Okay.  So yes, this term "research"

20   remained on the form under "purposes" until January

21   of 2021; right?

22      A.   It did.

23      Q.   When version A, Exhibit A, replaced this

24   version of the form?

25      A.   Right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE


MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And then down here in "Authorization,"

2    second sentence, it also mentions research; right?

3    A.   Um-hum.

4    Q.   And that term remained in the form until

5    2022, when versions I and J were put out; correct?

6    A.   Right.

7    Q.   And this version H, which was in use since

8    2011, also includes "election related"; right?

9    A.   It does.

10   Q.   And I represented to you yesterday that the

11   definitions for governmental and election campaign

12   purposes were added to the statute by the legislature

13   in 2015; right?

14   A.   Right.

15   Q.   And yet "election related" remained on the

16   form, again, until 2022?

17   A.   It did.

18   Q.   So is it fair to say that this form, while

19   it may be desirable, does not get updated the moment

20   that the language of the statute changes; right?

21   A.   Right.

22   Q.   Sometimes there is quite a delay; right?

23   In the case of "research," we had a decade?

24   A.   Correct.

25   Q.   And that just happens in state government;

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    right?

2         A.    Correct.

3         Q.    There was nothing intentional about failing

4    to update this form prior to 2021?

5         A.    There was not.

6         Q.    Okay.  And was the update of taking out

7    "election related" again, at all related to the

8    plaintiffs in this case or this case or Local Labs or

9    anything that we're talking about in this lawsuit?

10        A.    No.

11        Q.    Okay.  And I think -- well, what prompted

12   the specific update of taking "election related" out?

13        A.    Again, you know, with the increase in

14   requests for this data, and different entities

15   seeking this data, it was just highlighted as a need

16   to clarify the process and update our documentation

17   to align and to support the statute.  So it was

18   really, again, just based on questions received from

19   either a requester, a county clerk, and being

20   reviewed, the documents in the process, and make it

21   clearer.

22        Q.    Okay.  And, by the way, before I forget,

23   would you say that the term "academic" would be

24   related to research?

25        A.    It certainly could.

SANTA FE OFFICE                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                           Albuquerque, NM 87102
(505) 989-4949                                                                                       (505) 843-9494
FAX (505) 843-9492                                                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   So you also testified, and I think you
 2   covered this today, but very quickly, you also
 3   testified that you were asked -- and I'm again
 4   paraphrasing -- but you were asked whether there were
 5   any purposes that were allowed prior to "election
 6   related" being taken out of the form that are no
 7   longer allowed today.  And what is your answer, if
 8   you wouldn't mind?
 9        A.   I'm sorry, if you could repeat your
10   question, Olga.
11        Q.   You were asked whether there are any
12   purposes that voter data can be used for that were
13   allowed when this form was in use, and it had the
14   "election related" option, but are no longer allowed
15   today now that "election related" is not part of the
16   form.  Do you remember?
17        A.   I do remember.  And changing that does
18   not -- did not make any change or narrow the scope as
19   to how this data can be used.
20        Q.   Because your office does not change the law
21   by changing the form, by updating the form to reflect
22   the law; correct?
23        A.   Correct.
24        Q.   Okay.  And so that change was not intended
25   to narrow the scope of permissible uses that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    requesters may engage in; correct?
 2        A.   No.  Again, just cleaning up the form to
 3    really align with the statute.
 4        Q.   Okay, now, you were also asked about, you
 5    know, certain paraphrases of this language on your
 6    website.  And I'm pointing to this -- if you'd give
 7    me just one second.
 8             Okay.  So if I can draw your attention to
 9    the second sentence under "Authorization."  It says,
10    "I hereby swear that the requester will not use or
11    make available to others to use the requested
12    material for purposes other than governmental
13    election research and campaign purposes."  Okay.  And
14    I think this language "will not use or make available
15    to others to use," that was also on your website.  Do
16    you remember that?
17        A.   Yes.
18        Q.   And you were asked:  Can one make the data
19    available to others to use for any lawful purposes?
20    Do you remember that?
21        A.   I remember.
22        Q.   Okay.  And now, if I can take you again to
23    State Exhibit 4.  Okay.  And if we look at paragraph
24    C, it says, "Each requester" -- and I'm skipping
25    forward -- "shall sign an affidavit that the voter
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    data shall not be made available or used for unlawful
 2    purposes."  Do you see that?
 3         A.   I do.
 4         Q.   So would you agree with me that the second
 5    sentence under the affidavit is, almost verbatim,
 6    quoting from 5.5?
 7         A.   Right.
 8         Q.   And then it is -- let me just pull it up
 9    again.  Okay, here we go.  So the first sentence is
10    the one that references 5.6; is that correct?
11         A.   You are correct.
12         Q.   And then the second sentence references
13    5.5, which has its own mention of use in making
14    available; is that right?
15         A.   Yes.
16         Q.   All right.  Now -- and we just covered
17    this -- you do continue to honor any and all versions
18    of this form that your office receives, as long as
19    they're fully and properly filled out; right?
20         A.   That's correct.
21         Q.   And, of course, as long as you don't have
22    any actual knowledge that the data will be used
23    unlawfully?
24         A.   Right.
25         Q.   Is that a fair paraphrase?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          A.    Right.

2          Q.    All right.  So you were asked last time

3     if -- and you discussed this earlier today -- but the

4     question was whether it is the Secretary of State's

5     position that if a requester shares information,

6     regardless of why they do it, they have made a false

7     affidavit, or if they have otherwise violated the

8     law, New Mexico law, do you remember that?

9          A.    I do.

10         Q.    So I'm going to pull up -- I believe this

11    is Exhibit I -- and this is the most recent -- but

12    again, the most recent version, I believe -- or at

13    least since February of this year, but they all have

14    the same language in relevance to what I'm about to

15    cover.  Okay.  So this is the February 10th version,

16    but it's recent enough.  So under "Information of

17    Requester," it does have a space for "Organization";

18    right?

19         A.    Right.

20         Q.    So it presupposes that the requester can be

21    an entity; is that correct?

22         A.    Yes.

23         Q.    And it can also be an individual; correct?

24         A.    Right.

25         Q.    And you were asked and I think we covered
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    this, so very briefly you were asked:  If a political

 2    party requests to use the data on its own behalf as

 3    an entity, can that voter data be shared internally.

 4    And what is your position?

 5         A.   Yes.

 6         Q.   And the same for a company, right, if a

 7    company requests on its own behalf, meaning they bear

 8    the criminal responsibility of an entity, right, they

 9    can share internally, but not externally.  Is that

10    your position?

11         A.   Yes.

12         Q.   But if that political party or hypothetical

13    company goes out to upload the file that they receive

14    from you to the internet, that would be a violation;

15    right?

16         A.   Right.

17         Q.   And if, let's say, the Republican Party

18    shares with a Libertarian candidate, that would be a

19    violation unequivocally; right?

20         A.   Right.

21         Q.   And then, of course, you were asked more

22    nuanced questions, and you said you would need to

23    seek legal counsel; right?

24         A.   I did.

25         Q.   But these are more black and white

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    situations where you don't have hesitation; correct?
 2         A.   Correct.
 3         Q.   And your prior answer is consistent with
 4    these hypotheticals; right?
 5         A.   Yes.
 6         Q.   Now, you were asked questions about denying
 7    a request by VRF.  So let's go over that quickly.
 8              You have never actually denied a request
 9    for voter data where an affidavit is properly filled
10    out, we've covered that; right?
11         A.   Right, we have not.
12         Q.   Even if an incorrect version or an older
13    version of the form is used?
14         A.   Right.
15         Q.   And you did not deny Mike Lippert or Local
16    Labs' request that led to this case; correct?
17         A.   Correct.
18         Q.   And, as you discussed with Mr. Greim, up
19    until May 27th, VRF had never submitted an affidavit
20    for voter data; right?
21         A.   Right.
22         Q.   And they did do so on May 27th, and that
23    affidavit is part of P10; right?  Plaintiffs' Exhibit
24    10.
25         A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Sorry, Plaintiffs' Exhibit 10.  And let me

2  pull it up real quick.  Here we go.

3           Okay.  So again, as of today, you have not

4  denied an affidavit that they have submitted; right?

5      A.   We have not.

6      Q.   You may deny it tomorrow; is that correct?

7  And this is the affidavit.

8      A.   We have not, again, taken a final position,

9  but there is a potential, based on the concern of the

10 data being made public, meaning posted online.

11     Q.   And we did discuss -- you and I and the

12 other people that you identified -- we did discuss

13 this request in the recent past -- I'm not sure

14 exactly when it was -- right?

15     A.   Right.

16     Q.   And do you remember that we discussed that

17 some data may be provided and other may be withheld,

18 but we needed to take a look at all the data to make

19 the final decision?

20     A.   Correct.

21     Q.   And you haven't seen a draft response?

22 Your general counsel is working on that response;

23 correct?

24     A.   Correct.

25     Q.   You haven't seen that draft response?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I have not.

 2        Q.   Okay.  So you don't know, and you haven't

 3   seen the data that was pulled in response to this

 4   Plaintiffs' 10, which is a request, a lengthy

 5   request?

 6        A.   I have not.

 7        Q.   Okay.  And, you know, Mr. Greim asked you,

 8   you know, why not just take their promise at face

 9   value.  I know you're not an attorney.  But do you

10   know if this is a legally binding promise of any

11   sort, where they say that they will not upload the

12   data that they receive?

13        A.   I'm not an attorney, but this does not

14   appear to be a legally binding document.

15        Q.   Okay.  So that's just their promise first

16   of all, right?

17        A.   Right.

18        Q.   And secondly, they state -- I'm sorry, here

19   we go -- they state that they will not upload the

20   data unless they are granted relief in this case or

21   any other legal proceeding; right?

22        A.   Right.

23        Q.   Okay.  So, if the Court grants their motion

24   for preliminary injunction, right, which means allows

25   them to put the data online, then we go and appeal,
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                                        Albuquerque, NM 87102
(505) 989-4949                                                                     (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492
                                                                                 1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
1    and an appellate court says:  No, that was a mistake,
2    would the harm have been done, meaning if you give
3    them additional information, that would already be
4    online, even though, ultimately, it would have been a
5    mistake; correct?
6         A.   Correct.
7         Q.   Okay.  And with respect to this particular
8    affidavit, which is the first and only that VRF has
9    submitted, and the first and only that your office
10   actually plans on denying, right, you're doing it
11   because I advised you that you would potentially be
12   committing a conspiracy; is that right?
13        A.   Correct.
14        Q.   So if the request is denied, it will be on
15   my advice not to violate the New Mexico Criminal
16   Code?
17        A.   It will be based on the advice, yes, and
18   the fact that we do not want to violate the law.
19        Q.   Okay.  So would you call this a unique
20   circumstance?
21        A.   Absolutely.
22        Q.   Okay.  I'll move on from the form.  I will
23   pull up State's Exhibit 6 and State's Exhibit 7.  And
24   we'll start with 6.  Here we go.
25             And so I'll represent to you, even though
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    you may know, that both the complaint in this case
 2    and the motions cite to -- and this is State's
 3    Exhibit 6; it's three pages, so I'm going to go to
 4    the last page -- both the complaint and the motions
 5    provide and rely on this press release from the
 6    Office, and another one which is State's Exhibit 7.
 7              So first, I want to ask you, are you
 8    familiar with this press release?
 9         A.   Yes.
10         Q.   Dated June 30, 2017, for the record.  And
11    then, going to the actual letter that is in front of
12    it, June 28, 2017, a letter from the Presidential
13    Advisory Commission on Election Integrity.  Are you
14    familiar with that letter?
15         A.   Yes.
16         Q.   Does the press release at the end of
17    State's Exhibit 6 announce your office's decision to
18    deny the request for data or documents that is
19    contained in this letter?
20         A.   I'm so sorry, Olga.  I'll ask you to repeat
21    that.
22         Q.   No worries.  Sure.  Let's look at the
23    highlighted language on the first page.  It says, "I
24    am requesting that you provide to the Commission the
25    publicly available voter roll data for New Mexico,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    including, if publicly available, the first and last

2    names," and goes into detail.  So you agree that this

3    letter requested voter data; right?

4        A.    It did.

5        Q.    And then the press release says, "My office

6    has not yet received the letter.  But that being

7    said, I will" -- it goes on to say that the office

8    will not release personally identifiable information

9    and not release any other voter information, like

10   names or addresses "until I am convinced the

11   information will not be used for nefarious or

12   unlawful purposes"; right?

13       A.    Correct.

14       Q.    So this press release, June 30, 2017,

15   responds to this letter request, June 28, 2017; am I

16   correct?

17       A.    You are correct.

18       Q.    Okay.  And this letter is not an affidavit

19   as required under Section 5.5, is it?

20       A.    No.

21       Q.    And, in fact, under Section 5.5, you can

22   only provide voter data if you receive such an

23   affidavit; is that right, under Section A?

