IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **VOTER REFERENCE FOUNDATION, LLC,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>)  CASE NO: 1:22-cv-00222-JB-KK<br>) |
| **RAUL TORREZ**[1], in his official capacity as New Mexico Attorney General, | )<br>)<br>)<br>) |
| And | )<br>) |
| **MAGGIE TOULOUSE OLIVER,** in her Official capacity as New Mexico Secretary of State, | )<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO STAY SCHEDULING ORDER DEADLINES PENDING APPEAL**

Six business days before discovery is set to close, Defendants filed the present motion (Doc. 95) asking the Court to stay this case pending the outcome of their appeal of the Court's issuance of a narrow preliminary injunction. Defendants wish to postpone discovery, pretrial motions, and ultimately trial until the Tenth Circuit has fully resolved their appeal. See Mtn. to Stay (Doc. 98) at p. 9.

Defendants' primary complaint is that without a stay, they will be forced to engage in discovery—specifically, to take and defend depositions—without knowing the extent to which the Tenth Circuit's resolution of the appeal may affect the questions asked in those depositions. This

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Raúl Torrez is substituted for Hector Balderas as New Mexico Attorney General.

1

argument fails on many levels, as shown below. But Defendants' most obvious problem is their chronology. Over the last six months of discovery, Defendants failed to timely seek a single deposition. They never even suggested dates of depositions or names of deponents, despite being invited to do so. They certainly have never noticed a deposition. On the other hand, the depositions of Defendants' witnesses (with the exception of a single witness, discussed below) will be complete before this motion is heard. Even if Defendants had raised their concerns at the September 2022 scheduling conference—which would have been the time to raise these concerns had they been legitimate—the pending appeal of a limited preliminary injunction is not a good-faith basis for refusing to answer any deposition question. In short, this Motion is a head-scratcher, and should be denied.

## I. Standard for Modifying Scheduling Order

Plaintiff recognizes the Court's inherent authority to control the scheduling of cases, but urges the Court to exercise that authority to deny this Motion and allow the case to proceed as planned. A scheduling order may be modified upon a showing of good cause. Fed. R. Civ. P. 16(b)(4). Though good cause includes where the scheduling order cannot reasonably be met despite the diligence of the party seeking modification, Defendants have neither demonstrated nor argued that they cannot meet the deadlines of the current order. And any inability to do so is self-inflicted.

## II. Discovery in this Case is Nearly Complete

Though discovery formally closes on Friday, the deadline for either party to initiate new discovery before the termination date passed nearly a month ago. The parties are completing the Rule 30(b)(6) deposition of the Defendant Secretary as this response is being filed and will have taken the deposition of Alex Curtas before the Court holds the hearing on this motion tomorrow

afternoon. With only a few exceptions, discovery is already complete, and Defendants' belated motion will do little, if anything, to mitigate the harms it purportedly seeks to avoid.

If the points Defendants raise in their motion are correct—they are not—they could have addressed these concerns late last summer when the parties met and conferred, conducted the scheduling conference, and agreed on a joint discovery plan (without exceptions or disputes) launching discovery in this case. *See* Doc. 62 (Parties' August 26, 2022 Joint Status Report and Provisional Discovery Plan); Doc. 73 (Defendants' September 16, 2022 Certificate of Service for Initial Disclosures). By that point, Defendants had already filed their notice of appeal of the Court's order issuing the preliminary injunction. *See* Doc. 56 (Aug. 19, 2022 Notice of Appeal). The main points raised in the present motion regarding supposedly unnecessary costs and taking depositions twice could have been made then. Instead, Defendants agreed to fully participate in discovery. That they were slow and late may indeed be due to workflow issues related to the election of a new Attorney General, yet they didn't even raise the idea of a stay until after Plaintiff served its notices of depositions.

Defendants' representations regarding discovery are disingenuous and border on misrepresentations. They claim that "some written discovery has been propounded and answered, by all parties, no depositions have yet been taken," Mtn. to Stay, p. 4, then say that "[a]ll parties have been diligently participating in written discovery and have been abiding by all deadlines." *Id.* at p. 5. Since discovery began in this case, Plaintiff has served three rounds of written discovery on Defendants and Defendants have served two rounds in return. Defendants responded to Plaintiff's third set of written discovery requests just three days ago.[2] Additionally, the parties are participating in a 30(b)(6) deposition of the Secretary's Office at the time of this filing and will

---

[2] These "responses" provide little information and primarily consist of objections; they may become the subject of a motion to compel after the parties engage in good-faith discussions.

