1        IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF NEW MEXICO

3

4    VOTER REFERENCE FOUNDATION, et al.,

5         Plaintiff,

6         VS.                        NO. CV-22-00222 JB/KK

7    Hector Balderas, Attorney General
     for the State of New Mexico, et al.,

8

          Defendants.

9

10                    VOLUME 2

11                  ZOOM HEARING

12

         Transcript of Motion for Preliminary Injunction
13   Proceedings before The Honorable James O. Browning,
     United States District Judge, Albuquerque, Bernalillo
14   County, New Mexico, commencing on June 15, 2022.

15

     For the Plaintiff:  Mr. Eddie Greim; Mr. Matt Miller;
16   Mr. Carter Harrison

17   For the Defendant:  Ms. Olga Serafimova; Mr. Dylan
     Lange

18

19

20

21

22             Jennifer Bean, FAPR, RDR, RMR, CCR
               United States Court Reporter
23             Certified Realtime Reporter
               333 Lomas, Northwest
24             Albuquerque, NM  87102
               Phone:  (505) 348-2283
25             Fax:  (505) 843-9492



EXHIBIT

P10

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    organization.

2        Q.   Can a democratic candidate as part of a

3    Democratic Party organization, or is that a separate

4    entity that has to separately pay for the

5    information?

6        A.   I think, if it's within the party that

7    they're sharing it, that is still within the

8    organization.  So any party could share it within

9    their party.

10       Q.   Okay, including with candidates?

11       A.   Correct.

12       Q.   And candidate campaigns?

13       A.   Correct.

14       Q.   Okay.  What about a party sharing it with

15   volunteers, who are not employees or contractors;

16   they just answered an ad, and show up one day, and,

17   you know, go door to door, would the volunteer --

18   could they share the data with the volunteers?

19       A.   Again, you know, I think that our analysis

20   has reached the level of within the organization.  So

21   if we had factual based scenarios, and it needed to

22   be reviewed by an attorney, that would be something

23   that I would check in with the attorney.

24            What I feel confident in stating is that

25   within the organization is not going to be viewed as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    an unlawful sharing of the information.

2         Q.   Okay.  So the answer on the volunteers is

3    you'd have to check with an attorney?

4         A.   Correct.

5         Q.   Go ahead.

6         A.   I'm good.  Thank you.

7         Q.   And so, presumably, people, regular

8    citizens who want to comply with these, also probably

9    have to talk to an attorney as well to understand how

10   to comply with this?

11        A.   I think anyone can talk to an attorney if

12   they feel the need to.  I don't think that is what I

13   just stated.  I think I -- our office has an

14   obligation to make sure we're following the statute

15   in all cases.  So if there is ever an area where I

16   need clarity, I will seek guidance from an attorney.

17        Q.   Let's go back to your next -- the other

18   issue.  We talked about Otero County earlier.  It

19   sounds like there is an exception for a canvasser to

20   discuss someone's information with the voter

21   themselves.  That's how the Secretary of State would

22   view it; correct?

23        A.   I think that there is not a statutory

24   exception, Mr. Greim.  And I think that we are not,

25   you know, going to be witnessing every instance of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    somebody having a conversation.  So, in particular, I

2    don't think we would take an action against someone

3    having a conversation with a voter.

4        Q.   Okay.  What about if an individual has a

5    conversation with a voter about that person's spouse

6    or other members of the household, does that

7    exception still apply?

8        A.   Again, I said there is no legal exception

9    in the statute for sharing the data.

10       Q.   Right.  You're just saying you wouldn't

11   refer it for criminal prosecution?

12       A.   In the one specific scenario.

13       Q.   Okay.  Now, I'm asking you about a new

14   scenario.  What about other members of the household?

15       A.   And, again, when we are reviewing

16   somebody's use of voter data, it's going to be

17   factually based.  So I think we would need to get all

18   of the information, and I, alone, would not make that

19   decision.  And up to this point, we have not had to

20   do that analysis.

21       Q.   Okay.  So the answer is that the Secretary

22   of State's Office just can't tell us the answer right

23   now?

24            MS. SERAFIMOVA:  Objection, Your Honor.

25   That misstates her testimony.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Well, she can answer the

2     question.  So overruled.

3          A.   I don't think there is any difference in

4     the scenario you're describing, in that, yes, I would

5     seek guidance from my general counsel.

6          Q.   Okay.  Let me ask you now about an academic

7     paper that's exploring the way the election was run.

8     So one academic pays for the data, and writes a

9     paper, does a statistical analysis.  Then another

10    academic at a rival university, maybe, I don't know

11    New Mexico versus New Mexico State, another political

12    science professor says:  I don't agree with your

13    conclusions; you know, I want to write a review of

14    your article.  Can I see the data?  Okay?  So is it a

15    crime -- would you criminally refer the first

16    academic who shared the data with the second academic

17    who is trying to verify his conclusions?

18         A.   So, again, I think anyone who wants to

19    receive data, we've established that there is a

20    statutory process in which they need to complete an

21    affidavit.  In signing that affidavit, they are

22    agreeing to specific statutory terms that are defined

23    in Article 5.  And so anyone that has statutorily

24    received that data needs to comply.  And so, in that

25    case, a separate individual, a separate entity would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    need to also comply with receiving the data.

2         Q.   Okay.  So the answer is it would be a

3    criminal referral, then, for the first academic to

4    share the data with the second academic?

5         A.   Again, if somebody is going outside of the

6    bounds of law, we have an obligation to consistently

7    apply that law.  And if we felt that they were

8    unlawfully using the data, we would refer it for a

9    review of a law enforcement agency.

