IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **VOTER REFERENCE FOUNDATION, LLC,**<br><br>    Plaintiff,<br><br>v.<br><br><br>**RAÚL TORREZ**, in his official capacity as New Mexico Attorney General,<br><br>and<br><br>**MAGGIE TOULOUSE OLIVER,** in her Official capacity as New Mexico Secretary of State,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  CASE NO: 1:22-cv-00222-JB-KK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF VOTER REFRENCE FOUNDATION, LLC'S
<u>SECOND NOTTICE OF SUPPLEMENTAL AUTHORITY</u>**

Pursuant to D.N.M.LR-Civ. 7.8(b), Plaintiff Voter Reference Foundation ("VRF") submits the attached case as Supplemental Authority.

The interpretation of the National Voter Registration Act's ("NVRA") Public Disclosure Provision is a focal point of this litigation. Plaintiff consistently argues that individual, identifiable voter data is made available by the NVRA. *See* Dkt. 1, at ¶ 122; *see also* Dkt. 124, at 50. Accordingly, VRF has cited to numerous cases to support its position and construing the Public Disclosure Provision in this same way. *See* Dkt. 126 at 64-65; *see also* Dkt. 134.

The attached recently decided case, *Public Interest Legal Foundation, Inc., v. Griswold*, Slip Op., 2023 WL 6376706 (D. Colo. September 29, 2023) again supports this conclusion.

In *Griswold*, Public Interest Legal Foundation ("PILF") sought data "concerning registered voters identified as deceased or potentially deceased;" and "lists showing all registrants removed from the list of eligible voters for reason of death for the years," including "unique voter identification numbers, county or locality, full names, addresses, and dates of birth." *Id*. at *1. This data is substantially similar to the data requested by VRF. *See* Dkt. 124, ¶ 60.

Like the Defendants in this case, the defendants in *Griswold* argued that the NVRA only covers records relating to the "active process" the state implements to fulfill its NVRA obligations and to implement voter list maintenance. *Griswold*, Slip Op. at *4. Nonetheless, in concluding the records PILF sought are subject to the NVRA, the court stated the "NVRA's disclosure provision should be construed in favor of broad disclosure," because "the use of the term 'all records' in the NVRA's disclosure provision 'suggests an expansive meaning because "all" is a term of great breadth.'" *Id*. (quoting *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 336 (4th Cir. 2012) (Wilkinson, J.). Further, the court reasoned the inclusion of specific exclusions to the Disclosure Provision constitutes "an indication that the statue applies to all records which are not specifically excluded." *Id*.

The similarities in the facts, law, and arguments between *Griswold* and the present case necessitate its consideration.


Respectfully submitted October 5, 2023,

                                                    3

**GRAVES GARRETT, LLC**
*/s/ Edward D. Greim*
Edward D. Greim
Missouri Bar No. 54034
*Admitted Pro Hac Vice*
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com

**HARRISON, HART & DAVIS, LLC**
Carter B. Harrison IV
924 Park Avenue SW, Suite E
Albuquerque, NM 87102
Tel: (505) 369-6599
Fax: (505) 341-9340
carter@harrisonhartlaw.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, Edward D. Greim, certify that on October 5, 2023, a copy of foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notification to the following via email:

    Jeff D. Herrera
    Mark Allen
    jherrera@nmag.gov
    mallen@nmag.gov
    Office of the New Mexico Attorney
    General 408 Galisteo Street
    Santa Fe, NM 87501

                                        */s/ Edward D. Greim*
                                        Edward D. Greim
                                        Counsel for Plaintiff

2023 WL 6376706
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

PUBLIC INTEREST LEGAL
FOUNDATION, INC., Plaintiff,
v.
JENA GRISWOLD, in her official capacity as
Secretary of State for the State of Colorado, Defendant.