24       A.    It is required, you're correct.

25       Q.    So actually, the Secretary of State was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   statutorily required to deny this letter request, was
 2   she not?
 3              MR. GREIM:  Objection, leading, and calls
 4   for a legal conclusion.
 5              THE COURT:  Try, Ms. Serafimova --
 6              MS. SERAFIMOVA:  Your Honor, may I respond?
 7              THE COURT:  Well, no.  You're leading, and
 8   you have been leading.  So let the witness testify.
 9   She's your witness, so make sure you don't lead.
10              MS. SERAFIMOVA:  Your Honor, I'm doing
11   cross.
12              THE COURT:  You're still -- she's your
13   witness.  She's a friendly witness.
14              MS. SERAFIMOVA:  Well, she was --
15              THE COURT:  No.  Ms. Serafimova, I've made
16   my --
17              MS. SERAFIMOVA:  May I make my record,
18   please?
19              THE COURT:  No.  You're arguing with the
20   Court.
21              MS. SERAFIMOVA:  I'm asking you to let me
22   make a record.  Mr. Greim led her the entire time.
23   She's his witness, he subpoenaed her.
24              THE COURT:  Ms. Serafimova, stop.  You're
25   arguing with the Court.
```


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1           MS. SERAFIMOVA:  Your Honor, I need to make
2    a record.
3           THE COURT:  Stop leading.  That's the
4    ruling of the Court.  Stop leading.
5           MS. SERAFIMOVA:  Even though Mr. Greim was
6    allowed to lead?
7           THE COURT:  Yes.
8           MS. SERAFIMOVA:  Even though he subpoenaed
9    her?
10          THE COURT:  Yes.
11          MS. SERAFIMOVA:  Okay.
12   BY MS. SERAFIMOVA:
13      Q.   All right.  So, okay, let's go to State's
14   Exhibit 7.  Give me a second.
15          Okay.  Are you familiar with this letter,
16   July 26, 2017?
17      A.   Yes.
18      Q.   And what is this letter?
19      A.   This letter is from the Presidential
20   Advisory Commission on Election Integrity.  It was
21   submitted to our office.  And, ultimately, it is
22   requesting data from our office.
23      Q.   And then we go to page 3, it's a press
24   release dated July 27, 2017.  Are you familiar with
25   this press release?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1        A.   I have seen this press release.

 2        Q.   And what does that press release do with

 3   respect to the letter that we just discussed?

 4        A.   Again, this, similar to the one prior, is a

 5   response to that request.

 6        Q.   Okay.  And it's a denial?

 7        A.   This request does indicate that our office

 8   will not be providing that data, yes.

 9        Q.   Okay.  And is this letter -- again, is this

10   letter an affidavit, as required under Section 5.5?

11        A.   This is not an affidavit, as required, to

12   be able to lawfully provide data to a requester.

13        Q.   Okay.  So changing subjects, going to

14   Catalist and I360.  I will pull up State's Exhibit 3.

15   So State's Exhibit 3 has four pages, and these are

16   two affidavits by Catalist and two affidavits by

17   I360.  Do you see that?  Catalist, Catalist, I360,

18   I360; right?

19        A.   Right.

20        Q.   And these are the exhibits we have for the

21   record in this case.  Have you had a chance to look

22   at them?

23        A.   I have seen them.

24        Q.   Okay.  Can you tell us whether they are

25   complete on their face?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    The requests are complete on their face.

2        Q.    And do they contain any information to

3    suggest that voter data would be used unlawfully?

4        A.    No.

5        Q.    And so were they treated differently from

6    anyone else who submits a fully executed valid

7    affidavit?

8        A.    No, the data was provided.

9        Q.    So you did not treat them more favorably?

10       A.    No.

11       Q.    And you did not treat them less favorably?

12       A.    We did not.

13       Q.    Okay.  And as you sit here today, do you

14   have any reason to believe that either one of these

15   companies is violating New Mexico law in the way

16   they're using the voter data?

17       A.    I do not have that information, no.

18       Q.    And if you did, would you report them to

19   the Attorney General's Office for investigation?

20       A.    Yes.

21       Q.    All right.  Now, if we can go to P2,

22   Plaintiffs' Exhibit 2.  Give me a second.  You were

23   asked, you know, if your office responded to emails

24   from VoteRef, if you remember.  So this is one such

25   email.  Have you seen this before?

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                         Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492
                                                                                   1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1        A.   I have seen this exhibit.

 2        Q.   Okay.  When did you see -- I know it's an

 3   exhibit, but the email itself -- when did you see it

 4   for the first time?

 5        A.   Oh, just in preparation for the case.

 6        Q.   Okay.  So you see that it was sent December

 7   14 --

 8        A.   I do.

 9        Q.   -- of 2021?  You did not see it in that

10   timeframe, it sounds like?  Or did you?

11        A.   No.

12        Q.   Do you know whether or not your office

13   responded to this email?

14        A.   I don't believe so.

15        Q.   Do you know why it was not responded to?

16        A.   Can you make it just a little bit bigger,

17   please?

18        Q.   Yes.  And tell me if you need me to scroll

19   up or down.

20        A.   No.  Okay.  So I know that we received an

21   inquiry from a media outlet, ProPublica, and that's

22   kind of where this "discrepancy" comment was brought

23   to our attention.  So I think they kind of came in

24   simultaneously.  And we did look into the data.  But

25   I don't believe a formal response to this email, to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    my knowledge, was sent.

2         Q.   Okay.  Now, was there an intentional

3    decision made not to respond to this email as far as

4    you know?

5         A.   No.

6         Q.   It sounds like it was wrapped up with the

7    ProPublica discussion or at least -- you did work

8    with ProPublica; correct?

9         A.   We did.

10        Q.   So you mentioned the discrepancy, and

11   that's the second full paragraph here.  Are you

12   familiar, when I say discrepancy, you know what I

13   mean?

14        A.   Yes.

15        Q.   So again, according to VoteRef, there is a

16   difference between the reported number of voters who

17   voted on November 3, 2020, and then the number of

18   people that were on the file that you provided in

19   April to Local Labs, with an indication that they had

20   voted in that election; correct?

21        A.   Correct.

22        Q.   And the second number was smaller by 3,844

23   individuals.  Is that your understanding?

24        A.   Yes.

25        Q.   Okay.  So tell me, did you look into this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   so-called discrepancy?

2        A.   We did.   At the time, I reached out to our

3   technical team, and asked if they could review the

4   data to just kind of confirm that it was essentially

5   based off of routine list maintenance activities.

6   So, you know, I have an understanding of that

7   process, so that was immediately where my mind went.

8   But we did ask the data to be reviewed, and it was

9   confirmed.

10       Q.   All right.   So when you say "it was

11  confirmed," what was the outcome of that review?

12       A.   Essentially, there is a valid reason for

13  there to be a difference in the numbers, and it is

14  not, in fact, a discrepancy or a recordkeeping issue.

15       Q.   Okay.   All right.   And then, if we can -- I

16  can take you to Plaintiffs' Exhibit 4.   There we go.

17  All right.   And you talked about this with Mr. Greim.

18  But really quickly.   So if we go to the second page,

19  he's referring to this February 15th email as a

20  records request.   Looking at this email, is that a

21  valid IPRA request under New Mexico law?   IPRA being

22  Inspection of Public Records Act.

23       A.   It's not a valid IPRA request.

24       Q.   Okay.   Is it a request under -- is it an

25  affidavit under 5.5 that is necessary to receive

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    voter data?
 2         A.   It's not.
 3         Q.   And so, on March 11, when Mr. Rostock said
 4    to you, "Per Dylan's contact with the AG, we're not
 5    fulfilling records requests from VoteRef."  So Dylan
 6    is who?
 7         A.   Our general counsel.
 8         Q.   So do you know who Mr. Rostock is actually
 9    referring to at the AG's Office?
10         A.   No.
11         Q.   And just to clarify, when you said earlier
12    we would need to ask the Attorney General, you don't
13    mean actually Attorney General Balderas; right?
14         A.   I don't.  I mean the office.
15         Q.   Someone from the Attorney General's Office?
16         A.   Correct.
17         Q.   And so you, yourself, though, did not
18    receive that guidance from the Attorney General's
19    Office?
20         A.   Not directly, no.
21         Q.   Okay, he's conveying that to you and to
22    Ms. Pino?
23         A.   Yes.
24         Q.   All right.  So was the fact that this
25    February 15th email is not a valid IPRA request, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    not a valid affidavit under Section 5.5, did those

2    factors play into your decision to follow the advice

3    that's been conveyed to you not to respond?

4         A.   Correct.

5         Q.   Okay.  But -- and I'll take you to, if I

6    may, Plaintiffs' Exhibit -- I'm sorry, not

7    Plaintiffs' Exhibit 10, but a document --

8              MS. SERAFIMOVA:  Mr. Greim, I want to put

9    your declaration in front of the witness.  Any

10   objection?

11             MR. GREIM:  No, no objection.

12        Q.   Okay.  So I'm going to pull up what was

13   filed, I believe, it was filed -- correct me if I'm

14   wrong -- yesterday?

15             MR. GREIM:  It was just served.  I don't

16   think we filed it.

17             MS. SERAFIMOVA:  Your Honor, may I pull up

18   the document?

19             THE COURT:  Yeah, I don't think there is

20   any objection to that.

21        Q.   Okay.  All right.  So the February 15th was

22   not an IPRA request, and it was not a valid records

23   request.  But, as Mr. Greim admits in this document,

24   they did submit an IPRA request on April 26th; right?

25        A.   Right.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                              1-800-669-9492
                                                      e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   And your office did respond to that IPRA

2   request; right?

3      A.   We would respond to any IPRA request, yes.

4      Q.   And here, in B, Mr. Greim admits that you

5   did respond?

6      A.   Yes.

7      Q.   And, in fact, he says that the documents he

8   received were turning to Exhibits Plaintiffs' 4, 6,

9   7, 8, and 9; correct?

10      A.   Yes.

11      Q.   You didn't treat VRF any differently than

12   you would anybody else who files or submits a valid

13   IPRA request; is that true?

14      A.   That is true.

15      Q.   Now, if we can talk about the actual file

16   that Local Labs received from your office.  That file

17   is dated -- believe it's April 12th, but Mr. Greim

18   said April 13th -- either way, one of those dates;

19   right?

20      A.   I don't have those dates, but that sounds

21   reasonable.

22      Q.   Okay.  So as of today, that's almost

23   exactly 14 months.  Would you agree with that?

24      A.   Yes.

25      Q.   Do the voter rolls change?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Yes, they do.

2      Q.   How often?

3      A.   It's a dynamic file.  So, you know, we are

4   either receiving new information or updating

5   information on a very regular basis.  And when I say

6   "we," it is really happening at the county clerk

7   level.

8      Q.   So is it weekly?  Monthly?  How frequently

9   would you say?  The smallest increments.

10     A.   You know, things can be updated every day.

11     Q.   Okay.  Can you explain to us how that

12  happens?

13     A.   Sure.  So if we receive a new registration

14  that is something that would need to be processed.

15  During the election, we have the opportunity for

16  registering prior to voting.  So that's another place

17  where that record would be updated even during an

18  election.

19          Other than that, we have routine list

20  maintenance activities.  So if somebody -- we refer

21  to it as automatic voter registration.  So if I make

22  a transaction at the Motor Vehicle Division in the

23  State of New Mexico, I'm offered an opportunity to

24  either register, or in some cases I can provide

25  updated information to my current registration.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE                                         1-800-669-9492
                                                    e-mail: info@litsupport.com

1          We also receive regular files from the

2     Department of Health and the Department of

3     Corrections.  So if there is a voter that has become

4     deceased, that information is updated, or if there is

5     a either felony conviction or a felony satisfaction,

6     that information is also updated.  We participate as

7     a member of ERIC, which is an organization, really --

8     sorry, a group of states that participate in list

9     maintenance activity.

10          So we share information across member

11    states, Motor Vehicle Division, and voter

12    registration data, so that there is a comparison

13    done.  So if a voter has moved across a state, we can

14    do outreach to those voters and ask them to also

15    update their information.

16          And then county clerks can also just review

17    obituaries within their jurisdiction to make updates

18    to a voter being deceased.  Part of ERIC is also just

19    reaching out to -- I mentioned cross-state, but we

20    also do review of any in-state potential duplication

21    due to data entry, or if a voter has just moved

22    across a county.

23          So, you know, New Mexico has many policies

24    that are pro list maintenance and working every day

25    to make sure that we are keeping our information as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    updated as possible.

2         Q.   Okay.  And if I may show you stipulated

3    Exhibit F.

4         A.   And I was remiss in my list, Olga.  So just

5    for the record, you know, we are required to follow

6    federal law.  And we conduct a program under NVRA

7    also that will prompt a cancellation of a voter if

8    they have not -- if we've received official mail

9    that's been returned, their record will be flagged.

10   And if it remains flagged through two general

11   election cycles, and there has been no participation

12   by that voter or any update to their record, in that

13   case there is a cancellation process that would also

14   move forward.

15        Q.   Okay.  And then are you familiar -- this is

16   Exhibit F -- are you familiar with this document?

17        A.   This appears to be from our website.

18        Q.   Okay.  Have you reviewed this before?

19        A.   Have ever used -- I'm sorry?

20        Q.   Have you reviewed it?

21        A.   Oh, I have seen the exhibits in preparation

22   for this hearing.

23        Q.   So it's a summary of what you just shared

24   with us, right, it's a summary of that process?

25        A.   Yes.  We push that information out.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Okay.  Now, if someone is just looking at,
 2   you know, a database that contains the file that you
 3   provide, so just, you know, voter and all the
 4   information, just that database, would they know that
 5   that's a dynamic file that can look different from
 6   day to day?
 7        A.   No.
 8        Q.   And if a voter is looking at -- or if a
 9   citizen, anybody online, is looking at stale voter
10   data, could they incorrectly conclude that there is
11   voter fraud, even though there isn't any?
12        A.   They wouldn't be looking at accurate data.
13        Q.   And could they incorrectly conclude that
14   there are inaccuracies in your recordkeeping even
15   though there aren't any?
16             MR. GREIM:  Objection, calls for
17   speculation, and leading.
18             THE COURT:  Well, if she can answer the
19   question, I'll allow it.  Try not to lead.  Let the
20   witness answer the question.  But if she can answer
21   the question, I'll allow it.  Overruled.
22        A.   Reviewing stale, outdated, inaccurate,
23   incomplete data, all of that provides an opportunity
24   for the analysis to be, you know, false, and for
25   there to be confusion created from that analysis, if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    individuals don't have a full picture of complete and

2    accurate data.

3        Q.   Okay.  If I may take us to Plaintiffs' 1,

4    which is a press release that was released by Voter

5    Reference, VRF.  So if you look at where my cursor

6    is, "These discrepancies" -- do you see that

7    sentence?

8        A.   Yes.

9        Q.   And again, so this is dated December 16,

10    2021?

11        A.   Yes.

12        Q.   And the data you provided to Local Labs was

13    April of 2021?

14        A.   Correct.

15        Q.   So a good six, seven months in between;

16    right?

17        A.   Six months, yes.

18        Q.   All right.  So if you read that sentence --

19    and I'll do it for the record.

20        A.   Actually --

21        Q.   "These discrepancies" --

22        A.   Did you say April to December?

23        Q.   Yes.  It's more, you're right; it's like

24    eight.

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   So here, Ms. Swoboda testified that this

2  was her conclusion; right?  She concluded, "These

3  discrepancies don't necessary indicate fraud, but the

4  differences between the voter list and the election

5  canvass indicates, at the very least, issues with

6  recordkeeping."  Do you see that?

7    A.   I do.

8    Q.   Would you agree with me that this is one

9  example of a person looking at stale data and

10  reaching incorrect conclusions?

11    A.   Yeah.  I mean, April to December, we have

12  eight months' worth of updates that are not being

13  analyzed and not being included.

14    Q.   Then I'd like to show you State's Exhibit

15  8.

16        MS. SERAFIMOVA:  Mr. Greim, I know we added

17  it to the list this morning, so let me know if you

18  have any disagreement with me putting that on --

19        MR. GREIM:  No, go ahead.  We don't know

20  what it is yet, but we've seen it.  So go ahead.

21    Q.   Okay.  So this is just a printout of the

22  VoteRef website, Colorado data, a random person on

23  that database.

24        And so, Ms. Vigil, so this particular

25  person happens to have no record of vote history.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     But if I can draw your attention to the first

2     sentence.  It says, "The information on this website

3     about this voter, including records of this voter's

4     voting history, was provided to VRF by the Colorado

5     Secretary of State on March 29, 2021."  Do you see

6     that?

7          A.   Yes, I do.

8          Q.   So I pulled this up this morning; you see

9     up here, June 15, 2022; correct, and shared it with

10    you.  So, as of today, this information is over a

11    year old; right?  It's more like 15 months old, more

12    or less?

13         A.   It is.

14         Q.   And you've looked at this language that

15    they provide, have you?

16         A.   Yes.

17         Q.   I should ask have you?

18         A.   Yes.

19         Q.   Does it explain anywhere what this date,

20    March 29th, actually means?  Does it say that the

21    data is dynamic anywhere?

22         A.   No.  It provides the date as to when it was

23    received, but there is no information as to why that

24    is relevant.

25         Q.   Okay.  And does it provide any information

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

1    as to what the Colorado Secretary of State's Office

2    does to update the information?

3         A.   There is no information that would give

4    anyone on this website an understanding of how to

5    really understand the data.

6         Q.   Okay.  And then, if someone obtains a file

7    from you, and then decides to -- a voter data file --

8    and then decides to upload it to a website, could

9    they, in theory, manipulate that data prior to

10   uploading it?

11        A.   Just that last part, if you can repeat.

12        Q.   With the proper skills, could they

13   manipulate that data before uploading it?

14        A.   Sure.  I mean, the file that we provide is

15   in a format that it can be edited.

16        Q.   And then, if someone were to obtain the

17   data from -- your data from someone else's website,

18   could they then alter it and redistribute it in an

19   altered state?

20        A.   Yes.  We would have no control, once it was

21   made available online, as to how it was manipulated

22   and then shared out.

23        Q.   And again, do you think that could lead

24   people to believe that there is voter fraud or other

25   issues that are actually nonexistent?

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                               (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1        A.    I think that giving, again, inaccurate,

2   incomplete information, it has a great potential to

3   create further confusion in the process.   And I think

4   it has the potential to really spread misinformation

5   to the public.

6        Q.    And then, if someone obtains -- let's say

7   someone files an affidavit and obtains my personal

8   address, right, and then are they, by signing the

9   affidavit, is there a criminal penalty attached to

10  misusing my address in any way?

11       A.    Did you say if I do not sign the affidavit?

12       Q.    No.   I'm sorry, let me rephrase.   If

13  someone does sign an affidavit, and they obtain voter

14  data, is there a criminal penalty that attaches to

15  any misuse of that voter data?

16       A.    Yes.

17       Q.    And that threat of criminal prosecution,

18  would you agree that, presumably, it acts as a

19  deterrent to the data being misused?

20       A.    I think that's a fair analysis.

21       Q.    That's the whole point; right?

22            MR. GREIM:   Your Honor, just objection,

23  leading; calling for speculation.

24            THE COURT:   Well, I'm going to sustain.

25       Q.    All right.   So if someone obtains the data

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   not by signing an affidavit, not through your

2   regulatory process, but from a website or from

3   someone else, a third party, are you aware if there

4   is any criminal penalty under the New Mexico Election

5   Code that would apply to that person?

6       A.   Again, I had this conversation, this issue

7   has been discussed.  And my understanding of the

8   legal analysis is that, the affidavit is required,

9   one; but without that, they are not subject to the

10  penalties, the criminal penalties in particular.

11      Q.   Okay.  If they misuse the data, and other

12  than reposting it again and going under 5.6?

13      A.   Correct.

14      Q.   Okay.  So the same question if someone

15  obtains the data from a website like VoteRef, and

16  then goes on to sell that for a commercial purpose,

17  do you believe there is any criminal liability that

18  could potentially apply to them under the Election

19  Code?

20      A.   My understanding is that there is a

21  criminal penalty for anyone that uses it unlawfully.

22      Q.   Okay.  But if they don't fall under 5.6,

23  meaning they don't -- well, I take that back.  Thank

24  you, strike that.

25           Okay.  And now -- and thank you, it's been



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    a long morning, and I appreciate your continued

2    attention.

3              The final topic.  Under the Election Code,

4    can I -- in order to register to vote, can I provide

5    a P.O. Box address?

6         A.   No.  You are required to provide a physical

7    address.  You do have the option to also provide a

8    mailing address.  But the physical is required.

9         Q.   Okay.  Can it be my work address?

10        A.   No, it needs to be your residential

11   address.

12        Q.   Okay.  So if I want to keep my actual

13   residential address, where my children live, a

14   secret, I cannot do that in order to -- meaning, if I

15   want to also register to vote, I have to provide it;

16   right?

17        A.   You have to provide your physical address

18   in order to register, that's correct.

19        Q.   And then, finally -- and I do promise --

20   almost two more questions.  If someone submits an

21   affidavit, they do have to pay a fee, right, for the

22   data?

23        A.   Yes.

24        Q.   But if someone downloads the data from

25   someone else's website, there is no way for you to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    collect a fee; is that right?

 2         A.    That's correct.

 3         Q.    And then truly the final question:  Has

 4    your office retaliated against VRF in any way since

 5    you've become aware of them?

 6         A.    No.

 7               MS. SERAFIMOVA:  Nothing further.  Thank

 8    you.

 9               THE COURT:  Thank you, Ms. Serafimova.

10               Mr. Greim, do you have redirect of Ms.

11    Vigil?

12               MR. GREIM:  No, Your Honor, we don't have

13    any redirect.

14               THE COURT:  All right.  Ms. Vigil, you may

15    step down.  Is there any reason that Ms. Vigil cannot

16    be excused from the proceedings, Mr. Greim?

17               MR. GREIM:  No.

18               THE COURT:  Can she be excused,

19    Ms. Serafimova?

20               MS. SERAFIMOVA:  Yes, Your Honor.

21               THE COURT:  All right.  You are excused

22    from the proceedings.  Thank you for your testimony.

23               All right.  Mr. Greim, do you have your

24    next witness or evidence?

25               MR. GREIM:  Your Honor, the next witness
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   was -- we were going to have Ms. Serafimova call

2   Ms. Pino, and then I was just going to kind of cross

3   and direct at the same time.  We've got about 11

4   minutes left on our regular prior setting.  And so I

5   wanted to suggest this:  I wanted to suggest that we

6   just -- I mean, I think we've got a full record here,

7   I don't know what itch we haven't scratched yet,

8   other than walking through the criminal referral.

9           But, Your Honor, I think everything can be

10  handled in, you know, proposed findings and

11  conclusions.  And I would like to suggest that each

12  party just agree to admit the other's exhibits for

13  purposes of this, and that we use what little time we

14  have left maybe just for some closing remarks, and

15  then we can submit something to you in writing.

16          THE COURT:  How do you feel about that,

17  Ms. Serafimova?

18          MS. SERAFIMOVA:  Well, Your Honor, again,

19  the reason we ran out of time is because Mr. Greim

20  promised a 20 minute direct/cross, and took an hour

21  and a half.  I have three pages of questions for Ms.

22  Pino.  And they subpoenaed her.  We had to brief, and

23  to have a motion hearing on whether or not she has to

24  appear.  And I think it's very unfair at this point

25  to say that I don't get to ask my questions.  We had

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   agreed to a witness list.  I relied on that
 2   agreement.  She's here.
 3            THE COURT:  Well, let me ask Mr. Greim.
 4   She's not going to go along with your proposal.  Do
 5   you want to call her, or do you want to let
 6   Ms. Serafimova call her?
 7            MR. GREIM:  I'll let Ms. Serafimova call
 8   her, and I'll be ready to cross when it's time.
 9            THE COURT:  All right.  Do you have, Mr.
10   Greim, any further witnesses or evidence you wish to
11   present?
12            MR. GREIM:  Yeah, the only thing I'd say
13   is, I do have some evidence I want to present through
14   my cross/direct of Ms. Pino.  But it will go quicker
15   if I can do those all at once in responding to what
16   she does.  Because I think I have less than she does.
17            THE COURT:  Is that acceptable,
18   Ms. Serafimova?
19            MS. SERAFIMOVA:  Well, I mean, he can use
20   his cross however he needs to.  I'm not sure what I'm
21   agreeing to.
22            THE COURT:  Well, I think what he's doing
23   is he's saying he's not going to do his direct right
24   now.  He's going to do his direct and cross as part
25   of his cross.  Is that acceptable to you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. SERAFIMOVA:  Well, Your Honor, that was
 2     our agreement for me, but then I was not allowed to
 3     lead.  So, no, it's not acceptable to me.
 4              THE COURT:  Well, these are adverse
 5     witnesses to Mr. Greim, so that's the reason he can
 6     lead.  They're not adverse to you.  And I need to
 7     hear from the witness rather than you.  You can make
 8     the arguments later.
 9              Mr. Greim, I think you better just call Ms.
10     Pino and do your direct.
11              MR. GREIM:  Okay.  I'm just afraid we're
12     going to duplicate, but that's fine.  I'll call her
13     now.
14              THE COURT:  All right.  Ms. Pino, can you
15     hear us?  You're muted, Ms. Pino.
16              THE WITNESS:  Sorry about that.  Yes.
17              THE COURT:  All right.  If you will stand
18     and raise your right hand, my courtroom deputy,
19     Ms. Rotonda, will swear you in and then we'll take
20     your evidence under oath.
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    SHARON PINO,
 2        after having been first duly sworn under oath,
 3        was questioned and testified as follows:
 4                    DIRECT EXAMINATION
 5              THE COURT:  All right.  Ms. Pino, you may
 6   be seated.
 7              Mr. Greim, if you wish to conduct direct
 8   examination of Ms. Pino, you may do so at this time.
 9   BY MR. GREIM:
10        Q.   Ms. Pino, what is your title?
11        A.   I am Deputy Secretary of State.
12        Q.   And what are your duties?
13        A.   I, essentially, am also the Chief of Staff,
14   so I run the office, help make any decisions, policy
15   decisions or otherwise, direct projects, oversee all
16   of the directors of the office.
17        Q.   Who do you report to?
18        A.   I report to Secretary of State Maggie
19   Toulouse Oliver.
20        Q.   Who directly reports to you?
21        A.   All of the directors directly report to me,
22   which is our director of business services, our
23   elections director, our director of IT, our human
24   relations manager, our general counsel, and our
25   communications director.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   Okay.  Does Ms. Vigil report to you?
 2          A.   Yes.
 3          Q.   Okay.  I just want to skip right into sort
 4     of a key document in this case.  Did there come a
 5     time when you drafted a criminal referral for VRF to
 6     the Attorney General?
 7          A.   Yes.
 8          Q.   Okay.  And did anyone aid you in preparing
 9     that draft?
10          A.   Yes, the draft was prepared by our general
11     counsel, and submitted to me for signature, for
12     review and signature.
13          Q.   And did you satisfy yourself that it was
14     fully accurate?
15          A.   Yes.
16          Q.   And the facts were true to the best of your
17     knowledge and information?
18          A.   Yes.
19          Q.   And the legal arguments you made in that
20     were nonfrivolous; correct?
21          A.   Yes.
22          Q.   You believed, and believe now, they're
23     absolutely correct under New Mexico law?
24          A.   Yes.
25          Q.   You wouldn't change any of the arguments
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   you made in the letter, would you?

2        A.    I don't believe so, no.

3        Q.    Did the Secretary approve it as well?

4        A.    No.

5        Q.    Who else was involved in drafting it other

6   than you and the general counsel?

7        A.    I believe our general counsel gathered

8   information from any of our staff that were involved,

9   or had information relating to that referral.

10       Q.    Is there any important information that

11  your office had at the time, that you now know your

12  office had at the time, that was not included in the

13  letter?

14       A.    I don't believe so.  Nothing comes to mind.

15       Q.    And have you developed any additional

16  theories of criminal liability since the letter was

17  drafted?

18       A.    No.

19       Q.    I'm going to go ahead and share this.  I'm

20  going to show you what we've marked as Exhibit C,

21  it's a Joint Exhibit.  And yeah, this version is

22  missing the attachments, I'm just going to tell you.

23  We have an updated Exhibit C.  This one doesn't have

24  the attachments.  But as I scroll through, do you

25  recognize this as a true and correct copy, minus the

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                            1-800-669-9492
                                                   e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    attachments of the referral?

2         A.   Yes.

3         Q.   And the three attachments were

4    communication to a Mr. Lippert from the Secretary of

5    State regarding the voter data request, Mr. Lippert's

6    signed authorization form on behalf of Local Labs,

7    and a screen shot of some website clip from

8    VoteRef.com.  Do you recall that?

9         A.   Yes.

10        Q.   I don't know that we need to refer to

11   those, so we'll just keep using this version that we

12   have up here.

13             Now, let's see, the first place I want to

14   direct you is the opening paragraph.  In the very

15   last sentence you say, "Swift action is needed as

16   voter data can quickly be manipulated and used to

17   spread election misinformation."  Did I say that

18   correctly?

19        A.   Yes.

20        Q.   As of this point, had New Mexico had any

21   experience with people using voter data to spread

22   election misinformation?

23        A.   Yes.

24        Q.   Okay.  Who had done that?

25        A.   There was a later referral that was also

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    made to the Attorney General's Office regarding New
 2    Mexico Audit Force, and again, their use and
 3    manipulating of voter data that -- I don't, to this
 4    day, know how they got the voter data -- but it being
 5    manipulated and used to spread election
 6    misinformation.
 7         Q.   Okay.  And I understand that.  But my
 8    question to you is about at the time you wrote this
 9    letter?
10         A.   At the time we wrote the letter, no.
11         Q.   Okay.  And were you concerned that VRF was
12    about to engage in spreading election misinformation?
13         A.   Yes.  By placing all of the data on a
14    publicly available website.
15         Q.   And so did you believe that the placing of
16    the data on the website constituted misinformation?
17         A.   No.
18         Q.   Okay.  So what was it about putting the
19    data on the website that was going to spread election
20    misinformation?
21         A.   It had the potential to.
22         Q.   Okay.
23         A.   Again, because when you put the data out
24    there, it can be manipulated in any way to do so.
25         Q.   Now, you have no information that VRF has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    ever manipulated its data, do you?

2         A.   No.

3         Q.   At the time you wrote this letter, you had

4    no reason to believe that VRF was about to manipulate

5    the data, did you?

6         A.   Only the potential that it could be

7    manipulated, yes.

8         Q.   Right.  And I mean, anybody who receives

9    the data can manipulate the data; correct?

10        A.   There are strict provisions regarding the

11   use of the data that you legally obtain.

12        Q.   But there was nothing particular by VRF

13   that caused you to think that it was about to

14   manipulate the data or spread misinformation?

15        A.   I had none of that information at the time.

16   That's why we made the referral to the Attorney

17   General's Office, so they could thoroughly

18   investigate.

19        Q.   Now, by the time of this letter, your

20   office had actually already accused VRF of spreading

21   misinformation; correct?

22        A.   You'll have to tell me exactly.  I don't

23   know specifically what you're referring to.

24        Q.   Okay.  Well, we'll come back to that.  By

25   this point, VRF had stated in a press release that

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    there were discrepancies that could not be explained

2    between the data -- I'm sorry, the election canvass

3    results and the data as of April 13, 2021; correct?

4         A.   I am aware of a press release put out by

5    VRF.  I'm not aware of the dates and how that

6    coincided with this letter.  I don't recall that.

7         Q.   How did your office first become aware of

8    VRF?

9         A.   I personally became -- just from staff in

10   our office making me aware that the data had been

11   placed on a publicly available website.

12        Q.   Do you recall, have you ever heard of an

13   outfit called ProPublica?

14        A.   Yes.

15        Q.   What are they?

16        A.   I believe it's a news organization, or some

17   kind of reporter.

18        Q.   Okay.  Are you aware that they're a

19   progressive media and advocacy group?

20        A.   No, I'm not aware of that.

21        Q.   Okay.  So as far as you're concerned, they

22   have no sort of partisan lean at all; is that

23   correct?

24        A.   I'm not aware of that, no.

25        Q.   Okay.  Had you heard of them before this?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Not before this, that I can recall.
 2   Again -- yeah, I hadn't.
 3        Q.   Now, did Mr. Curtas come to you and say
 4   that a ProPublica reporter reached out to him?
 5        A.   Mr. Curtas, yes.  We meet weekly, and he
 6   did mention that ProPublica had reached out to him.
 7        Q.   And did you work with Mr. -- I've been
 8   saying his name wrong this whole time, by the way --
 9   did you work with Mr. Curtas on his response to
10   ProPublica?
11        A.   No.
12        Q.   Do you know who reviewed or approved any of
13   his responses?
14        A.   No.  I mean, I don't -- I think he might
15   have -- typically, when he gets any kind of media
16   request, he'll reach out to staff within the office
17   who might have the information that he's looking for.
18   You know, everyone who is able contributes, and he
19   puts that together and provides the response to the
20   media request.  But I typically do not micromanage
21   exactly what his final responses are.
22        Q.   Does he get legal review within the office?
23        A.   If it's needed, yes.  He will usually look
24   to our general counsel, or sometimes to me, just to
25   verify if something is accurate.  And I don't recall
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    him doing that related to this.

2         Q.   Is it possible he did and you don't

3    remember or you just don't think he did?

4         A.   It's certainly possible I do not remember.

5         Q.   So after the outreach from ProPublica, did

6    the Secretary of State's Office do anything to gather

7    facts to determine whether there was a violation of

8    the law occurring?

9         A.   Related to data being placed on a publicly

10   available website, yes.

11        Q.   Okay.  And who oversaw that response?

12        A.   Our general counsel.

13        Q.   And so who is it -- well, let me ask you

14   this:  Did counsel for the Secretary of State

15   determine that it was unlawful to place the voter

16   data on the website?

17        A.   I mean, the referral was prepared, so, yes,

18   we did make a determination that there was enough

19   there of potential violation of law.  Again, that's

20   not for our office to determine.  That's why, if we

21   have facts supporting a potential violation of law,

22   we make a referral to the Attorney General's Office

23   for that investigation or review.  We don't have

24   investigators in our office.

25        Q.   Okay.  Well, let's just dive into it.  I'm

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492
                                                                   e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   going to turn to the section on criminal violations.

2   It's page 2.

3        A.   Okay.

4        Q.   And so the first thing that's cited here,

5   the very first thing, is 1-4-5.5C.  And you'll see

6   that -- everybody else is very familiar with this in

7   our hearing, but this is the affidavit requirement;

8   correct?

9        A.   Yeah, that is how you legally go about

10  making a request for voter data.

11       Q.   And the conclusion of your paragraph is

12  that, "We do not believe providing this personal

13  voter data on a private website that intends to

14  spread misinformation about the 2020 general election

15  meets the definition of appropriate use, as either

16  for a 'governmental purpose, election related, or

17  election campaign purposes.'"  Did I read that right?

18       A.   Yes, that has to do with, again --

19       Q.   I'll have another question for you, okay?

20       A.   Sure.  No problem.