3

complete another deposition of one of the Secretary's employees tomorrow before the hearing on this motion. Defendants agreed to participate in these depositions before filing their Motion to Stay. In fact, all of the relevant depositions sought by the parties in this case would have been completed by the time the Court heard this motion, but for the Attorney General's failure to produce a 30(b)(6) representative who would be available by the March 3rd discovery termination deadline.[3] Defendants have made no efforts to discuss or schedule depositions of a representative of Voter Reference Foundation and the time to do so expired even before they filed their motion to "stay."[4]

Defendants first reached out regarding Plaintiff's position on a stay on February 1, 2023. In response, Plaintiff's counsel inquired as to the basis for Defendants' belief that a stay was necessary. Plaintiff's counsel noted disagreement with several of the points raised, the same points which now form the basis of this motion. On February 2, 2023, Defendants claimed they wanted to file their stay motion "within the next week or so." Yet that very night, Defendants took an action inconsistent with the desire to stay discovery: they served an entirely new set of written discovery (albeit too late under the extension, which would have required all new discovery to be served by February 1 so that it could be answered by the March 3 close of discovery). Defendants then fell silent on the stay issue for almost three more weeks, apparently having decided to move

---

[3] Based on the Attorney General's recent representations that producing a witness was impossible due to workflow issues, Plaintiff has agreed to take the 30(b)(6) of the Attorney General's Office in a few weeks, outside of the schedule. This development was unexpected. The Attorney General was noticed for a deposition on January 25, 2023, after the issue of Rule 30(b)(6) depositions was first raised a few days earlier. The Attorney General first claimed to need additional time to identify a suitable representative to sit for the deposition due to office turnover. Several weeks passed during which time the deposition date was moved from February 27 to February 28 to account for another witness's scheduling issue. Finally, after several reminders, on February 22, 2023, with only three business days intervening before the time the deposition was set to occur, Defendants stated that a witness had just then been identified and was unable to sit for a deposition on the previously noticed day, or on any other day before the close of discovery. This necessitated the parties' agreement. Part of that agreement was Defendants' promise not to use Plaintiffs' courtesy extension against the Plaintiffs, either on this motion or in the aftermath of this motion.

[4] See D.N.M.LR-CIV. 30.1 ("Service of notice of deposition in accordance with FED. R. CIV. P. 30(b) must be made at least fourteen (14) days before the scheduled deposition."). There are not 14 days left between now and the termination of discovery.

4

ahead with their last-minute (but untimely) written discovery requests. Next, Defendants sought an extension of time to file their reply brief in the Tenth Circuit, and Plaintiff acceded. Finally, that motion granted, Defendants' "urgent" need for a stay abruptly resurfaced on the night of Wednesday, February 22, 2023, with only two business days left before Defendants' depositions were set to occur. This oddly coincided with Defendants' disclosure that they would not be appearing to produce a 30(b)(6) witness for the Attorney General's office on February 28, and Defendants' last-minute objection to producing another witness at all, despite the fact that they had provided a date for that witness several weeks before and the deposition had long since been noticed.

Notably, Defendants have not moved for a protective order to prevent any depositions from occurring (nor could they have timely done so). To the extent this motion to stay is merely a workaround because Defendants failed to timely move to object to the depositions, it should be rejected for that reason alone.

### III. The Issues on Appeal are Very Limited Compared to the Scope of the Present Case

Aside from avoiding "unnecessary" discovery (that will already be complete), Defendants' other chief argument is that the Court should postpone this case because the Tenth Circuit *might* weigh in on certain issues that could, in the Defendants' opinion, narrow the scope of discovery. Their argument reads too much into the decision of a two-judge panel to stay the preliminary injunction pending the resolution of the appeal. Though the order issued by Judges Bacharach and Briscoe cites to *Nken v. Holder*, 556 U.S. 418, 434 (2009) and states that those judges believe Defendants met their burden for a stay pending appeal, the order gave no insight as to how or on what grounds the Tenth Circuit may resolve the case. Though likelihood of success on the merits is one of the four *Nken* factors considered by the Judges, there are any number of grounds on which

5

those Judges may believe Defendants are likely to succeed, though no specific such grounds are identified.