10        Q.   Okay.  I only have a few more.  We could go

11   on for quite a while, but I won't go on forever,

12   okay.

13             Let's say a voter, like the Plaintiff Holly

14   Steinberg here, goes and buys the entire file; hires

15   programmers so she can use the data; runs her own

16   analysis.  And then she calls VRF and says:  Well,

17   here's what I found.  Now, VRF also has the data,

18   okay?  But Holly Steinberg shares the data that she

19   has with VRF as part of that discussion.  Is that a

20   criminal violation?

21        A.   I think my answer will be the same, if

22   you'd like me to restate it.  The data can be shared

23   within the same organization.  Otherwise, individuals

24   need to obtain that data directly.  And again, we've

25   established in prior conversation that that data is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    dynamic.  It is always changing, being updated.  So

2    it is very unlikely that those two entities would

3    have the same exact data at a point in time.

4        Q.   What if they did have the exact same data

5    set; they both downloaded them on April 13th at 4:50,

6    is it a crime for one to share the data with the

7    other?

8        A.   There doesn't seem to be a need to share

9    the same exact data, so I'm not clear as to how that

10   would be a real life scenario.  But my position

11   statutorily would not change.

12       Q.   The need would be checking to make sure

13   they have the same data.  They find that they did.

14   Would the sharing, though, if one still shared with

15   the other, so it's still a crime; correct?

16       A.   I think that my answer has not changed.

17       Q.   Okay.  Finally, what about a company that

18   buys the data, creates a database, and makes it

19   available to political clients for a fee, is that a

20   crime?

21       A.   I think that's definitely something that

22   appears to be sharing the data unlawfully.  If it's

23   outside of their organization, that is still the

24   issue.

25       Q.   Now, we've mentioned the company Catalist

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Q.   Okay.  Very good.  And so at the very top
2     you see that someone named Patrick Rostock is sending
3     you an email, copying Sharon Pino; right?
4          A.   Right.
5          Q.   Mr. Rostock says, "Hi Mandy and Sharon.
6     Per Dylan's contact with the AG, we are not
7     fulfilling records requests from VoteRef."  Did I
8     read that right?
9          A.   You did.
10         Q.   Okay.  And at this point this was a pending
11    records request from VoteRef, wasn't there?
12         A.   No, there was not.
13         Q.   Okay.  And I think I know why you're saying
14    that.
15              Let's scroll on down.  So at the very
16    bottom you'll see, on February 15, 2022, 4:06 p.m.
17    someone at data -- at VoterReferenceFoundation.com
18    wrote, "Dear Election Official, please provide us
19    with a total count by county precinct of any
20    registered voters who cast a ballot in the November
21    3, 2020" -- left out the word "election" -- who have
22    been subsequently placed in an inactive, canceled,
23    deleted, removed, or any registration status other
24    than active, or any voter that has been removed or
25    deleted from the voter rolls between November 3, 2020

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and April 13, 2021."  Did I read that right?

2           A.   You did.

3           Q.   Okay.  And April 13, 2021, by the way, is

4    the date of the last data set that VRF had gotten

5    from the Secretary of State's Office; right?

6           A.   They have not received any data from our

7    office directly.

8           Q.   Okay.  Fair enough.  That's the data that

9    Local Labs received the data set that had been

10   provided to VRF; correct?

11          A.   I don't have that exact date, but that

12   sounds reasonable.

13          Q.   Okay.  And so this request was then

14   assigned to Patrick Rostock; correct?

15          A.   This is a Help Desk Ticket that, yes, was

16   assigned to Patrick.

17          Q.   Who is Patrick?

18          A.   He is a new staff member.  He's a

19   paralegal, and serves as the records custodian.

20          Q.   Okay.  So Patrick Rostock got this ticket

21   the following day, on February 16th; right?

22          A.   Yes.

23          Q.   So then, it looks like March 10th, several

24   weeks later, after having heard nothing back, VRF

25   asked again, "Good afternoon, can you please provide

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

49

1    a status report.   Thank you."   And that goes to

2    Mr. Rostock; correct?

3          A.    Yes.

4          Q.    All right.   And then Mr. Rostock, the

5    following day, forwards this ticket on to you; right?

6          A.    He sent us an email.

7          Q.    So let me ask you this:   When someone

8    emails your office, do you typically ignore them

9    altogether unless they happen to have an affidavit

10   already filled out and attached to their request?

11         A.    I don't think there is a goal to ignore

12   someone who communicates with our office.

13         Q.    Okay.   Why was Voter Reference Foundation

14   ignored here?

15         A.    In this case, you know, Patrick, in working

16   with our general counsel, there was a determination

17   that this was neither a public -- a formal public

18   records request nor a normal voter data request.   At

19   this point in time, we had already engaged with the

20   law enforcement agency, and so we did seek their

21   guidance.   And at this point in time, it was

22   determined that we were not going to provide data.

23         Q.    Why not?

24         A.    Because we had already referred their use

25   of the data to a law enforcement agency.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.    Okay.   So is there a part of the statute

2   that says that if you referred someone for

3   prosecution, you don't answer their requests anymore?

4        A.    There is not a statutory provision that

5   requires us to respond in this case.   And there is

6   not a statutory provision that says you should not

7   respond.   That was a decision made based on the

8   information we had.

9        Q.    Okay.   So why would having referred them to

10  the AG -- and by the way, the AG had not actually

11  charged them at this point; correct?

12       A.    There is no charge that I have an awareness

13  of.