Civil Action No. 21-cv-03384-PAB-MEH
|
09/29/2023

PHILIP A. BRIMMER, Chief United States District Judge

**ORDER**

**\*1** This matter is before the Court on the Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6). Docket No. 23. Defendant Jena Griswold, in her official capacity as Secretary of State for the State of Colorado, (the "Secretary") seeks dismissal of this action. *Id.* at 1. Plaintiff Public Interest Legal Foundation (the "Foundation") filed a response opposing the Secretary's motion, Docket No. 25, and the Secretary filed a reply. Docket No. 28. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**[1]

The Foundation is a non-partisan public interest organization based in Indianapolis, Indiana. Docket No. 1 at 2, ¶ 4. The Foundation uses the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507, and state and federal open records law to obtain records and data. *Id.* The Foundation observes election officials to determine whether efforts are being made to keep voter rolls accurate and whether eligible registrants have been improperly removed from voter rolls. *Id.*

The Electronic Registration Information Center ("ERIC") is a non-profit organization that Colorado has been a member of since 2012. *Id.* at 3-4, ¶¶ 9, 12. In October 2021, thirty-one states and the District of Columbia were members of ERIC. *Id.* at 4, ¶ 12 n.2. ERIC members sign a membership agreement. *Id.*, ¶ 13. ERIC's membership agreement requires that Colorado provide to ERIC "all inactive and active voter files" and "all licensing or identification contained in the motor vehicles database" every 60 days. *Id.*, ¶ 14.

ERIC processes data it receives that "relates to the maintenance of Members' voter registration lists and provides regular (at least on a monthly basis) reports to each Member." *Id.* at 5, ¶ 16 (alterations omitted). ERIC uses the Social Security Master Death File "to identify voters who have died so that they can be removed from ERIC states' voter rolls." *Id.*, ¶ 18.

The reports Colorado and other ERIC members receive show "voters who have moved within their state, voters who have moved out of state, **voters who have died**, duplicate registrations in the same state and individuals who are potentially eligible to vote but are not yet registered." *Id.*, ¶ 17. Colorado receives data from ERIC showing voters who are deceased or likely deceased ("ERIC Deceased Data"). *Id.*, ¶ 19. Colorado uses ERIC Deceased Data to conduct voter roll maintenance programs and activities required by state law and the NVRA, including cancelling voter registrations of deceased individuals. *Id.* at 6, ¶ 24.

On June 24, 2021, the Foundation emailed the Colorado Secretary of State a letter requesting, under the NVRA's public disclosure provision, 52 U.S.C. § 20507(i)(1), "[a]ll 'ERIC Data' received from ERIC during the years 2019, 2020, and 2021 concerning registered voters identified as deceased or potentially deceased" and "[a]ll reports and/or statewide-voter-registration-system-generated lists showing all registrants removed from the list of eligible voters for reason of death for the years 2019, 2020, and 2021," *id.* at 8-9, ¶ 33, stating that "[s]uch list shall optimally include unique voter identification numbers, county or locality, full names, addresses, and dates of birth." *Id.* The Foundation asked for an update on its request on July 16, 2021 and August 18, 2021. *Id.* at 9, ¶¶ 34-35.

**\*2** On August 18, 2021, the Secretary denied the Foundation's request for ERIC Deceased Data for the years 2019, 2020, and 2021. *Id.*, ¶ 36. The Secretary partially granted the Foundation's second request and provided a list of former registrants removed from Colorado's voter roll for the reason of death between 2019 and 2021. *Id.* at 9-10, ¶ 41. The Secretary did not provide birth days or birth months. *Id.* at 10, ¶ 41. As a reason for its denial, the Secretary stated that, "to the extent this query requests Limited Access Death Master File (LADMF) data, we are precluded from releasing that data under 15 CFR Part 1110." *Id.* at 9, ¶ 38.

On August 20, 2021, the Foundation notified defendant that it believed she was in violation of the NVRA's public disclosure provision for failure to provide voter list maintenance records. *Id.* at 10, ¶¶ 42-43. In its letter, the Foundation indicated that it would consent to the redaction of data elements contained in the LADMF "such as SSN dates of birth, SSN dates of death, SSN death locations, and full/partial SSN numbers." *Id.*, ¶ 47.