21       Q.   And so you've listed three purposes there.

22  Where did you pull those three purposes from?

23       A.   Those are what a person has to assert

24  within 1-4-5, as a valid purpose for requesting the

25  information, the voter data.  It's what you have to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    assert:  You know, I'm aware of all these provisions

2    legally, and will abide by them in requesting this

3    voter data.

4         Q.   Got it.  And on the form, at this time, you

5    could actually check either "governmental, election

6    related, or election campaign purposes"; correct?

7         A.   I believe so, yes.

8         Q.   All right.  How was "election related

9    "different from "election campaign purposes"?  You've

10   listed them out separately here.

11        A.   They're not.  I mean, it's essentially the

12   same thing.  And when you go to the definitions, I

13   believe -- and I'd have to take a look at the

14   statute -- but there is only the two definitions.

15   There is the election campaign purposes and the

16   governmental purposes.  So, in essence, "election

17   related" is election campaign purposes.

18        Q.   Now, earlier you told us that you had a

19   factual basis for everything that's put into this

20   letter.  Do you recall that?

21        A.   Yes.

22        Q.   I'm going to ask you, in this last sentence

23   you say, "Providing this personal voter data on a

24   private website that intends to spread misinformation

25   about the 2020 general election."  So what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    information did you have that VRF intended to spread

2    misinformation about the 2020 general election?

3         A.   It's only what it could potentially be used

4    for, not information.  And as I've stated before, I

5    don't think at the time this request was made, or

6    this referral was made, there was any information

7    related specifically to VRF.

8              Those provisions specifically were cited

9    more for the requester of the data.  Because, when a

10   person requests the data, they're signing the

11   affidavit that they're going to abide by all of these

12   provisions.  Certainly, if they've submitted --

13   intentionally submitted a false affidavit, there

14   could be some liability for the requester.

15        Q.   Well, at this point, you knew VRF had it up

16   on its website, you knew their identity; correct?

17        A.   Yes.  And the referral related to VRF more

18   how they were using the data, which is a completely

19   different statute.

20        Q.   Well, we'll get to that.  My question --

21   I'm going to stay on this sentence here for a second.

22   How is it that intending to spread misinformation

23   about the general election brings VRF's use outside

24   of governmental purpose?  Let's stick with that one

25   first.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492
                                                        e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1       A.   Again, that wasn't my determination to

2    make.  And again, I didn't prepare this.  But I'm

3    assuming when these were laid out in the letter by

4    our counsel it was simply to cite all of the

5    provisions of the statute.  When we looked

6    specifically at VRF, and when I read this referral

7    and reviewed the referral and signed the referral, it

8    had more to do related to VRF with the unlawful

9    use --

10       Q.   Okay.

11       A.   -- of the voter data, which is again

12    putting it on a publicly available website where it

13    could be manipulated.

14       Q.   Okay, my question is different, okay?  My

15    question is:  What is it about spreading

16    misinformation about the general election that brings

17    it outside of this first of the three uses here,

18    governmental purpose?  Why does that not comport with

19    governmental purpose?

20       A.   Again, I think that's misciting -- and can

21    I take a look at the statute, because there is a

22    definition of governmental purpose under the statute.

23       Q.   Sure.  Yeah, do you have it there in front

24    of you?

25       A.   Let me get my book.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   I, unfortunately, don't have an exhibit

2   that actually has the statutes in there.

3      A.   The definition of governmental purposes

4   means "noncommercial purposes relating in any way to

5   the structure, operation, or decision making of a

6   federal, state, or local government."  So that is

7   what brings it outside of that definition of

8   government purpose.

9      Q.   Is it because it's misinformation?

10     A.   It's because it's information.  And, again,

11  it does not relate in any way to the structure,

12  operation, or decision making of federal, state, or

13  local government.

14     Q.   What is this information that you are

15  concerned about?  Was it about the voter rolls not

16  being properly maintained?

17     A.   I think, as I've stated, if the data

18  potentially can be manipulated in any way that can be

19  utilized to spread misinformation based on the fact

20  that it's been manipulated.

21     Q.   Okay.  Let's move to the next one --

22  actually, we'll cover them together, because you've

23  testified that they're really referring to the same

24  thing.

25     A.   Um-hum.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                            1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                           e-mail: info@litsupport.com

1     Q.   Okay.  How is misinformation about the 2020

2  general election not election or election campaign

3  related?

4     A.   Because, again, election campaign, it's

5  essentially the same thing.  And that's why election

6  campaign purposes as defined under E, means "relating

7  in any way to a campaign in an election conducted by

8  a federal, state, or local government.  So a

9  campaign.  Campaign uses, such as:  I'm getting this

10  voter data so I can send out information on a

11  candidate or an issue specifically reaching out to

12  voters, it's being used in some way -- or again, to

13  conduct canvassing activities.  It's somehow being

14  utilized for the campaign.

15     Q.   So is it your position that using the data

16  to talk about the operation of the election itself is

17  not within election related or election campaign

18  purposes?

19     A.   I don't think that that's my position at

20  all.  That's certainly one interpretation.

21     Q.   Okay.  Well, I'm just trying to understand

22  why misinformation about the 2020 general election is

23  not election related?

24     A.   And I'm not saying that it's not.  What I'm

25  saying is what was intended in this letter when we're



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    saying that intends to spread misinformation about
 2    the 2020 election, meaning that the data can be
 3    manipulated to spread that misinformation.
 4         Q.   Okay.  But the specific sentence, it says,
 5    "We do not believe."  That includes you; right?
 6         A.   Yes.
 7         Q.   You reviewed this before you signed it.
 8    You said you were comfortable with the facts, you
 9    were comfortable with the legal theories; right?
10         A.   Yes.
11         Q.   Okay.  So I'm sorry, I want to move on from
12    this point, but I want to get an answer to this.
13    Let's just replace "misinformation" with -- you know,
14    let's call it communication of data that you believe
15    has been manipulated, all right?  So, first of all,
16    you're telling us that you don't have -- at the time
17    you wrote this letter, you had no information --
18         A.   I did not write the letter.
19         Q.   So at the time you signed the letter --
20         A.   Um-hum.
21         Q.   -- right?  You had no information that VRF
22    had actually done that; right?
23         A.   I personally did not.  Like I said, the
24    information in the letter, we had some staff that
25    looked at the website and put together the letter.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   So, no, I did not personally have any information at
 2   the time that -- again, it was -- or VRF had
 3   conducted any kind of misinformation or had
 4   manipulated the data.
 5        Q.   Okay.  Are you now suggesting that staff
 6   did, and you just didn't know about it?
 7        A.   That may be the case, like I said.  But
 8   again, if there is a potential to manipulate the data
 9   to spread misinformation, that does not fit the
10   statutory definitions of government purpose or
11   election campaign purposes.  And that was my
12   understanding when I reviewed and signed the letter.
13        Q.   Okay.  And you still believe that today;
14   correct?
15        A.   I still believe that today.
16             THE COURT:  Mr. Greim, we've been going
17   another hour and a half, so I'm going to have to give
18   Ms. Bean a break here.  So we'll be in recess for
19   about 15 minutes.
20             (The Court stood in recess.)
21             THE COURT:  All right.  Ms. Pino, I'll
22   remind you you're still under oath.
23             Mr. Greim, if you wish to continue your
24   direct examination of Ms. Pino, you may do so at this
25   time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. GREIM:  Thank you, Your Honor.

2        Q.   Ms. Pino, you're on mute.

3        A.   Sorry about that.

4        Q.   So the letter we've been looking at is --

5   I'm sorry, is Olga here?  There she is, okay.

6              The letter we've been looking at is dated

7   December 20.

8        A.   Um-hum.

9        Q.   Now, I want you to keep that in mind.  I'm

10  going to now go to another document.  This is

11  Plaintiffs' P8, okay, Plaintiffs' Exhibit 8.  And I

12  need to share it.  Okay, there we go.

13             So we're on P8.  And you'll see it's an

14  email chain that begins with an email way back on

15  March 2, between Mr. Curtas and Megan O'Matz at

16  ProPublica.

17             I'm going to take us back in time as I

18  scroll down here.  Scrolling us back, I'm going to

19  stop at this email here, on Friday, December 17.  So

20  this is a Friday.  That referral went out on Monday;

21  right?

22        A.   Yes, that appears are the dates, yes.

23  Yeah, Monday, you're right.

24        Q.   So she asks him -- they've been going back

25  and forth.  And she says, "Thank you, Alex, much
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    appreciated.  Question:  Can you elaborate on how the

2    publication of voter data online may violate state

3    law?"  Then in parentheses she says, "VoteRef likely

4    will argue that they are using it for election and

5    research purposes.  Thank you again, Megan."  Did I

6    read that correctly?

7         A.   Yes.

8         Q.   And then we'll see Alex answers on Tuesday,

9    the 21st, so the day after, now, the referral has

10   gone out.

11        A.   Um-hum.

12        Q.   And you'll see he refers back to that

13   referral.  So this is his response.  "Hey, Megan, the

14   issue relates to the transfer and publication of the

15   voter data."  Then he says, "This is the crux:  We do

16   not believe providing this personal voter data on a

17   private website that intends to spread misinformation

18   about the 2020 general election meets the definition

19   of appropriate use as either for a governmental

20   purpose, election related, or election campaign

21   purposes."  Did I read that right?

22        A.   Yes.

23        Q.   Then he goes on and he attaches the

24   referral letter, which lays it all out; right?

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And he's quoting the very sentence that we
 2   just spent a little while on before the break; right?
 3        A.   Yes.
 4        Q.   And he tells her that that is the crux.  Do
 5   you know what it means when someone says this is the
 6   crux of something?
 7        A.   Yes.
 8        Q.   What does that mean to you?
 9        A.   Like the most crucial point of it.
10        Q.   Is what he told her correct, is he
11   accurately telling ProPublica what the Office's
12   position was here?
13        A.   No.
14        Q.   He was not?  So this is false?
15        A.   I can't speak for Alex or why he put that.
16   But that was not the crux of it from my perspective,
17   in reviewing and signing the referral to the AG's
18   Office.
19        Q.   But he quoted directly from the referral,
20   did he not?
21        A.   He did, yeah.
22        Q.   He accurately quoted it, didn't he?
23        A.   Yes.  But again --
24        Q.   I don't have a pending question.  I know
25   you'll probably want to explain that.  But I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    have a pending question on that right now.

 2              So let's go back to the letter.  Actually,

 3    before we leave it, I'm going to, just to save time,

 4    I want to ask you about something earlier.  We had a

 5    long talk about what is this misinformation.  You

 6    said you didn't know anything about it, but maybe

 7    other staff did.  Do you recall that?

 8         A.   Yes.

 9         Q.   So let me take you earlier down in this

10    Exhibit F.  I'm going to go to the very first contact

11    that your office got from Megan O'Matz at ProPublica.

12    December 14, 2021.  I'm on page 7 of Exhibit 8.  And

13    she says, "I'm a reporter at ProPublica looking into

14    VoteRef."  And she mentions the discrepancy.  And

15    then she has two questions.  One, she says, "What

16    could be the possible explanations for the

17    discrepancy in New Mexico?  And then, two, and did

18    your office have any correspondence with this group

19    about their findings or methodology?  Can you please

20    provide copies to me."  Did I read that right?

21         A.   That's correct, that's what it says.

22         Q.   Now, do you recall internal discussions

23    about how to deal with this outreach from ProPublica?

24         A.   I don't recall specifics.  I recall I was

25    made aware of the request from ProPublica.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Okay.  I'm going to scroll here to his
 2   actual response, which comes on Thursday, December
 3   16, which is -- and now, we're getting very close to
 4   the referral, but still beforehand; right?
 5        A.   Um-hum.
 6        Q.   So he responds, "Hi Megan, simply put,
 7   VoteRef.com is misleading the public about New
 8   Mexico's voter rolls and are perpetuating
 9   misinformation."  Did I read that right?
10        A.   Yes.
11        Q.   Having seen this, do you now recall
12   internal discussion among staff about VoteRef
13   engaging in misinformation?
14        A.   Not specifically about VoteRef engaging in
15   misinformation.  I do recall a conversation about,
16   again, sort of the misreading -- how voter data could
17   be misread, because it is, essentially, like point in
18   time.  I mean, it's dynamic.  It's changing.  There
19   could be lots of reasons why the voter rolls change
20   on a day-to-day basis.
21        Q.   Okay.  And do you recall discussion in your
22   office about how this was an effort to cast doubt on
23   the 2020 elections, and that they're an affront to
24   our democracy?
25        A.   I don't recall that specifically, no.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Okay.  So you see that Mr. Curtas provides

2   this as an official comment to ProPublica; right?  Do

3   you see that language?

4      A.   "React to your specific questions," is that

5   what you're referring to?

6      Q.   No, it's in the main paragraph.  So it

7   says, "These attempts by political operatives to cast

8   doubt on the 2020 elections are an affront to our

9   democracy and the professionals who run our elections

10  throughout the country."  Did I read that right?

11     A.   Yes.

12     Q.   Now, was there discussion about this in the

13  Secretary of State's Office before Mr. Curtas sent

14  this email out?

15     A.   Again, I don't recall this specific

16  discussion.  I'm sure there likely was.  And this is

17  not unlike other requests that we've dealt with since

18  2020, and that's pretty much been our position.

19     Q.   Okay.  So this is the Secretary's position,

20  and this is your position, too; is that right, Ms.

21  Pino?

22     A.   Yes.  If there is attempts by political

23  operatives to cast doubt on the 2020 election by

24  either, again, manipulating data, or falsely claiming

25  that there is discrepancies, when there is not, yes,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that is an affront.
 2        Q.   Right.  And not just if there are, but the
 3   position was that these are just such -- these are
 4   those attempts; correct?
 5        A.   Again, I don't recall the specifics related
 6   to the VoteRef discussion or the ProPublica requests.
 7        Q.   Okay.  Let's look now -- we'll drill down,
 8   and I'll skip the bullet point on discrepancy.  In
 9   the second bullet point, this is answering your
10   question about whether VoteRef had reached out, he
11   says, "No, our office has not been contacted by this
12   group to discuss their findings, likely because that
13   would not serve their intended goal of spreading this
14   misinformation."  Did I read that right?
15        A.   You read that right.
16        Q.   Now, is that a true statement?
17        A.   You'd have to ask Alex; he made the
18   statement.
19        Q.   Is it true that -- well, now, I'm going to
20   ask you whether the office had, in fact, been
21   contacted by VRF?
22        A.   I'm not aware that we had, no.
23        Q.   Okay.  Would it surprise you to learn that
24   they had, in fact, been contacted by VRF to get an
25   answer for why there was a discrepancy?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Again, I'm not aware that they had reached

2  out, or any communications that Alex had had, either

3  with VoteRef or any other entity related to this.

4      Q.   Do you recall any internal discussion

5  asking Mr. Curtas not to disclose VRF's request for

6  information?

7      A.   No.

8      Q.   Would you be concerned if Mr. Curtas had

9  been wrong; that, in fact, VRF had reached out, he

10 falsely accused them here?

11     A.   If Alex, again, made an inaccurate

12 statement publicly, I would always be concerned about

13 that.

14     Q.   Or privately to ProPublica; right?

15     A.   Even privately, publicly; if again, he made

16 an inaccurate assessment, I would be concerned about

17 that, and I would want us to correct that.

18     Q.   Okay.  And then, we're about done with

19 this.

20          Where the normal paragraphs start again, he

21 says, "Because accusations from political operatives

22 like this are meant to impugn the integrity of our

23 voter rolls, I'd also just want to note that our

24 office is confident that the process and procedures

25 already in place for voter list maintenance, not only

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   follow all state and federal guidelines," and he goes

2   on.

3          I'm going to focus on the first part of

4   that sentence.  What information did the Secretary's

5   Office have that VRF was acting as a political

6   operative and meant to impugn the integrity of New

7   Mexico voter rolls?

8      A.   Again, as I have stated, I had no specific

9   information related to VoteRef, or any of their

10  actions at this time, other than, again, how they

11  were illegally using voter data by putting it out on

12  a public website.

13     Q.   Why did the Secretary's Office take the

14  position that VRF was a political operative trying to

15  impugn the integrity of New Mexico's voter rolls?

16     A.   You would have to ask Alex that question.

17  Those were his words.  And I did not review this,

18  or -- I don't micromanage Alex -- or why he would

19  have said that.  You'd have to ask him.

20     Q.   Okay.  So does anybody else know?  Would

21  anybody else have approved this language?

22     A.   Again, I supervise Alex, and I don't

23  micromanage everything that he puts in an email or a

24  response.  We go over generally.  And he knows what

25  the position of the office is, broader position on

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                     1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                         e-mail: info@litsupport.com

1    general issues, and so he frames that in his own

2    words.  And I don't go over and micromanage that.

3        Q.   Can people who hear from Alex Curtas,

4    whether it's newspapers or the public, can they be

5    confident that that's really the official position of

6    the Secretary of State's Office?

7        A.   The general positions, yes.  I am not aware

8    that Alex has ever put out anything misrepresenting

9    the general position or policies of our office.

10       Q.   And it's your sworn testimony that you did

11   not consult with Mr. Curtas before he published these

12   statements?

13       A.   I don't recall specifically.  And again, I

14   wouldn't have -- I know I didn't go over those email

15   responses.  But I'm sure we discussed generally the

16   ProPublica request, and what our general position

17   was.  I just don't recall the specifics of those

18   conversations.

19       Q.   Okay.  Well, are his statements at least

20   consistent with your general position regarding VRF

21   and its conduct?

22       A.   About VRF and its conduct?  Again, as I

23   have already stated, I was not aware of specifics

24   about VRF spreading misinformation at the time that

25   this was done.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492
                                                                                   1-800-669-9492
                                                                          e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   Okay.  And my question is not about whether

2   you knew the specifics.  My question is:  Are his

3   statements consistent with the Secretary of State's

4   general position about VRF and VRF's conduct?

5      A.   I couldn't answer that question, because

6   again, I don't think our office has taken a position

7   on VRF or its conduct, other than the fact of what we

8   put in the referral, that we believe that them

9   putting voter data on a publicly available website

10  may be a violation of New Mexico State law.

11     Q.   Now, you say "may be."  The letter is not

12  that -- the letter is more definite than that, isn't

13  it?

14     A.   Yes.  I think it laid out our facts and

15  positions.  But this is not a legal brief, and we had

16  not conducted any investigation.  Just on the facts

17  and information available to us at the time, we

18  outlined the statute that either -- and I believe

19  that there were several potential targets in that

20  letter; that being Local Labs who signed off on an

21  affidavit asserting that they intended to use the

22  data in a certain way.  So that could have

23  potentially been a false swearing.

24          And then there was also the conduct of

25  VoterRef, if they improperly used the data under New

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mexico law by making it publicly available on a

2    website.

3         Q.   Okay.  And Local Labs' false swearing would

4    be that it was -- the data was not used for one of

5    the three purposes that you mention here; correct?

6         A.   Under the -- what is it? -- 5.5, and,

7    again, what you have to affirm and swear off in an

8    affidavit of when you request the data, yes.

9         Q.   Very good.  Thank you.

10            Let's now go to the other -- there is

11   another theory here.  I don't want to leave that

12   behind because you've referenced it a few times.  If

13   you look in the last paragraph before the conclusion,

14   the very last point raised it kind of stands out with

15   the word "additionally."  It's in the very middle of

16   the paragraph.  Do you see it there?

17        A.   Yes.

18        Q.   Referring back to Exhibit C for the record

19   here.

20            And so after running out the other theory,

21   it says, "Additionally, Section 1-5-22A states, and

22   the signed authorization form quotes that" -- then it

23   has a long quote from the statute; right?

24        A.   Yes.

25        Q.   However, the signed authorization form

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    doesn't actually include that full quote, does it?

2         A.   What signed authorization form are you

3    referring to?

4         Q.   The one in your referral letter.  Do you

5    see after the word "additionally"?

6         A.   Yes.

7         Q.   Do you follow me?  That's the affidavit;

8    right?

9         A.   That's the affidavit?  Or that's the

10   language of the statute?

11        Q.   Well, it says, "Section 1-5-22A states, and

12   the signed authorization form quotes that" -- and

13   then it has a long quote; right?

14        A.   Yes.

15        Q.   But the signed authorization form doesn't

16   actually have that full quote, does it?

17        A.   I'd have to look at it to reference that.

18        Q.   We can do that.

19        A.   Okay.

20        Q.   Let's pull it up.  I'm going to pull up

21   Joint Exhibit A.  This is the signed authorization

22   form.  Let's look at what Mr. Lippert signed.  So

23   here's what it actually says.  Take a look.

24        A.   Okay.

25        Q.   Okay.  The authorization form doesn't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    actually have that quote, does it?

2        A.   Not exactly, no.

3        Q.   No.  It's missing all the language about

4    who that applies to; right?

5        A.   What do you mean who it applies to?

6        Q.   Let's look.  The quote says, "Unlawful

7    disposition of the voter file consists of the willful

8    selling, loaning, providing access to, or otherwise

9    surrendering of the voter file, duplicates of the

10   file, or a part of the file by" -- okay, let's stop

11   there.  So if you go back to A -- let's go back for a

12   second -- it stops.  It says, "Duplicating or

13   alteration of information," and then it says, "As

14   stated in" -- and it just refers to the statute;

15   right?

16       A.   Yes.

17       Q.   Okay.  So the authorization doesn't tell

18   you who that applies to; right?

19       A.   I believe -- can I correct what my

20   interpretation is?

21       Q.   Sure.  Sure.

22       A.   So when I'm looking at 1-4-5.6, and

23   specifically it says, "Any person, organization, or

24   corporation or agent representing thereof commits

25   unlawful use of voter data, mailing labels, or

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492
                                                                   e-mail: info@litsupport.com




BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    special -- is guilty of a 4th degree felony" -- hold

2    on one second.  "Unlawful use of voter data consists

3    of knowingly, willful use of such information for

4    purposes prohibited by the Voter Records System Act."

5              So then, when we go to the Voter Records

6    System Act -- let me get that.  Hold on.  It refers

7    to "unlawful disposition."

8              So, specifically, when I read that, it's

9    saying:  If you do it for these purposes outlined in

10   1-5-22, those are unlawful purposes?

11             Now, when we look at -- let's see, Section

12   B of 1-4-5.6, that expands the world of people beyond

13   what 1-5-22 says only data processors, data

14   processors, agents, those types of people.  This

15   says, "Any person who engages in that unlawful

16   use" -- that's again, some of which is outlined in

17   1-5-22, which could be "Any person, organization,

18   corporation or agent or officer or representative."

19   So any of those people who use the data for an

20   unlawful purpose, such as the purposes outlined in

21   1-5-22, could be guilty of a crime.

22        Q.   Sure.  And I understand that that's your

23   theory in this case.  That actually wasn't my

24   question to you, but I think we've saved time because

25   I bet that was going to come out on your other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    direct.

 2              But you would agree with me that what's

 3    actually in chapter 50 -- or should we call it

 4    Article 5 -- Article 5 makes no reference to other

 5    people being covered, does it?

 6         A.   Article 5 does make reference to other

 7    people being covered.  Oh, I'm sorry --

 8         Q.   Does not?

 9         A.   I'm looking at the wrong one.  Yes, you're

10    right.

11         Q.   What you're saying is that 1-4-5.6B expands

12    what's in Article 5 to cover other people?

13         A.   Yes.  Otherwise, you wouldn't have the need

14    for the statute.  You would just have it in 1-5-22.

15         Q.   By the way, did you understand that 1-4-5.6

16    and 1-4-5.5 have both been in Article 5, and were

17    moved over to Article 4?

18         A.   What?

19         Q.   Did you know that that had happened?

20         A.   No.  Oh, that had moved over to 1-4?

21         Q.   Yes.

22         A.   No.

23         Q.   In fact, there is no actual purposes

24    referenced at all in 1-5-22, are there?  You can take

25    a look there.  There is no reference to purposes in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    there, are there?

 2         A.   Not in this specific one, no.

 3         Q.   Let's move on.  I don't want to take more

 4    of our time on this.  I do want to ask you a couple

 5    of questions.

 6              I understand your position is that any

 7    sharing of the data by somebody who has requested it,

 8    any sharing of the data, outside of an entity or from

 9    one person to another, violates this combination of

10    statutes; correct?

11         A.   Again, not if it's done for governmental

12    purpose or a campaign purpose that are outlined in

13    the statute or specific to requesters.  When you

14    request it, that's what you're saying:  You

15    understand it needs be used for this purpose.

16         Q.   I see.

17         A.   VoteRef was never a requester.

18         Q.   I see.  So a requester actually can share

19    it with somebody else, but it needs to be for

20    governmental or campaign purposes?

21         A.   Those are the appropriate uses for those

22    purposes, yes.

23         Q.   Okay.  So the problem, in your view,

24    becomes when the person that they share it with for

25    governmental or campaign purposes, in turn, shares it

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

1    with someone else?

2         A.   If whoever the data is shared with uses it

3    for an unlawful purpose, such as the purposes that

4    are outlined in 1-5-22, then, yes, that's

5    problematic.

6         Q.   Okay.  Well, of course, there are no

7    purposes outlined in 1-5-22, we just agreed on that;

8    correct?  There is no reference to purposes in there?

9         A.   Or uses.  Sorry.  If they use it in that

10   the manner, then yes, that's what prompted the

11   referral, and specifically related to the conduct of

12   VoteRef of placing the data on a public website.

13        Q.   So, in your view, what Local Labs did was

14   okay, so long as it was for governmental or campaign

15   purposes; right?

16        A.   If they utilized the data and had no

17   willful intention to share it for an illegal purpose,

18   then -- it's not that you can never share the data.

19   It's that you're affirming on this affidavit, this is

20   how you're going to utilize the data.  And they

21   didn't utilize it in that way.

22        Q.   Okay.  Now, what if the person who receives

23   the data utilizes it for the same purpose?  Is that

24   okay?

25        A.   I don't know.  I guess I'd have to think



SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                   201 Third NW, Suite 1630
Santa Fe, NM 87501                          Albuquerque, NM 87102
(505) 989-4949                                    (505) 843-9494
FAX (505) 843-9492                            FAX (505) 843-9492
                                                  1-800-669-9492
                                            e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    about that.  But that wasn't the purpose of this

2    referral.

3          Q.   Right, but --

4          A.   If they do it for a government purpose or

5    the election campaign purposes, as defined in 5.5,

6    like if you're doing it within your entity.  For

7    instance, we provide the data to campaigns, or to

8    parties.  And they are sharing it with candidates who

9    are using it, again, for lawful purposes, then there

10   is nothing wrong with that.

11         Q.   Okay.  And that's a position of your office

12   as best as you understand it; correct?

13         A.   Yes.

14         Q.   But the problem here with VoteRef was that

15   it was not using it, in your view, for governmental

16   purposes or campaign purposes; right?

17         A.   It was actually using it for an unlawful

18   purpose, which is detailed -- or I keep saying

19   "purpose" -- it was using it unlawfully under

20   1-4-5.6.

21         Q.   Right.  But you just said in your

22   hypothetical that if someone shares it with another

23   entity, and that entity then uses it for a

24   permissible purpose, there is no violation.

25              So wouldn't VRF have had to have used it

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    for an unlawful purpose to have committed a

2    violation?

3         A.   They used it --

4              MS. SERAFIMOVA:  Objection, Your Honor.  If

5    I may.  It misstates her testimony.

6              THE COURT:  Well --

7              THE WITNESS:  And I'm sorry, I misquoted

8    the wrong statute, when I just stated to you.

9    It's --

10             THE COURT:  Hold on.  Let me rule on the

11   objection.

12             THE WITNESS:  Sorry, Your Honor.

13             THE COURT:  Overruled.  And if you need to

14   go into it on your cross, you can do so.

15             All right.  Go ahead, Mr. Greim.

16   BY MR. GREIM:

17        Q.   I do want to let the witness stay -- she

18   said she referenced the wrong statute.  I want you to

19   finish, just so I understand, if you don't mind, Ms.

20   Pino.

21        A.   Sure.  The basis of the referral for

22   VoteRef is the manner in which they used the data was

23   unlawful.  And the statute I miscited -- I said

24   1-4-5.6, but what I really meant is the 1-5-22, the

25   unlawful disposition of voter file.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Now, 1-4-5.6 certainly links that conduct,
 2    because that expands the world to include VoteRef;
 3    that you can't unlawfully dispose of a voter file.
 4    They unlawfully disposed of a voter file, in my
 5    view -- and again, that was the basis of the
 6    referral -- when they posted it on a public website.
 7         Q.   What if the people that are using it on the
 8    public website are themselves using it for
 9    governmental or campaign purpose?  Doesn't that solve
10    the problem?
11         A.   No, because they, again, did not have the
12    ability to unlawfully dispose of the voter file,
13    which means willfully providing access to or
14    otherwise surrendering the voter file.  And that can
15    be any part of the voter file.  And that's exactly
16    what they did.
17         Q.   Okay.  I'm just going to skip ahead, Ms.
18    Pino.  Let's see, I'm going to ask you:  Did you work
19    with the -- you're the person who worked directly
20    with the AG's Office at the outset; correct?
21         A.   That's correct.
22         Q.   And you're also the person who worked or
23    one of the people who worked with the California
24    Attorney General's Office as well; is that right?
25         A.   I connected the California Attorney
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  General's Office to our contact, or the person we

2  have been working with at the AG's Office.  I was

3  asked to make a connection, and I did that.

4       Q.   What was the purpose of connecting with the

5  California Attorney General's Office in a New Mexico

6  matter?

7       A.   I have no idea.  They reached out to our

8  Secretary, and asked who we had been working with.  I

9  guess somehow they became aware that we had some sort

10 of action against VoteRef.  So they reached out to

11 the Secretary.  The Secretary sent it to me, and

12 asked to make the connection.  I reached out to Ann

13 Kelly, and asked her if it was okay if I provided her

14 contact information.  She indicated it was.  And so I

15 sent them her contact information.  And that was all.

16      Q.   Why has the New Mexico Attorney General's

17 Office been working with the California Attorney

18 General's Office?

19      A.   I have absolutely no idea.  I was asked to

20 make a connection, and I did so.

21      Q.   Okay.  Are you also aware that the

22 California AG's Office made a referral to the FBI?

23      A.   I am not aware of that, no.

24      Q.   Okay.  So I'm going to show you what we've

25 marked as Exhibit 11.  This is a January 26th email

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   from an Anna Trujillo, to someone named Monroney at

 2   the FBI.  Have you seen this document before?

 3        A.   I saw it in the exhibits in preparing for

 4   this hearing.

 5        Q.   And you don't know anything about it?

 6             MS. SERAFIMOVA:  Mr. Greim, just for the

 7   record, you said the California Attorney General's

 8   Office is referring to the FBI.  And I think you

 9   meant New Mexico Attorney General's Office.

10             MR. GREIM:  I did.  Thank you for that

11   correction.

12        Q.   Did you understand my question, Ms. Pino?

13        A.   Yes.  And I am not aware.  I did not have

14   any involvement beyond making the connection between

15   Ann Kelly and the contact in California, when I was

16   asked to do that.

17             MR. GREIM:  Okay.  I have no further

18   questions for you.  This is when I would normally, I

19   guess, rest.  I do want to move some exhibits in that

20   are not moved in yet.  I can do that now or I can

21   wait, just to avoid interrupting Ms. Pino, and let

22   her finish up.

23             THE COURT:  Go ahead and make your motion.

24             MR. GREIM:  Okay.  So I would move to admit

25   what I haven't admitted before that are Plaintiffs'
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Exhibits.  They are Plaintiffs' Exhibits 6 through 9
2    and Plaintiffs' Exhibits 10 through 14.
3                THE COURT:  Any objections to those,
4    Ms. Serafimova?
5                MS. SERAFIMOVA:  Your Honor, 10 through
6    16 -- we've only touched 10 and 11.  Mr. Greim has
7    not even pulled up the rest of them.  No witness has,
8    you know, testified, there is no foundation that
9    they're even relevant.
10               So no objections to the exhibits that have
11   actually been discussed with the witness, but 12
12   through 16, there is just nothing on record of those.
13               THE COURT:  Well, I don't think that's a
14   basis to exclude them.  So I'll admit Plaintiffs'
15   Exhibit 6 through 9, and 10 through 14.
16               All right.  Do you have cross-examination,
17   Ms. Serafimova, of Ms. Pino?
18               MS. SERAFIMOVA:  Yes, Your Honor.  Thank
19   you.
20                       CROSS-EXAMINATION
21   BY MS. SERAFIMOVA:
22       Q.   Okay.  Ms. Pino, thank you for your time
23   today.  So you testified you are the Deputy Secretary
24   of State; correct?
25       A.   That's correct.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   And what was your prior position with the

 2   Office?

 3        A.   I was the general counsel.

 4        Q.   And when were you employed, first employed

 5   by the Office?

 6        A.   January of 2019.

 7        Q.   And how many years of practice do you have

 8   under your belt?

 9        A.   Almost 23.

10        Q.   And how many of those are in criminal law?

11        A.   About 19 of those.

12        Q.   And I just want, if I may --

13             MS. SERAFIMOVA:  Mr. Greim, could you stop

14   sharing?

15             MR. GREIM:  I'm sorry.

16             MS. SERAFIMOVA:  No worries.

17        Q.   Okay.  So just for absolute clarity, I will

18   pull up State's Exhibit 5.  Give me one second.  Here

19   we go.  Okay.

20             And we've discussed this, and you discussed

21   it with Mr. Greim.  But State's Exhibit 5 has 1-4-5.6

22   on the first page.  And then the second page is

23   1-5-22?

24        A.   Yes.

25        Q.   Okay.  So you testified that you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    interpreted this reference here to the Voter Records

2    System Act, which is Article 5; is that right?

3         A.   Um-hum.

4         Q.   And essentially incorporating relevant

5    parts of this section here, 22A?

6         A.   The first part up to -- the first sentence

7    up to the word "file," I believe explains the

8    conduct, which would constitute unlawful disposition.

9         Q.   Okay.  And as you correctly stated, 1-5-22

10   is itself a 4th degree felony, right?  Under C it

11   carries its own criminal penalty?

12        A.   Yes, it carries its own criminal penalty,

13   but under that particular statute, that's only

14   applicable to certain people.  When it incorporates

15   the language into the -- what is it again?  Sorry.

16   The 1-4-5.6, in B, that expands the world of people

17   that that conduct applies to.

18        Q.   Okay.  And so this is where 5.6B comes into

19   play, right, it's any person, any organization?

20        A.   Yes.

21        Q.   And under B, this is a 4th degree felony;

22   right?

23        A.   That's correct.

24        Q.   So it's your interpretation that it would

25   be redundant to interpret this section as merely

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492
                                                           e-mail: info@litsupport.com