Just as the decision of a two-judge panel to stay the appeal did not resolve anything on the merits, the pending appeal will not resolve important merits questions. First, the Tenth Circuit is examining the propriety of this Court's issuance of a preliminary injunction, where it will decide if this Court abused its discretion in finding that Plaintiff satisfied this circuit's four-factor test. See *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020) (To obtain a PI, a movant must show: (i) a substantial likelihood of success on the merits; (ii) irreparable harm to the movant if the injunction is denied; (iii) that the threatened injury outweighs the harms that the PI may cause the opposing party; and (iv) that the injunction, if issued, will not adversely affect the public interest. When the government is the opposing party, the third and fourth factors merge.).

Defendants ask this Court not only to assume that the new 3-judge panel will resolve their appeal in their favor, but also that it will do so by examining elements which cause it to reject two of Plaintiff's earlier claims on the merits. This exercise is as useless as betting on the Final Four before Selection Sunday. It could be that the Judges agree with one of Defendants' legal theories regarding prior restraint or disparate treatment. Or it could be that the Judges believe that the weighing of the Defendants' interest and the public interest were incorrect based on the record as of July 2022, or that Plaintiff would not have experienced irreparable harm absent the injunction. In short, Defendants read too much into the Tenth Circuit's order, speculating that the only result at this juncture is that the Tenth Circuit is going to clarify or overturn existing law in a way which may limit discovery in this case.

Even if Defendants prove to be highly adept at predicting the outcome of appeals, however, it will not have mattered given the posture of this case. The outcome of the appeal can have little

or no actual impact on discovery in this matter, both because discovery is almost complete and because discovery (from Plaintiff, at least) has already been tailored to later events, including the new facts and legal theories alleged in the Amended Complaint which were not before the Court at the time it considered the preliminary injunction.

Consider, too, what is actually being litigated in the appeal. Defendants read into the Tenth Circuit's decision to stay the preliminary injunction pending appeal a likelihood that the Tenth Circuit will either: (1) declare Plaintiff's theory of prior restraint arising from the Secretary's prosecution referral untenable or (2) resolve whether a plaintiff must show disparate treatment to succeed on a First Amendment viewpoint discrimination claim. *See* Mtn. to Stay, p. 6-7. Defendants contend that such a decision could render the Secretary's referral of "little or no relevance," apparently even to the extent that Defendants believe they could limit deposition questioning, instructing witnesses not to answer questions about the referral. Mtn. to Stay, p. 6. Similarly, they argue that until the Tenth Circuit renders a decision, it will "be difficult to take and defend depositions of witnesses regarding the Defendants' responses to requests for and use of voter data by various other entities." *Id.* Again, it is hard to know what Defendants mean by "difficulty" in taking or defending depositions, but they seem to suggest that they might instruct their witnesses not to answer questions that seek to compare their treatment of VRF's requests with their treatment of other entities' requests.

The Parties have engaged in discovery on both these points. At the preliminary injunction proceedings, Defendants did not object that their witnesses should not be required to testify about the referral, or about the handling of requests by other entities. The proposition that discovery and depositions could be artificially limited on these plainly relevant topics is simply befuddling.

Even if the Tenth Circuit dispositively resolved these issues in favor of one party or the other (which is highly unlikely), Plaintiff would still be entitled to discovery regarding the facts regarding the Secretary's referral of VRF as part of the claims raised in the Amended Complaint.[5] So too would it be entitled to discovery regarding whether Defendants treatment of VRF as compared to other entities was retaliatory or viewpoint based, even if the parties disagree about whether such a showing is a necessary element of Plaintiff's claims. And so too would it be entitled to discovery regarding the state's interest in singling out VRF for prosecution under a sham theory. A stay at this point will not return to the Parties their time or expense spent in engaging in that discovery.[6]

### IV. The Speculative Passage of HB 4 Does not Merit Consideration

As a final plea, Defendants argue that a pending but not yet passed bill[7] in the New Mexico legislature is grounds for a stay, as Defendants contend that the passage of that legislation will moot this case or destroy Plaintiff's standing. This argument merely reflects Defendants' misunderstanding of the law and the claims Plaintiff has raised at this stage in the case.