14       Q.    So why did the AG tell you not to respond?

15       A.    I can't speak to that.   I don't know.

16       Q.    Who does know?

17       A.    The Attorney General, I'm sure.

18       Q.    Well, who is the contact -- who did the

19  Attorney General speak to in your office?

20       A.    Typically, it goes to our general counsel.

21       Q.    So do you know whether there was

22  anything -- let me ask you this:   Why not just

23  respond to VRF and say that you need to submit an

24  authorization, here's a link to the form?

25       A.    It just was determined that we were not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    going to be providing data at that point in time

2    based on knowledge that it had already been published

3    on a website.

4         Q.    So you say, "based on knowledge it had

5    already been published."  So you're assuming that

6    this data would be published, you're just assuming

7    that; right?

8         A.    I think that there is currently an

9    investigation taking place, in particular, about this

10   entity.  And so we did seek guidance on how to handle

11   this request in particular.  And we were provided the

12   guidance, as it is stated in the email, that we were

13   not to provide the data.

14        Q.    And you had no knowledge that this data was

15   going to be published, did you?

16        A.    Not at that point in time, that data had

17   not been received.

18        Q.    Okay.  And you have no knowledge today that

19   this data was going to be published; correct?

20        A.    If you're referring to the most recent

21   request from VoteRef --

22        Q.    No, I'm referring to this request.

23        A.    So this request does not provide any more

24   information than you've read to the Court.

25        Q.    And no one reached out to VRF to find out

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    whether they were going to publish it or not; right?
2         A.    No.
3         Q.    The answer was just to ignore them; right?
4         A.    To not provide data.
5         Q.    Okay.  So we'll have to ask the AG why they
6    made this recommendation, and we'll have to ask
7    someone else at the Secretary of State to understand
8    why they accepted this advice; correct?
9         A.    Correct.
10        Q.    Let me now ask you about the most recent
11   request that you started to talk about.  So about 19
12   days ago you received a notice and a request from our
13   office on behalf of VRF; correct?
14        A.    Correct.
15        Q.    Okay.  Let's pull that up.  Sorry, I
16   can't -- I'm trying to reduce the size of this so it
17   makes sense to us.
18             So this is what we marked as Exhibit P10.
19   Do you recognize this?
20        A.    I do.
21        Q.    I'm sorry, was the answer yes?
22        A.    Yes.
23        Q.    Okay.  And by the way --
24             MR. GREIM:  Okay, I move to admit P10.
25             THE COURT:  Any objection, Ms. Serafimova?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              So this is legal advice.  She doesn't have
 2      the level of knowledge or understanding to take those
 3      factors into account.  And what she's essentially
 4      communicating right now in response to Mr. Greim's
 5      questions is things that she has heard from her
 6      general counsel, from myself, in validating this
 7      request.  So I hope that --
 8              THE COURT:  Well, I think Mr. Greim has a
 9      right to find out what the Secretary's position is on
10      these issues, you know.  I guess, if you want to
11      instruct her not to testify and claim attorney-client
12      privilege, then we can sort of explore that.  But,
13      you know, people make decisions all the time, and
14      some of it includes talking to their counsel.  So I
15      guess I don't think there is anything objectionable
16      to the question.  So overruled.
17              All right.  Bring the witness back.
18              All right.  Mr. Greim.
19              MR. GREIM:  Thank you, Your Honor.  I think
20      the witness is still muted.  Or is that somebody
21      else?
22      BY MR. GREIM:
23         Q.   Ms. Vigil, are you here?
24         A.   Yes.
25         Q.   All right.  So my question with respect to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    the first piece is:  Do you see that we have said we

2    are not going to publish it online unless we are

3    granted relief from this Court or any other legal

4    proceeding.  Do you see that?

5        A.   That's for the first project, correct.

6        Q.   Right.  And so -- I mean, let me ask you:

7    Is the Secretary concerned that we will publish the

8    information anyway, you know, in violation of this

9    promise?

10       A.   I'm not clear on what the reference to

11   "first project" is.  Is that request number one?

12       Q.   No, let's go back.  Let's go back and be

13   very clear.  So we say there are two distinct

14   projects.  It's not really request number one.  For

15   its first project, just as VRF publishes voter data

16   for many other states, and as it recently published

17   voter data in New Mexico, VRF intends to publish the

18   requested information online for election-related

19   purposes.  So the first project is simply to publish

20   the requested information online, to do what we were

21   doing before.  Okay?  So that's the first project.

22   And we say we'll only do that if VRF is granted

23   relief in this case or any other legal proceeding.

24   Do you see that?

25       A.   I do.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

59

1      Q.   Okay.  And so I don't understand the

2   Secretary's position, as you laid it out, that you

3   are afraid that VRF is going to publish the

4   information online.  And so my question to you is:

5   Does the Secretary believe that VRF will break this

6   promise and will publish the information anyway?

7      A.   My response has come from guidance and

8   direction from our counsel.

9      Q.   Okay.  I'll stop there with that.  So you,

10   yourself, don't have any information about why the

11   Secretary is claiming that VRF may publish the

12   information anyway?

13      A.   I don't think that statement has been made

14   at all, and I certainly have not made that statement.

15         Again, the request has been reviewed, and

16   based on our counsel's analysis, our understanding is

17   that we cannot conspire to publish this information,

18   because it would be against the statute.

19      Q.   And the Secretary will maintain that

20   position even if a court orders otherwise; is that

21   correct?

22      A.   I think we will follow a court order, as we

23   are required to.