On November 18, 2021, the Secretary sent a letter to the Foundation confirming the denial of the Foundation's request. *Id.* at 11, ¶ 48. The letter "explained that each month the Colorado Department of State receives a deceased voter list created by ERIC based on a comparison of data sources that ERIC obtains from a variety of sources, including but not limited to the state voter registration list and the LADMF created by the Social Security Administration," *id.*, ¶ 49 (internal quotations, alterations, and citation omitted); the data from ERIC "in conjunction with data imported into [the statewide voter registration system] from other sources, make up the list maintenance record that [the Colorado Department of State] relies on" to perform voter list maintenance. *Id.*, ¶¶ 51-52. The letter also stated that the Colorado Department of State "only maintain[s] copies of the deceased voter lists received from ERIC for a few months." *Id.*, ¶ 54; Docket No. 1-4 at 2.

On December 3, 2021, the Foundation notified defendant via email and certified mail that it believed her failure to retain data from ERIC violated the NVRA. Docket No. 1 at 11, ¶ 55.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief...plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide "supporting factual averments" with his allegations. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)). Otherwise, the court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [her] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

**\*3** The Foundation brings one claim against the Secretary for violation of the disclosure provision of the NVRA, 52 U.S.C. § 20507(i), seeking a declaration that the Secretary is in violation of the NVRA and injunctive relief in the form of an order that the Secretary provide the Foundation with the records it requests. Docket No. 1 at 13-14. The Secretary moves for dismissal of the Foundation's claim, arguing that the Foundation's allegations do not amount to a violation of the NVRA because the NVRA does not require release of the documents the Foundation requested, the Foundation's construction of the NVRA would create unnecessary conflict with federal statutes, and that the Foundation's reading of the NVRA would repeal privacy statutes. Docket No. 23 at 1.

"[T]he stated 'purposes' of the NVRA are (1) 'to establish procedures' that 'increase the number of eligible citizens who register to vote in elections for Federal office;' (2) to permit federal, state, and local governments to 'enhance[ ] the participation of eligible citizens as voters in elections for Federal office;' (3) 'to protect the integrity of the electoral process;' and (4) 'to ensure that accurate and current voter registration rolls are maintained.'" *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 264 (4th Cir. 2021) (quoting 52 U.S.C. § 20501(b)). The NVRA's disclosure provision requires that:

[e]ach State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1). "[A] broad reading of the NVRA's disclosure provision 'promotes the integrity of the voting process and ensures a public vehicle for ensuring accurate and current voter rolls.' " *Pub. Int. Legal Found., Inc. v. Dahlstrom*, --- F.Supp.3d ----, 2023 WL 3498044, at *8 (D. Alaska May 17, 2023) (quoting *Pub. Int. Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 559 (E.D. Pa. 2019) (citing 52 U.S.C. § 20501(b)(3), (4))).

**A. Construction of the NVRA**
The Secretary argues that the Foundation fails to state a claim under the plain language of the NVRA. Docket No. 23 at 6. The Secretary states that, "[b]eyond conclusory allegations, Plaintiff fails to allege that the ERIC data concerns the 'implementation' of a 'program' or 'activity' under the NVRA." *Id.* at 9. Instead, the Secretary claims that, the NVRA is "focused on active processes implementing voter list maintenance." *Id.* at 8. The Secretary, however, fails to explain why the ERIC records are not part of an "active process."