```
 1    repeating, essentially, 22A?
 2        A.   Yes, because you already have the other
 3    one, yes.
 4        Q.   So if we can go back to the referral, and
 5    I'll pull it up on my end.  And you testified, you
 6    know, that Alex Curtas, when you wrote in an email
 7    this is -- actually, let me pull up.  Forgive me for
 8    needing just a moment.  Okay, Plaintiffs' 8.  I can
 9    work with this document.  This is actually C1, which
10    has all the attachments, but we don't necessarily
11    need to look at those.
12             But are you able to see this document, C1?
13        A.   I don't see anything on that.  Which one
14    are you referring to, again?
15        Q.   After two years of practice, I'm still
16    struggling to use Zoom.
17        A.   You said C1?
18             (A discussion was held off the record.)
19        Q.   Okay, here it is.  So you were asked to
20    look at the email between Alex and ProPublica.  And
21    do you remember the sentence:  "This is the crux"?
22        A.   Yes.
23        Q.   And at that point he quotes this sentence
24    right here, "We don't believe providing this personal
25    voter data on a private website that intends to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    spread misinformation," and so on; right?

2         A.    Yes.

3         Q.    This is the quote?

4         A.    Um-hum.

5         Q.    Did you select that quote for him?

6         A.    No.

7         Q.    You don't know why he chose that particular

8    sentence, or do you?

9         A.    No, I don't.  I mean, to me, again, I

10   wasn't preparing this like this was some type of

11   legal brief or anything else.  My focus was on what

12   we were alleging, mostly in the next paragraph and in

13   the conclusion.

14        Q.    Okay.  Let me ask you:  What are you

15   alleging with respect to Local Labs in this referral?

16        A.    Again, Local Labs, they certainly put in a

17   request for voter data and a request for voter data

18   under 5.5.  And they signed off on an affidavit

19   asserting, you know, all of the uses, and it was for

20   one of the lawful purposes.

21             Now, if they knew at the time that they

22   signed that affidavit that that could essentially be

23   a false affidavit, which carries, itself, separate

24   criminal penalties.

25        Q.    Okay.  So am I understanding correctly that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    with respect to Local Labs, you suspected there may

2    have been a violation of 5.5, does that sound right?

3         A.   Potentially, yes.  I mean, again, we hadn't

4    conducted any investigation.  Just based off of facts

5    that we had at that time, we were trying to lay it

6    all out.  That's really up to the Attorney General's

7    Office to do their own investigation and determine

8    if, in fact, they violated that.

9         Q.   Okay.  And then you knew, at this point, it

10   sounds like, that Local Labs potentially handed over

11   the data to VRF, is that --

12        A.   It seems like, yeah, we were able to trace

13   the specific data that was being put out on this

14   website to the request that was made by Local Labs.

15        Q.   And with that action of Local Labs handing

16   over the file to VRF, did you suspect that that was a

17   violation of the Election Code?

18        A.   Of them handing it over to -- it

19   potentially -- again, we had no information at the

20   time that Local Labs knew that it was going to be

21   used for an unlawful -- used in an unlawful manner,

22   which, again, if the Attorney General's Office did

23   uncover that, that could be some potential liability

24   from Local Labs for a violation of 5.6.  But we

25   didn't have any of the information at that time.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                          1-800-669-9492
                                                        e-mail: info@litsupport.com



1    Q.   Okay.   And would you -- given your

2    understanding of the law, would you agree that, if

3    Local Labs sold the data to VRF, they would have

4    potentially violated 5.6?

5    A.   Um, potentially.   Again, if you are -- let

6    me just look at that again, just to refresh my

7    memory.   Because it could be, if again, they did so

8    willfully, because it could be again, 1-4-5.6, which

9    then implicates 1-5-22 that talks about willfully

10   selling.

11   Q.   And then in this referral, with respect to

12   VRF, was the concern that they had uploaded the data

13   on a website in violation of 5.6?

14   A.   In violation of 5.6, yes, because that

15   involved the willful providing access to the voter

16   file.

17   Q.   Okay.   Then, if we look in the conclusion

18   section, the second sentence says, "We believe that

19   both VoteRef.com and Local Labs have violated the

20   prohibition against providing voter data by posting

21   New Mexicans' private voting information online, or

22   in Local Labs' case, providing the voter data to

23   VoteRef.com."

24        Is that an accurate summary of what your

25   intent, and understanding of the facts and the law

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   was at that time?

 2        A.   Yes.

 3        Q.   Would you say that this is, in fact, the

 4   crux of the referral?

 5        A.   Yes.

 6        Q.   Okay.  And then you were asked -- going

 7   back to the first full paragraph on this page -- last

 8   sentence -- you were asked a number of questions

 9   about:  "We do not believe providing this personal

10   voter data on a private website that intends to

11   spread misinformation about the 2020 general election

12   meets the definition of appropriate use."

13            Does it matter what the intent of the

14   website is for purposes of 5.6?

15        A.   Absolutely not.  And that wasn't my focus

16   in making the referral.  My focus was, again, the

17   fact that they took this voter file and made it

18   available on a public website, which, again, is

19   clearly against New Mexico law.  It's how they were

20   using the data.

21        Q.   And given your understanding -- if, let's

22   say, the Democratic Party were to obtain voter data

23   from your office and upload it to their website,

24   would that be a violation of 5.6?

25        A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And so this clause on the website that

2    intends to spread misinformation about the election,

3    could you leave that out without changing anything

4    about, you know, substantively changing the referral?

5    A.   Yes.   That makes no difference in any of

6    this.   I mean, even if that were not a fact in this

7    case, the referral still would have been made,

8    because regardless of who they are, you can't take --

9    our laws are highly restricted about who gets voter

10   data and how you use voter data.   And that's for a

11   reason.   So it doesn't matter who does it.   If you

12   get it -- I mean, use it for an unlawful purpose and

13   we're aware of that, we're going to refer it to the

14   AG's Office.

15   Q.   Okay.   Now, you were asked whether the

16   substance of this letter is not frivolous, and you

17   said it is not; correct?