Defendants have not requested a "stay of discovery pending the speculative passing of pending legislation." Though Defendants' intimate knowledge of the proposed legislation's movement through the chambers of the New Mexico legislature is telling[8], they have asked this Court to stay certain pending deadlines pending the outcome of their appeal, not the outcome of a

---

[5] As noted above, the 30(b)(6) of the Secretary's Office, the deposition most likely to cover the above topics, is occurring at the time of this filing.
[6] As noted above, Defendants are out of time to notice any of their own depositions, so there is no interest protected by postponing their "taking" of depositions which will never occur. Even if this were not true, it is hard to understand how depositions of VRF would differ based on two topics—the referral and the Secretary's treatment of other entities' requests—that have to do with the Defendants' conduct, not VRF's.
[7] House Bill 4, titled "Voting Rights Protections."
[8] *See* Mtn. to Stay, p. 9 ("The outcome of this bill is likely to be known before the outcome of the appeal…"). To the extent Defendants are relying on special knowledge about the legislature's consideration of this measure, perhaps through direct lobbying for the measure or through contacts with legislators in support of it, they should disclose those contacts to the Court and VRF.

bill which they view as potentially advantageous to their position. The proposed legislation simply should not factor into this Court's decision.

Defendants also fail to acknowledge the most confounding aspect of their position regarding HB 4's potential passage. Defendants have argued throughout this case (though never quite coherently) that New Mexico law *already* prohibits publication of voter data on the Internet and sharing voter data outside the requesting entity. Now the legislature is actively attempting to amend New Mexico law to codify the legal gloss Defendants unsuccessfully tried in this Court to place on existing law. *See* Mtn. to Stay, p. 8-9 (HB 4 "would add a section explicitly prohibiting the transfer of such data to the general public."). But it has been that very gloss—their enforcement practice that they claimed already applies to everyone—that Plaintiff is already challenging. If anything, the proposed statutory change, which Plaintiff suspects was initiated at the behest of the Defendants, is an admission that the Defendants' legal positions in this case thus far are not supported by New Mexico law, and is further evidence that VRF was targeted specifically because of its speech and viewpoint.

When Plaintiff filed its First Amended Complaint in September of last year, it specifically challenged the restrictions on publishing voter data on the Internet, regardless of whether those restrictions came from New Mexico law itself or solely from Defendants' misguided and retaliatory interpretation of the law. See FAC (Doc. 74) at p. 30 (NVRA preemption challenge to data sharing ban); p. 39 (First Amendment prior restraint challenge to Data Sharing Ban); p. 44( First Amendment challenge to Data Sharing Ban); p. 49 (First Amendment overbreadth challenge to Data Sharing Ban); p. 51 (First Amendment vagueness challenge to Data Sharing Ban). It is perplexing then that the Legislature's codification of the Data Sharing Ban into New Mexico law would in any way hinder VRF's case. Whether the challenged restrictions come from the

Defendants' policy premised on a misreading of New Mexico law or a new statutory change to codify what had been a misreading, Plaintiff's First Amended Complaint challenges the restrictions themselves, regardless of the source.

All of this aside, *if* this legislation passes, the questions of whether it moots anything in this case or impacts Plaintiff's standing, or instead actually aids Plaintiffs' case, are arguments that should be heard only *after* the legislation is signed by the Governor and becomes law. Until that point, HB 4 provides no basis to stay this case.

## V. Conclusion

Defendants want to unring the bell, seeking a "stay" to avoid discovery that has already occurred at a time when discovery is set to close just over 72 hours after a hearing is held on their motion. Their primary concern—depositions—is moot, as all but one deposition in this case will be completed before the Court hears this motion. Though the Tenth Circuit's decision may indeed provide guidance on how this case will proceed, that is inherent in any interlocutory appeal and in itself is not a sufficient reason to stay this case for several months as the Parties await a resolution above. This case should proceed as planned.

Dated: February 27, 2023

>Respectfully submitted,
> **GRAVES GARRETT, LLC**
> */s/ Edward D. Greim*
> Edward D. Greim
> Missouri Bar No. 54034
> *Admitted Pro Hac Vice*
> GRAVES GARRETT LLC
> 1100 Main Street, Suite 2700
> Kansas City, Missouri 64105
> Tel.: (816) 256-3181
> Fax: (816) 222-0534
> edgreim@gravesgarrett.com

        **HARRISON, HART & DAVIS, LLC**
        Carter B. Harrison IV
        924 Park Avenue SW, Suite E
        Albuquerque, NM 87102
        Tel: (505) 369-6599
        Fax: (505) 341-9340
        carter@harrisonhartlaw.com

        *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Edward D. Greim, certify that on February 27, 2023, a copy of foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notification to the following via e-mail:

Jeff D. Herrera
Erin Lecocq
jherrera@nmag.gov
elecocq@nmag.gov
Office of the New Mexico Attorney General
408 Galisteo Street
Santa Fe, NM 87501

        */s/ Edward D. Greim*
        Edward D. Greim
        Counsel for Plaintiff