24      Q.   Okay.  So for the second project, VRF

25   intends to analyze the records and it will publish

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   communication with the Attorney General.  We made the
 2   referral based on the information that you all have
 3   an awareness of.  And that is in their hands at this
 4   point in time.
 5        Q.   You haven't withdrawn the referral?
 6        A.   No.
 7        Q.   You haven't told the AG's Office that:  We
 8   actually think there may be some exceptions to the
 9   prohibition on sharing?
10        A.   There are no exceptions to the prohibition.
11   And no, we have not -- I have not directly engaged
12   with the Attorney General on this referral.
13           MS. SERAFIMOVA:  Your Honor, may I just
14   take a moment.  You know, when we scheduled this
15   hearing, Mr. Greim said he had 20 minutes left.  And
16   we are one hour and a half in.  And I have, you know,
17   plenty of questions to go over.  So --
18           THE COURT:  I'm concerned about it, too.  I
19   didn't want to have this hearing today.  I think I
20   explained my grandchildren were in town.  So I came
21   in today just to do this hearing.  And I'm getting
22   concerned about what's going on myself.
23           Let's take a break.  I need to give
24   Ms. Bean a break.  But I'm concerned about what's
25   taking place myself.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

73

1    during this time?

2        A.    Yes.

3        Q.    Was there any reason -- did you

4    intentionally not look into Catalist?

5        A.    No.

6        Q.    Did you think about Catalist at all?

7        A.    To be honest, our focus was on all the

8    tasks necessary to administer the election.

9        Q.    And you looked at one portion of Catalist's

10   website, right, not the entire website?

11       A.    As far as the exhibit, that's the only

12   thing I've seen of their website.

13       Q.    Okay.  Now, if that exhibit that's P5 --

14   and we don't need to pull it up because I have a

15   hypothetical question -- but if that exhibit

16   contained language to the effect of:  You can see the

17   data that we received from the Secretary of State's

18   Office by clicking here, would that give you concern?

19       A.    If they were posting the voter data online,

20   yes, that is concerning.

21       Q.    Okay.  And that would be unequivocally a

22   violation, in your opinion?

23       A.    Yes.

24       Q.    And if that exhibit said something to the

25   effect:  You can buy a copy of the file that we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    received from the New Mexico Secretary of State's

2    Office by, whatever the process is, would you find

3    that unequivocally to be a violation of the Election

4    Code?

5         A.    Yes.

6         Q.    And if that exhibit said:   We, Catalist,

7    share every file we receive from the New Mexico

8    Secretary of State's Office with I360 because we have

9    the same ideological connection, would that be a

10   violation of the Election Code, in your opinion?

11        A.    Yes.

12        Q.    Okay.  But none of that was on there;

13   right?

14        A.    No.

15        Q.    And you don't actually know what their

16   product is?

17        A.    I do not.

18        Q.    And you don't know if the database they

19   mentioned contains information from other sources

20   other than secretaries of state?

21        A.    I don't know.

22        Q.    You have no idea what that product is?

23        A.    I have no idea.

24        Q.    Okay.  And then you were asked another

25   hypothetical:   If one academic uses voter data

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

75

1   obtained from your office, and then shares that voter

2   data with another academic, would that be a

3   violation.  And your answer was:  Yes, it appears

4   that it would be; correct?

5        A.   Correct.

6        Q.   And that answer is not dependent on the

7   topic of the first academic's paper, is it?

8        A.   No.  My understanding of that scenario was

9   sharing the actual data, the voter file.

10       Q.   And your answer was not dependent on the

11  topic of the second academic's paper?

12       A.   I have no idea what those topics are, no.

13       Q.   Okay.  So the content of those papers is

14  not relevant to you?

15       A.   No.

16       Q.   And the viewpoint that each hypothetical

17  academic may hold or express in their paper, that's

18  also not of concern to you?

19       A.   It is not.

20       Q.   Those are completely irrelevant subjects;

21  right?

22       A.   Correct.

23       Q.   Now, you were asked about sharing and if --

24  and let's say, if VRF discusses the data that they

25  receive from your office, if that would be a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    data shall not be made available or used for unlawful

2    purposes."  Do you see that?

3         A.   I do.

4         Q.   So would you agree with me that the second

5    sentence under the affidavit is, almost verbatim,

6    quoting from 5.5?

7         A.   Right.

8         Q.   And then it is -- let me just pull it up

9    again.  Okay, here we go.  So the first sentence is

10   the one that references 5.6; is that correct?

11        A.   You are correct.

12        Q.   And then the second sentence references

13   5.5, which has its own mention of use in making

14   available; is that right?

15        A.   Yes.

16        Q.   All right.  Now -- and we just covered

17   this -- you do continue to honor any and all versions

18   of this form that your office receives, as long as

19   they're fully and properly filled out; right?

20        A.   That's correct.

21        Q.   And, of course, as long as you don't have

22   any actual knowledge that the data will be used

23   unlawfully?

24        A.   Right.

25        Q.   Is that a fair paraphrase?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    this, so very briefly you were asked:  If a political

2    party requests to use the data on its own behalf as

3    an entity, can that voter data be shared internally.

4    And what is your position?

5         A.    Yes.

6         Q.    And the same for a company, right, if a

7    company requests on its own behalf, meaning they bear

8    the criminal responsibility of an entity, right, they

9    can share internally, but not externally.  Is that

10   your position?

11        A.    Yes.

12        Q.    But if that political party or hypothetical

13   company goes out to upload the file that they receive

14   from you to the internet, that would be a violation;

15   right?

16        A.    Right.

17        Q.    And if, let's say, the Republican Party

18   shares with a Libertarian candidate, that would be a

19   violation unequivocally; right?

20        A.    Right.

21        Q.    And then, of course, you were asked more

22   nuanced questions, and you said you would need to

23   seek legal counsel; right?