The complaint alleges that "Colorado uses ERIC Deceased Data to conduct list maintenance programs and activities required by state law and the NVRA, including cancellation of registrations belonging to deceased individuals." Docket No. 1 at 6, ¶ 24. To support this allegation, the complaint alleges that, in response to the Foundation's request, the Secretary indicated that "each month the Colorado Department of State receives a deceased voter list created by ERIC based on a comparison of data sources that ERIC obtains from a variety of sources, including but not limited to the state voter registration list and the LADMF created by the Social Security Administration," *id.* at 11, ¶ 49 (internal quotations, alterations, and citation omitted); ERIC sends a file to the Colorado Department of State "listing those registrants that ERIC believes are deceased and therefore eligible for cancellation," *id.*, ¶ 50; and, using the data from ERIC "in conjunction with data imported...from other sources," the Colorado Department of State makes a list maintenance record that the Colorado Department of State relies on to perform voter list maintenance. *Id.*, ¶ 51. The Secretary released "a list of former registrants removed from Colorado's voter roll for the reason of death during the period between 2019 and 2021," *id.* at 9-10, ¶ 41, but did not release ERIC Deceased Data. *Id.* at 9, ¶ 36.

**\*4** The Secretary does not argue that removing ineligible voters from voter rolls is not an activity or program; instead, the Secretary states that she "provided all records concerning the implementation of list maintenance activities for deceased voters," and "the records that relate to the process the state implements to fulfill its NVRA obligations" without granting the Foundation's request. Docket No. 23 at 6, 8. She further states that "the Secretary's staff obtains data from a variety of sources, including but not limited to ERIC data, and then creates and maintains its own record;" that the "resulting record is what is then transmitted to Colorado's counties to actually implement list maintenance activities for deceased voters;" and "[t]he ERIC data is simply one of several sources of information the Colorado Department of State receives that it then uses to generate the list maintenance record that counties rely on when performing list maintenance activities." *Id.* at 8-9 (citing Docket No. 1-4 at 2).

The Secretary says that "active process" is the "active process a state must carry out for sending address confirmation notices by prepaid postage to inactive voters, and the process for voters to respond, before the state can remove such voters from its voter registration list." *Id.* (citing 52 U.S.C. 20507(d)(2)). It is not clear why ERIC records would not fall into the Secretary's definition of "active process." [2]

The Court agrees with the Foundation that the NVRA's disclosure provision should be construed in favor of broad disclosure. The use of the term "all records" in the NVRA's disclosure provision "suggests an expansive meaning because 'all' is a term of great breadth." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 336 (4th Cir. 2012) (quoting *Nat'l*

*Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 290 (4th Cir.1998)).

For specific application to the ERIC records, the Court finds the reasoning in *Dahlstrom* persuasive. In that case, the court evaluated whether ERIC data regarding deceased voters is subject to disclosure under the NVRA's disclosure provision. 2023 WL 3498044, at *6. *Dahlstrom* ruled that the terms in the disclosure provision are broad in nature and the plain meaning of the disclosure provision "favors providing access to the deceased voter records, which can fairly be considered 'records' the [Alaska Division of Elections] uses to 'implement[ ]' one or more of its 'programs and activities' to ensure the accuracy of its eligible voter lists" and that this definition was in line with other courts' broad interpretations of the disclosure provision. *Id.* at *8 (quoting 52 U.S.C. § 20507(i)(1)).

To the extent the Secretary argues that the disclosure provision is limited to records that are related to the listed obligations in the NVRA, Docket No. 23 at 8, the Court agrees with the observation in *Dahlstrom* that the disclosure provision's enumerations of two specific exceptions to the disclosure requirement, namely, records that relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered as an indication that the statute applies to all records which are not specifically excluded. 2023 WL 3498044, at *8. This lends support to a broad reading of the provision.

The Secretary provides no reason for the Court "to deviate from the plain meaning of the disclosure provision's key terms, other courts' interpretation of those terms in similar contexts, and the implication of Congress's inclusion of specific exceptions to the disclosure requirement." *Id.* Accordingly, the Foundation has sufficiently alleged the ERIC records it seeks are concerned with implementing a program or activity under the NVRA, namely, maintaining accurate voter rolls.