18   A.   What was that again, I'm sorry, I had a

19   hard time hearing you.

20   Q.   I'm sorry.   You were asked whether you

21   believe this referral was nonfrivolous.   And you do?

22   A.   Yeah, it's not frivolous.

23   Q.   Okay.   Would you describe this as having

24   probable cause?

25   A.   Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1         Q.   And you were asked if it is absolutely
2    correct.  Were you -- (Zoom audio garbled).
3              THE COURT:  We didn't understand the word.
4    Do you want to repeat that?
5              MS. SERAFIMOVA:  I'm sorry.  I'm wondering
6    if I'm having connection issues again.
7         Q.   You were asked if this letter is absolutely
8    correct, and you testified that yes?
9         A.   Yes, the substance of the letter.  And,
10   again, the facts that we laid out, and the statutes
11   that we believed are violated is correct.
12        Q.   And like you said, this is not a legal
13   opinion in any form or way; right?
14        A.   No.  I mean, as I've stated, we don't have
15   investigators in the office.  We didn't conduct an
16   investigation.  We identified what could potentially
17   be a violation of law from our perspective, put all
18   the facts and information, and pointed out the
19   potential laws that we felt were violated to a
20   referral to the Attorney General's Office to make
21   that determination.
22        Q.   And this document is a functional document,
23   is it not?
24             MR. GREIM:  Objection; leading, vague.
25             MS. SERAFIMOVA:  Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Try not to lead.
 2         Q.   Is this a functional document?
 3         A.   It is.
 4         Q.   And does it serve the function that you
 5    intended it to serve?
 6         A.   Yes, to bring the matter to the Attorney
 7    General's attention so it could be properly
 8    investigated, and if any crimes were committed, they
 9    could be pursued.
10         Q.   Okay.  Now, you were also asked -- if you'd
11    give me just a second.  Okay.  You were asked about
12    again, Plaintiffs' 8, Alex's email to ProPublica.  Do
13    you remember that?
14         A.   Yes.
15         Q.   Okay.  And you were asked if he -- you
16    know, would you be concerned if he made a false
17    statement in asserting that VRF had not contacted
18    your office?
19         A.   Yes, I would be concerned about that.
20         Q.   Okay.  So if I could show you -- if you
21    could give me a moment.  Okay.
22              So is Plaintiffs' Exhibit 2, which is an
23    email dated December 14, 2021, from VRF to the
24    SOS.election website, that talks about the
25    discrepancy -- what we've been referring to as the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    discrepancy in this case.  Do you know what I'm

2    talking about?

3         A.   Yes, from reviewing that, yes.

4         Q.   And just for the record, Plaintiffs' 8,

5    that email was dated December 16.  Does that sound

6    correct?  I can pull it up.

7         A.   It says December 14; is that right?

8         Q.   I'm sorry, this document is December 14.

9         A.   Oh, okay.

10        Q.   But on December 16, Plaintiffs' 8 is where

11   Alex says we have not been contacted.

12             Okay.  Outside of this lawsuit, had you

13   seen this email before, Plaintiffs' 2?

14        A.   No.  I don't recall seeing that before.

15        Q.   You don't recall.  And it is not -- what is

16   this SOS.elections website?

17        A.   That's our general elections email where

18   things come into the office and then they're

19   distributed throughout elections depending on what

20   the request is.

21        Q.   Is this Mr. Curtas' email address?

22        A.   No.

23        Q.   And is his contact information listed on

24   your website?

25        A.   I believe it is, yes.


SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                              (505) 843-9494
FAX (505) 843-9492                                                                    FAX (505) 843-9492
                                                                                          1-800-669-9492
                                                                              e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1         Q.   And, presumably, that's how media outlets
 2    reach out to him?
 3         A.   Yes.
 4         Q.   So this was not sent -- this email,
 5    Plaintiffs' 2 -- two days before he makes the
 6    statement, they have not reached out, was not sent to
 7    his email address; right?
 8         A.   That's correct.
 9         Q.   So he could have been mistaken that no
10    email was ever sent to your office when he responded
11    to ProPublica; correct?
12         A.   Yeah.  I mean, based off of the things that
13    come into that email, I can almost 100% guarantee
14    that he wasn't aware that that had come in.
15         Q.   Okay.  And making a mistake or being
16    inaccurate is not the same as falsely accusing VRF of
17    not reaching out; right?
18         A.   Correct.
19         Q.   And would you agree that only Mr. Curtas
20    can actually tell us what he knew and he didn't know
21    as of December 16th?
22         A.   Yeah, I can't speak for Mr. Curtas.
23         Q.   Okay, great.
24              And then, I think -- let's see, just to
25    clarify this -- one final -- you did say that --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   well, let me just -- let's say if the Democratic

 2   Party signs an affidavit and obtains voter data from

 3   your office --

 4        A.   Um-hum.

 5        Q.   -- and it then turns around and uploads it

 6   on its own website under 5.6 --

 7        A.   No.  I mean, it can share it with its

 8   candidates.  I mean, for campaign purposes, utilizing

 9   the data; you know, that could be a potential

10   violation of 5-6, if they just put it up on the

11   website.  You're making the voter file available.

12        Q.   So am I understanding your position

13   correctly that internal sharing has to be lawful and

14   the external sharing is prohibited under 5.6?

15        A.   Yes.  Because that implicates, again, the

16   unlawful disposition actions which are outlined in

17   1-5-22.

18        Q.   Okay.  So if two members of the Democratic

19   Party -- let's say an affidavit is submitted on

20   behalf of the party, so it's an organization -- and

21   they share the data between themselves for an

22   unlawful purpose, such as harassing somebody's

23   ex-spouse, for example, that would be a violation of

24   5.5; correct?

25        A.   If they are -- could you repeat that again?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I'm trying to connect what you're saying.

2         Q.   So let's say you and I work for the

3    Democratic Party.  We have obtained information from

4    the Secretary of State's Office by filing an

5    affidavit listing the party as the requester.  And

6    then I say to you:  I really want to find out where

7    my ex-boyfriend lives so that I can go harass him,

8    and you give me that information?

9         A.   That's not a government use or a campaign

10   use of the data.

11        Q.   So that would be prohibited under 5.5;

12   correct?

13        A.   Yes.  If you're requesting it for that

14   purpose.  And again, you're -- it's more relating to

15   the affidavit that you're signing, and you're saying

16   that you're going to do it for a government or

17   campaign purpose, when you know it's not a legal

18   purpose, it's for a purpose outside of that.

19        Q.   Okay.

20        A.   So you don't see that signed affidavit.

21        Q.   Okay.  Thank you.

22             All right.  So we know you made a December

23   2021 referral regarding VoteRef and Local Labs, and

24   then you made another referral dated March 23, 2022

25   about New Mexico -- I'm sorry, Karen Clemens.  Do you

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                        1-800-669-9492

**BEAN
&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

 1    recall?  Forgive me.  I'll just pull it up.

 2         A.    Um-hum.

 3         Q.    So have y'all made any other referrals in

 4    your -- during your time at the Secretary of State's

 5    office relating to voter data?

 6         A.    No, these are the only two that have come

 7    to our attention.

 8         Q.    Okay.  And did you contact either one of

 9    these so-called targets of these referrals prior to

10    making the referrals?

11         A.    No.

12         Q.    Do you think you treated these referrals in

13    any way different from each other?

14         A.    No.

15         Q.    You didn't, for example, reach out to Karen

16    Clemens and give her an opportunity to cure, as it

17    were, before you referred her to our office, to the

18    Attorney General's Office?

19         A.    No, that wouldn't be -- again, if potential

20    criminal conduct had come to our attention, you know,

21    we're not going to do anything that may hinder an

22    investigation.  We're going to take the facts as we

23    have it and turn it over to law enforcement.  And we

24    typically work with the Attorney General's Office.

25         Q.    And given your criminal law background,

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                          1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                           e-mail: info@litsupport.com

1    would you agree that actually reaching out in that

2    manner could have some confrontation clause

3    implications?

4         A.    Could have confront --

5               MR. GREIM:  Objection, leading.

6               THE COURT:  Overruled.

7         Q.    Would you agree -- given your criminal law,

8    extensive criminal law background, would you agree

9    that reaching out to potential targets could have

10   confrontation clause implications?

11        A.    Possibly.

12        Q.    Okay.  So you may have seen it, but in

13   their reply, plaintiffs -- you know -- and I'm going

14   to quote -- like in reference to your interpretation

15   or your office's interpretation of Section 1-4-5.6,

16   in their reply to the motion in support of the motion

17   for preliminary injunction, plaintiff states, and I

18   quote, sorry, that interpretation now stretches it

19   beyond a breaking point to criminalize even the

20   reselling of data to companies -- I'm sorry, to

21   campaigns by well known firms like Catalist and I360.

22   Do you know who either Catalist, LLC, or I360, LLC

23   is?

24        A.    No.  I was told about those entities in

25   preparing for this hearing.  But I wasn't aware of



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    who they are before then.

2         Q.    And that was going to be my next question.

3    When did you first become aware of them?  In the

4    context of this case?

5         A.    Yes.

6         Q.    More specifically, the prior hearing and

7    today; is that right?

8         A.    Um-hum.

9         Q.    Do you have any knowledge as to what either

10   company's products is?

11        A.    I do not.

12        Q.    So if you received information that an

13   entity named Catalist, LLC, is uploading New Mexico

14   voter data on its website, would that potentially

15   cause you to refer them to the Attorney General's

16   Office?

17        A.    Absolutely.

18        Q.    And the same with I360.  If you believe you

19   had probable cause to refer them to the Attorney

20   General's Office, would you refer them?

21        A.    Yes.

22        Q.    And then final topic, from me anyway, is

23   you've shared with me that, as a public servant, a

24   pretty high level public servant, you have taken

25   certain steps to keep your personal information

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    private; correct?

2          A.    Um-hum.

3          Q.    And with respect to the internet in

4    particular; is that right?

5          A.    Yes, utilizing a scrubbing service.

6          Q.    Yeah, could you tell us what you have done?

7          A.    Again, those services remove any of your

8    personal data, such as phone numbers, addresses, they

9    get those removed from websites, so that those aren't

10   shared.  And I also use a Post Office Box so that my

11   personal address is not on the internet.

12         Q.    Are you a registered voter in New Mexico?

13         A.    Yes.

14         Q.    And, by law, are you able to provide your

15   P.O. Box on your registration?

16         A.    No, I have to use my personal address.  But

17   I can use my P.O. Box to receive all of my election

18   material.

19         Q.    Okay.  So would you agree that if the

20   motion for preliminary injunction is granted, and the

21   data that VRF has in its possession is uploaded, your

22   residential address will now be on the internet?

23         A.    Yes.

24         Q.    And would you describe that as irreparable

25   harm to you?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   Yes.  Especially now with all the threats

2  against election officials, many of which have

3  swarmed into our office this week.

4    Q.   And so, is there any way for you -- have

5  you looked at the VoteRef website?  Have you had a

6  chance?

7    A.   I think I did a while back before it was

8  pulled down.  I haven't recently.

9    Q.   Okay.  Let me show you State's Exhibit 8.

10  Give me a second.

11       And I'll represent to you that this is a

12  printout of VoteRef that I created this morning, June

13  15th, at 8:59.  And I also went to the Colorado

14  database, and just the first person that came up on

15  the website I opened.  And it just so happens that

16  this person -- and I'm not going to try to pronounce

17  their name -- here is their address.  They happen to

18  not have any voter history.  But if we can take a

19  look at this paragraph right here.  And let me know

20  when you've had a chance to read it.

21    A.   The one having to do with upon receipt or

22  the whole paragraph?

23    Q.   Well, the whole paragraph, if you wouldn't

24  mind, starting from "the information on this website"

25  all the way down.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1        A.    Okay.

2        Q.    So does it provide someone like you an

3    opportunity to request to be taken off of their

4    database or the website?

5        A.    It looks like, again, I would have to

6    contact the Secretary of State.  I would essentially

7    have to not register to vote; I would have to cancel

8    my registration to vote.  Is that correct?

9        Q.    Well, the only option is they mention the

10   address confidentiality program.

11       A.    We don't have that here in New Mexico for

12   public officials or anyone else.

13       Q.    So there is no option for just any -- you

14   know, the only option that they mention is, if you

15   are under the Address Confidentiality Program, which

16   appears to be some sort of federal -- well, maybe not

17   federal, but there is a citation here -- there is

18   some sort of -- I take that back -- program; then,

19   and only then, you can ask to be taken off?

20       A.    Yes.

21       Q.    And so, now, I voted -- I was a registered

22   voter -- I am a registered voter and I was a

23   registered voter also in 2021.  Does that mean that

24   my home address is also on the file that VoteRef, or

25   VRF has, and wants to upload?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   If you're a registered voter, and that

2   would be part of the voter file, yes.

3      Q.   So for me, if I don't want my actual

4   residential address to be on this website, I would

5   actually have to move; would I not?

6           MR. GREIM:  Objection; calls for

7   speculation.

8           THE COURT:  Well, let's see if she can

9   answer it.  I'll make a determination of the basis

10   for it.  Overruled.

11      A.   You would have to move.  But if you moved,

12   and you still wanted to vote, you'd have to change

13   your address.  And so, then, it eventually would be

14   on there again.

15      Q.   And, thank you, that's my next question.

16           So let's say I'm someone who was not a

17   registered voter at the time the data was pulled,

18   that VRF has in its possession, but now -- let me

19   phrase this -- I don't want my residential address to

20   be on any future requests by VRF, and therefore, I

21   don't want it to be on their website for any updates,

22   for example, that they make.  If I register to vote,

23   I cannot accomplish that; right?

24      A.   No.  I mean it's going to be part of your

25   voter file.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   And do you feel that disclosing voters'

2   residential address, in addition to the party

3   affiliation on a public website would negatively

4   affect the system, our voting system?

5           MR. GREIM:  Your Honor, this calls for

6   personal opinion and speculation.

7           THE COURT:  Well, it may be limited to

8   that, and it may not have much value, but I'll allow

9   the question.  Overruled.

10     A.   Yes.  I think it could be very harmful.  I

11  think it could cause people to not want to

12  participate in the process, if, again, they know

13  their information, private information, is out there,

14  and, you know, losing confidence in, again, how their

15  data is kept.

16           I think, case in point is our second

17  referral to the Attorney General's Office.  Voter

18  files were shared, and then so-called volunteers went

19  door to door interrogating voters about their

20  participation in the process.  That has a chilling

21  effect, where people don't want to participate and

22  don't want to vote.

23     Q.   And is that your personal opinion, your

24  professional opinion, as the Deputy Secretary of

25  State for New Mexico, or both?

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. GREIM:  She got it out before I could

 2    object.  But I don't think she's an expert witness

 3    here.

 4              THE COURT:  Yeah, I think she's a fact

 5    witness here.  And so we probably need to limit her

 6    to just giving facts and not shifting her over into

 7    an expert.

 8    BY MS. SERAFIMOVA:

 9         Q.   Okay.  Is your opinion informed by your

10    experience as the Deputy Secretary of State for New

11    Mexico?

12         A.   Yes.

13         Q.   So, final questions, just give me one

14    second -- I'm sorry, one more document, if I may.  So

15    I will pull up the version of the form that you

16    discussed with Mr. Greim.

17              MS. SERAFIMOVA:  Mr. Greim, please correct

18    me if I'm not pronouncing your name right.

19              MR. GREIM:  You've been good from the

20    start.

21              MS. SERAFIMOVA:  I've been good, okay,

22    great.

23         Q.   Okay.  So he asked you about -- again this

24    sentence:  "Unlawful use of information requested on

25    this form shall consist of willful selling, loaning,
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   providing access to, or otherwise surrendering,

 2   distributing or operation of information, as stated

 3   in the Voter Records System Act."  This is not a

 4   direct quote from any one statute, is it?

 5        A.   I don't believe that it is, no.

 6        Q.   Would you agree that this is actually a

 7   combination of information from 5.6 and 22A?

 8        A.   Yes, and I think that's why it includes

 9   Section 1 through 31.

10        Q.   Wonderful.  If you give me just one second

11   in case I don't have a chance to ask you another

12   question.

13             Okay.  Thank you, I don't have any more

14   questions.

15             THE COURT:  All right.  Thank you,

16   Ms. Serafimova.

17             How about you, Mr. Greim, do you have

18   redirect of Ms. Pino?

19             MR. GREIM:  Your Honor, I actually do have

20   a short redirect.

21             THE COURT:  All right.

22             MR. GREIM:  Limited to two topics.  May I

23   proceed, Your Honor?

24             THE COURT:  You may.

25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    REDIRECT EXAMINATION
 2   BY MR. GREIM:
 3       Q.   Ms. Pino, I just want to understand the
 4   Secretary's position on the sharing of data, and when
 5   it's allowed and when it's not allowed, because,
 6   candidly, I think heard a different answer on direct
 7   versus on cross.
 8       A.   Okay.
 9       Q.   So I think the best way to approach it is
10   just through a hypothetical.  I understood you to
11   answer my questions about this topic to say that it
12   is not automatically a crime for one entity to share
13   data with another entity so long as the purpose of
14   that sharing falls within one of those -- however
15   count -- either two or three criteria.  Am I right
16   about that?
17       A.   I think that examples that I was giving was
18   sort of individuals within the entity, like again,
19   the Democratic Party sharing it with candidates who
20   are -- but again, if you're doing so for one of the
21   stated purposes --
22            THE COURT:  Hold on just a second.  We've
23   got somebody has called in and they've not muted
24   their phone.  All right.  Is it muted now?
25            Okay.  Go ahead, Ms. Pino.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   Again, it would have to fall within the

2   provisions of 5.5.  So I don't think 5.5, when you

3   say that you're going to request the data -- I think

4   it can be shared, but again within your entity and

5   for some of this stated purposes like campaign

6   purposes -- election campaign purposes or

7   governmental purposes.

8        Q.   Okay.  Now, a political party and a

9   candidate's campaign are not the same entity, are

10  they?

11       A.   A political party and candidates within

12  that party are -- they're, in essence, part of the

13  Democratic Party, so yes, it can be shared with

14  candidates.

15       Q.   Okay.  So that's the position of the

16  Secretary of State's Office?

17       A.   Yes.

18       Q.   Okay.  But what about a political party and

19  a candidate in an Independent Party they may be

20  supporting for various reasons?  If the candidate is

21  in a different party, now we have a crime?

22       A.   Again, if the candidate is within a

23  different party, they can request the data themselves

24  under 5.5, because they are one of the entities that

25  would be entitled to request the data.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Okay.  So your answer to this now is that

2  any sharing has to happen within the entity; so the

3  entity has to be sharing it with itself?

4    A.   Within the entity and for the stated

5  purposes.  I think the example was also given, if

6  it's going to be for some kind of unlawful purpose,

7  such as harassing, that then, essentially -- and

8  you've requested the data -- then you've sworn off on

9  that affidavit and you haven't been truthful.

10    Q.   You testified that this -- I'm not sure

11  what your testimony was ultimately on this Safe at

12  Home Program.  But I think at least you said it's not

13  available in New Mexico; correct?

14    A.   We do have Safe at Home.  Not for

15  political -- like political figures.  It doesn't

16  apply to -- it's specifically for victims of domestic

17  violence, sexual assault, or stalking.

18    Q.   I see.  So New Mexico has not chosen to

19  expand that protection to political figures?

20    A.   No.

21    Q.   But it could, if it wanted to, right; it

22  just hasn't?

23    A.   Yeah, it hasn't.

24         MR. GREIM:  That's all I have, Your Honor.

25         THE COURT:  All right.  Thank you, Mr.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    Greim.
2              All right.  Ms. Pino, you may step down.
3    Is there any reason that Ms. Pino cannot be excused
4    from the proceedings, Mr. Greim?
5              MR. GREIM:  No, Your Honor.
6              THE COURT:  And Ms. Serafimova, can she be
7    excused?
8              MS. SERAFIMOVA:  Yes, Your Honor.
9              THE COURT:  All right.  You're excused from
10   the proceedings.  Thank you for your testimony.
11             THE WITNESS:  Thank you, Your Honor.
12             THE COURT:  All right.  Mr. Greim, have you
13   now rested?
14             MR. GREIM:  I have, Your Honor.
15             THE COURT:  All right.  Ms. Serafimova, you
16   have witnesses or evidence you wish to present?
17             MS. SERAFIMOVA:  I do not, Your Honor.
18             THE COURT:  All right.  Then, Mr. Greim, do
19   you wish to argue your motion?
20             MR. GREIM:  I do, Your Honor.  I have a
21   PowerPoint that I'll share.  Because of the advanced
22   hour here, I'll move quickly.
23             Your Honor, may I proceed?
24             THE COURT:  You may.
25             MR. GREIM:  All right.  So, Your Honor,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1    first, I want to go through and kind of walk through

2    some of the facts.  I'll then step back and take a

3    look at the two main legal theories here.  I want to

4    make clear at the outset that the main theory in this

5    case is going to be our overbreadth theory.  You'll

6    see why as we get into the facts here in a moment.

7    But while I think there is obvious evidence of

8    viewpoint discrimination, I think that the

9    overbreadth will be the main issue.

10           So the first issue, just to walk through

11   the timeline, you know, Exhibit A shows that way back

12   on March 29th of last year Local Labs signed an

13   affidavit.  And, you know, the language is very

14   clear.  It simply does not state -- does not make the

15   promise that we've heard from the defendants here.

16   It says, "Requester will not use or make available to

17   others to use the requested material for purposes

18   other than governmental, election, research, and

19   campaign purposes, under penalty of law."  That is

20   the promise that's made there.

21           It doesn't say you can't make it available

22   to use for others to use at all.  It says it's going

23   to have to be for these three purposes.  We'll come

24   back to that.