24        A.    I did.

25        Q.    But these are more black and white

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Sorry, Plaintiffs' Exhibit 10.  And let me
 2   pull it up real quick.  Here we go.
 3             Okay.  So again, as of today, you have not
 4   denied an affidavit that they have submitted; right?
 5        A.   We have not.
 6        Q.   You may deny it tomorrow; is that correct?
 7   And this is the affidavit.
 8        A.   We have not, again, taken a final position,
 9   but there is a potential, based on the concern of the
10   data being made public, meaning posted online.
11        Q.   And we did discuss -- you and I and the
12   other people that you identified -- we did discuss
13   this request in the recent past -- I'm not sure
14   exactly when it was -- right?
15        A.   Right.
16        Q.   And do you remember that we discussed that
17   some data may be provided and other may be withheld,
18   but we needed to take a look at all the data to make
19   the final decision?
20        A.   Correct.
21        Q.   And you haven't seen a draft response?
22   Your general counsel is working on that response;
23   correct?
24        A.   Correct.
25        Q.   You haven't seen that draft response?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

94

```
 1        A.   I have not.
 2        Q.   Okay.  So you don't know, and you haven't
 3   seen the data that was pulled in response to this
 4   Plaintiffs' 10, which is a request, a lengthy
 5   request?
 6        A.   I have not.
 7        Q.   Okay.  And, you know, Mr. Greim asked you,
 8   you know, why not just take their promise at face
 9   value.  I know you're not an attorney.  But do you
10   know if this is a legally binding promise of any
11   sort, where they say that they will not upload the
12   data that they receive?
13        A.   I'm not an attorney, but this does not
14   appear to be a legally binding document.
15        Q.   Okay.  So that's just their promise first
16   of all, right?
17        A.   Right.
18        Q.   And secondly, they state -- I'm sorry, here
19   we go -- they state that they will not upload the
20   data unless they are granted relief in this case or
21   any other legal proceeding; right?
22        A.   Right.
23        Q.   Okay.  So, if the Court grants their motion
24   for preliminary injunction, right, which means allows
25   them to put the data online, then we go and appeal,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and an appellate court says:  No, that was a mistake,

2    would the harm have been done, meaning if you give

3    them additional information, that would already be

4    online, even though, ultimately, it would have been a

5    mistake; correct?

6         A.   Correct.

7         Q.   Okay.  And with respect to this particular

8    affidavit, which is the first and only that VRF has

9    submitted, and the first and only that your office

10   actually plans on denying, right, you're doing it

11   because I advised you that you would potentially be

12   committing a conspiracy; is that right?

13        A.   Correct.

14        Q.   So if the request is denied, it will be on

15   my advice not to violate the New Mexico Criminal

16   Code?

17        A.   It will be based on the advice, yes, and

18   the fact that we do not want to violate the law.

19        Q.   Okay.  So would you call this a unique

20   circumstance?

21        A.   Absolutely.

22        Q.   Okay.  I'll move on from the form.  I will

23   pull up State's Exhibit 6 and State's Exhibit 7.  And

24   we'll start with 6.  Here we go.

25             And so I'll represent to you, even though

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          A.    I have seen this exhibit.

2          Q.    Okay.  When did you see -- I know it's an

3     exhibit, but the email itself -- when did you see it

4     for the first time?

5          A.    Oh, just in preparation for the case.

6          Q.    Okay.  So you see that it was sent December

7     14 --

8          A.    I do.

9          Q.    -- of 2021?  You did not see it in that

10    timeframe, it sounds like?  Or did you?

11         A.    No.

12         Q.    Do you know whether or not your office

13    responded to this email?

14         A.    I don't believe so.

15         Q.    Do you know why it was not responded to?

16         A.    Can you make it just a little bit bigger,

17    please?

18         Q.    Yes.  And tell me if you need me to scroll

19    up or down.

20         A.    No.  Okay.  So I know that we received an

21    inquiry from a media outlet, ProPublica, and that's

22    kind of where this "discrepancy" comment was brought

23    to our attention.  So I think they kind of came in

24    simultaneously.  And we did look into the data.  But

25    I don't believe a formal response to this email, to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    my knowledge, was sent.

2         Q.   Okay.  Now, was there an intentional

3    decision made not to respond to this email as far as

4    you know?

5         A.   No.

6         Q.   It sounds like it was wrapped up with the

7    ProPublica discussion or at least -- you did work

8    with ProPublica; correct?

9         A.   We did.

10        Q.   So you mentioned the discrepancy, and

11   that's the second full paragraph here.  Are you

12   familiar, when I say discrepancy, you know what I

13   mean?

14        A.   Yes.

15        Q.   So again, according to VoteRef, there is a

16   difference between the reported number of voters who

17   voted on November 3, 2020, and then the number of

18   people that were on the file that you provided in

19   April to Local Labs, with an indication that they had

20   voted in that election; correct?

21        A.   Correct.

22        Q.   And the second number was smaller by 3,844

23   individuals.  Is that your understanding?

24        A.   Yes.

25        Q.   Okay.  So tell me, did you look into this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    SHARON PINO,

 2         after having been first duly sworn under oath,

 3         was questioned and testified as follows:

 4                    DIRECT EXAMINATION

 5              THE COURT:  All right.  Ms. Pino, you may

 6    be seated.

 7              Mr. Greim, if you wish to conduct direct

 8    examination of Ms. Pino, you may do so at this time.

 9    BY MR. GREIM:

10         Q.   Ms. Pino, what is your title?

11         A.   I am Deputy Secretary of State.

12         Q.   And what are your duties?

13         A.   I, essentially, am also the Chief of Staff,

14    so I run the office, help make any decisions, policy

15    decisions or otherwise, direct projects, oversee all

16    of the directors of the office.

17         Q.   Who do you report to?

18         A.   I report to Secretary of State Maggie