**B. Construction With Other Statutes**

 ***5** Next, the Secretary argues that the Foundation's construction of the NVRA would create unnecessary conflict with other federal statutes. Docket No. 23 at 9-14. The root of the Secretary's argument appears to be that any definition of the NVRA that includes ERIC records is incorrect because disclosure of ERIC records conflicts with other statutes. The Foundation argues that determining whether a record is within the scope of the NVRA is distinct from determining whether portions of the record should be redacted based on other statutes. Docket No. 25 at 17. The Foundation asserts that, if any of the records conflict with other laws, appropriate redaction should be ordered instead of construing the NVRA differently. *Id.*

First, the Secretary argues the Bipartisan Budget Act of 2013, Pub.L. 113-67 (codified at 42 U.S.C. § 1306c), exempts ERIC records from the NVRA. Docket No. 23 at 9-11. The Bipartisan Budget Act of 2013 prohibits the Secretary of Commerce from "disclos[ing] to any person information contained on the Death Master File with respect to any deceased individual at any time during the 3-calendar-year period beginning on the date of the individual's death, unless such person is certified" to receive the information. 42 U.S.C. § 1306c(a). The Death Master File ("DMF") includes "information on the name, social security account number, date of birth, and date of death of deceased individuals maintained by the Commissioner of Social Security." *Id.*, § 1306c(d). The National Technical Information Service compiles the Limited Access Death Master File ("LADMF"), that "includes DMF with respect to any deceased individual at any time during the three-calendar-year period beginning on the date of the individual's death," but the LADMF "does not include an individual element of information (name, social security number, date of birth, or date of death) in the possession of a Person, whether or not certified, but obtained by such Person through a source independent of the Limited Access DMF." 15 C.F.R. § 1110.2. "If a Person obtains, or a third party subsequently provides to such Person, death information (i.e., the name, social security account number, date of birth, or date of death) independently, such information in the possession of such Person is not part of the Limited Access DMF." *Id.* The Secretary claims that the Foundation "acknowledges that ERIC uses confidential LADMF information" and argues that plaintiff "seeks to bypass the [Bipartisan Budget Act of 2013] certification program and receive confidential LADMF information indirectly from Colorado and ERIC rather than directly from the federal government." Docket No. 23 at 10-11.

Next, the Secretary argues that the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721, prevents disclosure of the ERIC records the Foundation requests. *Id.* at 11-14. The DPPA prohibits a "State department of motor vehicles" from "knowingly disclos[ing] or otherwise mak[ing] available" personal information "about any individual obtained by the department in connection with a motor vehicle record."

18 U.S.C. § 2721(a)(1). Personal information is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information." *Id.*, § 2725(3).

Finally, the Secretary argues plaintiff's interpretation of the NVRA would repeal privacy statutes that existed at the time the NVRA was enacted. Docket No. 23 at 14-15. The Secretary notes that the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, states that "records are not subject to production if disclosure 'would constitute a clearly unwarranted invasion of personal privacy.' " *Id.* at 14 (quoting 5 U.S.C. § 552(b)(6)). The Secretary argues that, because Congress has identified LADMF information as private information that is not subject to FOIA, *id.* (citing 42 U.S.C. § 1306c(e)), it would repeal FOIA protections to reveal LADMF information under the NVRA. *Id.* Additionally, the Secretary argues that the Privacy Act of 1974, 5 U.S.C. § 552a, also protects disclosure of LADMF information. *Id.* at 14-15.

**\*6** The complaint alleges that ERIC uses the "Social Security Death Master File...to identify voters who have died so that they can be removed from ERIC states' voter rolls" and that "Colorado receives data from ERIC showing registrants who are deceased or likely deceased." Docket No. 1 at 5, ¶¶ 18, 19. ERIC's annual report states that members "receive the benefits of access to the [DMF], and an assurance that security of the data meets federal standards, as a result of their ERIC membership." Docket No. 23 at 10 (quoting ERIC 2017 Annual Report). If a third party provides death information, "such information...is not part of the Limited Access DMF." 15 C.F.R. § 1110.2. The complaint alleges a third party, ERIC, provides death information to Colorado.