25           Fast-forward to December 16th, the New

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mexico data goes live.  What do users see?  We heard

2    about that last month.  They see that this is an

3    election-related use.  They see that Local Labs is

4    the one that went and got it.  The entire chain of

5    custody, how we received the information is available

6    to people who are interested in that by clicking

7    directly on the website.  Everybody who views it has

8    to click that they're going to use it for an

9    election-related use.  That's December 16th.

10           Now, two days before that -- looks like

11   we're out of order here a little bit; we're all in

12   mid December.  Two days before that, VRF had done its

13   analysis.  It contacted the SOS, Secretary of State

14   regarding this discrepancy.

15           Now, VRF did not claim that it meant that

16   the Secretary of State had screwed up or made a

17   mistake.  VRF wanted to know why the difference is

18   there.  VRF well knows the difference occurs for a

19   variety of factors, but it wanted to see the

20   reconciliation to understand:  Okay, have you kept a

21   record of the people who have been removed, and why,

22   asked that question.  The Secretary never responds.

23           Here's what we learned today, though.  We

24   learned that -- we learned from Ms. Vigil that the

25   Director of Elections knew about that request and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN**
**&ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    knew about the ProPublica contact, and sort of

2    decided to handle them together.  And because they

3    were somehow handling them together, they kind of

4    figured they were covered if they responded to

5    ProPublica and did not respond to VRF.

6            So the evidence today was not that no one

7    at the Secretary knew about it.  The Secretary's

8    Office did know about the request, and just chose --

9    supposedly not deliberately -- but chose not to

10   respond to VRF.

11           MS. SERAFIMOVA:  I hate to interrupt, but I

12   have to object.  That is not what the evidence shows.

13   For the record, I object.

14           THE COURT:  No, that's not the way it

15   works.  You let him make his argument, and you can

16   respond in a moment.

17           Go ahead, Mr. Greim.

18           MR. GREIM:  So VRF issues its press

19   release.  It doesn't accuse anyone of fraud, but does

20   indicate issues with recordkeeping.

21           That same day ProPublica then approaches

22   the Secretary of State and asks for comment.  And

23   that's where you see the Secretary of State, not just

24   saying:  We don't have any record of a response, it

25   affirmatively accuses VRF of being a political

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    provocateur, and trying to spread misinformation, and
 2    having a reason for not reaching out.
 3             So, rather than assuming something innocent
 4    or just saying:  We don't have any record, the SOS
 5    doubled down, and used it against VRF in a public
 6    comment.
 7             More evidence here of the animus that's
 8    building up during this time.  On December 21 -- this
 9    is Plaintiffs' Exhibit 7 -- Curtas sends the criminal
10    referral.  And we just heard today from Ms. Pino that
11    now this is not really very important.  This could
12    have just been taken out of the referral altogether.
13    But he says that "this is the crux," and he goes to
14    the spreading of misinformation.
15             You can see, and in our proposed findings
16    we'll show you all the emails from Mr. Curtas attacks
17    VRF in mid December here.  This is without any effort
18    to reach out, any effort to find out what's going on,
19    and again, not responding to the request for
20    information, even though Ms. Vigil said that they
21    were taking these issues together.
22             Okay, December 21, the referral goes out.
23    And again, it's all about "swift action is needed
24    here," don't take your time, don't review all the
25    facts.  Move swiftly, Attorney General, because this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   voter data can be used to spread election

2   misinformation.

3           Now, ProPublica interestingly receives that

4   referral the day it was made.  VRF just received it

5   as we were getting into this lawsuit and asked for

6   it.  It did not receive it this entire time.

7           Okay.  Now we fast-forward to February of

8   this year.  There were major changes in the forms

9   that the Secretary of State's Office used.  We heard

10  all kinds of testimony, over two days, about why the

11  changes were made.  Supposedly, it's just a

12  coincidence, statutes change.  We take our time, and

13  we just happened to do it right during the time that

14  we are going after a group, and our theory is based

15  on the use that they make of the data.

16          Now, we have the changes here, Your Honor.

17  I've made a little comparison of Exhibit A, which is

18  what our guy signed, and Exhibit J, what the

19  current -- the current form of the request is.  And

20  it's true the statement that:  Unlawful use of the

21  information requested on this form shall consist of,

22  basically, various kinds of transfer, as stated in

23  the Voter Records System Act, which is Chapter 5.

24  That appears in both.  But what that means is very,

25  very different in each form.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          In Exhibit A, when you finally actually
2    swear to something and click the affidavit, you swear
3    that you will not use or make available to others to
4    use requested material for purposes other than
5    governmental, election -- and used to say research --
6    and campaign purposes under penalty of law.  That is
7    the statement that you aver.

8          The statement that you aver today is
9    different.  Under the new statement you can't sell,
10   loan, or provide access to anyone.  You just can't do
11   it, regardless of the purpose.  That's the very first
12   checkmark.  Then they have other things in there
13   about altering information, using it for a purpose
14   other than those authorized on this form, or using it
15   for any commercial purpose.

16         So what they've done -- this is a very
17   savvy change -- but if they don't want people sharing
18   it with others for permissible purposes, what you
19   would do is you would create the new authorization
20   that they've made.  So they have changed the form to
21   meet their new theory.  The key sentence has changed.

22         Before I move on, I'll just mention the old
23   sentence, which has never changed, the key issue
24   there is the authorization does not say the unlawful
25   use of information requested on this form shall

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    consist of various forms of transfer, and then stop.

2    It says, "as stated in the Voter Records System Act."

3    It refers the interested reader back to the statutes.

4    It's not all transfer, selling, loaning, providing

5    access to that is a problem.  It's the selling,

6    loaning, or providing access to, as stated in the

7    Voter Records System Act.  And when you look at that

8    act, the only statute in Chapter 5 there is 1-5-22.

9    And that clearly only applies to data processors and

10   government entities themselves, not to groups like

11   us.

12           I know we're getting into statutory

13   arguments that we kind of discussed last time, but

14   that is clearly what that sentence means.  Article 5

15   does not talk about anything else.  So there is no

16   notice provided here.  There is nothing that goes

17   beyond the law on Exhibit A.  Exhibit J does.

18           Okay.  So that's what's happened, we've had

19   a change.  Now what happens in March.  Things begin

20   to heat up.  We begin to get a press campaign against

21   VRF.  So, on March 4th, Curtas tells the Alamogordo

22   Daily News, "If any organization requested and

23   received voter data or made available to a third

24   party for an unlawful purpose, we intend to make a

25   criminal referral, as we have against other nefarious

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    actors."  The only person he's referring to in this

2    space here is VRF.  Again, VRF is being called a

3    nefarious actor.  They're upping the rhetoric against

4    VRF.

5            The article in ProPublica runs only three

6    days later.  Again, what does the Secretary of State

7    say?  She says that having voter registration data

8    blast out across the internet violates state law,

9    limiting use of voter rolls solely for campaign or

10   government activities.  We looked at that evidence

11   before.

12           Her tweets that went out around that same

13   time, on March 8, says that this is a coordinated

14   cross-country attempt to impugn the integrity of our

15   voter rolls.  Again, this is dripping with animas

16   against VRF.  She's not claiming there is any actual

17   problem with the voter rolls; instead, it's about

18   impugning the integrity.  In other words, work being

19   done by her office to preserve the voter rolls,

20   that's the problem.  It's unfair criticism.  And this

21   goes along with their entire sort of mantra about

22   misinformation.  There is other evidence of that back

23   on February 9th.

24           We also saw that, you know, what the office

25   says about use is also rather unclear.  On March 2nd



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    they issue a public statement suggesting that really

2    it's limited to only certain groups.  And they say

3    this Audit Force is not one of those groups.

4            Then later we hear, the very next day, that

5    really it's about using it for campaign or government

6    academic purposes, and signing an affidavit.  So any

7    person trying to follow this is getting mixed

8    messages about what really is covered here.

9            Okay.  Now, let's go to the legal issues,

10   Your Honor.  Five different theories apply.  I'm

11   going to make clear -- because we had an issue about

12   this at our last hearing -- we're not relying here on

13   retaliation as a grounds for, you know, issuing the

14   injunction.  But certainly, it's going to be a very

15   big part of this case as we go forward.

16           I'm going to first focus on overbreadth.

17   We know the three elements of overbreadth.  And the

18   first element is easily met.  The defendants don't

19   have a problem with us here on this point:  Sharing

20   data is speech, and they concede that this is a

21   direct regulation of speech.

22           We distributed a list of their concessions

23   at the last hearing, and that's in the pleading.  So

24   we're in the realm of speech.

25           The next question is a total ban.  This is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    a total ban on sharing from entity to entity.  They
2    conceded that you can share within an entity, but I
3    think we all sort of assume that; we all hope that's
4    true.  So the question is:  Is the reach of the total
5    ban substantial, judged in its relation to the claim
6    of legitimate sweep of any sort of ban.
7              Now, for purposes of this argument, Your
8    Honor, we want to assume that a statute could
9    limit -- could limit commercial purposes; people
10   taking the data from the Secretary of State and going
11   and using it just to make money for commercial
12   purposes or for some of the other things we heard
13   about:  If you wanted to go harass people.  You can
14   imagine totally legitimate sweep of some sort of
15   restriction on sharing.
16             But here is the key:  Both defendants, Ms.
17   Vigil for the Secretary of State, and Ms. Serafimova
18   who actually kind of -- I mean, I don't want to use
19   the word wrong here, but she basically testified and
20   said in her opening statement last time:  This is the
21   position of the Attorney General.  Both of them have
22   said that any sharing is going to be sanctionable.
23             Now, Ms. Vigil, backtracked on that today,
24   and she mentioned -- she says they're not statutory
25   exceptions, but they are exceptions.  She would allow

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   some of it.  We don't know what the reach of these

2   exceptions are.  But it's very clear.  So her

3   testimony before was that -- and it's from a clip in

4   here -- and we'll make this available afterwards, by

5   the way, Your Honor, for your reference, if you'd

6   like -- that any sharing is going to be a problem

7   under the statute.  And we heard the same thing today

8   minus her new exceptions.

9           The AG has said the same thing.  Through

10   Ms. Serafimova, she said, "I've stated many times on

11   the record, including in pleadings, that it is the

12   AG's position, as a party in this case, that if there

13   is any criminal liability, it is not for violating

14   the so-called use restrictions in 5.5.  It is for

15   providing or otherwise providing access or otherwise

16   surrendering or selling or lending the voter data

17   under 1-4-5.6."

18           So both of them have been very clear that

19   it is all sharing that they are banning here.  So

20   now, you know, it did not look that way when we filed

21   the lawsuit based on everything we learned about

22   their animus and their motivation.  But they've been

23   very clear in this case, minus the hedging from

24   Ms. Vigil, that sharing is going to be what they say

25   the problem is.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            But the problem is, Your Honor, it's a

 2    matter of out of the frying pan and into the fire.

 3    Because banning all sharing is vastly overbroad.  For

 4    example -- and we went through some of these

 5    hypotheticals -- the sheer number of criminal

 6    violations that could occur for purely legitimate

 7    First Amendment protected conduct is massive.  For

 8    example, voters cannot band together to share the

 9    data with each other.  Each has to pay for the data,

10    and then refrain from sharing with any other person

11    who checks their work or compare notes.

12            Because remember Ms. Vigil said:  Look out,

13    because there is a great chance that your data was

14    pulled not at exactly the same time, it's a different

15    data set, therefore, they're different data.  If

16    you're sharing what you have with a different voter

17    who has also paid for it, you may be sharing data,

18    and that's a problem.  And so that very innocent

19    activity right there is going to violate the statute.

20            Now, we heard that parties sharing with

21    candidate campaigns of the party's candidates are

22    okay.  We actually heard that today.  Both witnesses

23    came around to that position on the theory that a

24    candidate affiliates with a party, so they're all

25    going to be treated together.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        But, Your Honor, we know that is a rather

2    arbitrary -- good thing to know, but it just comes

3    out of someone's mouth at a hearing.  We know that

4    the Campaign Finance Law doesn't treat them the same.

5    We know the Campaign Finance Law treats a party,

6    organization, and a candidate campaign as two

7    different people.

8        In fact, at the federal level we have

9    really big problems, Your Honor, because we can have

10   coordination, and we've got to be careful about that.

11   We've got affiliated PACs, and other things as well.

12   So it's cold comfort to hear at this hearing two

13   witnesses say that.  But notice how that protection

14   immediately evaporates if, say, the Republican Party

15   doesn't have a good candidate, but there's a good

16   Libertarian candidate, they want to work with that

17   person for purposes of the election.  No.  Now, it

18   becomes a criminal activity because it's a

19   Libertarian instead of Republican.  There is no

20   rational reason for that whatsoever.

21       For example, the Otero example:  There, we

22   had the Republican Party sharing with a group that

23   may have been allied.  But just the sheer act of

24   sharing with this group that's going to go, then, do

25   a canvass is its own independent violation, separate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    from these claims about harassment.  A candidate

2    campaign cannot share with an allied campaign.  You

3    heard that.

4              Political firms sharing with clients, you

5    heard a lot of waffling, and really lack of interest

6    in exactly what Catalist is doing.  But if they are

7    selling their data, or sharing it under some wrapped

8    fee or something, they're sharing their data with

9    their clients.  That's a violation, too.  And there

10   are several of these firms that have always been

11   requesting from the state.  There has been no effort

12   at all to try to learn more about it.

13             So what the Secretary really wants here,

14   Your Honor, to step back from all these examples, the

15   Secretary wants to be the hub of all this speech that

16   occurs about this data.  The Secretary wants everyone

17   else to be a spoke out from the hub.  And the

18   Secretary does not want any spokes coming together to

19   share the data and talk about what they have.  And

20   it's not just discussion.  Discussion quickly ends up

21   requiring that you share the data you actually have.

22   You know, I've got 5,400 discrepancies.  Well, I've

23   got 4,200 discrepancies.  You have to share that data

24   to understand what you're talking about.

25             THE COURT:  Is there any distinction

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    between sharing data and publishing it?  And why

2    shouldn't the Court draw that distinction?

3              MR. GREIM:  I don't think there is any

4    distinction, Your Honor.  I mean, the statute

5    certainly doesn't make that distinction.  And, you

6    know, when you publish the data, you are inviting

7    other people in to look at it and use it for the

8    purpose that you've required them to follow.  And so

9    I don't think we can -- when we've got such an

10   overbroad statute, which this is -- I don't think we

11   can say:  Well, some of these applications of this

12   overbroad statute are closer to something that I feel

13   good about.  You know, you're out here publishing it,

14   instead of just sharing it, therefore, we deny the

15   claim.

16             With an overbreadth claim, we can't do it

17   that way.  In fact -- and I'll say this is our

18   position here, but with an overbroad usage customer

19   rule, here you don't have to be within the protected

20   zone to have standing to make the challenge.

21             But I also don't think that there is a

22   distinction there, because both of these are speech.

23   They are both speech.  They're both protected

24   activity.

25             I also want to point out, banning all

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                          1-800-669-9492
                                                          e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   sharing is just not necessary.  Nothing is stopping

2   the state from enacting a statute to allow

3   prosecution of a use that could be constitutionally

4   prohibited.

5          Now, the state hasn't drawn its statutes up

6   that way.  But for purposes of a federal

7   constitutional analysis, we are not stuck with the

8   particular mishmash of statutes that have evolved

9   over time in New Mexico, for purposes of deciding

10  whether there is a narrow fit.  In fact, if the

11  statutes don't really cover the harm well, that goes

12  to the lack of a narrow fit.

13         So this, kind of,

14  everyone-signs-an-affidavit-and-then-they-get-prosecu

15  ted-for-a-false-affidavit system, is probably the

16  most unwieldy way you could try to protect people.

17         Something else you could do:  You know, you

18  could require that providers of data give notice to

19  everyone of New Mexico's restrictions, which VRF does

20  on its website -- or did before it pulled down New

21  Mexico.  In fact, that is one of the uses,

22  supposedly, of the affidavit is that people then see,

23  oh, these are the requirements that face me here.

24         The problem is that the affidavits have

25  changed in New Mexico.  They are completely

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   inconsistent.  And New Mexico claims that they're all
 2   still accurate.
 3            Sharers of data could be required to
 4   collect identifying information on users, and then
 5   provide those to authorities in the event of an
 6   investigation.  So let's say that VRF is out there,
 7   you know, sharing its data; it's finding problems in
 8   the voter data, sending it to the Secretary of State,
 9   making corrections.  But then one day suddenly some
10   commercial vendor, you know, sends a solicitation to
11   everyone on the voter data list.  They've somehow
12   found a way to scrape it and send it out, as one of
13   the users who clicked on and said they would just use
14   it for a good use.  Okay.  Well, what you could do in
15   that case is say:  Well, VRF, we think it came from
16   you.  Can you please send us the people who have
17   accessed it.  And anyone, you know, who is given
18   notice, as you are required to do, and failed to
19   comply with that notice, can be prosecuted.  You
20   don't have to prove a false affidavit at that point.
21            THE COURT:  Mr. Greim, we've been going
22   another hour and a half.  I need to give Ms. Bean a
23   break to rest her fingers.  So we'll be in recess for
24   about 15 minutes.
25            MR. GREIM:  Okay.  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            (The Court stood in recess.)

 2            THE COURT:  All right.  Mr. Greim, if you

 3    wish to continue your closing argument, you may do so

 4    at this time.

 5            MR. GREIM:  Thanks, Your Honor.  And I

 6    think I have about probably about 10 minutes left at

 7    most here.

 8            So the final reason -- we were speaking

 9    before about why banning all sharing is unnecessary.

10    The final point is the Secretary of State does not

11    really use these affidavits.  Ms. Vigil said that

12    they don't request additional information, they don't

13    investigate to see whether the information on the

14    affidavits is true.  They simply wait for complaints.

15    Even when they do receive information, as in the case

16    of ProPublica, they're not really very eager to get

17    to the bottom of it.  Although, we did hear her

18    promise on the record that they would consider it.

19            So, in short, a complete ban is not

20    necessary to meet any legitimate state interest here.

21    There are things short of that that would be covered,

22    that would not sweep out and criminalize such vast

23    realms of protected activity.

24            So, Your Honor, that's our main theory.

25            I do want to go to kind of our next point,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    though.  This was our original theory when we first

 2    got the documents, before we learned about this sort

 3    of change in position.  And this is really a content

 4    or a viewpoint based ban.  The claim that the

 5    defendants are merely enforcing the plain language of

 6    the statute, which purportedly criminalizes all

 7    sharing is a recent fabrication that happened in this

 8    case.

 9            First, the statutory analysis is simply

10    incorrect, as we've already covered sort of ad

11    nauseam.

12            Second, even if that statutory analysis was

13    correct, then a large swath of current uses are

14    criminal, but are going unpunished and

15    uninvestigated, while the AG refers VRF, meanwhile,

16    to the FBI, and as we'll see in other exhibits we did

17    not get into today, confers with the California AG on

18    other projects apparently related to VRF.

19            This is contradicted also by the forms,

20    including by the Local Labs form that was signed,

21    that set up a different system.

22            And finally, the forms were changed

23    recently, and just before the story broke.

24            Now, if we do have a direct restriction on

25    speech, which the Secretary of State admits, then it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    applies to particular speech because of content or a
 2    viewpoint expressed, including the purpose-based
 3    restrictions.  So we cited two cases before on those.
 4    I just included them here.  Again, the evidence here
 5    is very, very strong.  The Secretary of State clearly
 6    referred to VRF, because it believed this was
 7    misinformation, and was not government related.  We
 8    heard that from Ms. Pino before she was able to take
 9    her first break in her testimony.
10            THE COURT:  Now, if you're intending for me
11    to be looking at a PowerPoint, it's not up.  Do you
12    know that?
13            MR. GREIM:  No, Your Honor, I failed to
14    share it.  Thank you for the alert.  Okay.  It should
15    be up now.  Okay.  All right.  Very good.
16            And so we learned, Your Honor, that
17    misinformation truly was the issue here.  Pino
18    testified that even though she doesn't have the
19    information about what the misinformation was, that
20    if the allegations about VRF were correct, then it
21    could not have been engaging within the sort of
22    content-based requirements.  That was the reason for
23    the referral.
24            Now, I admit the Attorney General has come
25    in here and said:  Well, wait a second, whatever the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Secretary of State's people may have originally said,

 2   we're doing something different now.  We're here only

 3   on the sharing theory.  It's not at all about the

 4   rest of it.  They've been very clear about that.

 5           The problem, though, is the Attorney

 6   General has jumped in with gusto here.  And we keep

 7   hearing, as we'll see with these new requests that

 8   VRF has made, it seems like we can't get a straight

 9   answer about reasons why we're being denied access to

10   things.  And that, Your Honor, is a telltale sign

11   that there is something else going on here than just

12   a dispassionate weighing of the statute.

13           Finally, whether you view this as a content

14   or a viewpoint-based ban, or whether you look at this

15   as an overbreadth issue, it's going to fail strict

16   scrutiny.  And we'll come to that in just a second.

17           Your Honor, I won't go into great detail on

18   the statutory interpretation being flawed.  I think

19   we've almost sort of flogged that issue a little bit.

20   But I do want to point out something that wasn't

21   covered before.  And it's this criminal provision

22   1-4-5.6, the definition of the crime of unlawful use

23   of voter data refers to purposes.  It consists of a

24   knowing and willful use of such information for

25   purposes prohibited by the Voter Records System Act.

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                     201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                             FAX (505) 843-9492
                                                   1-800-669-9492
                                             e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    And then, what's odd is it refers to Article 5 en

2    masse.

3            Okay.  We look to Article 5.  There is no

4    reference there to purposes.  You have to be

5    creative, and you have to say:  Well, the

6    prohibitions on the state or data processors not

7    disclosing, that's kind of like a purpose, so those

8    are the purposes we mean, and we're going to import

9    those over into 1-4-5.6.

10           But there is a much easier explanation for

11   this.  You don't have to stretch.  Okay, you can go

12   straight to the fact that in 2011, all these statutes

13   were amended.  And at that time, 1-4-5.5 and 1-4-5.6

14   were both over in Article 5.  So the references to

15   purposes in 1-4-5.6 made total sense, because at that

16   time, the purposes of governmental or election or

17   election campaign -- and I think even research at

18   that time -- they were in Article 5.  These two

19   statutes moved over, they shifted over in 2011 to be

20   in Article 4, for whatever reason.