19    Toulouse Oliver.

20         Q.   Who directly reports to you?

21         A.   All of the directors directly report to me,

22    which is our director of business services, our

23    elections director, our director of IT, our human

24    relations manager, our general counsel, and our

25    communications director.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   made to the Attorney General's Office regarding New

2   Mexico Audit Force, and again, their use and

3   manipulating of voter data that -- I don't, to this

4   day, know how they got the voter data -- but it being

5   manipulated and used to spread election

6   misinformation.

7        Q.   Okay.  And I understand that.  But my

8   question to you is about at the time you wrote this

9   letter?

10       A.   At the time we wrote the letter, no.

11       Q.   Okay.  And were you concerned that VRF was

12  about to engage in spreading election misinformation?

13       A.   Yes.  By placing all of the data on a

14  publicly available website.

15       Q.   And so did you believe that the placing of

16  the data on the website constituted misinformation?

17       A.   No.

18       Q.   Okay.  So what was it about putting the

19  data on the website that was going to spread election

20  misinformation?

21       A.   It had the potential to.

22       Q.   Okay.

23       A.   Again, because when you put the data out

24  there, it can be manipulated in any way to do so.

25       Q.   Now, you have no information that VRF has

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN &
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    ever manipulated its data, do you?

2         A.    No.

3         Q.    At the time you wrote this letter, you had

4    no reason to believe that VRF was about to manipulate

5    the data, did you?

6         A.    Only the potential that it could be

7    manipulated, yes.

8         Q.    Right.  And I mean, anybody who receives

9    the data can manipulate the data; correct?

10        A.    There are strict provisions regarding the

11   use of the data that you legally obtain.

12        Q.    But there was nothing particular by VRF

13   that caused you to think that it was about to

14   manipulate the data or spread misinformation?

15        A.    I had none of that information at the time.

16   That's why we made the referral to the Attorney

17   General's Office, so they could thoroughly

18   investigate.

19        Q.    Now, by the time of this letter, your

20   office had actually already accused VRF of spreading

21   misinformation; correct?

22        A.    You'll have to tell me exactly.  I don't

23   know specifically what you're referring to.

24        Q.    Okay.  Well, we'll come back to that.  By

25   this point, VRF had stated in a press release that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    assert:  You know, I'm aware of all these provisions
 2    legally, and will abide by them in requesting this
 3    voter data.
 4         Q.   Got it.  And on the form, at this time, you
 5    could actually check either "governmental, election
 6    related, or election campaign purposes"; correct?
 7         A.   I believe so, yes.
 8         Q.   All right.  How was "election related
 9    "different from "election campaign purposes"?  You've
10    listed them out separately here.
11         A.   They're not.  I mean, it's essentially the
12    same thing.  And when you go to the definitions, I
13    believe -- and I'd have to take a look at the
14    statute -- but there is only the two definitions.
15    There is the election campaign purposes and the
16    governmental purposes.  So, in essence, "election
17    related" is election campaign purposes.
18         Q.   Now, earlier you told us that you had a
19    factual basis for everything that's put into this
20    letter.  Do you recall that?
21         A.   Yes.
22         Q.   I'm going to ask you, in this last sentence
23    you say, "Providing this personal voter data on a
24    private website that intends to spread misinformation
25    about the 2020 general election."  So what
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   Again, that wasn't my determination to
 2     make.  And again, I didn't prepare this.  But I'm
 3     assuming when these were laid out in the letter by
 4     our counsel it was simply to cite all of the
 5     provisions of the statute.  When we looked
 6     specifically at VRF, and when I read this referral
 7     and reviewed the referral and signed the referral, it
 8     had more to do related to VRF with the unlawful
 9     use --
10          Q.   Okay.
11          A.   -- of the voter data, which is again
12     putting it on a publicly available website where it
13     could be manipulated.
14          Q.   Okay, my question is different, okay?  My
15     question is:  What is it about spreading
16     misinformation about the general election that brings
17     it outside of this first of the three uses here,
18     governmental purpose?  Why does that not comport with
19     governmental purpose?
20          A.   Again, I think that's misciting -- and can
21     I take a look at the statute, because there is a
22     definition of governmental purpose under the statute.
23          Q.   Sure.  Yeah, do you have it there in front
24     of you?
25          A.   Let me get my book.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   I, unfortunately, don't have an exhibit

2  that actually has the statutes in there.

3      A.   The definition of governmental purposes

4  means "noncommercial purposes relating in any way to

5  the structure, operation, or decision making of a

6  federal, state, or local government."  So that is

7  what brings it outside of that definition of

8  government purpose.

9      Q.   Is it because it's misinformation?

10     A.   It's because it's information.  And, again,

11  it does not relate in any way to the structure,

12  operation, or decision making of federal, state, or

13  local government.

14     Q.   What is this information that you are

15  concerned about?  Was it about the voter rolls not

16  being properly maintained?

17     A.   I think, as I've stated, if the data

18  potentially can be manipulated in any way that can be

19  utilized to spread misinformation based on the fact

20  that it's been manipulated.

21     Q.   Okay.  Let's move to the next one --

22  actually, we'll cover them together, because you've

23  testified that they're really referring to the same

24  thing.

25     A.   Um-hum.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Okay.  How is misinformation about the 2020
2  general election not election or election campaign
3  related?
4      A.   Because, again, election campaign, it's
5  essentially the same thing.  And that's why election