The Court agrees with the Foundation that information covered by the disclosure provision of the NVRA, but protected by other federal statutes, should be read as exceptions to the NVRA's disclosure provision instead of as constraints on how the disclosure provision should be interpreted. *See* Docket No. 25 at 17. As the Fourth Circuit observed, "[a]lthough the...NVRA's disclosure provision is broad and does not contain an explicit exemption from disclosure for sensitive information subject to potential abuse,...the term 'all records' in the disclosure provision does not encompass any relevant record from any source whatsoever, but must be read in conjunction with the various statutes enacted by Congress to protect the privacy of individuals and confidential information held by certain governmental agencies." *N.C. State Bd. of Elections*, 996 F.3d at 264.

The NVRA does not contain "a blanket exemption" for any federal statute and determining what records are disclosable would likely require "a more exacting and tailored analysis" than can be accomplished on a motion to dismiss. *See id. at 268*. The Secretary argues that, even with the redactions the Foundation proposes in the alternative, namely, redacting "SSN dates of birth, SSN dates of death, SSN death locations, and full/partial SSN numbers," Docket No. 1 at 10, ¶ 47, release of ERIC records would still violate federal privacy law. Docket No. 23 at 15-17. The Secretary argues that names of deceased voters are protected as LADMF data and argues that plaintiff can use the information it requests in combination with public voter records to identify voters ERIC believes is deceased. *Id.* The Secretary cites no case to support the proposition that the Court may dismiss the Foundation's claim based on information in records requested under the NVRA that could be combined with public data to potentially reveal protected information.[3] This inquiry, if appropriate, is too fact-based for a motion to dismiss. The Court finds that conflict between the NVRA and the Bipartisan Budget Act of 2013 or FOIA based on LADMF data "likely can be harmonized by requiring the exclusion of sensitive personal information in the Death Master File from the scope of the NVRA's disclosure provision." *Dahlstrom*, 2023 WL 3498044, at \*10. To construe the DPPA and the NVRA consistently, the Court "can order redaction of 'uniquely sensitive information' in otherwise disclosable documents." *N.C. State Bd. of Elections*, 996 F.3d at 267 (quoting *Project Vote/Voting for Am., Inc.*, 682 F.3d at 339).

**\*7** The Secretary has not shown the Foundation fails to state a claim based on a violation of the NVRA because of the NVRA's disclosure provision or because of exceptions to the NVRA established by other federal statutes. The Court will therefore deny her motion to dismiss.

**IV. CONCLUSION**
It is

**ORDERED** that defendant's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) [Docket No. 23] is **DENIED**.

DATED September 29, 2023.

BY THE COURT:

PHILIP A. BRIMMER

Chief United States District Judge

**All Citations**

Slip Copy, 2023 WL 6376706

## Footnotes

1      The Court assumes that the allegations in plaintiff's complaint are true in considering the motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

2      To the extent the difference is whether the Colorado Department of State made the record, a variety of courts have held § 20507 applies to records the objecting party did not generate. *See, e.g.*, *N.C. State Bd. of Elections*, 996 F.3d at 267 (completed voter applications); *Project Vote/Voting for Am., Inc.*, 682 F.3d at 337 (completed voter applications); *Pub. Int. Legal Found. v. Chapman*, 595 F. Supp. 3d 296, 301 (M.D. Penn. 2022) (computerized compilation of each county's voter registration lists).

3      In support of her argument, the Secretary cites *Baser v. Dep't of Veterans Affs.*, 2014 WL 4897290, at *4 (E.D. Mich. Sept. 30, 2014). Docket No. 23 at 16. In *Baser*, at the summary judgment stage, the court evaluated affidavits to perform a balancing test to decide if records were exempt from FOIA's disclosure requirements based on how the information in the records could be used with other public information. 2014 WL 4897290, at *4. This holding is distinguishable from a motion to dismiss under the NVRA where no balancing test is implicated.

---

**End of Document**      © 2023 Thomson Reuters. No claim to original U.S. Government Works.