21           And so, you know that's hardly the only

22   reason to disagree with the state's statutory

23   interpretation -- which can't be right -- but this

24   explanation the oddity of why purposes are referred

25   to in 1-4-5.6, but when you look to Article 5, there

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                     (505) 843-9494
FAX (505) 843-9492                                                           FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    is no reference to purposes anywhere.  It's a remnant

2    of 1-4-5.5, and they just didn't think to change that

3    when they moved these two statutes over.  We'll have

4    more about this in our briefing, but I wanted you to

5    see this.

6              Okay.  I want to now address the issue that

7    the Court raised in our last hearing.  And, you know,

8    the basic question is:  Well, if they got the statute

9    wrong, if they're not actually applying the statute,

10   isn't this a matter where you've got to go to state

11   court and have a state court say:  Stop, Attorney

12   General, or stop, Secretary of State; you can't do

13   that, because the statute doesn't give you this

14   authority.

15             And, fortunately, that's not how Section

16   1983 works.  Because there are many cases, many

17   famous cases, when you begin to look at the facts --

18   and we had to finally stop doing this -- but many

19   famous cases where a state official would rely on a

20   statute, a state statute; clearly have it wrong, and

21   then use that to violate the constitutional rights of

22   the defendant.  So one reason, after the Civil War,

23   that the statute was drafted this way, they say,

24   "Under color of any statute," so if someone purported

25   to rely upon a statute -- which they're doing here --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    "or also regulation, custom, or usage."  So it may

2    not even be something that ties back to a statute.

3            So it could be really even worse than the

4    conduct here, where, potentially, there is not even a

5    statute that even comes close.  And that was Adickes

6    versus Kress, which I've referenced here.  This is

7    discrimination in places of public accommodation.

8    And the defense was raised there, well, there is no

9    statute that says you have to do this.  And there,

10   the Court was very clear, we look at the

11   interpretation of custom, we look at the settled

12   practices of state officials of imposing sanctions or

13   withholding benefits.  Well, that's what we have

14   here.  We have a practice of the Secretary of State,

15   and now, the Attorney General has unfortunately

16   signed on, saying:  You can't do sharing.  That's

17   really what the statute means, and you'll be

18   prosecuted for that, even though there is hints today

19   of nibbling around the edges, and allowing some

20   sharing.  But, of course, we'll never know what those

21   are.  That leads to separate issues like vagueness.

22           One important case which we'll talk about,

23   the Dombrowski case, Your Honor, I took a little

24   liberty here, and I took a clip from the Oliver Stone

25   movie on JFK, because it relates to the DA in New

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Orleans, Garrison, who also played a prominent role

 2    in that movie.

 3            Anyway, in the Dombrowski case, he went

 4    after several civil rights groups, saying that they

 5    violated a state statute against subversive communist

 6    organizations.  The plaintiffs there said, Hey, you

 7    know, Garrison and others are using the state statute

 8    to harass us.  We are not a communist front group.

 9    You know, we're a -- this is a civil rights group.

10    And the Supreme Court said:  Look, it is not right

11    for you -- the district court was wrong, actually, to

12    hold that it should abstain pending authoritative

13    interpretation of the statutes in the state courts,

14    which might well decide that, yes, you know, you're

15    not communist party front group, so you're not

16    covered here.  What the Supreme Court said is:  No,

17    they're threatening you with prosecution of the

18    statute.  The threats themselves are the chill.  And

19    that's the violation.

20            And so, yes, you can come into court, even

21    though we're going to have to potentially look and

22    see what the statute means, it is not appropriate to

23    abstain when there is an actual federal

24    constitutional violation.  That's the last picture I

25    have in my slide show.  But I'm almost done.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                       1-800-669-9492
PROFESSIONAL COURT                    e-mail: info@litsupport.com
REPORTING SERVICE



1          So finally, on strict scrutiny, the state

2     gave us four interests in their brief.  They adhered

3     to those during the hearing, I think.  One is to make

4     sure that people sign the affidavit and know the

5     permissible uses.  The problem, Your Honor, is that

6     the affidavits themselves have changed, and they are

7     wrong.

8          It's unclear that people not knowing the

9     permissible uses of voter data is that big of a

10    problem.  And a total ban on sharing is not narrowly

11    tailored to deal with that situation.

12         Second is, we need to make some money,

13    you've got to raise fees.  Well, there are many other

14    ways to handle that.  Again, a total ban is not

15    narrow tailoring.

16         Next, they say it makes voters feel better

17    to know that disclosure is only on a "need to know

18    basis."  First of all, there was no evidence of that,

19    other than kind of the leading testimony that Ms.

20    Pino was taken through about her own feelings.  There

21    is other things you can do to make voters feel better

22    about protection.  They could extend the

23    nondisclosure law to public officials; nothing

24    stopping them from doing that.  But it assumes the

25    conclusion, too, that only some people need to know.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    That is what the case is about.  You can't really

2    assume that conclusion as part of your rationale as

3    well.

4         And then finally, combating misinformation

5    because of stale data, that has all the same problems

6    as in point 3.  There is not a single -- not a shred

7    of evidence of voters being up in arms because of

8    stale data.

9         That doesn't apply to VRF, which does

10   update its data.  The example that they gave with Ms.

11   Vigil was incorrect, actually.  Because the entire

12   point of VRF's analysis was to compare the April data

13   to the November data from the election, and then try

14   to explain why the discrepancy was there.  It didn't

15   matter that somebody was complaining about the

16   following December.

17        So there is just not evidence to support

18   these interests.  And even if they are legitimate

19   interests, they're not compelling enough, and there

20   are certainly many other provisions you could enact

21   to advance the same interests here.

22        I've mentioned retaliation here.  We're not

23   asking for a relief based on this theory.  You'll see

24   more of it, and I want to emphasize here mainly the

25   idea that the evidence seems clear, despite what you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    heard Ms. Pino kind of backtrack on her referral;

2    that it was this idea of misinformation that

3    motivated everything, motivated the strong language

4    and attacks against VRF in the media.  And it brought

5    the AG in.

6              The AG is pressing the investigation.  The

7    AG has tried to refer this to the FBI.  No one is

8    backing away and saying:  Well, wait a second here, I

9    think we might have gotten the statutes wrong.  Is

10   there some kind of off ramp?  They're all in.

11   They're all in to go after VRF, even after knowing

12   this sort of thinking that led to the referral in the

13   first place.

14             Okay.  We're about done here.  That was all

15   on the merits.

16             Of course, there are multiple factors here

17   for preliminary injunction.  Irreparable harm to the

18   plaintiffs for having to take the data down;

19   therefore, cutting off all of its communications with

20   its users.  That is a direct harm against speech.

21   Under Elrod versus Burns, that's irreparable harm.

22   That is clear and there is no questioning that

23   authority.

24             Lack of harm to others is the thing that

25   the state has focused on here.  The problem is there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   was no evidence, the state brought no evidence of

2   complaints that it received about people in New

3   Mexico coming forward and saying:  Hey, we're worried

4   about VRF, or we're concerned.  We're being

5   threatened.  We're being harassed.  I think I don't

6   want to register to vote now.  I want to cancel my

7   registration.

8           Everything we heard was speculative and it

9   was basically the state's own witnesses being led

10  through a series of questions to agree that they

11  would be concerned and have to do this or that.

12          But remember, Your Honor, the state itself

13  has set up a system where everything comes down to

14  this affidavit.  It did not have to be this way.  It

15  doesn't need to stay this way.  And so there has been

16  no actual evidence of harm to other people.

17          Finally, the public interest.  And here,

18  this is where the statute comes into play.  The

19  statute, properly interpreted, does weigh the

20  competing interests.  Don't forgot, we have a

21  National Voting Rights Act, which we'll hear more

22  about in the coming weeks that say that the states

23  have to share this data.  That is the system of

24  sunlight is what the federal government has

25  prescribed.  States have leeway in how they do that.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    But the idea that this stuff needs to remain private

2    and that's public interests, that's sort of not open

3    to us because the statutes themselves tell us what to

4    do.

5            In fact, they try to -- the Secretary of

6    State knows how to go and change the statutes.  They

7    tried to once before.  It apparently failed with

8    another change this year.  Why do the statutes still

9    say what they do, if the law and the public interest

10   is really what the Secretary of State says?  The

11   statutes don't make the choices, the Secretary does.

12           Finally, Your Honor, what injunction should

13   issue here?  And again, we'll make this available, it

14   will be in briefing.  I want to just put it in words

15   here.  The defendants, and all those in concert with

16   them, should be prohibited until further notice from

17   taking any steps to investigate, threaten, cite,

18   charge, prosecute, or punish VRF, its agents,

19   employees, officers, or those in privity with it,

20   under the three statutes that the defendants have

21   raised here, for the use or sharing of New Mexico

22   voter data, so long as the purpose of the use or

23   sharing is to engage in or foster communications or

24   analysis regarding officials' conduct of New Mexico

25   elections or regarding New Mexico's maintenance of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    its voter lists and election systems.

2              So, Your Honor, that's what we're doing

3    today.  The record shows that's what we're doing.

4    We're not asking for free rein here.  The lines we've

5    drawn are actually the lines in the statutes.  So

6    when you've got this situation of an overbroad

7    customer usage, a good tailored injunction ought to

8    follow the lines of the statute.  Because that's

9    available to us here; that's what the preliminary

10   injunction should look like; and that's what we

11   respectfully ask the Court today.

12             Thank you, Your Honor, for your immense

13   patience with us, and with me, in particular, today.

14             THE COURT:  And you'll be filing this

15   PowerPoint on the CM/ECF.

16             MR. GREIM:  I can file it on the ECF.  I

17   could file proposed findings and conclusions on the

18   ECF and give this informally.  Whatever the Court

19   desires.

20             THE COURT:  Well, we'll talk about findings

21   of fact and briefing a little bit later.  But why

22   don't you file this PowerPoint on CM/ECF.

23             MR. GREIM:  Okay.

24             THE COURT:  Thank you, Mr. Greim.

25             Ms. Serafimova, if you wish to make a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    closing argument, you may do so at this time.

2              MS. SERAFIMOVA:  I do, Your Honor.  Thank

3    you.

4              And I'll have to start by saying that it's

5    still unclear to me what theory plaintiffs are

6    pursuing.  They're talking overbreadth generally,

7    without tying it to a particular statute.  So I will

8    go over both statutes that we have been discussing.

9              The first statute is 1-4-5.5.  This is the

10   statute that requires an affidavit and has the

11   so-called use restrictions.  And plaintiffs lack

12   standing to challenge the constitutionality of that

13   statute on any theory.  First, regular standing

14   requires a credible threat of prosecution.  As I

15   stated before, and as I was quoted to have stated

16   before previously, the Attorney General's Office is

17   of the position that any prosecution will be under

18   1-4-5.6, not 1-4-5.5.  And that is based on our

19   statutory interpretation, which, again, we'll brief

20   in detail after today.  But also we discussed more

21   than once up until today.

22             And so there is no credible threat of

23   prosecution under 1-4-5.5.  And in any event, that

24   statute does not carry its own criminal penalty.  And

25   so we don't have a signed affidavit, and therefore,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    there cannot be any false swearing.  So if there is

2    no regular standing to challenge 1-4-5.5, then there

3    can be void for vagueness claim with respect to

4    1-4-5.5.  And likewise, there can be no claim, no

5    prior restraint claim with respect to 1-4-5.5.

6             Now, if this is the statute that plaintiff

7    asserts is overly broad under the First Amendment,

8    then they cannot demonstrate an injuring fact.

9    Because as this Court has indicated, if the Court

10   accepts that this is the statute that is relevant,

11   then it will likely find that VRF's use of uploading

12   the data falls under either governmental use or

13   election campaign related use.  And given that their

14   conduct is not currently prohibited under that

15   statute, they don't have standing to challenge it,

16   because there is no injury in fact.  Because

17   invalidating 1-4-5.5 on its face for overbreadth

18   would not change their circumstance one bit.

19            The same is true of Holly Steinberg.  She

20   actually has not engaged in any conduct whatsoever,

21   so she's under no threat of prosecution under any

22   statute.  But, again, for all the purposes, her

23   circumstances will not improve, should the Court find

24   in her favor.

25            And then, to the extent there is an



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  argument to be made that VRF would benefit from Local

2  Labs' conduct being found constitutional, that

3  statute still prohibits commercial use.  And I

4  believe Mr. Greim has admitted today that commercial

5  use can be regulated.  And so Local Labs --

6  regardless of, you know, whether this Court finds

7  that uploading is governmental use or election use,

8  Local Labs' conduct of selling the data -- and we

9  know they sold it because they paid 5,000 for it, and

10 then they charged 15,000 for it to VRF -- so their

11 conduct would still be a violation and not

12 constitutionally protected, so there would be no

13 change in circumstances there.

14          So, again, if there is no injuring fact, we

15 need Article III standing regardless of the theory.

16 So even in overbreadth cases, we need Article III

17 standing.  Plaintiffs cannot show injuring facts with

18 respect to 1-4-5.5, so they don't have a claim that

19 survives there.

20          Now, on a substantive challenge, again, we

21 do -- given our interpretation of 5.5, we do concede

22 that plaintiffs have not violated any of the use

23 restrictions, because those use restrictions do not

24 prohibit uploading the data to a website.  That is

25 under 5.6.  So that doesn't change our theory.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    with respect to -- to the extent that the challenges

2    that there is substantial overbreadth substantively

3    in 5.5, given the use restrictions, plaintiffs have

4    to show that the use restrictions, 5.5, substantially

5    breach the First Amendment rights of the other

6    parties now before the Court.  And, you know, those

7    use restrictions must regulate substantially more

8    restrictions than the First Amendment laws.  There is

9    actually no evidence whatsoever on that point.  All

10   that must be real and substantial.  Again, nothing to

11   that effect from any of the witnesses with respect to

12   5.5.

13          And so Local Labs, their use is commercial

14   so doesn't get the same protection.  And so,

15   substantively, 5.5 does not actually significantly

16   chill anybody else's protected First Amendment

17   rights.