6  campaign purposes as defined under E, means "relating
7  in any way to a campaign in an election conducted by
8  a federal, state, or local government.  So a
9  campaign.  Campaign uses, such as:  I'm getting this
10 voter data so I can send out information on a
11 candidate or an issue specifically reaching out to
12 voters, it's being used in some way -- or again, to
13 conduct canvassing activities.  It's somehow being
14 utilized for the campaign.
15     Q.   So is it your position that using the data
16 to talk about the operation of the election itself is
17 not within election related or election campaign
18 purposes?
19     A.   I don't think that that's my position at
20 all.  That's certainly one interpretation.
21     Q.   Okay.  Well, I'm just trying to understand
22 why misinformation about the 2020 general election is
23 not election related?
24     A.   And I'm not saying that it's not.  What I'm
25 saying is what was intended in this letter when we're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    saying that intends to spread misinformation about

2    the 2020 election, meaning that the data can be

3    manipulated to spread that misinformation.

4         Q.   Okay.  But the specific sentence, it says,

5    "We do not believe."  That includes you; right?

6         A.   Yes.

7         Q.   You reviewed this before you signed it.

8    You said you were comfortable with the facts, you

9    were comfortable with the legal theories; right?

10        A.   Yes.

11        Q.   Okay.  So I'm sorry, I want to move on from

12   this point, but I want to get an answer to this.

13   Let's just replace "misinformation" with -- you know,

14   let's call it communication of data that you believe

15   has been manipulated, all right?  So, first of all,

16   you're telling us that you don't have -- at the time

17   you wrote this letter, you had no information --

18        A.   I did not write the letter.

19        Q.   So at the time you signed the letter --

20        A.   Um-hum.

21        Q.   -- right?  You had no information that VRF

22   had actually done that; right?

23        A.   I personally did not.  Like I said, the

24   information in the letter, we had some staff that

25   looked at the website and put together the letter.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    So, no, I did not personally have any information at

2    the time that -- again, it was -- or VRF had

3    conducted any kind of misinformation or had

4    manipulated the data.

5         Q.   Okay.  Are you now suggesting that staff

6    did, and you just didn't know about it?

7         A.   That may be the case, like I said.  But

8    again, if there is a potential to manipulate the data

9    to spread misinformation, that does not fit the

10   statutory definitions of government purpose or

11   election campaign purposes.  And that was my

12   understanding when I reviewed and signed the letter.

13        Q.   Okay.  And you still believe that today;

14   correct?

15        A.   I still believe that today.

16             THE COURT:  Mr. Greim, we've been going

17   another hour and a half, so I'm going to have to give

18   Ms. Bean a break here.  So we'll be in recess for

19   about 15 minutes.

20             (The Court stood in recess.)

21             THE COURT:  All right.  Ms. Pino, I'll

22   remind you you're still under oath.

23             Mr. Greim, if you wish to continue your

24   direct examination of Ms. Pino, you may do so at this

25   time.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    who they are before then.
 2        Q.   And that was going to be my next question.
 3    When did you first become aware of them?  In the
 4    context of this case?
 5        A.   Yes.
 6        Q.   More specifically, the prior hearing and
 7    today; is that right?
 8        A.   Um-hum.
 9        Q.   Do you have any knowledge as to what either
10    company's products is?
11        A.   I do not.
12        Q.   So if you received information that an
13    entity named Catalist, LLC, is uploading New Mexico
14    voter data on its website, would that potentially
15    cause you to refer them to the Attorney General's
16    Office?
17        A.   Absolutely.
18        Q.   And the same with I360.  If you believe you
19    had probable cause to refer them to the Attorney
20    General's Office, would you refer them?
21        A.   Yes.
22        Q.   And then final topic, from me anyway, is
23    you've shared with me that, as a public servant, a
24    pretty high level public servant, you have taken
25    certain steps to keep your personal information
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  from these claims about harassment.  A candidate

2  campaign cannot share with an allied campaign.  You

3  heard that.

4          Political firms sharing with clients, you

5  heard a lot of waffling, and really lack of interest

6  in exactly what Catalist is doing.  But if they are

7  selling their data, or sharing it under some wrapped

8  fee or something, they're sharing their data with

9  their clients.  That's a violation, too.  And there

10  are several of these firms that have always been

11  requesting from the state.  There has been no effort

12  at all to try to learn more about it.

13          So what the Secretary really wants here,

14  Your Honor, to step back from all these examples, the

15  Secretary wants to be the hub of all this speech that

16  occurs about this data.  The Secretary wants everyone

17  else to be a spoke out from the hub.  And the

18  Secretary does not want any spokes coming together to

19  share the data and talk about what they have.  And

20  it's not just discussion.  Discussion quickly ends up

21  requiring that you share the data you actually have.

22  You know, I've got 5,400 discrepancies.  Well, I've

23  got 4,200 discrepancies.  You have to share that data

24  to understand what you're talking about.

25          THE COURT:  Is there any distinction

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    argument to be made that VRF would benefit from Local

2    Labs' conduct being found constitutional, that

3    statute still prohibits commercial use.  And I

4    believe Mr. Greim has admitted today that commercial

5    use can be regulated.  And so Local Labs --

6    regardless of, you know, whether this Court finds

7    that uploading is governmental use or election use,

8    Local Labs' conduct of selling the data -- and we

9    know they sold it because they paid 5,000 for it, and

10   then they charged 15,000 for it to VRF -- so their

11   conduct would still be a violation and not

12   constitutionally protected, so there would be no

13   change in circumstances there.

14            So, again, if there is no injuring fact, we

15   need Article III standing regardless of the theory.