18          THE COURT:  Let me ask you this question:

19   At the last hearing we heard testimony that it is not

20   members of the public who are doing analysis of voter

21   data to ensure data integrity, but Voter Reference

22   staff.  And it sounded like the main function of

23   VoterRef.com for the public is for people to check

24   their own voting record.  If people can check their

25   own record on the Secretary of State website, then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   what is the injury to Voter Reference, if they can't
 2   publish this voter data but can only analyze it?
 3           MS. SERAFIMOVA:  Well -- and I was going to
 4   mention that, Your Honor.  There isn't any.  Because
 5   anyone -- like you said, any New Mexican registered
 6   voter who wants to check their own data, there is a
 7   section of the Secretary of State's website where
 8   they can go.  I have done it.  You just put in some
 9   information.  You can share that log-in information
10   with anyone you want.  So people can check their
11   individual information.
12           Like I said, this case is not about that.
13   It is about people who do not wish to share their
14   residential address, where their children live, for
15   example.  Your address, my address -- not, of course,
16   Mr. Greim's address because he doesn't live in New
17   Mexico and this doesn't effect him.  But, yes, if
18   what they wish to do is allow individuals to check
19   their own voter records, that's already available,
20   and it's protected so that no one else is harmed in
21   the process.
22           So again, I think with respect to 5.5 and
23   overbreadth, there is absolutely no evidence in the
24   record that substantial amounts of protected speech
25   are being prohibited along with unprotected speech.
```

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    And like I said, there is no standing on any theory
 2    possible.  And so there can also not be a void for
 3    vagueness or challenge with respect to that statute.
 4              So now we're going to move on to 1-4-5.6.
 5    And, as you know, Your Honor, our interpretation of
 6    that statute is that it incorporates by reference
 7    portions of Article 5, relevant portions of Article
 8    5.  And I'll just mention, yes, the statutes were
 9    recompiled in 2011.  Since then, there have been
10    numerous amendments, including the fact that, in
11    2015, the legislature put the definitions of
12    governmental purpose and election campaign purpose in
13    1-4-5.5.  But they never thought it necessary to take
14    the reference in 1-4-5.6 to the voting registration
15    system as Article 5.  That reference has remained
16    consistent.
17              So we cannot assume that the legislature
18    was incompetent, was negligent.  We have, again,
19    based on principles of statutory interpretation, we,
20    in fact, have to assume the opposite.  They made
21    other amendments, they did not make that change, and
22    that must have been, therefore, intentional.
23              With respect to 1-4-5.6, plaintiffs
24    actually do not challenge that statute and our
25    interpretation of it on its face.  We've invited them
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    to do that.  They didn't brief it.  They continue to
2    deny that that statute is even relevant.  So there is
3    no facial challenge to 1-4-5.6 as of today.
4              Now, they seem to be bringing -- (Zoom
5    audio garbled).
6              THE COURT:  Hold on.  Do you want to start
7    that over?  We didn't pick it up.
8              MS. SERAFIMOVA:  Oh, I'm sorry.  So I was
9    going to say that there is no facial challenge to
10   1-4-5.6, unless of course, that's what their
11   overbreadth argument is intended to be.  And I will
12   address that.  And, actually, I might actually start
13   with that.
14             So, as we briefed in our response, one, it
15   is our position that, again, 1-4-5.6 prohibits
16   anyone -- anyone, regardless of identity, regardless
17   of purpose, regardless of viewpoint, regardless of
18   content, from distributing voter data that has been
19   provided or received from our office.
20             Now, I think it's very important to mention
21   right now that sharing is not a statutory term.
22   Sharing is something that can be used -- Mr. Greim
23   has used it, and has led to equivocation.  Sharing is
24   not a statutory term.  The statute says:  No selling,
25   loaning, surrendering, or otherwise providing access
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN
&ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    to.  Sharing can mean that plus.  What we are focused

2    on, the prohibition of selling, loaning, otherwise

3    providing access to, distributing; those are the

4    statutory terms.

5          And, so I said it before, and there is no

6    evidence to the contrary, discussing the data is not

7    the problem.  Analyzing and criticizing it is not the

8    problem.  The problem is when you receive a file from

9    the Secretary of State's Office, and then you hand

10   that file over to someone else that is not within

11   your organization, whether in electronic or paper

12   form.  That is the problem.

13         So, as we discussed in our briefing,

14   1-4-5.5 is, therefore, completely content and

15   viewpoint neutral.  It doesn't matter what's actually

16   in the file.  It doesn't matter who obtained the

17   file.  It doesn't matter who they're handing it over

18   to.  It doesn't matter why they are handing it over

19   to that person, and it also doesn't matter what that

20   other person is going to do with it.  So this is a

21   content neutral regulation, statute; custom, I guess,

22   was one other term that was used today.

23         As such, it is subject to a different First

24   Amendment analysis.  It is true, we conceded that it

25   is speech.  But it is a different kind of speech that

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                              1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1   is more akin to conduct.  And that is why, as the

2   Court is well aware, there is a different First

3   Amendment standard that applies.  And we have briefed

4   that in our response.

5           Now, I do want to address something that is

6   being put forth for the first time -- and again, this

7   was not briefed; this is not actually part of the

8   motion for preliminary injunction -- but for the very

9   first time plaintiffs are now claiming that 5.6, as

10  interpreted, and as applied by the Secretary of

11  State's Office is overly broad under the First

12  Amendment.

13          Now, to prevail on that theory, they have

14  to show that 5.6 prohibits a substantial amount of

15  protected speech, as compared to the unprotected

16  speech that it prohibits.  That's the standard.  And

17  that standard simply has no logical application to a

18  situation such as this one, where we are analyzing a

19  content neutral regulation of speech that is akin to

20  conduct.  There is no protected speech -- there is no

21  unprotected speech, in the sense that if it's speech,

22  all of it is prohibited.  No one can upload the data

23  on a website.

24          And so this is very, very similar to a DMV

25  case that we cite in our response, where again, it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    was found to be content neutral.  Anyone who obtains

2    my address from a Motor Vehicle Department is then

3    prohibited from further distributing that address.

4    It doesn't matter for what purpose, to whom, and so

5    on.  And the court in that case found that there was

6    no First Amendment violation.

7            It simply does not make sense to try and

8    apply an overbreadth theory where, if it is speech,

9    then all of it is prohibited.  It's not about the

10   speech.  There is no distinction between, again,

11   protected speech and unprotected speech.  So if

12   overbreadth of 5.6 is the plaintiff's main theory,

13   they don't have a case, and the motion should be

14   denied on that ground.

15           Now, if you give me a second just to go

16   through.

17           Okay.  So next Mr. Greim talked about

18   animus.  And yes, there is some emotional language in

19   some of the communications.  But animus does not

20   exist in a vacuum.  It actually has to be -- it's

21   only relevant if it is evidence that some adverse

22   action was taken because of such animus or motivated

23   by such animus.  And there is simply no evidence to

24   any adverse action whatsoever.

25           We treated their IPRA request the same as

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                             1-800-669-9492
                                                                   e-mail: info@litsupport.com



1    everybody.  We responded.  We -- and by the way, you

2    know, they claim that -- the retaliation claim they

3    didn't have enough information to include that in the

4    complaint.  Well, all they needed to do before filing

5    the complaint is submit an IPRA request, and they

6    would have received the very same information.

7            But setting that aside for now, we

8    referred -- or the Secretary of State -- when I say

9    "we," I speak mostly on behalf of the Secretary of

10   State's Office, as the main defendant here -- but

11   when that referral was made, it was treated exactly

12   the same as the only other referral that had ever

13   been made, which was -- it happens to be a couple of

14   weeks subsequently, but neither target was given

15   advance notice, neither target was contacted.

16           The Office believed they had probable

17   cause, and so they summarized that belief into a

18   letter, and they sent it to the Attorney General's

19   Office.

20           So, yes, perhaps the Secretary of State's

21   Office and its communications director did not

22   applaud VRF for uploading everyone's data online, but

23   that, in and of itself, is not unlawful.  And, again,

24   there is no adverse action to actually litigate here.

25           Mr. Greim talked about the form, and how

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    the form has changed, and only now does the form

2    require the requester to actually promise not to

3    upload data on websites, essentially.  Well, 5.6 does

4    not actually require an affidavit.  So that language

5    does not even have to be in the form.  It always has

6    been, in order to put people on notice, in order to

7    serve the state interests of making people aware that

8    they should not be redistributing our voter data.

9    But there is no legal requirement for it to be there.

10   It's purely informational.  And even that is not --

11   you know, actual notice is not required.  As we all

12   know, everyone is presumed to know what the law

13   allows and prohibits.  And we still presume that

14   there is a deterrent effect, even if we don't require

15   actual knowledge.

16           So I did mention that sharing, again, has

17   caused a lot of equivocation today.  It is not a

18   statutory term.  And so the important part is

19   selling, loaning, otherwise surrendering or

20   distributing the voter data, again, does not apply to

21   discussions.  There is no evidence that it does.  And

22   actually, I believe, we have evidence on the record

23   that it does not apply to lawful discussions.

24           Again, the hypothetical that two parties

25   may want to share the data that led to their

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   conclusions, that's unfortunate.  But, again, the

2   only way for 5.6 to be effective is if it prohibits

3   all sharing outside of the regulatory process,

4   because otherwise, it creates a gap that we cannot

5   prosecute, that we cannot control.

6           And also, there was some argument that, you

7   know, voter A could not discuss the data with voter

8   B; every one of them has to pay for it.  There is no

9   argument that the fees are unreasonable.  So that's

10  not before the Court.  So we have to assume the fees

11  are what they are.  Plaintiffs are not complaining

12  about the fees.  If people have to pay for the data,

13  sobeit.  But that's what the New Mexico legislature

14  has decided.  But that's not a constitutional factor

15  to invalidate the statute.

16          I think Mr. Greim talked about a

17  content-based referral, that the referral mentions,

18  you know, the three purposes, and therefore, the

19  referral is content based.  Obviously, the witness

20  disputes that, the testimony disputes that.  The crux

21  of the referral is in the conclusions.  But,

22  nevertheless, assuming for the sake of argument that

23  there was a content-based referral, first of all,

24  that's the theory being brought for the first time

25  today.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Secondly, it doesn't entitle plaintiffs to

2    the relief that they're seeking on the motion.  If

3    the referral is content based, there is no -- that

4    doesn't lead to them now uploading the data.  Maybe

5    we get another referral that's better phrased.

6    Perhaps.  I don't even know.  I don't know what the

7    remedy is.  But it certainly is not to ignore 5.6,

8    and interpret it by the Attorney General's Office and

9    the Secretary of State's office.

10          And so, again, there seems to be a

11   suggestion for setting aside overbreadth, because

12   again, there is no protected and unprotected speech.

13   We cannot quantify how much protected speech and how

14   much unprotected speech 5.6 prohibits, because it

15   prohibits all uploads and all distribution.  And it

16   doesn't care for the contents and the viewpoint.  So

17   overbreadth does not apply.

18          To the extent they're saying we are

19   applying that statute in a discriminatory way to

20   them -- which I guess is where they were getting at

21   with the custom citation -- there is no evidence to

22   that effect.  We didn't deny Local Labs' request for

23   data, the same way we didn't deny Catalist and I360's

24   request.  They were valid on their face.  We didn't

25   have any information to think otherwise, so those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    were processed and the information was provided.
2              Also, the two referrals to the Attorney
3    General's Office, they were treated the same.  No one
4    was given advance notice.  No one was ignored on
5    purpose.  Both were treated equally.
6              And, you know, a mention was made that we
7    are working with the California Attorney General's
8    Office.  I would have to be the witness on that point
9    because I think the only person actually who has
10   spoken to them -- and again, as the witness has
11   testified, the California Attorney General's Office
12   reached out to us, not the other way around.
13             So, no, we did not ignore their request to
14   speak.  But again, if Mr. Greim would like to put
15   evidence on the record to that effect, I would have
16   to be -- I am the only one who can testify to that.
17             So we've never actually denied any properly
18   filled out affidavit.  Again, there is the only one
19   exception, which is the VRF affidavit that was
20   submitted May 27th, as we discussed, it will very
21   likely be denied.  Although, as you heard, a final
22   decision has not been made.  But, again, it is out of
23   concern that compliance with that request would
24   actually lead to criminal liability for the Secretary
25   of State's Office.  And that is under 1-20-15, which
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    is conspiracy to violate the Election Code.

2          So, you know, there was some suggestion

3    that vast amounts of sharings are not being

4    prosecuted or referred for prosecution.  That is

5    simply not true.  Again, the witnesses testified they

6    never heard of anybody else.  The ones that they have

7    heard about, Catalist and I360, we repeated that

8    many, many times.  The election was the priority in

9    the last many months.  And no one was worried about

10   Catalist between the last hearing and today.  That

11   was just not a priority.  So no conclusion should be

12   drawn from that.  In fact, Ms. Vigil promised to take

13   a closer look at that.  And there is no reason to not

14   believe her on that.

15         And so, again, I think a lot of the

16   so-called evidence of unprosecuted unlawful sharing

17   comes from, with all due respect, Mr. Greim's misuse

18   of the term "sharing."  But the witnesses testified

19   it is selling, loaning, otherwise making --

20   distributing, otherwise providing access to.  If an

21   organization requests the information, it can be

22   shared internally, as long as the uses remains

23   lawful.  But it can never be shared externally.

24         And Mr. Greim mentions the Campaign Finance

25   Act.  I know nothing about the Campaign Finance Act.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   He has not cited it in any of his briefs.  I assume

2   there is a reason for that.  So I would just ask the

3   Court to ignore that mention.

4            On that point, Mr. Greim also mentioned

5   that the federal election -- there is a federal

6   election statute that requires us to make the

7   information at issue public.  Well, if that's the

8   case, that would be a federal claim.  We're in

9   federal court.  Why aren't we pursuing -- or, you

10  know, why aren't we here under that claim?  And

11  again, it's not briefed.  It's not put in front of

12  this Court.  So I would ask the Court to weigh that

13  comment accordingly.

14           We mentioned that the Democratic Party

15  cannot put the data on its website.  The same as the

16  Republican, same as the Libertarian.  No one can do

17  that.  There is no content-based discrimination and,

18  there is no discriminatory enforcement.

19           Okay.  And lastly, you know, we talked

20  about the state's interest is extremely strong in

21  this case.  I mean, you know Your Honor, has

22  corrected me numerous times, these are fact

23  witnesses.  But when they testify about their own

24  experience as voters, that should be discounted.

25  Well, that doesn't make sense.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1           So when Ms. Pino says that as a high-level
 2    public official, she has an interest in her privacy,
 3    and she has taken affirmative steps as to actually
 4    keep her residential address private, and she's
 5    concerned about it being public, that's enough to
 6    discount it.  Yes, it's not a study, you know, how
 7    voters will say, but it's definitely relevant
 8    credible evidence that there will be a negative
 9    effect, should the motion for preliminary injunction
10    be granted.
11           And we've discussed how, as Your Honor
12    stated, if what they want is to allow people to check
13    the accuracy of their own data, they can do that.
14    They also have other avenues.  They can ask people to
15    voluntarily provide that information to them.  They
16    can send mailers asking.  They can create an
17    interactive website where people can log into their
18    information.  There is no significant burden to them.
19    Because their presumption is that everyone is just so
20    happy to have the information online, well, they
21    should test that presumption and ask people to
22    volunteer that data.
23           So another element I want to highlight, is
24    again, it is extremely important to keep 5.6 on the
25    books as we interpret it.  Because, again, if I don't

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1  sign an affidavit, and I obtain the information from

2  some third party who is willing to risk being

3  prosecuted for making a false statement or a false

4  affidavit, then without 5.6, I cannot be prosecuted,

5  and I can do with that data whatever I wish, and then

6  the whole system is dismantled.  So 5.6 is critical

7  to making -- you know, 5.5 works to making the system

8  work, to fostering trust in the electorate process,

9  encouraging people to participate, which the

10  requisite first step is to register and to provide

11  all this private information.

12        And lastly, of course, there is the issue

13  of the fees.  If I don't obtain data by way of

14  affidavit, the Secretary of State's Office has no way

15  of charging me for it.

16        And so my last point would be that, again,

17  the retaliation claim is not part of the motion for

18  preliminary injunction.  And so -- well, I'll stop

19  there because there is really no point to go further

20  on that, I don't believe.

21        And just to recap, Your Honor.  If we're

22  under 5.5, there is no Article III standing, because

23  a favorable -- there is no injuring facts and

24  ultimate redressability.  You have expressed the

25  belief that their use is already lawful under one of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the defined terms.  There is also no regular standing

2   or prudential standing, because they cannot show a

3   credible threat of prosecution, because I have said

4   many times -- and then, of course, case law, where

5   essentially the functional equivalent has happened

6   where a prosecutor will sign an affidavit, and say,

7   "I'm not going to prosecute plaintiff," and the cases

8   get dismissed for lack of standing.  And if there is

9   no standing for 5.5, there is no void for vagueness

10  and there is no prior restraint challenge.  And 5.6

11  is content neutral, applies to everyone regardless of

12  content, viewpoint, so on and so forth.

13          Overbreadth simply does not make sense in

14  that sort of First Amendment silo, if you will, where

15  we have speech that is more akin to -- that is more

16  akin to content -- I'm sorry, to conduct -- and that

17  conduct is being regulated in an absolutely content

18  neutral way.  And we've laid out those arguments in

19  our response.

20          So I very much hope that the Court has

21  questions that I can answer at this point.  But if

22  you don't, that's all I have for today.  But please

23  do allow me to clarify, if there is anything that

24  needs clarification.

25          THE COURT:  All right.  Thank you,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Ms. Serafimova.

2           Mr. Greim, I'll give you the last word.

3   And maybe you could start by answering the question

4   that I posed to the state, and that is that testimony

5   we heard at the last hearing that it's not members of

6   the public who are doing the analysis of voter data

7   to ensure data integrity, but the Voter Reference

8   staff.  And it sounded like, again, the main function

9   of VoterRef.com for the public is for people to check

10  their own voting records.  If people can check their

11  own record on the Secretary of State website, then

12  what is the injury to Voter Reference if they can't

13  publish this voter data, but can only analyze it?

14          MR. GREIM:  Sure, Your Honor.  And thank

15  for you giving me the chance to answer that, because

16  I -- and perhaps I should have included that in my

17  presentation.  I sort of focused on other parts of

18  our dispute.  But there are really two parts of Voter

19  Reference Foundation and how it's useful.

20          The first part is this sort of macro

21  analysis.  And that is the analysis that's done by

22  people at Voter Reference Foundation going through

23  the data, then publishing those results.

24          And so, for example, when you saw earlier

25  today the most recent request that we made and said:

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Hey, we won't public this unless we get an order from

2  the Court, the internal analysis is really what we

3  call project 2.  That's what we call project 2 in

4  that letter.  And so that's the kind of work that

5  Tina Swoboda and others would do; they would see if

6  they find discrepancy or some other issue.  They then

7  reach out to the Secretary of State and they try

8  to -- you might remember her saying -- they try to

9  limit the amount of things that can't be figured out,

10  and they limit the discrepancy down from thousands

11  and thousands down to, you know, 20 or 30.  So that's

12  project 2.  And maybe I should reverse the numbers.

13  But that's the first thing they do.

14          But the outward, public facing part of VRF

15  is just the accessibility to the data.  That's what

16  we called project 1 in that letter.  And that's sort

17  of the crowd sourcing element.  And this is why I

18  really want to drill down, Your Honor, because it's

19  not primarily about someone just checking their own

20  data.

21          Now, it's true -- I think more people get

22  to their data and can see the different years they

23  voted and things than people who tend to just check

24  the New Mexico website.  But remember Ms. Swoboda --

25  I forget if she walked through it with me or with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    opposing counsel, or if I said it as initial Q and
 2    A -- but the key is you'd know other people in your
 3    household.  You know other people in your precinct.
 4    You have friends and family.  So you know quite a bit
 5    more than just yourself.  And the idea is that rather
 6    than keeping each person in a silo, where all they do
 7    is just go check their own information -- and we just
 8    hope that millions of people do that -- the hope is
 9    that maybe thousands of people who know, you know,
10    tens or hundreds of others pretty well, will go on
11    and check for those, and find out that their great
12    uncle, who they know passed away three years ago, is
13    listed as voting last year, or you know, is on the
14    rolls still, or something like that.  And so it's
15    about far more than just checking your own data.
16            Because if that's all it was, it's going to
17    take forever for this process to work.  People need
18    to be able to know what's in the data and talk about
19    it with each other.
20            You might pull it up and say:  Well, it
21    says Uncle John voted two cycles ago, but I think he
22    died then, and talk to your mother about it or a
23    friend.  That's the point of this, is to get multiple
24    minds working together out in the general public
25    about these voter records.  So we've got to be able

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

246 of 255

1    to have those conversations and share that data with

2    each other or those conversations can't happen.

3              We can't use the power of multiple minds

4    working together at once.  I don't mean to sound like

5    science fiction here, Your Honor, but we can't just

6    keep people in their own individual silo, because

7    that already exists.  People would not have spent all

8    this money and put all this time into Voter Reference

9    Foundation if all we were doing is just making the

10   same thing the Secretary of State already has.

11             So I hope that answers your question on

12   that point.  But I'm happy to answer follow-ups,

13   though, on that issue.

14             THE COURT:  No.  I'll give it some thought.

15   Thank you.  Go ahead.

16             MR. GREIM:  I'm not going to run through --

17   we've gone on for a long time.  I know you're going

18   to get submissions.  But I do want to hit just a

19   couple of high points.  I really want to focus on

20   this overbreadth theory.  I know we talked a lot

21   about viewpoint discrimination and content-based

22   discrimination.  But I think we're missing the nuts

23   and bolts of the law of overbreadth here.

24             Overbreadth does not compare protected

25   versus unprotected speech.  That is not what the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   doctrine does.  You heard that from opposing counsel.

2   Instead, it compares the actual sweep of the law,

3   versus the plainly legitimate sweep of the law.

4   That's the delta that we compare.  And the actual

5   sweep of the law here is everything.  It can't be

6   shared outside of a person, if it's a person who

7   possesses it.  It can't be shared outside of the

8   entity, if the entity possesses it.  It can't be

9   done, period, with an asterisk for whatever the

10  exceptions that Ms. Vigil believes might exist.  It

11  can't be done at all.

12          So it's a massive -- the sweep is as far as

13  it can go, when it comes to selling, loaning, or

14  otherwise providing access to.  I think sharing is a

15  fair word for that.  So that's the problem.  What's

16  the plainly legitimate sweep?  When might you say:

17  You can't share it with somebody else?  You might say

18  you can't sell it to somebody else for profit when

19  it's not for governmental or election or campaign

20  finance purposes -- or, I'm sorry, election campaign

21  purposes.  In fact, that is what the law says.  If we

22  could read it properly and understand it, that is

23  what the law says.

24          So Local Labs doesn't -- I'm sorry, Your

25  Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

248

```
1            THE COURT:  No, go ahead.
2            MR. GREIM:  Okay.  So Local Labs -- by the
3   way, it's not a commercial purpose just because money
4   changes hands.  It's a commercial purpose when you
5   sell it to someone to use it for what everyone
6   understands to be commercial reasons.
7            It gets even crazier if, say, the
8   Democratic Party wants to share it with the candidate
9   and they're going to now, say:  Well, wait a minute,
10  we paid 5,000.  We're asking each candidate to chip
11  in $800.  Well, having money change hands does not
12  convert this to a commercial purpose.  But I don't
13  want to go off on that tangent.
14           The issue here, we've got to look at the
15  plainly legitimate sweep, which is pretty narrow
16  compared to the actual sweep.  And that's the issue.
17           The other trap which we should not fall
18  into is say:  Well, you've got to point to one
19  statute that is overbroad, and you've got to look at
20  each one of them individually.  But that's not the
21  analysis that the state has done here.  Remember the
22  state has cobbled together parts of 1-5-22, but not
23  all of it, just parts of it.  They've added that to
24  1-4-5.6 -- part of 1.4.5, 6 and say, that's a new
25  crime.  The new crime is any sharing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              So what we're attacking is that theory.
 2    The cobbling together of one statute with another
 3    statute to say New Mexico recognizes a blanket ban on
 4    sharing.  That's the thing that we are challenging.
 5    That's what's overbroad.  Okay.  So there are other
 6    parts of 1-4-5.6 that actually marry to 1-4-5.5, or
 7    at least did before they were both shifted to Article
 8    4.
 9              So I just want to be clear on those points.
10    I don't have a lot more.  I just want to come down to
11    this:  There are policy issues here about who should
12    be able to see the voter data.  You know, I recognize
13    that.  And there is arguments that, Hey, Voter
14    Reference Foundation, we like what you're doing, but
15    couldn't you do it this way?  Or couldn't you engage
16    in this speech instead?
17              But remember, in the First Amendment
18    context we don't say:  Well, there is alternative
19    channels of communication open to you, go over there.
20    When you completely block one channel of
21    communication, which is what they're doing here with
22    a blanket ban, that's the scope we look at in a First
23    Amendment case.  They're completely blocking it out.
24    And they're going beyond the statute.  But that's
25    what they're doing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            We're seeking relief.  The injunctive

2    relief we're asking for here does not strike down a

3    statute.  Courts don't strike down statutes.

4    Instead, in the federal court, they enjoin state

5    officials from violating a federally protected right.

6    And they do it in a particular circumstance.

7            So that's what we are asking for here.  We

8    are asking for protection from this ongoing

9    prosecution that might morph into a new theory down

10   the road.  We'll see.  But we're asking for it to be

11   put on hold so they can put the information back up.

12   And people are concerned about privacy, but the

13   statutes already make that decision for us by not

14   banning this kind of publication.  There is no ban.

15           So with that, Your Honor, I think I'm all

16   done, unless you have other questions.

17           THE COURT:  No, I think on the merits

18   that's it.

19           Let's talk a little bit about procedure.

20   You've mentioned a few times, Mr. Greim, about either

21   findings of fact or additional briefing.  What are

22   you thinking and what do you want to do on that?

23           MR. GREIM:  Your Honor, I kind of want to

24   give the Court what will be most useful to it.  And I

25   say findings and conclusions because that's what I

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

```
 1   find myself doing all the time lately.  That's what
 2   courts seem to want.  But, you know, whatever would
 3   crystallize the issues best for the Court is what I
 4   want to do.  And I'm actually agnostic.
 5           THE COURT:  Well, I won't force them on
 6   anybody, but, yeah, they are helpful to the Court in
 7   putting together its findings of fact and conclusions
 8   of law.  Having said that, what do you want to do?
 9           MR. GREIM:  Okay.  If they're helpful, then
10   that's what we'll do.  I'm agnostic between that and
11   a brief.  But if I were a judge -- and that day will
12   never come -- I'd probably want findings and
13   conclusion as well.
14           THE COURT:  Do you want to set a deadline
15   for submitting those?
16           MR. GREIM:  Sure.  We could probably do
17   that.  Mr. Miller is now coming into my office.
18   Maybe in 14 days?  He's giving me a thumbs up.
19           THE COURT:  All right.  How does that sound
20   to you, Ms. Serafimova?
21           MS. SERAFIMOVA:  This is more than I
22   expected from Mr. Greim, so I'm happy with 14 days.
23           THE COURT:  All right.  So we will plan --
24   if this is all right -- whatever additional briefing,
25   findings of fact, conclusions of law you intend to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    submit will be two weeks from today, which I think

2    today is the 15th, so it's the end of business on the

3    29th.

4         Let me ask -- and this question will be

5    directed more at the plaintiff here.  Because I think

6    I mentioned this last time, I want to be a good judge

7    and not sit on this to a point where I'm not ruling

8    in a prompt manner on your motion for a preliminary

9    injunction.  But I would like to think about this.

10   Using the 29th as sort of a benchmark, how much

11   longer after that do I have to think about these

12   issues before you begin to say I'm not being a good

13   judge and getting my ruling out?

14        MR. GREIM:  Your Honor, I've never been

15   asked that question before, other than like when

16   there is an election coming up or something.

17        Your Honor, we really would just like it as

18   soon as we could get it, knowing how much you have to

19   travel, you're covering in other districts and

20   things.  We would want to get our data back up and

21   restart New Mexico.  But, you know, all I can say is

22   as soon as we can.  But I mean, given that we've

23   taken two full days, and we're going to have probably

24   100 findings of fact and 40 conclusions of law, or

25   something like that, you know, it may take a while to

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    go through the material.

2              THE COURT:  Well, give me something

3    specific.

4              MR. GREIM:  All right.  Maybe something,

5    Your Honor, by the third week of July.

6              THE COURT:  All right.  Let's look at my

7    calendar.  I should have brought it with me.  Let's

8    see, the third week of July.  July 1st is a Friday

9    this year.  So the next week would be the 8th, the

10   next week would be the 15th.  If I had it out by the

11   end of business on July 22, do you think that would

12   be reasonable and a good court as far as ruling on

13   your preliminary injunction?

14             MR. GREIM:  Your Honor, yes, we would.

15             THE COURT:  All right.  So I will plan to

16   have something out by 5:00 on Friday, July 22.  And

17   my math is correct, that is a Friday, right, July 22?

18             Okay.  Is there anything else we need to

19   discuss while we're together?  Anything else I can do

20   for you today, Mr. Greim?

21             MR. GREIM:  No, Your Honor.  And thank you

22   very much for staying with us for all these hours

23   here, and for the court reporter.

24             THE COURT:  All right.  And Ms. Serafimova,

25   anything else we need to discuss while we're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    together?  Anything else I can do for you today?

2            MS. SERAFIMOVA:  No, Your Honor.  Thank

3    you.

4            THE COURT:  All right.  Well, y'all have a

5    good afternoon.  Be safe out there.  And I'll look

6    forward to your submissions.

7            MR. GREIM:  Thank you.

8            MS. SERAFIMOVA:  Thank you.

9            (The Court stood in recess.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on June 18, 2022

15

16

17

18   _____
     Jennifer Bean, FAPR, RMR-RDR-CCR
19   Certified Realtime Reporter
     United States Court Reporter
20   NM CCR #94
     333 Lomas, Northwest
21   Albuquerque, New Mexico 87102
     Phone:  (505) 348-2283
22   Fax:    (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com