16   So even in overbreadth cases, we need Article III

17   standing.  Plaintiffs cannot show injuring facts with

18   respect to 1-4-5.5, so they don't have a claim that

19   survives there.

20            Now, on a substantive challenge, again, we

21   do -- given our interpretation of 5.5, we do concede

22   that plaintiffs have not violated any of the use

23   restrictions, because those use restrictions do not

24   prohibit uploading the data to a website.  That is

25   under 5.6.  So that doesn't change our theory.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    And like I said, there is no standing on any theory

2    possible.  And so there can also not be a void for

3    vagueness or challenge with respect to that statute.

4              So now we're going to move on to 1-4-5.6.

5    And, as you know, Your Honor, our interpretation of

6    that statute is that it incorporates by reference

7    portions of Article 5, relevant portions of Article

8    5.  And I'll just mention, yes, the statutes were

9    recompiled in 2011.  Since then, there have been

10   numerous amendments, including the fact that, in

11   2015, the legislature put the definitions of

12   governmental purpose and election campaign purpose in

13   1-4-5.5.  But they never thought it necessary to take

14   the reference in 1-4-5.6 to the voting registration

15   system as Article 5.  That reference has remained

16   consistent.

17             So we cannot assume that the legislature

18   was incompetent, was negligent.  We have, again,

19   based on principles of statutory interpretation, we,

20   in fact, have to assume the opposite.  They made

21   other amendments, they did not make that change, and

22   that must have been, therefore, intentional.

23             With respect to 1-4-5.6, plaintiffs

24   actually do not challenge that statute and our

25   interpretation of it on its face.  We've invited them

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to.  Sharing can mean that plus.  What we are focused
 2    on, the prohibition of selling, loaning, otherwise
 3    providing access to, distributing; those are the
 4    statutory terms.
 5              And, so I said it before, and there is no
 6    evidence to the contrary, discussing the data is not
 7    the problem.  Analyzing and criticizing it is not the
 8    problem.  The problem is when you receive a file from
 9    the Secretary of State's Office, and then you hand
10    that file over to someone else that is not within
11    your organization, whether in electronic or paper
12    form.  That is the problem.
13              So, as we discussed in our briefing,
14    1-4-5.5 is, therefore, completely content and
15    viewpoint neutral.  It doesn't matter what's actually
16    in the file.  It doesn't matter who obtained the
17    file.  It doesn't matter who they're handing it over
18    to.  It doesn't matter why they are handing it over
19    to that person, and it also doesn't matter what that
20    other person is going to do with it.  So this is a
21    content neutral regulation, statute; custom, I guess,
22    was one other term that was used today.
23              As such, it is subject to a different First
24    Amendment analysis.  It is true, we conceded that it
25    is speech.  But it is a different kind of speech that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    conclusions, that's unfortunate.  But, again, the

2    only way for 5.6 to be effective is if it prohibits

3    all sharing outside of the regulatory process,

4    because otherwise, it creates a gap that we cannot

5    prosecute, that we cannot control.

6              And also, there was some argument that, you

7    know, voter A could not discuss the data with voter

8    B; every one of them has to pay for it.  There is no

9    argument that the fees are unreasonable.  So that's

10   not before the Court.  So we have to assume the fees

11   are what they are.  Plaintiffs are not complaining

12   about the fees.  If people have to pay for the data,

13   sobeit.  But that's what the New Mexico legislature

14   has decided.  But that's not a constitutional factor

15   to invalidate the statute.

16             I think Mr. Greim talked about a

17   content-based referral, that the referral mentions,

18   you know, the three purposes, and therefore, the

19   referral is content based.  Obviously, the witness

20   disputes that, the testimony disputes that.  The crux

21   of the referral is in the conclusions.  But,

22   nevertheless, assuming for the sake of argument that

23   there was a content-based referral, first of all,

24   that's the theory being brought for the first time

25   today.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is conspiracy to violate the Election Code.
 2               So, you know, there was some suggestion
 3    that vast amounts of sharings are not being
 4    prosecuted or referred for prosecution.  That is
 5    simply not true.  Again, the witnesses testified they
 6    never heard of anybody else.  The ones that they have
 7    heard about, Catalist and I360, we repeated that
 8    many, many times.  The election was the priority in
 9    the last many months.  And no one was worried about
10    Catalist between the last hearing and today.  That
11    was just not a priority.  So no conclusion should be
12    drawn from that.  In fact, Ms. Vigil promised to take
13    a closer look at that.  And there is no reason to not
14    believe her on that.
15               And so, again, I think a lot of the
16    so-called evidence of unprosecuted unlawful sharing
17    comes from, with all due respect, Mr. Greim's misuse
18    of the term "sharing."  But the witnesses testified
19    it is selling, loaning, otherwise making --
20    distributing, otherwise providing access to.  If an
21    organization requests the information, it can be
22    shared internally, as long as the uses remains
23    lawful.  But it can never be shared externally.
24               And Mr. Greim mentions the Campaign Finance
25    Act.  I know nothing about the Campaign Finance Act.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1               C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on June 18, 2022

15

16

17

18   _____
                                    Jennifer Bean, FAPR, RMR-RDR-CCR
19                                  Certified Realtime Reporter
                                    United States Court Reporter
20                                  NM CCR #94
                                    333 Lomas, Northwest
21                                  Albuquerque, New Mexico 87102
                                    Phone:   (505) 348-2283
22                                  Fax:     (505) 843-9492

23

24

25



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com