1

1                    IN THE UNITED STATES DISTRICT COURT

2                       FOR THE DISTRICT OF NEW MEXICO

3

4     VOTER REFERENCE FOUNDATION, et al.,

5                              Plaintiff,

6                              VS.
                                        NO. CV 22-00222 JB/KK
7
      Raul Torrez, Attorney General
8     for the State of New Mexico, et al.,

9                              Defendants.

10

11              Transcript of Motion Proceedings before
      The Honorable James O. Browning, United States
12    District Judge, Albuquerque, Bernalillo County,
      New Mexico, commencing on June 14, 2023.

13

14    For the Plaintiff:  Mr. Eddie Greim; Mr. Matt
      Mueller; Mr. Carter Harrison
15
      For the Defendant:  Ms. Kelsey Schremmer; Mr. Jeff
16    Herrera

17

18

19

20
                 Jennifer Bean, FAPR, RDR, RMR, CCR
21               United States Court Reporter
                 Certified Realtime Reporter
22                   333 Lomas, Northwest
                 Albuquerque, NM  87102
23               Phone:  (505) 348-2283
                    Fax:  (505) 843-9492
24

25



SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                                FAX (505) 843-9492
                                                      1-800-669-9492
                                              e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Good morning
 2    everyone.  I appreciate everybody making themselves
 3    available to me this morning.  The Court will call
 4    Voter Reference Foundation, LLC versus Raul Torrez,
 5    et al., Civil Matter Number 22 CV 0222 JB/KK.
 6              If counsel will enter their appearances
 7    for the plaintiff.
 8              MR. GREIM:  Eddie Greim.
 9              MR. MUELLER:  Matt Mueller.
10              THE COURT:  Mr. Greim, Mr. Mueller, good
11    morning to you.
12              And for the defendants?
13              MR. HERRERA:  For the defendants, Jeff
14    Herrera.  And joining me is Kelsey Schremmer.
15              THE COURT:  Mr. Herrera, good morning to
16    you.  And Ms. Schremmer, good morning to you.
17              MS. SCHREMMER:  Good morning.  I apologize
18    for cutting it so close, Judge.
19              THE COURT:  All right.  Anybody else?  I
20    don't see anybody on Zoom or anything.
21              I may have asked this question at the very
22    beginning of the case when we were dealing with the
23    preliminary injunction.  On the LLC, did I ask you
24    to file a letter indicating who the principals and
25    members are, and provide the citizenship of each of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the principals and members?

2           MR. GREIM:  Your Honor, I don't recall.

3   But we can certainly do that.  None of these trace

4   back to publicly traded companies or for profits.

5   But if we don't have that in the record, it is long

6   past time to do it, and we will do it right away.

7           THE COURT:  Okay.  If you would do that.

8   And this is a little different than the disclosures

9   that the federal rules require of corporations.  But

10  since it's an LLC, what I'm interested in, if this

11  case breaks down or something into diversity

12  jurisdiction or something, I need to know the

13  principals and members and then all their

14  citizenship.

15          Let me ask a few questions about this

16  case.  Maybe I was under a misimpression that when

17  we got the order staying the preliminary injunction

18  that they would follow-up with an opinion.  Am I

19  just wrong on that?  Is that it?  Or is there going

20  to be more coming out?

21          MR. GREIM:  Your Honor, we would expect

22  there to be some.  But we can only speculate.  As I

23  think you mentioned before, you know, we can only

24  guess what the Tenth Circuit is doing or why.  But

25  we let them know that we had trial scheduled and

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    summary judgment on all the issues.  We didn't ask

2    for an expedited decision.  And so it may well be,

3    Your Honor, that they're now waiting for us.

4              THE COURT:  What do the defendants -- do

5    you expect any more from the Tenth Circuit, or are

6    they done with their work?

7              MS. SCHREMMER:  We're trying to find the

8    stay.  I do recall there was some briefing at the

9    Tenth that was concurrent with the summary judgment

10   briefing that we have just completed.  And so that

11   has only recently been fully briefed in the last few

12   handful of months.

13             THE COURT:  What are y'all briefing up

14   there?  The preliminary injunction?

15             MS. SCHREMMER:  Yes.  And the prior

16   restraint issue that we have not briefed in summary

17   judgment, per this Court's orders.

18             I believe there were some other ancillary

19   issues that both parties had thought were at issue

20   and briefed as well.  But our appellate counsel has

21   taken the lead on briefing that.  So if I can

22   provide more information, I'll consult with him and

23   certainly get you whatever you need.

24             THE COURT:  Well, is that your impression

25   that y'all are continuing to brief stuff at the

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1    Tenth?

2              MR. GREIM:  No, Your Honor.  To my

3    recollection, it's been a quite a while since we

4    filed anything in the Tenth.  Mr. Mueller is looking

5    right now.  We're a full-service shop.  We do

6    appellate, we do everything.  In my view, it was

7    limited.  We tried to tell the Tenth Circuit that we

8    viewed it as limited.  And we tried to tell them

9    that, you know, the amended complaint and all the

10   new theories in the case are proceeding down here.

11             So I mean, we certainly expect them to do

12   something eventually.  But it's not like we just

13   finished briefing.  It's been a while.  And

14   candidly, back when we were last here, if you would

15   have told me that in June we still wouldn't have any

16   decision from them, I would have been a little

17   surprised.

18             MS. SCHREMMER:  Your Honor, we have dates.

19   The reply brief was filed in the Tenth Circuit on

20   March 15th, this spring.  And supplemental authority

21   was filed on April 19th.  And I don't know if that

22   was our filing or theirs.  So within this last

23   handful of months is when briefing completed at the

24   Tenth Circuit.  And that was the basis for our

25   motion to stay these proceedings entirely until we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    had a ruling from the Tenth Circuit.  And that is
 2    where we got the ruling from Your Honor kind of
 3    excluding from these proceedings right now the prior
 4    restraint issue in anticipation that there would be
 5    further instruction from the Tenth.
 6              THE COURT:  When did their order staying
 7    the preliminary injunction come out?
 8              MS. SCHREMMER:  December 28th of 2022.
 9              THE COURT:  So the defendants are -- do
10    you disagree with that?
11              MR. GREIM:  No.
12              THE COURT:  Okay.  So there has been
13    briefing going on after they issued the order?
14              MR. GREIM:  That's right.  I mean, it's
15    kind of -- it's becoming convoluted.  But it's
16    briefing on the underlying appeal of the preliminary
17    injunction.  And again --
18              THE COURT:  So let me make sure I
19    understand, you know, since I don't do appellate
20    work every day like y'all and your office.  So there
21    was an appeal of the preliminary injunction, and
22    that was by the State; correct?
23              MS. SCHREMMER:  Yes.
24              THE COURT:  You didn't appeal anything in
25    it?  Okay, so it was just the State.  And then, at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   the same time, did the State file a motion to stay
 2   the preliminary injunction?  Is that how we got the
 3   order?
 4             MS. SCHREMMER:  Yes.
 5             THE COURT:  So the preliminary injunction
 6   issue is still up there and pending.  And I think
 7   we're right, we will get something.  Okay.
 8             Well -- and then we had the hearing on the
 9   motion to stay this case.  And I denied that.  So
10   that's where we are here today.
11             Let me ask y'all, while we're just
12   chatting here, looking at your motions, are y'all
13   seeing this thing as going off on a trial, or do
14   y'all see it going off on these cross-motions; that
15   I issue an opinion, and then that's how this case
16   gets resolved?
17             MR. GREIM:  Your Honor, we actually
18   prefer -- and we're hoping just to have a -- maybe a
19   one-day bench trial, which would have been a lot
20   like summary judgment, but we would have just come
21   here and presented -- you know, we would have
22   deposition designations and things like that.  We
23   didn't see a need for further live testimony.
24             But when we learned that the defendants
25   really wanted to file summary judgment, we thought,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8

```
1   well, you know, if we're going to be briefing, let's
2   see if we can get the case resolved then, so we can
3   just limit the costs for all the clients here.
4              So, as we looked at the briefing, we think
5   it can be resolved on cross-motions for summary
6   judgment.  I think, as you go through, you'll see
7   that the actual facts of this case are not disputed.
8   What people say the impact of those facts are might
9   be subject to argument, but this is not a question
10  where one witness said one thing and somebody else
11  said another and you're going to have to judge
12  credibility.
13             THE COURT:  And is that -- are y'all, is
14  the State looking at it the same way that, now that
15  we have cross-motions, you're not really seeing a
16  need for a trial?
17             MS. SCHREMMER:  Yes, Your Honor.
18             THE COURT:  You're seeing that it will go
19  off on an opinion like on the cross-motions here?
20             MS. SCHREMMER:  Yes, we think the motions,
21  especially, have been clarifying.  We've got legal
22  issues and not really fact disputes.  And with the
23  cross-motions, everything except what has been set
24  aside by your prior order is on the table at this
25  point.  And so I agree with what Mr. Greim said.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1              THE COURT:  Okay.  Well, I think I know

2    the State's position on this.  But like you said,

3    you were surprised we're sitting here in June

4    without anything from the Tenth Circuit.  Do you

5    still want to go forward on this, or do you want to

6    wait and get guidance from them, because they seem

7    to disagree with something I did in the preliminary

8    injunction.  And it would be nice to know what their

9    thinking is on all those issues.

10             MR. GREIM:  Your Honor -- and to kind of

11   harken back to our last -- in fact, I think that was

12   the last time we saw Ms. Lecocq, now that we're

13   thinking back to our times here -- we think that the

14   preliminary injunction presents narrower issues.

15   It's really based on the case as it existed last

16   summer.  After the appeal -- or I'm not sure exactly

17   how this fell, but we filed an amended complaint.

18   We have an entire set of MVRA issues here that have

19   nothing to do with what's at the Tenth Circuit right

20   now.  And I mean, there is a lot of other groups --

21             THE COURT:  The only thing that's really

22   at the Tenth, the only thing I enjoined on was the

23   prior restraint; right?

24             MR. GREIM:  That's right.

25             THE COURT:  And everything else I pretty

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    much denied your motion, but granted it on that

2    narrow prior restraint of the voter rolls that you

3    already had obtained.

4             MR. GREIM:  That's right.

5             THE COURT:  So that's the reason we pulled

6    prior restraint out here because it looks like I got

7    that wrong.

8             MR. MUELLER:  I can probably answer that.

9    So there is three primary issues in the appeal, and

10   you can check me here, but one of them is the prior

11   restraint, and whether, legally, that was correct.

12            The second issue has to do with viewpoint

13   discrimination and whether --

14            THE COURT:  I didn't think I granted you

15   relief on that.  I said you were likely to succeed

16   on the merits, but I said I'd have to go back and

17   look.  I didn't think I granted any relief there.

18            MR. MUELLER:  I think we agree with that.

19   But nevertheless --

20            THE COURT:  So why would that be up there

21   if that's not part of the PI?

22            MS. SCHREMMER:  Well -- and if I can, to

23   the extent that one party was, perhaps, confused or

24   mistaken about the order, that was a mutual mistake,

25   and both parties did kind of read the order as kind

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of sending up several issues.  And so we do agree

2    that both parties have briefed those.  And we may

3    well get guidance from the Tenth Circuit on those,

4    or the Tenth Circuit may correct us as to the scope

5    of the PI order.  But those are up before the Tenth

6    at this point.

7              MR. MUELLER:  And, Your Honor, I believe

8    the reason viewpoint discrimination tied in that

9    appeal is because your order did make statements

10   that -- or making findings of viewpoint

11   discrimination.  But because I believe that was tied

12   to the decision to not give the VRF additional voter

13   data.  And at the time of the preliminary injunction

14   we weren't asking for relief on that point.  So I

15   believe there is specific language in your order

16   that makes a finding of viewpoint discrimination,

17   but says that because we didn't ask for relief by

18   way of ordering the defendants to provide the voter

19   data, that wasn't part of the relief granted in the

20   PI.

21             THE COURT:  And what was the third issue

22   you said is up there?

23             MR. MUELLER:  The third issue, I believe

24   they raised an argument that the attorney general

25   was improperly enjoined in particular.  I don't want

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                                                  e-mail: info@litsupport.com

1    to misstate the exact argument they made, but

2    generally, that was -- the point was, I believe,

3    their argument at least was that a bulk of the

4    evidence was as to the actions of the Secretary of

5    State.  And so they made an argument on appeal that

6    injunction improperly enjoined the attorney general.

7              THE COURT:  Okay.  Well, then it looks

8    like we have issues to deal with here, and we'll

9    just see what they do.  But I guess we've got our

10   work to do.

11             MS. SCHREMMER:  Your Honor, if we could

12   return to the question you had posed to Mr. Greim.

13   As much as I hate to have ginned everything up for

14   this hearing, and not have it, I do anticipate some

15   duplicate work and use of resources in the event

16   that we proceed now, receive an order from the

17   Tenth, and then revisit the kind of lingering

18   issues.

19             And so from that perspective, I do think

20   that we would advocate waiting for guidance as we

21   did when we sought to stay this.  But at the same

22   time everyone is here, and these folks have traveled

23   out, and I do understand they'd like a chance to

24   talk.  But I do worry about proceeding ahead and

25   then being in the exact same spot six months from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   now.
 2            THE COURT:  Well, I don't disagree with
 3   that, but like you said, we're all here, let's argue
 4   it.  And this is going to take me a while to digest
 5   anyway.  So maybe the Tenth Circuit will give us
 6   some guidance while I'm putting the opinion
 7   together.
 8            I'm open to suggestions how to argue all
 9   these issues.  It seems to me that the issue we
10   probably ought to argue first is the MVRA issue.
11   And I don't know if that's got -- I know it's got a
12   lot of subparts.  But can we argue it all together?
13   Do y'all want to argue it separately?
14            Since the defendant, I think, moved first
15   here, I was going to give the State the opportunity
16   to open.  Are you open to arguing the MVRA first,
17   and then letting the plaintiff respond?  And I'll
18   give everybody a chance to say what they want on it.
19   Does that sound okay?
20            MS. SCHREMMER:  Yes, Your Honor.
21            THE COURT:  I guess, as a preliminary
22   matter, I lean toward the State on the MVRA issue.
23   It seems to me that the language that we're talking
24   about here doesn't really cover voter rolls and
25   voter history.  It's talking about the program that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    the State implements to do what the MVRA requires

2    from a federal standpoint here in New Mexico.

3              So I'll certainly listen to what anybody

4    wants to say on it, but I'm inclined to think the

5    language that the plaintiff is relying on does not

6    include the material that's being sought here.

7              But Ms. Schremmer, are you going to take

8    the lead on this?

9              MS. SCHREMMER:  Yes, Your Honor.

10             THE COURT:  Ms. Schremmer.

11             I just had my law clerk call the Clerk of

12   the Court, the Tenth Circuit.  And they say the

13   Tenth Circuit will not issue an opinion to explain

14   its order staying the preliminary injunction.

15   Apparently, it is their policy, pursuant to Rule 8

16   of Appellate Procedure to simply state that the

17   factors weighing in favor of the stay are met

18   without further explanation.  So we're not going to

19   get anything further on this order.  Whatever y'all

20   are briefing right now on the preliminary

21   injunction, I guess you'll get an opinion on that,

22   but not on the --

23             MS. SCHREMMER:  On the stay specifically.

24   Understood.  Thank you.

25             THE COURT:  Was that kind of what y'all
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   were thinking?

 2            MS. SCHREMMER:  Yes.

 3            THE COURT:  Or were y'all thinking

 4   something was going to come out --

 5            MS. SCHREMMER:  No, I think --

 6            THE COURT:  So the opinion y'all are

 7   waiting for is one on the briefing that you just

 8   finished up?

 9            MS. SCHREMMER:  Yes, Your Honor.

10            THE COURT:  All right.  Go ahead, Ms.

11   Schremmer.

12            MS. SCHREMMER:  I will keep this brief.  I

13   know you've read up on this case and have thoughts,

14   and to the extent I can answer questions, I would

15   very much like to do that.  I do think the main

16   point is the one that Your Honor has just

17   highlighted, which is that the language of the MVRA,

18   while it does grant some access rights, is

19   relatively narrow compared to what VRF is seeking

20   here.

21            If we compare the language of the statute,

22   which relates to programs and activities of the

23   State to the wide-ranging requests that VRF has

24   designated as MVRA requests, which seeks things like

25   where individual voters voted in a particular

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    election, an analyses of what groups of voters have

2    done what with their registration in the time since,

3    that goes far beyond what the MVRA anticipates.

4            Moreover, we may have still not received

5    much clarity from VRF as to what portions of their

6    data requests, which were, from the outset, made

7    under New Mexico State law, and only through the

8    course of this litigation started to have the tag

9    attached of the MVRA, what subset of those requests

10   actually relate to state programs and activities

11   versus requests under New Mexico's broader state

12   law.

13           And not to jump around too much, but this

14   is where the notice issue kind of looms large.

15   There has not been a meaningful exchange as to what

16   we might be able to do to satisfy any portion of the

17   request that actually relates to New Mexico's

18   programs and activities.

19           And there is not Tenth Circuit precedent

20   here.  The Fourth Circuit precedent on which VRF

21   relies references specifically how those states

22   conducted specific programs and activities.  And

23   here, just the wide-ranging request for the entire

24   voter roll is not falling within that statutory

25   language.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           Moreover, the MVRA relates to having

2    access to that data.  It does not prevent states or

3    any governmental body, then, from proscribing

4    certain uses of that data.  And so that's really

5    where the rubber meets the road in this case, is the

6    distinction between a right of access, which is much

7    more limited than VRF claims, and a right to use.

8    And specifically here, the right to publish

9    wholesale all of New Mexico's voter data online is

10   so far beyond what the MVRA grants the right both to

11   obtain and then to use that data for, as to really

12   make that the issue.

13          And so really I think the nut of this is,

14   first, is there any right to access all of the data

15   that VRF wants.  And then second, does that in any

16   way constrain New Mexico from trying to impose

17   responsible regulations on the data that it has used

18   its governmental powers to collect?  And the answer

19   there is, no, there is nothing in the MVRA that

20   would prevent that.

21          There is no conflict between the MVRA and

22   New Mexico State law that would permit preemption.

23   And especially, when we're talking about obstacle

24   preemption, which is where VRF gets its argument

25   from.  That is to be applied with such a light touch

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   that here, where we have two separate realms:
 2   Access and use, there is no conflict, and those two
 3   statutes can happily exist side by side, and they
 4   can in this case.
 5            THE COURT:  All right.  Anything else on
 6   the MVRA, Ms. Schremmer?
 7            MS. SCHREMMER:  Not unless Your Honor has
 8   questions that I can answer.
 9            THE COURT:  Let's see what the plaintiffs
10   want to say, then I may have questions.  Thank you,
11   Ms. Schremmer.
12            Mr. Greim.
13            MR. GREIM:  Your Honor, I think I'll start
14   with the text of the statute.  There is nothing
15   special about how New Mexico keeps its voter data
16   that would really justify making this the first
17   court in the country.  There has been no precedent
18   cited anywhere where a district court or a court of
19   appeals has said that the voter rolls are beyond the
20   MVRA.
21            THE COURT:  Well, but isn't the opposite
22   true?  Nobody said that the voter rolls fall within
23   that language?
24            MR. GREIM:  I think we've cited some cases
25   that actually go the other direction.  And so the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   four cases I've got are Judicial Watch versus Limon,
 2   from 2019.  That covered the voter registration
 3   information records.  That was the first one.
 4          The second one is Project Vote, Voting for
 5   America versus Long, that's the Fourth Circuit case,
 6   finding that the registration applications -- that's
 7   the same data that goes into the list --
 8          THE COURT:  When you say voter
 9   registration information records, that's still not
10   what you're seeking here, is it?  I mean, here,
11   you're seeking the voter information, addresses, and
12   then the history here.  So do you have one that
13   covers what you're asking for?
14          MR. GREIM:  Yeah, I do.  But let me,
15   before I come back to the cases, I think the
16   actual -- your question makes me realize the real
17   first starting point is what's the data we're
18   looking for?  So, Your Honor, there are not several
19   different sources of data out there, several
20   different lists, one cluster of addresses, another
21   cluster of history.
22          There is a single database called SERVIS,
23   S-E-R-V-I-S.  And that database -- and by the way,
24   states are required under federal law to have such a
25   database, they're required to do that.  And so
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   wherever the applications come in from, the data all
 2   gets put into SERVIS.  So that has -- you know,
 3   whatever goes on the registration application:
 4   Name, address; it can have Social Security number
 5   and birthdate.  But New Mexico doesn't make that
 6   publicly available, and no one is fighting about
 7   that here.  But then it has other information, too.
 8   For example, when someone votes in an election,
 9   there is a field in the SERVIS database that shows
10   that they voted.  If they change their registration
11   address, that gets reflected in the database as
12   well.  And those are the programs and activities --
13   those are the programs and activities that the MVRA
14   is talking about.  So the place -- the repository of
15   information about these programs and activities, all
16   the keeping the list up to date, everything about
17   recording voting information, that is the list.
18   That is the list.
19           And so I understand -- now, to come back
20   to the text -- I know I'm bouncing around, but I
21   think this makes sense.  I recognize the text of the
22   public disclosure provision says:  All records
23   concerning the implementation of programs and
24   activities conducted for the purpose of ensuring the
25   accuracy and currency of official lists.  But court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    after court has said that is the list.  That is the

2    list, because that list is not just a list.  I mean,

3    we call it that, but it shows when did the Secretary

4    of State last update this voter?  When were they

5    moved to inactive because they didn't vote for

6    several elections?  When did they die?  Their name

7    is still on there with a line showing that they were

8    taken off for having passed away.  So all of that is

9    on the SERVIS database.  And what VRF is trying to

10   do, in part, is to show how good of a job is the

11   Secretary of State doing in keeping that list.

12           So there isn't -- I mean, if you were to

13   read the disclosure provision narrowly, there isn't

14   a special record out there that says:  Here are the

15   programs and activities that I undertake.  That

16   information is all in the database itself, and

17   that's the reasoning of these courts.

18           Another one, Public Interest Legal

19   Foundation versus Matthews, Central District of

20   Illinois, 2022:  Voter list is a record.

21           Public Interest Legal Foundation versus

22   Bellows, District of Maine, 2022, found the same

23   thing.

24           And, in fact, Your Honor, we cited to you,

25   in 2023, just in March of this year -- that's why we



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    filed a notice of supplemental authority to the

2    Tenth Circuit -- that district court said that the

3    ban on internet disclosure of that list violated the

4    MVRA.  So there are no cases saying that these

5    different secretaries of states' lists are not part

6    of public disclosure provision.  There are cases

7    saying that they are.  And case after case --

8            THE COURT:  But your universe is four

9    cases; right?

10           MR. GREIM:  That's -- I think that's

11   right.  That's what I have in my --

12           THE COURT:  And of those, how many of them

13   actually dealt with the list that we're talking

14   about here?

15           MR. GREIM:  Your Honor, I think two of

16   them dealt with the list itself.  But I could be

17   wrong about Long and Limon.  I'd have to go back to

18   those two cases from Maryland and the Fourth

19   District.  District of Maine and Matthews dealt with

20   the list itself.

21           But I would also say this:  There really

22   isn't a reason why we should distinguish between the

23   applications themselves and the list, because the

24   application data is what gets put in the list.  If

25   anyone wants to see what's going on, you don't go

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   look at the individual applications, which aren't

2   even kept in a central location.  You look at the

3   list itself.

4              THE COURT:  But when I read the language

5   from the statute, what comes to my mind is, like,

6   there is a policy or a handbook or something that

7   says how we're going to do this; not here's what we

8   have actually done.

9              MR. GREIM:  Right.

10             THE COURT:  So that's the reason the

11  language seems to me to be more of a static -- just

12  a -- you don't get the implementation documents.

13  You get the game plan as to how New Mexico is going

14  to put that list together.

15             MR. GREIM:  Well, Your Honor, I think what

16  the Long court said -- and that was what was argued

17  in Long -- and what the court there said was:  The

18  language says, "All records concerning the

19  implementation of programs and activities."  And so

20  the list itself is the ultimate record concerning

21  the implementation, because that shows you what you

22  did.

23             I mean, there is not a single case -- I

24  don't even hear the defendants here to say that --

25  when they say, well, there is some information they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    could get, we're not really sure.  They haven't come

2    in and said:  Oh, they just want the handbook.

3    Well, that's just the CFRs -- or not CFR, the Code

4    of State Regulations; they tell us what to do.  So

5    look on the website, you can see our code of state

6    regulations.  That meets the public disclosure

7    requirement.

8         I mean, Your Honor, I don't think that

9    argument has been raised anywhere.  And I don't

10   think it's been accepted anywhere.  And it certainly

11   hasn't been made by the defendants in this case.

12        So I understand -- I mean, I understand

13   your point, because it says "all records

14   concerning."  But every court that has looked at

15   this has said:  The purpose of the MVRA was to allow

16   the public to be able to monitor whether this is

17   working correctly.  And if all you have to do is

18   turn over the handbook that says:  This is what we

19   want to do, then we won't know whether they're

20   actually doing it.

21        I mean, there are other records concerning

22   the implementation, like the database, showing what

23   the Secretary of State believes is the address of

24   someone, and when it was last updated, that wouldn't

25   be disclosed.  And that seems to violate the plain

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    text of the public disclosure provision.

2              And I understand the Court's point.  But

3    it just seems to be against the clear weight of

4    authority across the country.

5              Now, there are some other arguments that

6    they've raised here.  I was surprised to hear -- I'm

7    still not sure what this means, but we've heard that

8    there are some records that they could disclose.  I

9    would be really curious when they stand back up here

10   again, to hear what they say those are.  I wonder.

11   I mean, if their position is that it's no part of

12   the list, that would be the first time we've ever

13   heard it.  It's not even in the briefing.  So I'd be

14   curious what that is.  That can't be right.

15             THE COURT:  I'm not tracking.  What did

16   you hear Ms. Schremmer say?

17             MR. GREIM:  Sure.  She said:  Well, we're

18   still not really sure what they're asking for, which

19   parts of the MVRA or not.  I heard her say this:

20   Maybe there are portions of the request that we

21   could agree to that are covered by the MVRA.  I

22   mean, I would love to know what that is.  If there

23   is any part of the voter file that they say is

24   subject to the MVRA, then that kind of begs the

25   question of why is part of the voter file okay and

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492
                                                            e-mail: info@litsupport.com



1    other parts not.

2              I mean, again, we'd be making brand new

3    law in this district court, I think, on that.  But

4    I'd be really curious to see what the defendants

5    say.

6              The other thing I want to point out here.

7    There were three requests.  One of the objections

8    that's been made is:  Well, the requests don't say

9    MVRA.  They don't say -- they don't use the words

10   MVRA.  Now, of course, the May request does.  The

11   February request didn't.

12             But there is no requirement under the

13   statute, Your Honor, that someone cite the MVRA.

14   What triggers the MVRA is asking for documents

15   covered by the MVRA.  There is no special

16   requirement.

17             It's also interesting that they suggest

18   that these are only made, quote, "under New Mexico

19   law."  Again, we don't really know what that means.

20   There is one database.  Again, there is one

21   database.  There is one way to request those.  Even

22   under the MVRA, they require that you use that same

23   application; that you fill out the same affidavit.

24   And that's part of the problem.

25             The other thing I want to address is this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  argument that they don't actually have records at

2  all.  So just to really tease out what this means,

3  remember we've said there is a SERVIS database.  So

4  they say, Well, the MVRA talks about records.  Well,

5  we don't have any records.  We just have raw data

6  existing on the database.  So therefore, we have

7  nothing to produce under the MVRA.  That argument

8  was made in response to our request, and it was made

9  in the briefing, which is intriguing.  Because if a

10  state could do that -- I mean, every state does keep

11  their information in a database.  If a state could

12  do that, you would never have to answer an MVRA

13  request, you would just say:  Gosh, we don't really

14  have records or reports for new registrations from

15  December to June.  We would have to go pull that

16  from our database and that makes us do work.

17         But what we learned is that the Secretary

18  of State does exactly that.  They keep everything in

19  the database, and they have a couple algorithms

20  drafted by their -- you know smarter people than any

21  of us, probably -- which when somebody sitting at a

22  terminal types in the criteria for the request, that

23  algorithm goes and pulls the data from the database,

24  and then, that's the quote "report" that they send

25  on.  So every response that they make under the MVRA

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    ends up pulling raw data into a report.

2            We also learned that if somebody makes a

3    request that they don't already have an algorithm

4    set up for through their software, they just go and

5    write that algorithm.  And they go pull the data.

6    They just have to specially code it to be able to

7    pull the data off.

8            So that's all that ever happens in New

9    Mexico.  It's all that ever happens in other states,

10   is that these databases exist.  And usually, the

11   Secretary of State officials -- but in some states

12   it could be county clerks -- can go in and type in

13   information and pull that out.  That's how the MVRA

14   is complied with everywhere across the country.

15           New Mexico doesn't even need to have its

16   own state statutory provisions making it available.

17   But it does, which is a separate question which we

18   can get to in just a second.

19           So that's basically our MVRA argument.

20   The one thing I want to leave with, which is sort of

21   a segue to the First Amendment point, is this idea

22   that, in New Mexico -- and in a few other states,

23   too -- they've tied access to use.  So the MVRA

24   says:  You get access to certain things.  And we

25   know that the MVRA has four purposes, and we know

SANTA FE OFFICE                                                     MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                         1-800-669-9492
                                                                   e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

```
1    that this advances those purposes.
2            If a state says:  I'm going to give you
3    access, but I need you to make me some promises; I
4    need you to -- let's just say not criticize the
5    Secretary of State with the data, that's not what we
6    have here, I understand.  But you're going to have
7    to give up some rights, some speech rights, before
8    you get the data.  That's a problem.  That's a
9    problem.
10           And that has to be -- aside from being a
11   First Amendment issue, it has to be scrutinized
12   under the MVRA.  Because Congress did not set up a
13   regime.  It didn't say:  States, you've got
14   authority to go allow whatever access you want.  It
15   says:  This information shall be provided.  And if
16   you keep requesters from doing the very things with
17   the data that the data exists for, you are
18   undermining the purpose of the MVRA.
19           The MVRA does not just exist so that
20   Public Interest Law Foundation -- the plaintiff in a
21   bunch of these cases that will appear on Westlaw --
22   so that their smart gnomes can sit at a computer and
23   do all the research and then issue a report.  I
24   mean, they exist to allow the public to do this.
25           It's lucky that we have a Public Interest
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Law foundation.  It's lucky that we have Voter
 2    Reference Foundation.  But they don't have to exist.
 3              And so, what Congress intended to do was
 4    to let citizens have a role in this, and not just
 5    rely on the Secretary of State saying:  Trust me,
 6    here's my policy.  I always update it.  I'm doing
 7    it.  You just have to take from it there and trust
 8    that I'm doing it.  Here's my manual.  We're
 9    supposed to follow this in our office.  That is not
10    what the MVRA sets up.  And the use restrictions
11    here, which keep us from sharing it with everybody
12    who agrees to follow New Mexico law, gets directly
13    in the way of what Congress intended.
14              So, Your Honor, you don't have to find
15    that there is preemption.  We have two different
16    counts.  We have a violation count that they failed
17    to give it to us, even when we said:  Until we hear
18    from Judge Browning, we're not going to do anything,
19    just let us have it.  They still said no.  So
20    they've got violation problems.
21              But there is also the preemption issue.
22    Those are in different counts and they have to be
23    analyzed separately.
24              So I know I've said a lot.  I've sort of
25    jumped around.  But I could take questions, if you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    have some, Your Honor.

2            THE COURT:  Well, let me hear from the

3    State on the MVRA, and then we'll come back and pick

4    up another issue.

5            Ms. Schremmer.

6            Thank you, Mr. Greim.

7            If I adopt your narrower interpretation of

8    the statute than Mr. Greim, what is it that they

9    get?

10           MS. SCHREMMER:  Well, Your Honor, frankly,

11   I am not sure.  And this gets back to the comment

12   that sparked such interest.

13           THE COURT:  Isn't that a weakness, though,

14   of your position?  Because there has got to be

15   something, or otherwise Congress wouldn't have put

16   in that language.  So if all that you have is this

17   voter list, then it seems to me that that undercuts

18   your position.

19           MS. SCHREMMER:  No, Your Honor.  I think

20   it's a weakness with the requests.  The requests

21   were never aimed at MVRA information.

22           THE COURT:  Well, put aside the requests.

23   Tell me what you have that fits the definition of

24   the statute.

25           MS. SCHREMMER:  Right.  And frankly, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  don't know, because we have not had the opportunity
 2  to analyze serious requests that are matched to
 3  programs and activities.
 4          THE COURT:  Well, it concerns me that the
 5  State doesn't know what it has.  It says:  Here's
 6  this little definition, we're going to take this
 7  narrow definition, but we don't know if we have
 8  anything that fits that.
 9          MS. SCHREMMER:  And if I could, Your
10  Honor, I apologize, I don't work in the Secretary of
11  State's Office.  I know there will be records that
12  are responsive.  I don't think the Secretary has had
13  a fair opportunity --
14          THE COURT:  I think you probably need to
15  tell me.  You probably need to get over to the
16  Secretary of State's Office, and say:  Here's this
17  definition.  We think the judge is buying our
18  definition of it.  What do you have that's there?
19          MS. SCHREMMER:  So examples would be
20  handbooks or manuals that are given to poll
21  watchers.  There would be policies and procedures
22  internally for how this list is maintained.  There
23  would --
24          THE COURT:  I would assume, also -- and
25  you can correct me -- but it sounds like, from time
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to time, the Secretary of State runs some
 2   programs -- Mr. Greim says algorithms, and you may
 3   agree with that -- they run some programs and
 4   produce some reports about how well they're doing.
 5   So it seems to me that those are the kind of things,
 6   in my mind, that Congress says --
 7            MS. SCHREMMER:  Right.
 8            THE COURT:  -- the public gets.
 9            MS. SCHREMMER:  And other items that I
10   know were testified to in the Secretary's 30(b)(6)
11   deposition where -- you know, reports they received
12   from county officials, in terms of citizens who have
13   died, citizens who have moved.
14            And so there are internal programs meant
15   to make sure that these items are maintained.  And
16   I'm sure there are programs as well, in terms of
17   encouraging voter participation.  So there will be
18   various manuals and reports and policies for how
19   these things are maintained.
20            I guess my point in my earlier statement
21   was that we need an actual request that we could
22   analyze and give a response to.
23            THE COURT:  Well, maybe.  But I've got to
24   interpret -- y'all have agreed that I'm interpreting
25   a statute here, and you need a legal ruling on it.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                                1-800-669-9492
              BEAN                                      e-mail: info@litsupport.com
              &ASSOCIATES, Inc.
              PROFESSIONAL COURT
              REPORTING SERVICE

1    I guess I'd really like to have -- you know, you can

2    quibble about the request and you can do that all

3    day long.  But in the end, I've got to interpret a

4    statute.  And if you tell me:  Here's our

5    definition, and there is no documents that fit it,

6    and they really are all on the program that they're

7    trying to seek, then that's going to trouble me to

8    interpret something that would have no meaning.

9              MS. SCHREMMER:  Well, I --

10             THE COURT:  I think it's your obligation

11   to tell me what documents -- even if their request

12   is faulty, I think you've got to tell me what

13   documents the Secretary of State thinks falls within

14   the narrow definition, and would produce if

15   requested.

16             MS. SCHREMMER:  Sure.  And I understand

17   Your Honor needs to interpret the statute.  But it

18   needs to be interpreted, respectfully, with respect

19   to the actual requests in this case.  So something

20   that might help us both is to just look at the

21   requests.

22             THE COURT:  Well, I'm telling you what you

23   need to do.

24             MS. SCHREMMER:  Okay.  So --

25             THE COURT:  You need to do it.  And if you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   want to quibble over the requests, that's fine.  But
2   I need something from you telling me what falls
3   within it, and then we can talk about the request,
4   whether it's made or anything like that.  But I need
5   this to interpret the statute.  If you want me to
6   buy your definition -- which I'm leaning toward --
7   you've got to give it content.  And I'm not going to
8   probably write an opinion that says:  Yeah, I agree
9   with the Secretary of State's, and the AG's position
10  on this, but I have no idea if there is any
11  documents that fit this.  I'm just probably not
12  going to write that opinion.
13            MS. SCHREMMER:  I understand, Your Honor,
14  Would you accept supplemental submissions on this
15  topic?
16            THE COURT:  Yes, a letter, or a short
17  brief or something.  If I'm going to buy your
18  interpretation, you've got to give me content:  This
19  is what we understand we do have an obligation under
20  the MVRA.
21            If you go back and you say:  No, we don't
22  think there is any, then I'm going to probably start
23  looking at their definition, because if it's all in
24  a database, then they may be right, if that's the
25  universe.  But I guess I'm thinking that there may
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    be some materials that you have that fit your

2    definition, which I'm leaning toward.

3              MS. SCHREMMER:  Sure.  And I'm not trying

4    to be argumentative.  I want to make sure that

5    whatever we provide is helpful.  Are you looking for

6    just the open universe of anything that might be

7    responsive, or are you looking for, within the

8    requests actually given to us by VRF, here is what

9    we think falls into the MVRA?

10             THE COURT:  What I'm talking about is put

11   aside their request.

12             MS. SCHREMMER:  Okay.

13             THE COURT:  You can quibble with them, and

14   you can quibble with me later about the request.

15   But I need to know what it is that -- you've got a

16   definition that I'm inclined to agree with.  All

17   right.  What falls in that?  Is there really

18   documents that fall within that?

19             If there is not, if it's all in a

20   database, then I'm going to start relooking at what

21   the plaintiff is proposing.  But I'm inclined to

22   think that there are things that fit the definition

23   of:  How do you implement this, and then probably

24   algorithms, generate reports to test that you're

25   doing it correctly, those sort of that things.

SANTA FE OFFICE                                                                              MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                  Albuquerque, NM 87102
(505) 989-4949                                                                                      (505) 843-9494
FAX (505) 843-9492                                                                        FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1           I'd be as exhaustive as possible.  What is

2    it -- you know, don't just give me examples, really

3    bottom out over there, what it is that they do to

4    comply with the MVRA.

5           MS. SCHREMMER:  Certainly.

6           THE COURT:  So that we know that there is

7    a universe of documents that are there.

8           MS. SCHREMMER:  Yes, Your Honor.  We will

9    make sure to get that to you.

10          THE COURT:  Anything else you want to say

11   in response to Mr. Greim?

12          MS. SCHREMMER:  Yes.  I'll keep it short.

13   And certainly I want to make sure we get Your Honor

14   what he needs in terms of what documents the

15   Secretary would have under the MVRA.

16          I do want to clarify, though, that VRF, at

17   least via Local Labs, has received voter data

18   previously, and but for anticipated use of posting

19   it on the internet, could have received it again,

20   whether that be under the MVRA or under New Mexico

21   state law.

22          So I don't want there to be this

23   impression that there is some game of cat-and-mouse:

24   Until you ask us the exact right question, we're not

25   going to give you anything.  The driving force

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                        1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE                                   e-mail: info@litsupport.com

1    behind this entire dispute has always been the

2    publication online.  So it's not just about the

3    access right under the MVRA.

4             THE COURT:  I would assume that under the

5    MVRA, there is a set of documents that you tell me

6    that are part of -- concerning the implementation of

7    the voter program, they can take that information

8    and post it on the internet, that's not restricted.

9             MS. SCHREMMER:  I would disagree, Your

10   Honor, and other courts have disagreed.  Contrary to

11   the statement that you would be the first court in

12   the country to make such a finding, there are

13   several courts who have noted that Congress did not

14   intend, quote, "to erode federal and state law

15   protecting against disclosure of private personal

16   information by enacting the MVRA."

17            THE COURT:  Well, but see, I do think

18   you're playing a little cat-and-mouse game here.  If

19   we're not talking about the voter list, we're

20   talking about the documents that you have

21   implementing the MVRA --

22            MS. SCHREMMER:  I misunderstood, Your

23   Honor.

24            THE COURT:  -- I think they can take that

25   and they can run with it, and print it, put it on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  the internet, and everything like that, because

2  that, then, is controlled by federal law.

3          MS. SCHREMMER:  Yes.  I misunderstood.  I

4  thought we were talking about the voter data, which

5  we would still contend, even if there is some MVRA

6  document that contained incidentally identifiable

7  voter data, we would maintain you still cannot use

8  that in the way that VRF wants to.  Because, again,

9  the MVRA statute allows for public inspection.  It

10 does not give a right of publication of everybody's

11 private information.

12         THE COURT:  Okay.

13         MS. SCHREMMER:  Thank you, Your Honor.

14         THE COURT:  Anything else?

15         MS. SCHREMMER:  No, Your Honor.

16         THE COURT:  All right.  Give you the last

17 word on the MVRA, Mr. Greim.

18         MR. GREIM:  Sure.  Thank you, Your Honor.

19         I wanted to clarify one thing.  When I

20 mentioned algorithms, I was listening to your

21 questions of counsel.  And I want to be really clear

22 what the record says.  Our motion for summary

23 judgment lays this out.  The algorithms are not

24 special programs the Secretary of State implements

25 to make sure the database is okay.  The algorithms

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    are sort of like commands that pull data from the

2    database when somebody fills out these affidavits we

3    talked about a year ago, and says:  I would like

4    everyone who is registered in Santa Fe from this

5    date to this date.  There is an algorithm that pulls

6    that data off from the SERVIS database.

7            So there is no evidence in the record, and

8    I don't think there is such a thing as some sort of

9    background algorithm the Secretary of State runs to

10   spot check things.  I mean, there is not a thing

11   about that in the record, after many depositions.

12           But that kind of goes back to our point.

13   In every other state what they're saying is:  The

14   state database is that record.  And it's not just

15   the list.  If you go out for a certain person -- you

16   have to imagine columns, column N is going to be

17   this record was last edited on such and such date.

18   What was the edit?  We changed the address.  So it's

19   all right there.

20           And the point that all these other courts

21   make is, if it's all records concerning the

22   implementation of these programs, that is the

23   database.

24           So I know I'm repeating myself.  I just

25   wanted to mention that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            And the other thing I want to point out:

 2    Counsel started to answer a question -- there was

 3    kind of maybe a miscommunication -- she was trying

 4    to say that there are cases that say that:  If you

 5    erode these privacy rights, you know, the MVRA is

 6    not intended to do that, we're not intending to put

 7    private personal information out there.

 8            But we discuss this in our briefing.  If

 9    you look at those cases, what they have done is,

10    they have allowed the voter registration data to be

11    released.  But they fought about whether the Social

12    Security number that those particular states would

13    allow to go out the door, or the birthdate, the full

14    birthdate of someone they would allow to go out the

15    door should be released.  And what they've done is

16    they looked at other federal statutes that are more

17    specific, and say:  We know about the MVRA, but you

18    can't send out driver's license information like

19    their birthday.

20            And so that's what those cases establish.

21    The exception proves the rule.  The exception proves

22    the rule.  It's other federal statutes that are

23    raising the privacy concerns, and that are culling

24    out parts of what those states have otherwise

25    released.

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1          We don't have that here, though, because

2    they don't release Social Security numbers.  We

3    don't want them.  They don't release the full

4    birthdate.  We don't want that.  We just have the

5    birth year.

6          And I think I've said all I can say.

7          THE COURT:  All right.  Well, I'll look

8    for this material you're going to tell me.  And be

9    exhaustive.  I mean, you've really got to sit down,

10   I think, with the Secretary of State and say:  The

11   judge is leaning toward our definition, but he wants

12   to know what's in there.  If there is nothing in

13   there, he's probably going to start relooking at the

14   plaintiffs' position, and their interpretation.

15   Because if there is nothing there, I probably am not

16   going to feel comfortable saying Congress passes a

17   statute and says you get this information, and there

18   is nothing in the box.  So I'm inclined to go with

19   you on this one, but I'm going to need some help.

20   So be exhaustive on it.

21          MS. SCHREMMER:  Understood.  Thank you.

22          THE COURT:  So where do y'all want to go

23   next?  What's the next issue?  And I'll go to the

24   defendants here, because I think you filed your

25   motion first.  Which issue would you like to cover?


SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110              201 Third NW, Suite 1630
Santa Fe, NM 87501                        Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                          FAX (505) 843-9492
                                                      1-800-669-9492
                                          e-mail: info@litsupport.com

1          MS. SCHREMMER:  I think we can probably

2    deal with most of the First Amendment kind of in one

3    bucket, if that's all right with Your Honor.

4          THE COURT:  All right.  Well, let me say

5    this on the First Amendment.  And you can correct me

6    if I'm wrong.  But my memory is I pretty much said

7    in the preliminary injunction, I didn't see a First

8    Amendment right of access to this information.  If

9    somebody wants to tell me that I was more nuanced or

10   something like that, but I pretty much have said

11   that I don't see a First Amendment right of access

12   to this information.

13         Now, if it's being disclosed, it can't be

14   disclosed in a discriminatory way, and that's the

15   viewpoint discrimination.  But just as a matter of

16   access, is that the narrow issue you want to take,

17   or do you want take a broader First Amendment issue

18   on it?

19         MS. SCHREMMER:  No, I think we're on the

20   same page, Your Honor.

21         THE COURT:  Okay.  So do you want to go

22   ahead, Ms. Schremmer?

23         MS. SCHREMMER:  Thank you.

24         Both Your Honor and the plaintiff have

25   noted that there is no First Amendment right of



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

44

1    access.  That was another point that was well

2    clarified through the summary judgment briefing, is

3    the concession from VRF that the First Amendment

4    does not generate any right of access to this

5    information.  Their right of access is claimed

6    either through the MVRA or the state law,

7    exclusively.

8              And so that just leaves the question as to

9    whether, despite some First Amendment right of

10   access, VRF has some First Amendment right to use

11   that attaches afterwards.  And the answer to that is

12   no.

13             What we have here is, as Your Honor just

14   mentioned, the Government has voluntarily granted a

15   conditional right of access to information that the

16   First Amendment does not require the Government to

17   produce.

18             What VRF is asking the Court to do, then,

19   is say that, despite Government conditioning this

20   right of access, we can ignore those conditions on

21   some First Amendment ground.

22             So where New Mexico allows, under state

23   law, the inspection or copying of voter rolls on the

24   condition that you not publicly disseminate or share

25   that information, VRF wants to say, then, despite

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that condition and that agreement in obtaining that

2    information from the State, the First Amendment then

3    allows them to publish that information anyways.

4    And that is not the law.  It can't be the law.  And

5    they have cited no authority to suggest that is the

6    law.

7            Instead, the law is, as you have said,

8    that as long as the conditions placed are not

9    discriminatory, there is no First Amendment issue.

10   Of course, the Government cannot voluntarily and

11   conditionally grant access on some discriminatory

12   basis.

13           But that is not what has occurred here.

14   The Secretary of State routine provides this

15   information to all types of entities with all types

16   of viewpoints and missions.

17           The thing that sets VRF apart is what it

18   has done with the data, which is to post it

19   wholesale on the internet.  And the Secretary has

20   long maintained -- there was testimony back at the

21   PI hearing on this very topic -- that if VRF would

22   just anonymize the data, there would be no issue.

23   If it wanted to post aggregate analyses of the data,

24   there would be no issue.  If it wanted to make

25   statements critical of the Secretary based on its

SANTA FE OFFICE                                                                           MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                              (505) 843-9494
FAX (505) 843-9492                                                                     FAX (505) 843-9492
                                                                                          1-800-669-9492
                                                                              e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    inspection of the data, there would be no issue.

2              The only issue is the wholesale

3    publication of the information itself.

4              And what VRF is asking the Court to do

5    with the law would be equivalent to the military

6    opening White Sands Missile Range and telling you:

7    You can drive down this highway to the Trinity Site,

8    but don't take pictures for the next five miles.

9    And you say:  Yes, sir, and then you do it anyway,

10   and you post it online because the First Amendment

11   allows you to speak about government behavior.  That

12   is not what the First Amendment allows here.

13             THE COURT:  Here's what concerns me about

14   the State's position is that, if they are willing to

15   say:  We will not disclose this material unless this

16   Court tells them they can, it seems to me, when you

17   deny the request to this group, you run into the

18   viewpoint discrimination.

19             MS. SCHREMMER:  I think that --

20             THE COURT:  Because everybody else is

21   promising not to do that.  They promise not to do

22   it.  But you deny them the documents because you're

23   fearful they'll do it anyway.

24             MS. SCHREMMER:  I think it's a little more

25   nuanced than that, Your Honor.  Respectfully, what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   they promised was:  We won't publish this unless we

2   win our PI motion, which was only that the State

3   could not prosecute the behavior.  There was no

4   condition --

5            THE COURT:  But that was the documents

6   they already had.  Now, we're talking about a

7   request.

8            MS. SCHREMMER:  Yes.

9            THE COURT:  And that's the thing that

10  troubles me, is that they are promising to do what

11  other groups are promising to do, and not publish

12  it, and you're saying no.

13           MS. SCHREMMER:  Well, and the full text of

14  the request -- and I'll see if I can find the

15  citation to the exact exhibit -- was that we are

16  requesting this information for two projects.  One

17  is to post online an analysis and not the data

18  itself.  And we have no issue with that.

19           The other -- and this is what the request

20  said -- is to post this data online, which we will

21  only do if we have an order from the court on our

22  preliminary injunction.

23           Now, as we said in our denial to that

24  letter, we will abide by whatever the Court's final

25  determination is.  But we were not comfortable at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   the preliminary stage.

 2           THE COURT:  But I denied their request.

 3           MS. SCHREMMER:  I'm sorry?

 4           THE COURT:  But I mean, on the PI that was

 5   there to force you to produce information, I denied

 6   their request.  So I didn't force the Secretary of

 7   State to produce any documents.

 8           MS. SCHREMMER:  Right.

 9           THE COURT:  So for you not to give them

10   the documents seems to me that you're just singling

11   out this group because they're not going to publish

12   it either.  They're making the same promises

13   everybody else is.

14           MS. SCHREMMER:  Their request was

15   submitted before the PI order.  Their request came

16   in on May 27.

17           THE COURT:  I understand.  But then I

18   denied their PI request.

19           MS. SCHREMMER:  I guess I'm not following.

20   The PI was granted as to New Mexico's ability to

21   prosecute the publication of information online.

22           THE COURT:  But the documents they already

23   had, that they'd gotten from Local Labs.

24           But if I understand what they're

25   requesting is they requested more data than they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    had, and that was turned down.

2          And I also turned down their request to

3    force you to give them that information.  So the

4    Secretary of State is not giving them information

5    when they're making the same promise everybody else

6    is.

7          MS. SCHREMMER:  I guess, I would

8    respectfully disagree that they're making the same

9    promise as everybody else.  They specifically

10   requested additional information for the purpose of

11   posting it online.  And their response was:  Because

12   you want to post this online, and because we believe

13   that to be a violation of New Mexico law --

14         THE COURT:  Well, what if Local Labs would

15   really like to publish it mentally, subjectively,

16   but you'd give it to them.

17         MS. SCHREMMER:  Right.  And then if they

18   published it after the fact --

19         THE COURT:  Then you'd do something about

20   it.

21         MS. SCHREMMER:  Right.  And that is what

22   happened.

23         THE COURT:  But that's no different than

24   this group.

25         MS. SCHREMMER:  Except that we had actual

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    knowledge of the intent to violate state law.  Yes,
 2    you're right that we'd take it --
 3              THE COURT:  But I guess I'm troubled by
 4    that.  Because if they're saying:  We're not going
 5    to do anything if the Court denies our PI -- which I
 6    did -- I guess I don't understand why you're
 7    singling them out.
 8              MS. SCHREMMER:  And maybe I'm
 9    misunderstanding.  The promise that was made was
10    that we won't publish this unless we get relief from
11    the Court, in terms of your ability to prosecute us.
12    That was how I read this promise that was made.
13    Unless you are enjoined from prosecuting us, we
14    won't publish it.  Not:  Unless we get affirmative
15    permission, by way of a final judgment that tells us
16    this doesn't violate the law.
17              THE COURT:  Well, then, that's not what
18    their request said.  It didn't talk about final
19    judgments or anything like that.
20              MS. SCHREMMER:  No, it didn't.  And that
21    was part of the problem.  We believe that, in the
22    middle of this litigation it was more proper to wait
23    for a final ruling.
24              THE COURT:  I just think you have problems
25    here.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. SCHREMMER:  Understood.

2          THE COURT:  I mean, I just think they're

3    making the same assurances everybody else is making.

4    And you're probably going to have to go to trial on

5    that issue.  If you want a bench trial, we can have

6    a bench trial.  But I do think that you've singled

7    them out, when they make the same promise as

8    everybody else.  And I think it's because it's what

9    they want to do with it, not what they're going to

10   do.  They made promises, just like everybody else,

11   that they won't do it.

12         MS. SCHREMMER:  Well, and I --

13         THE COURT:  And I don't think you can deny

14   a group, which you don't like, when they're doing

15   the same thing everybody else is.  That's my sort of

16   simplistic analysis of this.

17         MS. SCHREMMER:  Well, we disagree that

18   they were doing the same thing as everybody else.

19         But even taking Your Honor's view, if

20   there was some discrimination between VRF and

21   everybody else, it was not on the basis of

22   viewpoint.  It was on the basis of the publication

23   online.

24         And they have admitted as much in their

25   response.  What they're asking this Court to do is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to deem publication online as a constitutionally

2    protected activity.

3              THE COURT:  I know what they're saying,

4    but I'm not going there.  I mean, again, I think you

5    don't like their views.

6              MS. SCHREMMER:  What views are those?

7              THE COURT:  The documents that they are

8    entitled to, even if they say they're not going to

9    act on their views.

10             MS. SCHREMMER:  And I'm not sure what

11   views those would be.  The Secretary has provided --

12             THE COURT:  We know what their views are.

13   They want to get this data and publish it on the

14   internet.  And that's what you don't like.  And they

15   want to do it to try to show problems, either in

16   this Secretary of State or across the nation.  We

17   know what their views are.

18             MS. SCHREMMER:  But the Secretary has

19   provided voter data to organizations with the exact

20   same platform when it comes to how elections are

21   run, or comes to being critical of the Secretary's

22   Office.  And that's in the record and in the

23   briefing.  And so it's not an issue of being

24   critical of the Secretary or critical of elections.

25   That has not stopped the Secretary from giving this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    data to other organizations.

2            The difference is the publication of the

3    individual voter data online.  And the Secretary has

4    always maintained, and maintains now --

5            THE COURT:  I understand that.

6            MS. SCHREMMER:  -- it's just an analysis.

7            THE COURT:  I understand that.

8            MS. SCHREMMER:  Okay.

9            THE COURT:  But they are not going to

10   publish it.

11           MS. SCHREMMER:  And if that's true, if Mr.

12   Greim stands up here and tells us they will not,

13   under any conditions, publish identifiable voter

14   data online, that's a different case.

15           THE COURT:  Well, I mean, if the law

16   became that, you know, they could publish it, then

17   they would publish it.  But they're not going to

18   publish it as long as the courts or you are saying

19   they can't publish it.  But I think they're being

20   punished because of what they want to do.

21           MS. SCHREMMER:  Which is to publish

22   individual voter data online.

23           THE COURT:  Sure.  That's what they want

24   to do.

25           MS. SCHREMMER:  But that's not a protected

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    or discriminatory basis.

2              THE COURT:  They get to think that.

3              MS. SCHREMMER:  Sure.

4              THE COURT:  And they get to advocate for

5    it.

6              MS. SCHREMMER:  Absolutely.

7              THE COURT:  And you can't say:  Well, I

8    don't like your thought, so I'm not giving you the

9    data.

10             MS. SCHREMMER:  And I completely agree

11   with that.  If they wanted to post anonymized or

12   aggregated analysis, or if they wanted to post

13   statements critical -- a critical summary of their

14   review, that would not be an issue.  That would be

15   no basis for which to deny them access.

16             THE COURT:  But you don't get to decide

17   what they think.

18             MS. SCHREMMER:  Right.

19             THE COURT:  They can think the worst

20   things in the world.

21             MS. SCHREMMER:  Absolutely.

22             THE COURT:  But if they promise you

23   they're not going to publish it, then I don't see

24   how they're different than anybody else.

25             MS. SCHREMMER:  I guess maybe that's what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1    it comes down to is how we interpret this promise.

2    I don't think there has been this kind of

3    unequivocal promise.  And maybe Mr. Greim can

4    clarify that point.  If the promise is:  We're not

5    going to post this online until we have a final

6    judgment in this litigation that says yes or no it's

7    legal or not, that's a very different circumstance

8    than our understanding.

9            THE COURT:  Okay.  Well --

10           MS. SCHREMMER:  Thank you.

11           THE COURT:  All right.  Thank you, Ms.

12   Schremmer.

13           Mr. Greim.

14           MR. GREIM:  Your Honor, respectfully this

15   is the very definition of cat and mouse.

16           I pulled up the letter.  I began to doubt

17   myself for a second, so I pulled up Exhibit K.  This

18   is the letter we talked about a year ago.  And we

19   mention the two projects.  And we say:  We will only

20   publish the personal information of voters online if

21   VRF is granted relief in -- and then we cited this

22   case -- or in any other legal proceeding.  That's

23   what we said.

24           And then we said:  For our second project

25   where it is anonymous, we are going to publish our

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                         1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                        e-mail: info@litsupport.com

1    analysis, but we're definitely not going to disclose

2    the personal information of any voter data.

3              So that didn't even depend on what

4    happened in the litigation, because part of what we

5    do doesn't require posting individual voters'

6    information.  That's part of what we do.  So that

7    was very clear.

8              And interestingly, on that second piece,

9    which didn't even depend on what happened in the

10   court, they still rejected it.

11             Your Honor, I've said multiple times,

12   including in the stay hearing -- and this is all

13   laid out in our briefing -- that we would not

14   publish this information without an order of this

15   Court.  There has been no question.  And even the

16   reasons why they couldn't trust that promise, those

17   have even changed over time.

18             What we heard today is not the reason they

19   originally gave.  The first reason they gave -- you

20   might recall this is -- well, we don't know what he

21   means by personal information of a voter.  Maybe he

22   doesn't think their address or their name is really

23   personal information.  That was too vague.  We

24   couldn't understand that.

25             But now they've discarded that because I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   think they eventually couldn't keep claiming that,

2   and they say: well, we weren't sure what in the

3   proceeding it was going to take for him to do it.

4   Maybe they get maybe some win on one issue, and then

5   they disclose it.

6         And, Your Honor, I don't think it's a good

7   faith position.  I don't want to belabor it, because

8   there is more to say about other issues.  But I

9   think this is significant.  Because, for example,

10  giving the data to a Republican party, they think

11  that proves there is no viewpoint discrimination.

12        Our position here is identified with

13  conservatives, I think, and Republicans.  But not

14  all Republicans agree with it.  I don't think you

15  get a "get out of jail free card" for doing what you

16  did to VRF by giving it to the Republican Party,

17  because they have candidates running against the

18  Secretary of State.  I just don't think that lines

19  up.

20        I want to -- I also want to point out --

21  and there is evidence of this in the record -- the

22  reason -- the initial reason the Secretary of State

23  gave for being upset with this is the threat of

24  misinformation.  That's what Dylan Lange said to the

25  ProPublica reporter.  That's what the Secretary of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   State has hit over and over again.  We've got all

2   the citations in the record.  They're all in the

3   summary judgment case.

4           But I want to go to the question where I

5   think the Court is prepared to decide against us,

6   based on the legal analysis.  And I want to hit this

7   issue.  First of all, we really have three different

8   reasons the First Amendment should apply to a use

9   restriction.  We have three different reasons.

10          Okay.  The very first point is this:  In

11  order to state a First Amendment claim on a

12  restriction regarding use, you don't have to show

13  that your right to access the information also came

14  from the First Amendment.  You don't have to

15  trace -- you don't have to identify a First

16  Amendment right of access.

17          Now, what we have said is:  In this case

18  we are resting on the right of access we get under

19  the MVRA and under New Mexico law, which separately

20  makes it available.  So we have said that.

21          Now, I'm not saying there is no First

22  Amendment right to access.  That's a harder question

23  that we don't want to get into here.  We haven't

24  disclaimed that altogether.  That's not our

25  position.  But I think for purposes of your analysis

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                      e-mail: info@litsupport.com

1    here, for your order, our right of access arises

2    from the New Mexico Code and from the MVRA, which

3    makes it available for the very reasons that we want

4    to use it.  So we start with that.

5          Now, once you have a right to access the

6    information, then we pivot, and we say:  Okay, what

7    are the restrictions on use and on speech with this

8    data that you have a right to engage in?  So that's

9    the first way we get to the First Amendment, okay?

10         The second way is we look at what this

11   data is, okay?  These are not pictures of White

12   Sands Missile Range.  That's not what this is.

13         Remember what the defendants have

14   admitted.  It's important.  They've said that this

15   list is a powerful tool -- I'm quoting -- a powerful

16   tool for conducting political speech.  They've said

17   the ban on sharing the voter file is a -- and I

18   quote this -- "a direct regulation on speech."

19   Those are admissions in the briefing of the

20   defendants.

21         And so, once you have that, we are in

22   Meyer versus Grant territory.  That's the case that

23   started off in Colorado and got to the Supreme

24   Court.  Colorado's initiative petition process went

25   to the Supreme Court a whole lot about 20 years ago.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    And what those cases are about are restrictions on

2    the petition circulators.  Now, what does that have

3    to do with the list here?  Here's what it has to do:

4    So there were no content-based restrictions in Meyer

5    versus Grant.  What Colorado said was:  Look, we

6    don't have to give you the initiative petition,

7    right, the First Amendment doesn't require that.

8    But we've done that, we've given you this benefit.

9    Or really the citizens kept it for themselves.

10           All right.  Now, here's how this process

11   is going to work:  You've got to go gather

12   signatures on petitions, but you can't pay the

13   people who gather signatures.  Colorado said, you

14   know, we're not even really regulating speech.  This

15   is just a payment issue.  That's all we're doing.

16   And by the way, remember, we didn't have to even let

17   you do initiative petitions.  So this is really a

18   government-provided benefit.  But the Supreme Court

19   said no.  Once you are talking about the process of

20   speech, which is gathering signatures, you can't

21   unduly burden that process.  And again, this isn't

22   commercial speech.  This is political speech.

23           In Meyer versus Grant they wanted to

24   change trucking regulations in Colorado.  Okay.

25   That's what we have here.  So the very first point

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                                         Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  we have, Your Honor, is that the use restrictions

2  heavily burden -- in fact, they completely take away

3  the avenue of speech that VRF is engaged in, which

4  is this crowd-sourcing method.

5          And I understand the Court believes the

6  First Amendment may not be implicated.  But under

7  Meyer versus Grant, we don't have to start with

8  viewpoint discrimination.  Now, we'll get there;

9  that's down the road.  We don't have to start with

10  that.  That's the first point.

11          The second point is something called the

12  unconditional -- Unconstitutional Conditions

13  Doctrine.  Now, you'll notice -- what are the words

14  that counsel used a few minutes ago?  She said:  We

15  give a statutory right to access, but it's a

16  conditional right to access.  Conditional right,

17  okay?  It's a granting of a government benefit

18  that's access to the information.  But we're

19  attaching strings.

20          Now, the Unconstitutional Conditions

21  Doctrine comes into play here, and not only where

22  it's a content-based restriction.  I'm going to come

23  to that in a second, too.

24          But takings cases, for example, there

25  is -- every right in the bill of rights, basically,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   can be triggered under this Unconstitutional

 2   Conditions Doctrine.  In takings cases it's Fifth

 3   Amendment, Eminent Domain.  And in those cases

 4   someone says:  Government, I want a benefit from

 5   you.  I want you to approve a permit for me to do

 6   something special on my land here.  And the

 7   Government says:  Okay, but you have to promise to

 8   cede back, you know, a right-of-way for a park or

 9   something like that.  Well, that gets -- I mean,

10   that's a different area of law.  Those are

11   unconstitutional conditions cases.

12              Those also exist here.  In fact, the Court

13   cited a case like that, the Lanphere case from

14   Colorado, in the preliminary injunction decision.

15   That's a case where Colorado granted access to

16   criminal charging records.  But it said:  You can

17   have them, but you can't then turn around and use

18   them for purposes of commercial solicitations.

19              Now, the court there said:  Look, there is

20   no Sixth Amendment right of access to these; there

21   is no First Amendment right of access to these.

22   However, we don't end this.  Instead, this is

23   impinging on commercial speech.  So we are going to

24   apply the commercial speech test under the four-part

25   test from -- I'm going to get it wrong here -- it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   not Pacific Gas -- but the four-part commercial

2   speech test.  And we're going to decide whether

3   Colorado can stop people who get this criminal

4   charging data from doing commercial solicitations

5   with it.  And they said, ultimately, it failed.

6   That's just intermediate scrutiny.  It failed

7   intermediate scrutiny.  But the key point here is

8   that it continued on and applied the First Amendment

9   test.

10          Sorrell versus IMS Health.  That's not

11  just a Tenth Circuit case; that's a Supreme Court

12  case.  That's a similar deal.  It's another

13  commercial speech case.  Again, that dealt with

14  data, it dealt with private companies getting

15  prescription data from pharmacies and then turning

16  around and using it to go market to the doctors who

17  prescribe things.  Again, it's the same kind of

18  thing here, where we've got data that's being

19  extracted, and then there is a limitation on use.

20          The court there didn't say:  Well, look,

21  we don't have to require that pharmacies make this

22  data available so the for-profit solicitors can go

23  buy it and then go solicit doctors.  But we do.  And

24  is it fair, then, to say that it can't be used for

25  commercial solicitation?  Again, they applied
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    scrutiny there.  There, they applied stricter

2    scrutiny.  But they said no, it fails under the

3    First Amendment.

4              So look, I won't go much deeper there.

5    But the point is that deciding that there is no

6    First Amendment right to get so the data in the

7    first place does not end the analysis, it just

8    begins the analysis.  And you don't have to find a

9    content-based or even a viewpoint-based

10   discrimination.  You really need to, instead, find

11   is this list central?  Is it really important for

12   political purposes and are they banning speech?  And

13   if so, then you apply whatever level of scrutiny

14   applies.  And we think it's strict.  But that's

15   later.

16             Okay.  One more point I want to raise:

17   So, so far we've said there is a right of access, so

18   you can start with that and then move into the

19   speech ban itself.

20             Second, we've said:  Unconstitutional

21   conditions.  We already covered viewpoint

22   discrimination, so I won't re-cover that.  But there

23   is one more ground.  So I guess I said there is

24   three; there is really four.

25             The other ground is a content-based

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    restriction on speech.  Now, your Honor, this is

2    what is so doggone puzzling.  Because we've asked

3    witnesses over and over again:  Is what VRF does --

4    is that a governmental purpose?  Okay?  Is that an

5    election campaign purpose?  And they'll go around

6    and around.  And some witnesses say:  Well, it

7    doesn't matter because you're engaging in

8    misinformation.  Misinformation can never be a

9    governmental purpose.  It can never be an election

10   campaign purpose.  So, therefore, you're not using

11   it, VRF, for a permissible purpose.

12            Well, it looked like, once the lawyers got

13   back involved again the defendants said:  No, no,

14   we're not going to fight you on that.  It's really

15   all about putting it on the internet; that's really

16   the only issue here.

17            But if you look at their summary judgment

18   briefing and their response to our motion for

19   summary judgment, what do they do?  They have

20   several pages, starting around pages 57 to 59, where

21   they go in and argue:  This is not a governmental

22   use.

23            So we're back, again, to content-based

24   restrictions.  The Government can use the data.

25   Governmental entities, they say, can use the data to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    help critique the government and make it better.

2    Election campaigns can use the data for knocking on

3    doors.  But entities like VRF, who care more about

4    the election itself, I guess, can't use the data.

5    So we do have a content-based restriction on speech.

6           And I don't think, as a defendant, you get

7    to keep changing your position over and over again

8    on whether it's content-based or not.  So we have

9    that problem here.  We have a content-based

10   restriction on speech.  And we may yet, when they

11   come back up, hear them say:  No, we disclaim that,

12   don't read that part of our brief; we're not arguing

13   that.  But I mean, that was our first take here.  We

14   thought that was the reason why they had a problem

15   with this.  Not the internet issue.  We thought they

16   believed that we didn't have the right kind of

17   content.  And now, we're back there again.

18          And so, then, the final point would be

19   viewpoint discrimination.  I won't re-cover that.

20   Those are four different routes to the First

21   Amendment.

22          Now, the next question is:  What's a level

23   of scrutiny?  I'm getting down the road here, but

24   this is important.  Do you apply strict scrutiny

25   because it's a severe burden on political speech;

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that is, our speech with everybody who says that

2    they agree with only using it for election purposes,

3    and they'll view our data, and they'll come back to

4    us or to the defendants, if they think there is a

5    problem?  So do we apply strict scrutiny for that

6    reason under Meyer versus Grant?  Do we apply strict

7    scrutiny because it's a content-based restriction?

8    Do we apply strict scrutiny because it's an

9    unconstitutional condition?  Or do we apply it

10   because there is viewpoint-based discrimination?

11   Any of those reasons get us there.

12          Now, the other side has said:  Well, you

13   really should use the Anderson-Burdick sliding scale

14   test.  In election law, we kind of know what that

15   is.  Sometimes something about the way the ballot is

16   constructed, the way voting occurs, even the way

17   voting registration occurs, is said to also get in

18   the way of free speech.  And so what the Court will

19   do there is say:  Well, okay, we do get to have

20   election procedures.  We're going to look at the

21   magnitude of the burden.  And then, if it's a low

22   burden, we'll do not much more than rational basis.

23   If it's a high burden, it's strict scrutiny.

24          So Anderson-Burdick is another way -- it's

25   sort of a sliding scale test that gets used

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    sometimes.  We don't think it should apply here.

2    But if the Court does apply it, it still leads to

3    strict scrutiny.

4            The burden here is a complete ban on VRF's

5    model of crowd-sourcing this information.  And if

6    you grant that there is a First Amendment right --

7    which the defendants have even said, the defendants

8    have even said:  We recognize this is speech; they

9    think that the speech can be restricted -- but no

10   one disputes that this is political speech that is

11   going on.  And so if that's correct, then you've got

12   to get to strict scrutiny.

13           And then this is where we get into the

14   narrow tailoring.  The Court has already made

15   findings.  You did it, Your Honor, because you were

16   looking at prior restraint.  That's how you reached

17   strict scrutiny before.  But if you do it again,

18   nothing has changed.  They had an entire -- you

19   know, whatever this was -- six or eight or nine

20   months -- to come in and say:  You know what, there

21   really are some burdens out there.  We realize that

22   people are canceling registrations, people are being

23   harassed, all kinds of bad things are happening

24   because of what you've done, VRF.

25           Remember, they just speculated about this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    last year.  And the Court said:  That's not good

2    enough for strict scrutiny.  There is nothing new.

3    If you look at the record, they're still citing the

4    same few complaints.  Most of them are from the day

5    or two after the Secretary of State issued a press

6    release attacking the Court's decision and attacking

7    VRF.  And most of those complaints, if you look at

8    them, really take issue with VRF getting access to

9    the data.  They say:  Well, this is some

10   conservative group; that they're probably election

11   deniers.  We don't want them having our data.

12           Well, they don't realize that VRF, were it

13   not for the problems in this case, would be able to

14   get the data.  Republican Party can get the data.

15   The Secretary of State conveniently didn't note in

16   her press release that, by the way, the Republican

17   Party can get the data and can go use it, do its own

18   election audit if it wants to.  They can knock on

19   your doors.

20           In the briefing, in the briefing, the

21   defendants even say, Your Honor:  They say, if you

22   get -- you know, you don't have any injury here.

23   You don't really need to put it on the internet.

24   You can just take the data and go knock on doors

25   yourselves.  They say that that's what VRF can do.

SANTA FE OFFICE                                                         MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                          1-800-669-9492
BEAN                                            e-mail: info@litsupport.com
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          So all the injuries and harms that they

2     allege come from putting this on the internet are

3     things that can happen today.  There is the selling

4     of data to vendors, to Catalist and I360.  Do those

5     people -- do the customers of Catalist or I360 have

6     to sign an affidavit with the Secretary of State?

7     No.  No, they can share with whoever they want to.

8          There are massive, massive gaps in this

9     system, if indeed the concern is that this is

10    private data that shouldn't be getting out.  I mean,

11    they're out there.  Each party has thousands of

12    people under the apparent policy we learned about in

13    this case, that if a party requests it, basically,

14    anybody with that party can go out and take the data

15    and go solicit, or whatever.  I mean, this is out

16    there.

17         The real concern is not the data being on

18    the internet.  If somebody wants to get the data

19    today, they can do it.  If they want to find your

20    address, they can look at your property records.

21         The real concern is this crowd-sourcing

22    method.  The real concern is VRF's speech.  And so

23    this would fail strict scrutiny.  It probably fails

24    intermediate scrutiny, if for some reason we could

25    fashion that under Anderson-Burdick.  There just is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    no reason to do this.

 2            The Secretary of State is not even going

 3    out and following up with the people who get the

 4    data now to make sure they're complying with the

 5    law.  So there is no reason to single out VRF.

 6            Your Honor, we also have overbreadth and

 7    vagueness claims.  I realize I spoke about three

 8    times as long as my colleague did.  So I'll stop if

 9    there are questions.

10            THE COURT:  Well, let me see what Ms.

11    Schremmer has to say in response, and I may have

12    some question.

13            Ms. Schremmer.

14            MS. SCHREMMER:  Thank you.

15            Your Honor, I want to be very clear that

16    VRF is entitled to think whatever it wants.  It's

17    entitled to advocate and criticize for whatever it

18    wants.  But it is not being treated differently than

19    anyone else.  The other entities that have obtained

20    data from the Secretary of State have done so by

21    making an explicit, affirmative, unqualified

22    promise, via affidavit, that they would not publish

23    this.

24            VRF wants the Secretary to accept,

25    instead, a very qualified and limited promise.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  it's not sufficient under state law as it currently

2  stands.

3          Now, it's possible that through the course

4  of this case, state law will change.  But right now,

5  the Secretary has the obligation to enforce it as it

6  exists.

7          And so VRF is not asking for equal

8  treatment.  They are asking for special treatment.

9  And that is something that the Secretary should not

10  provide to them.

11          Now, VRF has argued that everybody but

12  them --

13          THE COURT:  What is the special treatment

14  they're asking for?

15          MS. SCHREMMER:  That, instead of going

16  through the normal processes of getting voter data,

17  and promising that it would not use it for improper

18  purposes, that it has given a qualified promise,

19  subject to many exceptions, as to how it would use

20  the data.

21          Everyone else goes through a uniform

22  process and fills out an affidavit stating what it

23  will or will not do.

24          THE COURT:  What did -- Mr. Greim said

25  that a couple of the entities that I think are on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492



1    the left side of the political did not fill out the

2    affidavit.  That's incorrect?

3            MS. SCHREMMER:  That's incorrect.  His

4    point -- and tell me if I misstate it -- but his

5    point was that there is suspicion that a few of

6    those entities have sold their data to yet other

7    entities, and the recipient entities down the line,

8    rather than coming directly to the Secretary and

9    filling out an affidavit, received it through

10   Catalist or I360.

11           And to be very clear, the Secretary has

12   not disclaimed the ability to investigate and refer

13   for prosecution those entities.  It's just there is

14   limited resources and there are only so many of

15   these cases we can have going at once.  And the one

16   that posted data on the internet and put citizens in

17   fear for their safety happened to make the top of

18   the list.

19           And so I want to be very clear, Catalist

20   and I360 filled out affidavits.  They went through

21   the proper processes.  And there is an allegation

22   that they, then, later distributed that data -- not

23   on the internet, but in more private transactions --

24   that the Secretary has not yet had an opportunity to

25   fully investigate.  So that was the reference there,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I believe.

2             THE COURT:  And voter Reference has not

3    filled out the affidavit?

4             MS. SCHREMMER:  To obtain the data that it

5    posted the first time, it went through Local Labs.

6             THE COURT:  I understand.  But for their

7    new request --

8             MS. SCHREMMER:  For their new request, I

9    believe they did submit an affidavit.  But they

10   submitted it attached to a letter qualifying the

11   affidavit:  We stand by this affidavit subject to

12   this outcome in the case.  If we lose the case, we

13   won't post it, basically.

14            THE COURT:  But they did sign the same

15   affidavit that the leftwing groups signed?

16            MS. SCHREMMER:  Yes.  But the other groups

17   didn't attach a qualifying statement disclaiming

18   parts of the affidavit to the affidavit.  And so

19   that's the difference, Your Honor.

20            And in terms of the claim that VRF has not

21   been able to use the data and other entities can,

22   that's simply not true.  Again, I can't emphasize

23   enough -- and the testimony has been consistent in

24   this case --

25            THE COURT:  They can't use it because they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    don't have it.

2            MS. SCHREMMER:  Sure.  But if they would

3    agree not to publish it, they would have it, and

4    they would be able to use it, just like anybody

5    else.

6            If Catalist or I360 wrote a letter to the

7    Secretary saying:  Please give us your data, we'll

8    put it online unless we lose this lawsuit we're

9    planning to file, it would have been the same

10   outcome.

11           And so there is no unequal treatment.

12           THE COURT:  We really don't know that.

13   That would be speculation, wouldn't it?

14           MS. SCHREMMER:  Well, that has been the

15   testimony in this case.

16           THE COURT:  From?

17           MS. SCHREMMER:  From the Secretary's

18   Office.

19           THE COURT:  Well, but I mean -- but that's

20   just speculation; right?  If those groups had said:

21   Hey, if we ever can print this stuff, or publish it,

22   we will, we don't really know that they would have

23   been treated the same way as VoterReference.

24           MS. SCHREMMER:  Well, I guess we don't

25   know because it hasn't happened.  VoterReference is

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                               Albuquerque, NM 87102
(505) 989-4949                                                                          (505) 843-9494
FAX (505) 843-9492                                                                 FAX (505) 843-9492
                                                                                      1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                         e-mail: info@litsupport.com

```
 1   the only one who has done this activity.  And that's
 2   why it's not discriminatory.  It is unique to a
 3   unique situation.
 4            And it's not on the basis of viewpoint or
 5   content.  Again, any --
 6            THE COURT:  Well, I was troubled, when I
 7   did read over pages 57 and 58 of your brief, when I
 8   did see the words "miscommunication," that did
 9   trouble me.
10            MS. SCHREMMER:  "Miscommunication"?
11            THE COURT:  I think that's the word you
12   used.
13            MS. SCHREMMER:  In the opening brief, Your
14   Honor?
15            THE COURT:  Yes.
16            MS. SCHREMMER:  Let me see if I can see
17   what we're referencing here.  You said page 57?
18            THE COURT:  Well, it was somewhere toward
19   the end of -- not the exhibits, but I thought it saw
20   again the words "miscommunication," as saying that
21   this was not a permissible purpose.
22            MS. SCHREMMER:  I can't find -- are you
23   having any luck, Jess?
24            THE COURT:  Do you know what page that is?
25   Or did I make that up?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. GREIM:  Your Honor, I'm sorry, I'm

2     sorry to interrupt.  But did you mean to say

3     "misinformation" instead of "miscommunication"?

4           THE COURT:  Okay, yeah.  And do you see

5     where the State used that language?

6           MS. SCHREMMER:  If anyone can direct me, I

7     would like to look at that and address it.  I can

8     say that there were comments from a communication

9     specialist of ProPublica that used that word.  But

10    where it has really been highlighted by VRF is in

11    the referral letter from the Secretary of State's

12    Office to the attorney general -- and that's in the

13    context of an entire letter -- let me grab that

14    letter.

15          We ran a controlled find of the brief,

16    here, Your Honor, and the only places that we're

17    pulling that language are in Statements of Fact 41

18    and 42.  And I think those are going to address what

19    I was just about to speak to, which is the referral

20    letter and the ProPublica article.

21          And this referral letter is two pages and

22    multiple paragraphs long.  The bulk of the letter is

23    addressing the illegal transfer and use of the voter

24    data; that it was posted on a website that we

25    believe this was the source of the data that has

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  been transferred; that there was an executed

2  affidavit that has been disregarded; that it's being

3  made here under the section under criminal

4  violations.  It cites Section 1-4-5.5, and it points

5  out that voter data shall be used only for

6  governmental or election and election campaign

7  purposes only.  It then has a discussion of what

8  each of those purposes means.  And it says:  We do

9  not believe that providing personal voter data on a

10 private website intends to ascribe misinformation

11 about 2020 General Election meets the definition of

12 appropriate use as either for a governmental

13 purpose, election related, or election campaign

14 purposes.

15         And then it goes with another paragraph

16 about the unlawful use under New Mexico law.  And

17 that we believe the transfer and publication of the

18 data is in direct violation of the Election Code;

19 that they have violated a prohibition against

20 providing voter data by posting New Mexicans'

21 private voting information online, or in Local Labs

22 case, by providing the voter data to VoteRef.com.

23 We also believe that VoteRef and Local Labs have

24 illegally used this voter data by publishing it on

25 VoteRef.com.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          So the whole thrust of this letter is the

2     New Mexico Statutes and application of them to the

3     facts, and the concern with publication online.

4          THE COURT:  What troubles me is that

5     misinformation is signaling that you disagree with

6     their conclusions; and, therefore, you're denying

7     them the voter rolls.  It seems to me, that then, is

8     content discrimination.

9          MS. SCHREMMER:  What is absent from this

10    letter is any concern about editorial comments from

11    VRF, or critical comments from VRF.

12          Your Honor, the airwaves are full of

13    people who are critical of the Secretary and of how

14    elections are being run and whether there is

15    election fraud.

16          THE COURT:  I'm sorry, what is the

17    distinction you're drawing between misinformation

18    and what are you saying now?

19          MS. SCHREMMER:  I'm saying that, to the

20    extent that this is viewed as misinformation, there

21    are many, many other entities who engage in similar

22    dialogues.

23          THE COURT:  But why are you not giving

24    VoterReference this material?

25          MS. SCHREMMER:  Because of the publication

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to VoteRef.com.  That's the one thing that comes up
 2   throughout this letter, is publication to a website
 3   of the actual voter data.
 4             THE COURT:  That's not what this letter
 5   says.  It says, "VoterReference.com is misleading
 6   the public about New Mexico's voter rolls and are
 7   perpetuating misinformation.
 8             MS. SCHREMMER:  Where are you getting
 9   that, Your Honor?
10             THE COURT:  Paragraph 41.
11             MS. SCHREMMER:  That is not the referral
12   letter, Your Honor.  That is a comment made to a
13   newspaper that sought comment from Mr. Curtas.
14             THE COURT:  Isn't that evidence of content
15   discrimination?
16             MS. SCHREMMER:  No, Your Honor, it's not.
17   Because this is not the reason for the referral.
18   And it's not the reason for the later denials.  This
19   was a lengthy conversation that's reproduced in full
20   in the exhibits.  And, yeah, it contains an opinion
21   about VoteRef.com's opinions.
22             THE COURT:  But it seems to me it's
23   evidence of it.  I know that you don't like the way
24   that was written, and -- but it's evidence of
25   content discrimination.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. SCHREMMER:  But what is significant is
 2    that Mr. Curtas is not a decision maker in denying
 3    the data.  He is not a decision maker.
 4              THE COURT:  He's --
 5              MS. SCHREMMER:  He's a spokesperson.
 6              THE COURT:  -- a spokesperson.
 7              MS. SCHREMMER:  Yes.  And the evidence in
 8    his deposition is he had wide latitude to speak on
 9    behalf of the office.  But the decision makers --
10              THE COURT:  We know how public relations
11    people work:  They talk, they listen, they sit in on
12    meetings, and then they go out and do their thing.
13              MS. SCHREMMER:  But the decision makers --
14              THE COURT:  I just think it's evidence.
15    And I think that's the reason, on the content and
16    also the viewpoint discrimination, that we have --
17    I'm not sure I'm the one that should decide that,
18    unless this is a bench trial.  It just seems to me
19    it's evidence that either a jury or fact finder has
20    to listen to both sides and determine what was the
21    real reason for the refusal to give it.
22              MS. SCHREMMER:  But the other evidence,
23    Your Honor, was that those who were decision makers
24    have testified --
25              THE COURT:  But I'm afraid that puts me in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the position, if I'm the fact finder, then it's a

2   little different.  But if it's a jury, it seems to

3   me you've just got to present your evidence to a

4   jury, not me.

5          MS. SCHREMMER:  And I understand if all we

6   had was competing statements.  But that's not all we

7   have.  We have other entities who have made similar

8   statements.

9          THE COURT:  I understand.  But that still

10  puts me in a position of weighing the evidence.  And

11  I guess that's the reason I'm not comfortable saying

12  I can grant your motion for summary judgment.

13  Because I would have to disregard other evidence.  I

14  mean, that's even evidence you put in your brief.

15         MS. SCHREMMER:  Right.

16         THE COURT:  Then you load it up with their

17  own stuff that they want to argue.

18         MS. SCHREMMER:  I think the position it

19  puts the Court in is weighing the standard and the

20  burden of proof.  VRF on a retaliation claim has to

21  show, but for cause --

22         THE COURT:  How do you envision this

23  getting resolved?  If I determine there is a factual

24  issue -- which I think I basically said in the PI as

25  well -- I said it looked to me from the evidence I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    had that it was likely than not that there had been

 2    viewpoint discrimination.  But now that we're

 3    getting ready for trial, what do you think that

 4    trial looks like?  Does it have a jury?

 5          MS. SCHREMMER:  I would want to probably

 6    do a little bit of research as to jury trial right

 7    on these specific claims.  Frankly, Your Honor, I'm

 8    not sure that one exists.  But before I commit to

 9    that, I would want to investigate that further.

10          THE COURT:  Well, I assume that this is

11    being brought under 1983, and they're seeking

12    injunctive relief.  But on a fact issue like this,

13    sometimes we impanel a jury, and --

14          MS. SCHREMMER:  And MVRA claims would not

15    be under 1983.  They would be under that statute.

16    So this is why I kind of -- before I commit here,

17    I'd want to do a little thinking about what I think

18    might be a somewhat complex question.

19          THE COURT:  Well, but the MVRA is

20    separate, I think, from what they are entitled to

21    under New Mexico law.

22          MS. SCHREMMER:  Correct.

23          THE COURT:  So the MVRA, you've got me

24    kind of going your direction on it.  And I'm not yet

25    impressed with their access under the First

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                      e-mail: info@litsupport.com

1    Amendment -- or not access, but their prior

2    conditions and those arguments.  But I am thinking

3    that on this viewpoint discrimination and content

4    discrimination that a fact finder is going to have

5    to make that.

6              MS. SCHREMMER:  Understood.  And if we

7    could just kind of zoom out for a second, because I

8    want to make sure we're addressing everything that

9    is on the Court's mind.  So we have the MVRA claims.

10   We have kind of a bucket of First Amendment claims

11   that relate to whether there is an inherent First

12   Amendment right to access or to use --

13             THE COURT:  Well, I think they're saying

14   that in this case -- they're not giving it up for

15   all time.

16             MS. SCHREMMER:  Right, right.

17             THE COURT:  But in this case, they're not

18   pursuing a First Amendment right of access.

19             MS. SCHREMMER:  Right.  What I'm unclear

20   about is whether there is some lingering First

21   Amendment claim that they have the right to use

22   materials that they obtained --

23             THE COURT:  It's not lingering.  I mean,

24   it's on the table.

25             MS. SCHREMMER:  Okay.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1        THE COURT:  That is one of their claims.

2   But I'm also saying I wasn't inclined to grant that

3   at the PI stage.  And I'll listen and deal with it

4   now that I have more time than I did with the PI.

5   But I'm not inclined there.

6        So of their four theories, First Amendment

7   theories, the two that I'm not inclined to grant and

8   viewpoint discrimination.  Those are the two I see

9   kind of barreling toward trial.

10       MS. SCHREMMER:  Right.  And I understand

11  that.  I want to make sure if we're still kind of

12  working through New Mexico's regulations on use, if

13  those still need to be discussed.

14       THE COURT:  Go ahead.  I don't mean to cut

15  you off.

16       MS. SCHREMMER:  Well, not at all.  I want

17  to make sure that I'm addressing anything that is

18  still an open question.

19       THE COURT:  Well, I'm going to have to

20  decide it.  So if you've got something to say --

21       MS. SCHREMMER:  Retaliation is a little

22  bit different, as Your Honor mentioned.  And I do

23  think it's important to remember that, you know,

24  this is for prospective injunctive relief only.

25  That's how we are here representing a state entity

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     in federal court, despite the Eleventh Amendment.

2             And so, even if they can show there was

3     some retaliatory motive in what has happened

4     previously -- which we obviously dispute -- the

5     question is what happened going forward.  Because

6     that's the relief they're seeking is what can the

7     State do going forward.

8             And what I think is crucial is that the

9     State is able to regulate the use of the data that

10    it has used its governmental powers to collect.  And

11    to make sure that when I Google, or I put my name

12    into VoteRef.com, my entire date of birth and home

13    address doesn't come up -- which it currently does.

14    And that's not a First Amendment issue.  That's not

15    a retaliatory issue.  That's not a content or a

16    viewpoint issue.  I don't even believe it to be

17    constitutionally protected speech, for all the

18    reasons we've been through, with no right of access

19    and the conditional nondiscriminatory grant of

20    information.

21            But even if it is, that only, as Mr. Greim

22    pointed out, brings us to the question of what

23    levels of scrutiny.

24            And here, as you all were discussing at

25    the PI hearing stage, the Court noted a lack of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    evidence.

2            THE COURT:  Ms. Schremmer, I've let time

3    get a little bit away.  I need to give Ms. Bean a

4    break.  Let's take a 15-minute break, and come back

5    and let you finish your argument.

6            MS. SCHREMMER:  Okay, thank you.

7            THE COURT:  We'll be in recess about 15

8    minutes.

9            (The Court stood in recess.)

10            THE COURT:  All right.  Ms. Schremmer, if

11    you wish to continue your argument on the First

12    Amendment issue.

13            MS. SCHREMMER:  Thank you, Your Honor.

14             I want to clarify something real quickly,

15    because I could tell I inspired a little confusion

16    when I mentioned my information being on

17    VoteRef.com.  That's because I was registered as a

18    voter in Kansas.  And so, you go there today, you

19    still have my full prior address, my full birthdate,

20    month, date.  But not because -- and I could tell I

21    sparked some concern.  New Mexico data is not up

22    there presently because of the protections that the

23    State has taken here.

24            But, in general, there are hundreds and

25    thousands of full birthdates still on VoteRef.com

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    today, including my own.  And so I wanted to clarify

2    that, so it didn't seem I was misstating anything.

3              THE COURT:  How many states fall into --

4    like Kansas -- where all this information is

5    available on the internet?

6              MR. GREIM:  Your Honor, I could get that

7    answer.  But I don't know -- I don't know which of

8    those have it and which don't.  Well, we're on the

9    website.  But all we can tell from this immediately

10   is which states we have.  And there look to be about

11   maybe 30 states, 32 states.  Of those, I'm not sure

12   how it breaks down.

13             THE COURT:  What are you looking at?  You

14   said this is states that you have this information

15   for?

16             MR. GREIM:  Sure.  And Your Honor, we're

17   on VoteRef.com right now, on the internet and,

18   right, the states that are darkened in red are all

19   the states where it's posted.  And the ones that are

20   white it is not posted.  But you've got to click on

21   the actual state to see what they've allowed there,

22   and then what the description of the law of that

23   state is, on how you could use it and things like

24   that.

25             So Matt, Mr. Mueller, just clicked on our

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   home state of Missouri, and it looks like the

 2   registered addresses were -- he took it away from

 3   me -- were X'd out, but the date of birth is on

 4   there, and then the registration status.  And in

 5   Missouri, we don't have party affiliation.  So it

 6   depends on what each state allows.

 7            THE COURT:  But there is about 32 states

 8   that allow some form of the voter list?

 9            MR. GREIM:  That's right.

10            THE COURT:  Go ahead, Ms. Schremmer.

11            MS. SCHREMMER:  Thank you.

12            Just returning very briefly -- and I'll

13   wrap up here on First Amendment issues -- I

14   understand that Your Honor is not inclined to grant

15   judgment on retaliation.  And I completely

16   understand that.

17            What I want to focus on is the validity of

18   New Mexico's law.  So even if the Court were to find

19   that in this case the law was misapplied in some way

20   that was viewpoint discriminatory, I think the most

21   important point is that New Mexico's regulation of

22   the use of this data is not inherently

23   discriminatory, and it does not run afoul of the

24   First Amendment.

25            The regulations don't get to protected

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   activity, because there is no First Amendment right

2   to take information that you didn't have a First

3   Amendment right of access to, and put it on the

4   internet.

5         And even if that were somehow

6   constitutionally-protected activity, it would

7   survive scrutiny, whether that's under the Anderson

8   Burdick test, or under strict scrutiny.

9         And the conversation a moment ago related

10  to the preliminary ruling back last year about lack

11  of evidence as to compelling interests.

12        But since that point, the parties have

13  engaged in discovery.  And there is substantial

14  evidence of the very concerns that New Mexico has

15  raised throughout this litigation, including voter

16  participation, citizen safety, protection of home

17  and address, and personally identifying information.

18  These are all recognized, important, compelling

19  state interests.  And they're supported in this case

20  by the record.

21        New Mexico's information was online for a

22  very short span of time.  Yet in that span of time

23  it generated many, many complaints, including

24  citizens asking how they could get deregistered to

25  vote, so as to protect their information.  And I'd

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    encourage the Court to look at those complaints.

2    They're not the hate mail that Mr. Greim described.

3    They are people saying:  I'm being stalked by my

4    ex-partner.  We have a mentally unwell son who has

5    threatened to kill us.  I'm a law enforcement

6    officer.  We also have a affidavit that was

7    submitted to the Tenth Circuit about the Secretary

8    being contacted by the marshal service and by court

9    employees.  It is a huge problem.  And New Mexico

10    absolutely has a compelling interest in protecting

11    the personal information of all of its citizens,

12    including its parole officers and police officers,

13    its judges, its marshals.

14          THE COURT:  Would you agree with me that

15    if a lot of states are not concerned about this, and

16    they're allowing this information to go unrestricted

17    on the internet that it reduces your argument that

18    these are compelling state interests?

19          MS. SCHREMMER:  No, Your Honor, it does

20    not, because these interests have already been

21    recognized.

22          THE COURT:  These might be sort of unique

23    interests and special interests.  But at least, in a

24    constitutional analysis, if a whole bunch of states

25    don't care about this, I wonder whether a state can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    come in and say their unique and special is

2    compelling under the Constitution.

3              MS. SCHREMMER:  Well, first, Your Honor, I

4    don't think the record reflects that other states

5    don't care about this.  I don't have information

6    about complaints that might have been received in

7    other states, and legislation that may be in process

8    in other states, and lawsuits that may be in other

9    states.

10             I suspect that there is more than one

11   VoteRef out there, but I don't know, because I don't

12   represent VoteRef.  I only represent New Mexico.

13   And the Tenth Circuit and the Supreme Court has

14   already recognized these items as compelling

15   interests.  Items like voter participation, one of

16   the most fundamental and jealously guarded rights

17   under our Constitution.  We know from what has

18   happened in New Mexico that VoteRef poses a risk to

19   that.  And we know that New Mexico's regulations are

20   aimed at mitigating that risk.  And they do so in as

21   narrowly tailored of a way as possible.

22             Again, there would be no issue with

23   publishing anonymized data.  You know, if the names

24   were replaced instead with numbers, or some way that

25   an ex-partner couldn't search you and find where

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   your new address is, or a con-artist couldn't look

2   up and find your birthdate and use that in some kind

3   of phone scam.

4            There are aggregated ways of looking at

5   this data.  There are safeguards that could be used,

6   where VoteRef could still do the work that it wants

7   to do without publishing the wholesale voter data.

8   And so that's a very limited regulation of a very

9   dangerous use.  And it speaks to an extremely

10  compelling state interest of voter participation, to

11  say nothing of the safety concerns which fall

12  squarely with the State's police powers to ensure

13  the safety of its citizens, especially when that

14  safety is related to their exercise of their

15  constitutional right to register and to vote.

16            And I don't wish to belabor the point,

17  because I think we're all familiar with the strict

18  scrutiny analysis.  But that's significant evidence

19  that is different today than it was at the PI

20  hearing.  It does speak strongly to New Mexico's

21  interests and the compelling nature of that

22  interest.

23            THE COURT:  Well, you know, I think

24  everybody is struggling to figure out what the level

25  of scrutiny is.  But I am concerned that, you know,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   if a state has a unique interest that other states

2   are not recognizing, that it time weakens your

3   compelling state interest average argument.  It may

4   flounder on a strict scrutiny test.  It may be a

5   winner from its rational basis, I think it would be.

6   But I think it may depend very heavily upon what we

7   conclude the appropriate level of scrutiny is.

8           MS. SCHREMMER:  Well, and two points, Your

9   Honor.  One, I do think we're at a rational basis

10  test, because this is not constitutionally protected

11  activity.  It might be different if there were some

12  First Amendment right to access this information,

13  but there isn't.  There is no First Amendment right

14  of access.  So this is information that has been

15  granted to VRF by state law or by statute on the

16  condition that it not be misused in this way.

17          In addition, there is no conflict between

18  state law regulating it and any law that might give

19  access.  Because use, again, is different from

20  access.  And so I very much think we are in rational

21  basis land.

22          But I wanted to address the other scrutiny

23  arguments just to be safe.  And on that point,

24  VoteRef is a very new organization.  This is a very

25  new website.  I don't want to misstate it, but I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think 2019, 2020.  This is not something that has

2    been around for decades, where litigation has been

3    able to fully percolate.  This is a new issue that

4    states are figuring out what to do with in a very

5    real, on-the-ground way, and the fact that this is

6    one of the earlier pieces of litigation does not at

7    all negate the strength of New Mexico's interests,

8    especially where that interest has been recognized

9    in all types of different contexts by the Tenth

10   Circuit and the Supreme Court.

11            THE COURT:  All right.  Anything else,

12   Ms. Schremmer?

13            MS. SCHREMMER:  Not on that point, Your

14   Honor.  If the Court wanted me to go ahead and

15   address overbreadth or vagueness at this point, I

16   could.

17            THE COURT:  Why don't we pause here.  Let

18   Mr. Greim have the last word on the First Amendment

19   issues.

20            MR. GREIM:  Thank you.

21            THE COURT:  Let me ask some questions that

22   I asked of Ms. Schremmer.  You initially said that

23   you thought we were going to have to have a trial on

24   this, and that you were prepared to do a one-day

25   trial or something like that.  But when they filed

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                 (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                               1-800-669-9492
                                                               e-mail: info@litsupport.com



1 their motion for summary judgment, you decided to

2 file yours.

3         What do you think about my thoughts about

4 the fact that I'm troubled about me being the one

5 that decides, for example, the issue:  Did you do

6 the same thing as the other people, and give an

7 affidavit, and the State saying yours is qualified,

8 that, and also whether they're engaged in content or

9 viewpoint discrimination; that those seem to me to

10 be factual issues that I shouldn't be deciding on a

11 summary judgment.  What do you think about that?

12         MR. GREIM:  Sure.

13         Your Honor, I've dealt with -- it seems

14 like this happens in a lot of the sort of cases that

15 I do, not necessarily for VRF, but they're speech

16 cases like this.  We're trying to be efficient for

17 the parties who are involved.  These are not

18 corporations with billions of dollars at stake.  So

19 we're trying to do things efficiently.  And

20 candidly, what I usually prefer to do, just in case

21 the judge does think that maybe it's more of a

22 finding of fact than a summary-judgment-type basis,

23 is to do what a summary judgment argument turns into

24 anyway, which is we're citing to evidence.

25         Usually, everyone has been deposed;

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    sometimes people have testified multiple times, and

2    we've got, you know, deposition designations, and,

3    you know, just to be very clear, there is no jury

4    trial here.  We've not asked for one, no one is

5    asking for money damages.  We're asking for

6    declaratory injunctive relief and attorneys' fees.

7    But, you know, this was always going to be a

8    bench-tried case.  So that's why I prefer to do it

9    that way.  It's also less paper, it's less work

10   briefing.

11           But once one side moves for summary

12   judgment, and as I look through the record, to me

13   there are no weighing of credibility issues.  And I

14   could get into a few of the points you've raised,

15   because I've been listening closely over here.  But

16   we don't think a jury trial should happen.  Nobody

17   assumed there would be a jury trial.  We've always

18   assumed there would be a bench trial in this case.

19   And I would still have preferred to have done that.

20           But given the enormous amount of time that

21   we've spent -- you've seen in the papers -- on

22   summary judgment, to me it is appropriate, because

23   the record of who did what is clear.  The record of

24   why people did what they did exists in their

25   deposition transcripts.  We have that.  I got --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    there is a little hint just now of, well, the
 2    statements of Alex Curtas, the information director,
 3    they're just sort of his; they're not on behalf of
 4    the Secretary of State's Office.  We've addressed
 5    that in the papers.  And you'll see that his final
 6    statement to the ProPublica reporter, which is not a
 7    newspaper; it's a progressive media outlet says:
 8    This is the crux.  And he quotes from Sharon Pino's
 9    letter, he quotes from Pino's letter.  I mean, they
10    stand by the Pino letter.  No one is backing away
11    from that.
12            And he uses the content-based criteria.
13    He says:  We do not believe this personal voter data
14    on a website that intends to spread misinformation
15    about the 2020 general election meets the definition
16    of appropriate use, as either for a governmental
17    purpose, election related, or election campaign
18    purposes.  He said that's the crux.  He didn't just
19    make that up.  He took it from the referral letter.
20            And then remember, Your Honor, we quizzed
21    Ms. Pino about that letter in open court.  We've got
22    the transcript.  And we cited it.  And we gave her a
23    chance to talk about that.  And she said, to this
24    day, in open court, she said:  I do not believe that
25    misinformation is a governmental purpose, election
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1   related, or election campaign purposes.

 2            So there is no daylight in between the

 3   defendant's different witnesses here.  I mean, I

 4   think, when you go through the record, as you line

 5   these facts up, Your Honor, you're going to see that

 6   we might disagree about what conclusions you ought

 7   to draw from the facts.  But there is not going to

 8   be a situation where you've got to truly put your

 9   hat on as fact finder.

10            So I continue to urge you --

11            THE COURT:  But isn't that an important

12   role of a fact finder?  If it's going to be me, and

13   it sounds like it's either going to me in a summary

14   judgment, or it's going to be me as a fact finder,

15   isn't that an important role for a fact finder to

16   draw reasonable inferences?  I mean, somebody has

17   got to eventually say there was either viewpoint

18   discrimination or not viewpoint discrimination.

19            MR. GREIM:  That's right.

20            THE COURT:  And that's an ultimate fact.

21   But somebody has got to make that call.

22            MR. GREIM:  Well, there are plenty of

23   evidentiary facts.  But as you go through the

24   papers -- I mean, you'll be able to see what's

25   actually disputed.  I mean, there is no dispute that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   anybody said any of these things.  Nobody says:

2   Well, boy, I was quoted that way, but I'm not sure I

3   said that.  There are no issues like that.  So --

4   and again, we're talking about not the intent in the

5   head of the Secretary of State, but the office here.

6   And we see them all --

7          THE COURT:  Let me ask this -- and Ms.

8   Schremmer touched on it -- if you're not seeking

9   damages, you're seeking injunctive relief, what

10  difference does it make if a while back they engaged

11  in content or viewpoint discrimination?  They may

12  have goofed up, made a mistake.  But if you're

13  asking for injunctive relief, what difference does

14  it make?

15         MR. GREIM:  Well, there is a couple of

16  things.  One, we're really we're looking at two eras

17  of conduct here.  Recall, we did have the

18  information posted briefly, from December through

19  March, when the ProPublica story came out, of 2021

20  to 2022.  Then we had it posted again after the

21  preliminary injunction and before the stay.

22         Now, the defendants -- we have asked them,

23  we've said, you know:  Are you going to prosecute us

24  for violating the law based on what we've already

25  done?  And I think the Court even asked this at the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                    1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1    stay hearing.  And they won't say that they won't.
 2    They said:  Well, there is a Rule of Lenity.  You
 3    know, you can always kind of argue that the statute
 4    could be read different ways.  But we're in federal
 5    court.  They've threatened prosecution for what
 6    we've already done.  So --
 7              THE COURT:  How does going to trial or
 8    making a ruling on viewpoint discrimination or
 9    content discrimination, how does that help you on
10    that score?
11              MR. GREIM:  Okay.  One way on that score,
12    on another way going forward.
13              On that score, I think a finding of
14    viewpoint discrimination in the referral, which the
15    Court did find on preliminary injunction.  Okay?
16    And also content-based discrimination in the way the
17    ban is set up.  Again, this is under the old
18    statute.  That's another issue.
19              I think a fair remedy is that we cannot be
20    prosecuted -- or really, declaratory relief would be
21    sufficient.  I don't think you need to enjoin them.
22    I think declaration is enough -- and often in 1983
23    cases it is enough -- that we cannot be prosecuted
24    for our posting of the data, either before the
25    lawsuit or in reliance on this Court's order.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   think that's part one.

2          Part two is they can no longer deny us

3   access to the data based on this lingering fear that

4   we're going to put it all on the internet.

5          Remember, one of the reasons they said

6   that they couldn't ever tell us again -- their

7   testimony at deposition is not what we heard here

8   today.  They said they could never tell us when it

9   would come on again, in part because they were

10  concerned that we posted the data in reliance on the

11  Court's order.  Okay?  And I remember asking this:

12  When is the shadow of our prior posting ever going

13  to drift away and you're willing to listen to us

14  when we say we're not going to do it without a court

15  order?  And you know, they can't tell us that.

16         We need a declaration of rights saying

17  that, if we agree to what's required under New

18  Mexico law, you can't keep holding our prior speech

19  against us, denying our access.  So that's what this

20  does.

21         Now, going forward -- there has been past

22  viewpoint discrimination.  There has been no showing

23  that:  Gosh, we made a mistake, we're sorry, you

24  know, we don't think there is a problem here

25  anymore.  There has been nothing of that from their

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   witnesses.  But the other question is this law has

2   been amended.  Now, it says there can't be internet

3   posting.  I mean, we are asking for a declaration

4   that that ban violates the First Amendment, for all

5   the reasons we just stated.

6          And then overbreadth, I know we've broken

7   it off with vagueness to address later, but our

8   argument there is the same.  So we are asking for

9   the right to be able to receive the data when we

10  make requests.  And we're asking for the right to be

11  able to post it on the internet under the conditions

12  that we use right now, which is not just it's there;

13  it's that somebody has to go on, see what New Mexico

14  law requires, and click that they agree.

15         They may want to say that's not good

16  enough, we don't trust that.  But the record should

17  be clear that that's actually what we do in New

18  Mexico and every other state.  That's in the record.

19  There is nothing disputing that.

20         And I don't want to get too far.  I know

21  you asked a specific question.  But I just want to

22  clarify what we do is really not different from what

23  other requesters do when they approach the Secretary

24  for the data.

25         Now, the Secretary says they can enforce

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



1    for filling out a false affidavit.  VRF can't go do

2    that; right?

3           But for purposes of tailoring and

4    scrutiny, it's really interesting that the process

5    that we have to protect against misuse of the data

6    is really not different in a material way from what

7    the Secretary of State does now.

8           Again, remember that they say the marshals

9    were concerned, and all these people.  We believe

10   that's all hearsay.  We don't have those

11   communications.  But the status quo right now is

12   that, when the party requests, the Democrats or

13   Republican Party requests the data, they can share

14   it with every separate campaign that's running for

15   whatever office it is, that says they're a

16   Republican or a Democrat.  And those campaigns can

17   share it with their people.  I mean, we're not under

18   a tight lock system right now.  We don't have that.

19          When we think about state interests, you

20   know, the interest in privacy and integrity of

21   elections, we're not running under a system where

22   this is kept under lock and key, not by any means at

23   all.  There is not a mere suspicion that Catalistist

24   and I360 are sharing the data with others.  We have

25   record evidence on that.  And the Court made a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  finding on it even before we had the additional

2  evidence last year.  So this is not a mere

3  suspicion.  This is what's actually occurring.

4      One more thing -- Your Honor, I've gone

5  way behind your question.  I have a few other points

6  I want to move to here.

7      THE COURT:  Okay.

8      MR. GREIM:  I want to make clear that

9  while we've got 32 states online, we're getting data

10 from many more of those.  But those states may have

11 an issue with internet publication or the law looks

12 to be unclear or there has been a threat of some

13 kind, so we are holding off until basically

14 litigation or maybe a change in law that would allow

15 us to do it.  So I want to be really clear on the

16 record.  We're getting data under the MVRA from

17 certainly more than 32 states.  Those are the ones

18 where we get the data and post parts of it online.

19     I want to end maybe with this point on the

20 data on strict scrutiny.  I think this is really

21 important.  The statement was made:  We know VRF

22 poses a risk; that this is as narrowly tailored as

23 possible; that con-artists can go use birthdates

24 that are up online, when we come back online.

25 Birthdates have never, ever, ever, been posted in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  New Mexico.  Now, in Kansas it sounds like thy were.

2  That was interesting to hear that.  But not in New

3  Mexico.  So New Mexico can't rely on that interest

4  here.

5          But the other issue is there is no

6  evidence that that was occurring.  People write in

7  and say they're worried:  Oh, they want to cancel

8  their registration, which appeared in only a

9  couple -- I encourage the Court to read the record,

10  too, because you'll find that there is no more than

11  about two dozen comments -- and that might be

12  overstating it -- that the Secretary of State gave

13  and this VRF gave when people reached out to VRF.

14  And they're clustered around the timeframe of the

15  Secretary of State's press release.  The law

16  enforcement officer who reached out to VRF, that was

17  mentioned there, we removed his information from the

18  website when he showed who he was.  I mean, when

19  we're under strict scrutiny, you don't have to take

20  the law as it stands either.

21          There is a Safe at Home Program here in

22  New Mexico.  There is nothing stopping -- want to

23  talk about narrow tailoring -- there is nothing

24  stopping New Mexico from saying:  Okay, court and

25  judicial officials, we are not going to make that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  data available to anyone.  There is nothing stopping

2  New Mexico from doing that or from tailoring it in

3  some better way.

4          They could tell VRF:  Look, okay, you can

5  share with people through your website when they

6  click that they're going to follow the law.  But we

7  want you to now take their information and keep a

8  log, just like we do at the Secretary of State's

9  Office.  We know that you don't have control over

10  what they ultimately do.  They could be lying to

11  you, just like people could be lying to us at the

12  Secretary of State's Office.

13          But if there is an identity theft that

14  occurs, or there is some solicitation that occurs,

15  we'll now know where to go to get the list, which is

16  all that they do right now anyway.

17          And so I just want to make really clear

18  what's actually at stake in this case.  It's much

19  more about cutting down this form of speech.  And to

20  be very clear, there has been no contest in this

21  case that what we do when we share the data with our

22  users is speech.  There has been a contest about

23  whether it violates the First Amendment to restrict

24  it.  No one disputes that that's speech.  It's

25  uncontested.  This case is more about shutting that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   down, and less about protecting privacy interests

2   that are already -- if the State's really worried

3   about it -- you know, being compromised by the

4   sharing with all the people who get access to it

5   now.  Thank you.

6          THE COURT:  Well, but when you make those

7   concessions, it seems to me you're undercutting your

8   argument.  Because, if they can restrict this,

9   they're saying they could restrict more.  And where

10  is the constitutional basis for saying:  Well, this

11  is constitutional, they can restrict this, but they

12  can't totally ban it?

13         MR. GREIM:  I see what you're saying, Your

14  Honor.  But that's the inherent problem with narrow

15  tailoring.  I mean, that's the analysis that narrow

16  tailoring looks towards.

17         THE COURT:  But by making that argument,

18  if we're talking about narrowly tailoring, you're

19  conceding that these are compelling state interests.

20         MR. GREIM:  Well, Your Honor, what I'm

21  saying is, if we hold the state interest, arguendo,

22  we hold it as something that they've argued and only

23  focus on narrow tailoring, okay, if we're going to

24  treat those, for purposes of the second prong, as

25  having been established, look at the other things

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   you can do.  So I guess I should be clear, I have
 2   not conceded they should go do those things.  I'm
 3   saying, if they're so worried about these issues,
 4   look at the other things they could do that are
 5   narrower.
 6           Now, at some point that's the narrow
 7   tailoring analysis.  But courts don't just give up
 8   on narrow tailoring because we've marched two steps
 9   out of 100 that would go back to taking the right,
10   you know, altogether away.  But here, they've oddly
11   mentioned judges, courts, and law enforcement
12   officer.
13           They have a Safe At Home Program already.
14   My point is we're not stuck with that.
15           THE COURT:  What is the Safe At Home
16   Program?
17           MR. GREIM:  It's people who establish that
18   they meet certain criteria can have -- and I'm going
19   to rely on them to answer this more specifically.
20   But they don't have their actual address listed in
21   there.  They have something else.
22           THE COURT:  On the voter list?
23           MR. GREIM:  On the list.  So, when we get
24   it, for those people who have -- and it's not just
25   anybody who says:  I'm concerned.  You have to be
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    able to establish certain criteria.  So if we got to

 2    a point where the Safe At Home Program --

 3              THE COURT:  I was looking at one of a

 4    judge that had their chambers listed there.  How

 5    does anybody use that to determine whether they're

 6    qualified to vote in a particular state or

 7    legislative district?

 8              MR. GREIM:  Well, that's interesting.  I

 9    don't remember seeing a judge's chambers listed as

10    their residential address.  I actually don't know

11    the answer.  That surprises me that the voter roll

12    has the judge listed at their chambers.  But it may

13    be that that's allowed.

14              When we look at the purpose of our speech,

15    of making sure that the voter rolls are properly

16    kept, the people who are judges are a small part of

17    the population.  People who can show that they're

18    being stalked, that's a small part of population.

19              We don't concede our overall point by

20    allowing the state to come back and say:  Okay,

21    we've got this narrow interest.  I mean, if you

22    really believe that that's a big problem here, then

23    you could actually pass a law that's narrowly

24    tailored to address that interest, and not

25    completely ban -- not just internet speech, but any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1    sharing of the information outside the organization.
 2            Internet speech was just added on as a
 3    specific category recently.  But before, remember,
 4    they relied on the ban on any sharing.  And that's
 5    the ban that's still at issue here.  So, I mean,
 6    they're taking their claimed interest and they are
 7    inflating it to completely block an avenue of
 8    communication.  And those things fail strict
 9    scrutiny.  And there may be some better answer for
10    the state.  But they're not even trying here.
11    They're not even trying to come back.  They're just
12    saying, no, the ban is all we can do.
13            THE COURT:  All right.  Thank you, Mr.
14    Greim.
15            Ms. Schremmer, do you want to go to
16    overbreadth and vagueness?
17            MS. SCHREMMER:  Thank you, Your Honor.
18            Those overlap here, and I think it is
19    worth mentioning that strict scrutiny does not, as
20    you know, require the least restrictive means
21    possible.  It only requires a close match between
22    means and ends.  And we have that here.  And if, for
23    no other reason, that's the reason that this law is
24    not overbroad.  Just because there is some
25    hypothetical set of circumstances in which a person
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    could come up with an overbroad application, that is

2    insufficient to get rid of a law entirely on the

3    basis of overbreadth.

4              More importantly, overbreadth is meant to

5    protect First Amendment rights.  If there is no

6    right to access under the First Amendment, then

7    there is no overbreadth issue in this case.  It's

8    not a legitimate means to protect some statutory

9    right under the MVRA or otherwise.

10             And so where there is no right of access

11   under the First Amendment, and the specific activity

12   that we're talking about here, we maintain is not

13   constitutionally protected, these laws can't be

14   overbroad.

15             And neither are the laws vague.  The laws

16   have never been vague, and Your Honor found as much

17   at the preliminary injunction stage.  But, even if

18   they were, they're only further clarified by the

19   recent enactment of House Bill 4, which makes

20   extremely clear, which should always have been clear

21   which is that no sharing outside of the person who

22   requested it inherently means no sharing to the

23   worldwide web, is now reduced to very explicit

24   language within the statute.

25             THE COURT:  Doesn't that in some ways hurt

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   your argument?  Because under statutory construction
 2   rules and principles and canons, if you're saying
 3   that the new act means nothing, because it always
 4   existed, that would not be a proper statutory
 5   construction, would it?  It has to be that the new
 6   law changed the law.  And so you were not on good
 7   grounds for your interpretation, which is one of the
 8   things I also found in my PI, that you were -- the
 9   interpretation the Secretary was giving was simply
10   not there.  Now, I said I didn't know if that made a
11   lot of difference to a federal court.  It might be
12   of interest to the state court.  But now that the
13   legislature has gone back and given the Secretary
14   what she wants, doesn't it undercut that you didn't
15   have that authority earlier?
16             MS. SCHREMMER:  Two points in response to
17   that, Your Honor.  The first is that the new law
18   merely clarifies the old.  And so --
19             THE COURT:  That's what they always say.
20   But the rules of statutory construction don't say
21   that.  That would make the new act a total nullity.
22   It doesn't do anything.  And that's not the rules of
23   construction that we use.
24             MS. SCHREMMER:  Well, I don't think that's
25   correct, Your Honor, in this case.  And so
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    previously --

2            THE COURT:  Can you cite to me a case that

3    says:  When a legislature or congress passes an act,

4    it means nothing, it's simply was clarifying what

5    the department secretary thought was the law?

6            MS. SCHREMMER:  No, Your Honor.  But

7    that's not what happened here.  This would be more

8    akin to there being some phrase that was unclear

9    within the statute, arguably; that there was

10   litigation; a court found that, no, it's not

11   unclear, this interpretation is correct, and then

12   the legislature going in and using the Court's more

13   refined language, so that there can never be another

14   debate about it.  That doesn't mean the

15   long-standing interpretation was somehow not the

16   correct interpretation of the law.

17           And more specifically, what happened here

18   is that previously Section 1-4-5.6 used to

19   incorporate by reference the Voter Records System

20   Act.  And this House Bill 4 takes that same language

21   from the Voter Records Systems Act, and now places

22   it directly within 1-4-5.6.  So rather than

23   incorporating by reference another statute, it moves

24   that same language into the statute, and makes

25   explicitly clear, in this digital age, that this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    also encompasses online posting.

2             So I don't think that makes the prior

3    interpretation incorrect or vague.  But even if it

4    did, turning to my second point, again, the relief

5    here is only prospective and injunctive.  And so the

6    question is now whether the statute is vague going

7    forward.  And it is most certainly not, especially

8    as it is now written.

9             And so vagueness is a way to facially

10   attack an entire law.  And there is no vagueness at

11   this point.  We maintain there never was, but even

12   if the Court finds against on that, going forward

13   the law is clear, and it's not subject to facial

14   attack on the basis of a vagueness argument.

15            THE COURT:  All right.  Anything else on

16   those two points, Ms. Schremmer?

17            MS. SCHREMMER:  No, Your Honor, other than

18   we all know the difference between a massive online

19   publication and other means of distributing

20   information.  There is a reason why, when we file

21   with this court, we have to redact birthdates and

22   the full names of minor children and the victims.

23   And it's because the power to access and misuse

24   information on the internet is so much vaster.

25            And so the State's interest in protecting



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   voter participation and citizen safety has to meet

2   that digital age demand.  And here, New Mexico is

3   doing it in the most tailored way possible.  And so,

4   again, we don't think that we are at a point of

5   applying strict scrutiny, because we don't think

6   there is a First Amendment right to publish.  But

7   even if we are, we believe that strict scrutiny is

8   strongly met.

9            THE COURT:  Thank you, Ms. Schremmer.

10           Mr. Greim.  On that last point that Ms.

11   Schremmer raises about the new act, it's pretty

12   clear -- putting aside all your constitutional

13   issues -- just from a statutory standpoint, New

14   Mexico now has banned what you want to do.  Would

15   you agree with that?

16           MR. GREIM:  I would agree that they -- I

17   will say that it's clear that you can't post it on

18   the internet, make it publicly available on the

19   internet, which is I know what they think we do.

20           Now, it gets more complicated beyond that.

21   That would be a different lawsuit.  But, for

22   example, you know, if we wanted to have each person

23   who wanted to view our data pay $5, and become a

24   member of VRF, and view it then, is it still

25   publicly available on the internet?  You know, does

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                 1-800-669-9492
                                                      e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   that even count as sharing it outside of VRF,

 2   because, remember, that's the principle --

 3            THE COURT:  But that's not what you want

 4   to do; right?

 5            MR. GREIM:  Well's, it's not what we're

 6   doing right now, that's true.  We don't charge

 7   anyone.

 8            THE COURT:  And so what you want to do is

 9   what you've done twice before.  And would you agree

10   with me that the new act is pretty clear that in New

11   Mexico you can't do that.

12            MR. GREIM:  Yeah, I would agree that prong

13   two makes that clear.

14            THE COURT:  Prong two being --

15            MR. GREIM:  So if you look at the new law,

16   it's 1-4-5.6.  They actually -- before, it was just

17   a single sentence.  Now, they say:  Unlawful use of

18   voter data, et cetera, consists of colon, then they

19   have a 1, and then they have a 2.  So part 2 is the

20   internet thing.  That's what covers what we were

21   doing.  So I would agree that part 2 covers what we

22   are doing.  I'd still want to argue, but I don't

23   want to get into it here.  I think --

24            THE COURT:  But you still want to use this

25   lawsuit in the face of that statute to do what

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                        1-800-669-9492



```
 1    you've done twice before?
 2              MR. GREIM:  That is true.
 3              THE COURT:  Now, tell me how I get there.
 4              MR. GREIM:  Sure.
 5              THE COURT:  It seems to me that if you
 6    can't do it, I don't know how I give you an
 7    injunction.
 8              MR. GREIM:  Well, Your Honor, our
 9    vagueness claim under the new statute -- we are not
10    making a vagueness claim under the new statute.
11    That's a better way to put it.  That's what you're
12    getting to.
13              THE COURT:  Well, maybe.  You may be way
14    ahead of me.  I'm just trying to figure out what's
15    your winning argument to still get an injunction.
16              MR. GREIM:  Just putting aside vagueness
17    and overbreadth, and all that --
18              THE COURT:  Well, you can pick it.  You
19    can tell me what your winning argument is, how you
20    get an injunction if New Mexico has now made it
21    clear the two things you did in the past, you can't
22    do in the future.
23              MR. GREIM:  Right.  Well, the injunction
24    would have to rely on this being improper under the
25    MVRA, which is our preemption argument -- we've
```

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                         Albuquerque, NM 87102
(505) 989-4949                                                                       (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   covered that -- or that under the First Amendment,
 2   you can't say:  I'll give you access, but I've got a
 3   condition; you can't do X with it, which we've
 4   agreed -- I want to focus on this -- we've agreed
 5   that that X in this case is speech.  It's not like
 6   the other cases we talked about, Lanphere that this
 7   Court cited.  We're not saying we're going to go --
 8   we want to solicit them to buy a Nordictrack.  We
 9   want to share it with them so that they, after
10   clicking and agreeing with us that they're going to
11   use it for these purposes, can see whether the
12   Secretary is doing a good job or not.  So that's
13   what we want to use it for.
14             And what we're saying is:  If New Mexico
15   makes it available, it cannot place that
16   content-based use restriction on us, and not just
17   content-based but a restriction that bans speech
18   that's political, which moves this case ahead of the
19   Sorrell versus IMS case, and ahead of the Lanphere
20   case from the Tenth Circuit, where all they were
21   doing was using information for commercial
22   solicitations.
23             I mean, what's funny is that -- well, I
24   won't go there.  I'll stick to your point.
25             THE COURT:  Let me ask this:  If that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    your two avenues:  MVRA, preemption, and this First

2    Amendment issue that they cannot condition -- you're

3    basically saying this law is unconstitutional.

4              MR. GREIM:  Right.

5              THE COURT:  If those are the two big

6    issues -- if those are the two ways that you can get

7    an injunction now, why do we need to decide all

8    these other issues, such as what she did --

9    viewpoint discrimination.

10             MR. GREIM:  Because, remember, they're not

11   even giving us access to the data.  They're not even

12   giving access to the data.  Our proposition is, and

13   has always been, we think that this internet ban is

14   no good, it's unconstitutional.

15             But we have made it very clear we're not

16   going to go do that unless a court tells us we can.

17   And what they're saying is:  Well, you've been

18   unclear.  We still don't know whether you mean that.

19   Or you did it in the past, and that troubles us.

20             I mean, we've got to get out of that.

21   We've got to get beyond that.  That can no longer be

22   a reason to block us from getting this data.

23             So even if the Court wants to take the

24   MVRA position it sketched out here, which we think

25   would be against all the authority, there would



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                  1-800-669-9492
PROFESSIONAL COURT                           e-mail: info@litsupport.com
REPORTING SERVICE

1    still be a viewpoint-discrimination-based reason to

2    say you cannot deny them access when they tell you

3    that they're not going to go publish it on the

4    internet unless they win.  And if we don't win on

5    the First Amendment argument here, you know, we'll

6    go up, we'll keep trying.  And maybe we'll do this,

7    whatever we have to do.

8              But in the meantime, you can't keep

9    holding our rights hostage.  Because everybody else

10   gets it.  We promise we're not going to share it or

11   put it online, or whatever you want to say, without

12   an order from the Court saying we can do it.  We've

13   always said that.  I mean, I say it for the 20th

14   time here today.  So we at least need that relief,

15   Your Honor, we at least need it.

16             But I want to mention one more thing,

17   though -- well, you may have more questions on that

18   point for me.

19             THE COURT:  I've got more questions, but

20   let me hear what you have to say.

21             MR. GREIM:  Okay.  I've got to say this on

22   vagueness.  I mentioned there were two points, that

23   now they've taken 1-4-5.6 and broken it into two

24   points.  And here's what's funny:  The very first

25   point that they have, no one has focused on that,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   but the very first thing they say that you can't do

 2   is the knowing and willful selling, loaning,

 3   providing access to, or otherwise surrendering of

 4   voter data, mailing labels, or special voter list by

 5   a person -- and then they go on -- for purposes

 6   prohibited by the Election Code.  So it's the same

 7   language they had before, it's the same setup, where

 8   they say: you can't sell, transfer -- it sounds

 9   very, very certain -- and then they say "for

10   purposes prohibited."  And that's the governmental

11   purpose, election and campaign purpose.  So they've

12   got the same structure borrowed again.

13           Remember, they were arguing before that

14   that was enough; that that was enough to tell us

15   that you can't put it on the internet.  So isn't it

16   funny that they've got this now in their statute,

17   but they still put in a second piece about the

18   internet.  It kind of suggests to you, if the

19   internet part is not surplusage, if they didn't just

20   do a lot of extra drafting, that that first piece in

21   the statute cannot bear the weight they've been

22   putting on it for the past, you know --

23           THE COURT:  Well, that's my point about

24   this law had to do something.  And I had problems

25   with the Secretary's construction earlier.  Boy,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  there are so many issues in this thing, somebody

2  will have to refresh my memory why -- and I think

3  you agreed with me when you were arguing -- that it

4  didn't matter, for a federal court, whether the

5  legislature made this interpretation or the

6  Secretary of State, for our purposes.  Maybe for

7  First Amendment purposes, I assume the Secretary of

8  State, even though I didn't know how she was getting

9  there.  Is that still a problem?  I mean, it doesn't

10  matter whether we have a new law, whether it's the

11  Secretary of State's interpretation, whether it's

12  faulty or not.  For a federal court trying to

13  determine First Amendment, it doesn't really matter

14  how we got there.  Is that still the case?

15         MR. GREIM:  That's right, Your Honor.  I

16  mean, it helps -- as we said in our brief it sort of

17  helps we take out this measure.

18         THE COURT:  I think it helps you on the

19  viewpoint discrimination and the content

20  discrimination, because the interpretation is, I

21  think, additional evidence that it was created for

22  you.

23         MR. GREIM:  We agree, Your Honor.  And in

24  fact, there was evidence that the Secretary of State

25  was lobbying for this -- we have those documents, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think, in the record -- that was pushing for this

2    change.

3              But I'll quickly turn to overbreadth, and

4    then I'll stop, unless you have more questions for

5    me.  Overbreadth does heavily cover the same ground

6    as our main First Amendment argument.  Sometimes

7    people even just plead those two together in the

8    same count.

9              But I want to focus on this one issue.

10   Let's be very clear what the Secretary's position

11   here is:  That every person who wants this data, who

12   want to use it, analyze it, whatever, must come

13   directly to the Secretary of State for that data.

14   They cannot come by that data by engaging in speech

15   with their fellow citizens where the data is shared.

16   That logically follows.  Remember, the position

17   here, they've always had is:  You can't share

18   outside your organization.

19              THE COURT:  But isn't the reason for that

20   is they want your signature on that affidavit?

21              MR. GREIM:  Well, that's what they say.

22              THE COURT:  Otherwise -- I mean, all this

23   is pretty loosey-goosey enforcement anyway.  But if

24   they don't have your signature, they've got none.

25              MR. GREIM:  So this is the point, okay?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                  e-mail: info@litsupport.com

1    Remember, they give four reasons.  They say:  One,

2    revenue generation; two, they want you to view the

3    affidavit because the affidavit tells you what you

4    can and can't do, and that serves an education

5    purpose.  Now, remember, that the affidavit's

6    changed, though.  Remember, the one that Local Labs

7    signed didn't say that you're completely prohibited

8    from transferring it.  It said you can't do it for

9    purposes prohibited by the Election Code.  So that

10   changed, which is why we question that as a purpose.

11   That was number two.

12           Number three was:  We want people to know

13   that not just everybody can get this.

14           THE COURT:  I would imagine -- and you can

15   tell me if it's true -- the affidavit has changed

16   again in light of the new statute.

17           MR. GREIM:  Well, that's a good question.

18   I don't know that.  But it may not have, because

19   remember -- well, we argued the affidavit got out

20   ahead of the statute.  So it may be that they don't

21   think they've got to change it again, because the

22   statute finally caught up with the affidavit.  I'm

23   not sure.

24           But and then the fourth one was

25   misinformation, combating misinformation, which



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    we've said absolutely that's a content-based

2    restriction.  They shouldn't rely on that.  In fact,

3    I think we would win if they only used that one.

4              But the third one is what we've heard the

5    most about.  But think about this, Your Honor.  If

6    the signature on the affidavit is the key thing,

7    they're saying:  Well, then we can go prosecute you

8    because you made a false swearing.  Or, you know,

9    maybe there would be other elements, like:  At the

10   time you swore, you intended to break the law and

11   things like that.

12             But why does New Mexico have to enforce

13   their interest in that way?  That's part of the

14   analysis here, too.  I mean, why can't they just say

15   it is prohibited to do certain things with the data,

16   and then, if you do it, you get in trouble for that?

17   So why tie it to an affidavit requirement?  That's

18   one.

19             The other thing is, if you want to educate

20   people, because while they're signing it, they read

21   what the restrictions are.  That's what VRF already

22   does.  It makes you agree on the restrictions before

23   you sign.  Now, they may say:  Well, people don't

24   really read that.  I mean, do they really read the

25   affidavit?  The point is this:  There is no reason

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    to think that the particular method that they use to
 2    police right now is the only way to do it right, if
 3    these are indeed their interests, if indeed we
 4    really think that the voter lists are going to be
 5    the means by which all these harms come upon us.
 6    Again, there is no evidence of that.  But if we
 7    thought that, why would we have to use affidavits?
 8              Why not tell the Republican Party, say:
 9    Guys, you better start keeping a list of everybody
10    who gets access to this data.  They don't do that
11    now.  And they might say:  We're going to conduct an
12    audit every six months and find out who has gotten
13    it.  They don't do that.  We're going to start to
14    care about whether people make false statements in
15    the affidavit, you know?  We're going to finally get
16    around to following up on, you know, how much data
17    I360 has sold, and who has gotten New Mexico data,
18    where in the country.  You know, they don't do those
19    things, which is why we should question the state
20    interests.  Why are they trying to cut out VRF?
21    It's suspicious, and goes to the overbreadth
22    argument.
23              So I went too far, I went too long again,
24    but I'm open for questions.
25              THE COURT:  Let me hear from Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Schremmer.  I probably will give you the last word

2    on the vagueness, but let me hear what she has to

3    say.  Ms. Schremmer.

4                THE SCHREMMER:  Thank you, Your Honor.

5                THE COURT:  Ms. Schremmer.

6                MS. SCHREMMER:  I think we finally worked

7    around to it with Mr. Greim's most recent argument,

8    which there are only two ways that VRF can succeed

9    in this case.  One is to prove the very difficult

10   and very narrow Doctrine of Obstacle Preemption that

11   somehow overrides New Mexico's regulations via the

12   MVRA.  And the other is to ask this Court to expand

13   First Amendment Doctrine to say that there is no

14   such thing as a conditional grant of access; that

15   even though the First Amendment doesn't give you any

16   right of access, to the extent the Government

17   voluntarily allows you some information, it can't

18   place any conditions on that.  Which is essentially

19   the same thing as the First Amendment gives you a

20   right of access.

21               And both of these ask the Court to be

22   quite expansive with this application of the law,

23   either through Obstacle Preemption or through an

24   innovative reading of the First Amendment.

25               And because neither of them are well



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    supported in the law, we would ask the Court to
 2    reject both of them.
 3            We've heard quite a lot just now about
 4    what the Secretary's individual motivations are or
 5    are not.  And you know our stance on that and our
 6    arguments on that, and what we think the record
 7    reflects on that.
 8            But the real point is:  It doesn't matter,
 9    because this is about prospective relief.  It is
10    about what we can do going forward.
11            THE COURT:  I think you got me probably a
12    lot of the way.  But on the fact that the Secretary
13    still refuses to give this organization the
14    documents they're giving to other people, it seems
15    to me that that request is still alive and well and
16    needs to be resolved.
17            MS. SCHREMMER:  And in those denials, Your
18    Honor, it did say:  We will abide by the outcome of
19    this litigation.  So those denials are tied up with
20    there being a live pending dispute that we expect
21    resolution on, and the lack of clarity that --
22    perhaps we got some more clarity and perhaps we can
23    get this worked out about whether VRF would, at some
24    intermediate point before final judgment and final
25    resolution of those issues, go live with New Mexico

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    voter data again.

2           This is not in any way a quote/unquote

3    forever ban on providing VRF information.  This is

4    wanting to make sure that New Mexico's

5    regulations --

6           THE COURT:  It feels like it's a permanent

7    ban on this one organization.  There doesn't seem to

8    be any daylight at the end of the tunnel saying:

9    You're going to get this information.  They're

10   always going to believe what they believe, and

11   you're always going to distrust them.  But the

12   bottom line is, if they're willing to sign that

13   affidavit like everybody else, arguably it's for the

14   fact finder; you make your arguments that it's

15   conditioned by the letter.  They make their

16   arguments that, no, it's not.  The fact finder has

17   to determine whether that distinction is one that

18   didn't constitute viewpoint or content

19   discrimination or it does.

20          MS. SCHREMMER:  And that may be, but that

21   would only cover the period between now and a final

22   resolution of this case.

23          THE COURT:  Well, I'm not sure.  I mean,

24   if it's a permanent injunction, then it's ongoing.

25   You've got to give them the information regardless

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1   of their beliefs.

2            MS. SCHREMMER:  Right.  And of course, we

3   will abide by whatever the final ruling of the case

4   is.  But in terms of the determination right now to

5   not give data, it's based on the belief and the

6   interpretation of the qualified promise that they

7   won't post, that they would at any intermediate

8   point post the data.  And so, for example, the data

9   went live again after this Court's preliminary

10  injunction ruling, even though there was only a very

11  narrow ruling that we could not prosecute the

12  behavior.  That was enough for VRF to take the data

13  live.

14           THE COURT:  But that was -- in my view,

15  that was totally different, because they didn't get

16  anything with the preliminary injunction.  They

17  already had it from Local Labs.  That was what went

18  online.

19           But here, we're talking about an

20  injunction that you can't continue to not give them

21  the same materials that you're giving other groups.

22           MS. SCHREMMER:  And to us it's not

23  about --

24           THE COURT:  That part seems to me to be

25  still alive.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. SCHREMMER:  And to us it's not about

2     their possession of the materials.  It's about the

3     posting online.  So whether the data was old or new

4     when they put it back on the internet after the

5     preliminary injunction --

6          THE COURT:  Just as a triable issue or

7     issue that has to be decided, I think there is

8     something left.

9          MS. SCHREMMER:  Well, I think that the

10    resolution of these other issues will fully resolve

11    this issue as well.  What we're looking for is to

12    make sure that New Mexico --

13         THE COURT:  Well, I'm not -- I mean, yes,

14    if I find viewpoint and content discrimination or if

15    the fact finder does that, then they would be

16    entitled to a PI, or a permanent injunction.  And,

17    if there is not viewpoint or content discrimination,

18    they wouldn't be entitled to it.

19         MS. SCHREMMER:  But that speaks to the

20    receipt of the data and the possession of the data.

21    And our driving concern is the publication of the

22    data.

23         And so, if we were in the universe right

24    now, where we knew that VRF was going to abide by

25    New Mexico law, which says you cannot post this on

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                    1-800-669-9492
                                                            e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    the internet, there would not be an issue.  But what

2    we have heard today is still that that is what they

3    wish to do with the data, because they believe that

4    law is unconstitutional, and that they're seeking

5    this Court to overturn that law based either on an

6    expanded First Amendment analysis, or on Obstacle

7    Preemption.

8           And so, we are obviously arguing against a

9    facial attack to that law.  We don't think there is

10   obstacle preemption.  And we don't think there is a

11   First Amendment right to post this data online.

12          And if we are then in a universe where VRF

13   has to abide by that constitutional regulation of

14   New Mexico State data, then the issue of providing

15   them the data evaporates.  Because again, it's not

16   their possession of their data, their analysis, or

17   the editorial comment on the data that concerns us.

18   That is not of concern.

19          What is of concern is the posting on the

20   internet of wholesale citizen information.

21          THE COURT:  Okay.  Thank you, Ms.

22   Schremmer.

23          Mr. Greim, I'll give you the last word on

24   overbreadth, vagueness.

25          MR. GREIM:  Your Honor, I don't think I

SANTA FE OFFICE                                                                MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    have anything more to say on those two points.

2           Just listening here, though, just to

3    respond to that last argument, I mean, I hope it has

4    been clear, we are not going to post the old data,

5    new data, any data unless we get a judgment saying

6    we can do such a thing.  We've said it over and over

7    again.  And I feel like we're in some sort of a

8    nightmare where I don't when we'll ever -- I'm

9    afraid the Court is going to have to enter a

10   decision on the viewpoint discrimination piece if it

11   doesn't believe the MVRA applies.  Because I don't

12   know how we'll ever get this again.

13          I mean, I'm just going to rely on the

14   materials in the motion.  We've quoted what they

15   said at question, when I asked the same questions.

16   And I'm telling you now:  We are not going to post

17   it without a court order.  And they'd say, well, But

18   you posted it before.

19          And I said, Well, we've got a court order

20   from the judge saying we'd not be in trouble for the

21   old data.  And that's all we posted.  Well, still

22   wasn't good enough.

23          So, Your Honor, this really doesn't go to

24   overbreadth or vagueness, really goes to viewpoint

25   discrimination.  But, I mean, we believe we're



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                      1-800-669-9492
                                            e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   entitled to judgment on all the other points as
 2   well.  But certainly, I mean, we will have spent all
 3   this time without a decision on these new points.
 4   And we'll never know when we'll get the data again.
 5   Maybe we'll have to form a new organization, and
 6   have them request.  But then they can't share with
 7   us.  So we're stuck, and we need federal court
 8   intervention, and we need a decision from this
 9   Court.
10              THE COURT:  All right.  Thank you, Mr.
11   Greim.
12              Ms. Schremmer, I chopped up your motion.
13   Anything else you want to say on your motion for
14   summary judgment?
15              MS. SCHREMMER:  Not unless Your Honor has
16   questions.
17              THE COURT:  All right.  And I chopped
18   yours up, Mr. Greim.  Anything else you want to say
19   on your motion or the State's motion?
20              MR. GREIM:  No, Your Honor.
21              THE COURT:  Let's talk a little bit about
22   the mechanics here.  You can tell I'm hung up on
23   this, but that's because I've got to put out a
24   product for you.  So help me out.  It seems to me
25   we've kind of shaken down to where there are some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    real big legal issues I've got to decide.  And

2    those, I think I can do in a normal summary judgment

3    way.

4              But I am concerned about using the summary

5    judgment device to determine whether, A, they have

6    conditioned their affidavit in some way.

7              And I'm also concerned about using the

8    summary judgment device to decide whether the

9    Secretary engaged in viewpoint discrimination or

10   content discrimination.

11             Would the parties entertain -- rather than

12   having a trial, that on those issues the Court makes

13   factual findings; that the record here be considered

14   the trial for that, and I make factual findings on

15   it.  Or do you want to come back, if I feel like,

16   after I write the opinion, if I'm still

17   uncomfortable with deciding that as a summary

18   judgment issue, asking you to come back for a bench

19   trial?  What's your thoughts, Mr. Greim?

20             MR. GREIM:  Your Honor, we love the food

21   and the weather on our visits here.  But we would

22   really prefer to treat this as if it had been our

23   trial.  The Court, remember, under -- I'm going to

24   miss my rule citation -- can use the evidence it

25   already heard from live witness testimony at the PI

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                        1-800-669-9492
                 BEAN
                 & ASSOCIATES, Inc.
                 PROFESSIONAL COURT
                 REPORTING SERVICE
                                          e-mail: info@litsupport.com

```
 1    hearing, much of which is recited here.
 2              But we would be willing to stipulate that
 3    all of the citations that have been put in these
 4    voluminous papers and exhibits, and everything like
 5    that, you know, should be treated as the testimony
 6    of those witnesses.  And objections that are made in
 7    the paper are made to you as they would be at trial.
 8    But we would strongly prefer that, especially given
 9    the extreme cost of just repetitive litigation.
10              THE COURT:  What's your thoughts, Ms.
11    Schremmer?
12              MS. SCHREMMER:  Your Honor, I need to
13    speak to my client about that.  I do see the appeal
14    of it.  But to the extent the thing that we're
15    talking about is the Court's feeling that there is
16    some fact dispute or some credibility issue, we may
17    be entitled to put on live witness testimony on
18    those points.  Otherwise, they would be ordinary
19    summary judgment findings.
20              I do take Mr. Greim's point, and I would
21    ask the opportunity to talk to my client.
22              THE COURT:  Well, think about it.  And I'm
23    not advocating it.  I'm just trying to figure out a
24    way to be as efficient as possible.
25              Because what I'm afraid of is, even though
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    y'all filed cross-motions for summary judgment, if I
2    go back and really work and put together an opinion,
3    I'll answer some questions for you -- there is no
4    doubt about it -- but it may be unsatisfactory in
5    the sense that I ultimately end up saying there is a
6    factual issue here, and I feel uncomfortable saying
7    there is not a genuine issue of material fact, even
8    though both sides say that.  I do think that there
9    is a big factual issue as to whether the affidavit
10   with the letter attached complies with the statute.
11   Because that's the linchpin, I think, of the
12   discrimination that's alleged to have taken place.
13            So somebody has got to make that call.
14   And I'm not sure y'all agree on that.  It looks to
15   me like y'all have a disagreement on that.
16            And then the same thing about, you know,
17   then -- even if it is the same response that
18   everybody else is giving, did the Secretary engage
19   in any viewpoint or content discrimination.  You're
20   not going to agree to that and they're not going to
21   agree to that.
22            So those are two big issues it seems to me
23   I can work on this, and it will answer some
24   questions, and it will get us down the road.  But I
25   think, ultimately, it's not going to resolve the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    case.

2            So, yeah, go ahead.

3            MR. GREIM:  Your Honor, if I could, just

4    to drill down a bit further.  I mean, I think you

5    might recall that Ms. Vigil and Ms. Pino testified

6    live to the Court.  And we did go back and depose

7    Ms. Vigil as part of a 30(b)(6).  And then we

8    deposed Mr. Curtas and Mr. Rockstrum, the computer

9    technician.  But on those issues there is no -- I

10   mean, no one is arguing about, you know, one witness

11   contradicting the other or anything like that.  We

12   don't have those --

13           THE COURT:  Let's say this was a trucking

14   case, and there wasn't a fact at all.  We'd still

15   ask that jury to say:  Is that negligent?  Is that

16   unreasonable?  And I guess I'm feeling like this

17   ultimate factual issue I've still got to make the

18   call.  And I'm not sure the summary judgment device

19   is the way to do it.  I think the way to do it is

20   making a factual finding.  That's just my thought.

21   I mean, I hear what you're saying.  I mean -- and

22   this happens, you know, everything is undisputed,

23   but somebody has got to make a call, and that's

24   still a factual call.  It's not a legal call.  It's

25   a factual one.  That's my thoughts.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. GREIM:  Your Honor, if we may, if the

2    Court feels that way after -- I know there is going

3    to be a process of lining things up and looking at

4    the testimony, and then deciding whether a

5    reasonable fact finder could come out the other way,

6    applying Rule 56.  I mean, I just want to

7    reiterate -- we would be very happy to do this

8    without calling all these people back in here again.

9          THE COURT:  Well, and I think y'all can

10   probably agree to some procedure:  Say, here's the

11   record.  The State may have an interest in calling a

12   few, if they want to go to supplement the record.

13   But I think probably, if everybody wants to at least

14   streamline the trial, y'all can probably figure

15   out -- you've got two boxes of information.  You've

16   got the PI record, and now you've got this.  You can

17   merge them, or you can pick one over the other or

18   something like that.

19          Ms. Schremmer?

20          MS. SCHREMMER:  One of the issues we may

21   have, Your Honor, is that VRF, obviously, deposed

22   our witnesses, but we didn't depose our witnesses,

23   you know, heading toward trial.  These were not

24   trial depositions.  And so the opportunity to

25   solicit testimony from our own witnesses is the main

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                 1-800-669-9492
                                                         e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   issue that I'm kind of concerned we'd be losing if

 2   we're at a trial sort of determination.

 3            THE COURT:  I hear what you're saying,

 4   you're exactly right.  But my impression was you

 5   kind of -- you got your sworn testimony out in your

 6   motion for summary judgment in one form or another

 7   to support your case.

 8            MS. SCHREMMER:  That's probably true as to

 9   most issues.  Today has been clarifying in terms of

10   kind of this issue of the qualified promise, and

11   how, you know, we have interpreted it and our

12   client's, on advice of counsel, have interpreted it

13   is obviously different than what we heard on the

14   stand today, and that's probably a conversation that

15   we can have.  Because I think today was the least

16   qualified promise that we have heard so far.

17            But that's kind of an issue that concerns

18   me, and that our folks have not had an opportunity

19   to testify about, or be heard about.

20            But, again, I'll talk to my client and

21   talk to Mr. Greim and see what we can maybe figure

22   out.  Nobody is interested in wasting time or money,

23   for sure.

24            THE COURT:  Well, if the State were to

25   say, you know:  Here's the data.  We've got enough

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   assurances from you in federal court and with the

2   clarifications, all this has made us comfortable

3   enough to give, what then would really need to be

4   decided here?

5            MR. GREIM:  Well, Your Honor, I mean,

6   we --

7            THE COURT:  If they start giving you

8   information, doesn't that kind of gut out your PI?

9   I know you've got those legal issues.  I can't run

10  away from those.  I'm not trying to run away from

11  anything.  I'll do what I've got to do.  But it

12  would gut your PI, unless I was willing to give you

13  access under the MVRA or find the statute

14  unconstitutional.  And those wouldn't require any

15  sort of trial, would they?

16           MR. GREIM:  Well, Your Honor, I have --

17           THE COURT:  Let's say they sent you a box

18  of documents tonight and said:  We're satisfied.

19  You told that federal judge, you know, what you

20  said, and with the letter and stuff, we've got a

21  good position.  Here's your box of documents.  You

22  can tell how old I am talking about sending boxes of

23  documents.  So why, then, would you need -- if this

24  is not a damage action, why would we need to

25  establish that what the Secretary did in the past

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1   was viewpoint discrimination or content

2   discrimination?

3          MR. GREIM:  Well, Your Honor -- and this

4   is what we call the kind of rope-a-dope situation

5   that often happens in 1983 cases, where you have to

6   pour all this effort in over an extended period of

7   time, and then everybody kind of hears what the

8   court has to say, and then someone says, you know, I

9   only now really understood your position.  I'm

10  sorry, this was all just a miscommunication.  Here

11  you go.

12         THE COURT:  Well, I know.  But they also

13  can maybe see the writing on the wall, too, and say:

14  Why are we fighting this?  And we've got the

15  assurance that we need.

16         MR. GREIM:  So, Your Honor, that's the

17  Voluntary Cessation Doctrine we'd be in at that

18  point.  I mean, our view is -- and I think we could

19  cite authority on this -- although, I wasn't really

20  prepared for this today -- that a defendant doesn't

21  get to come in and claim to have seen the light, and

22  they usually say that there is something new they've

23  learned, or something like that, and then avoid all

24  the consequences of having fought the thing the

25  entire way through.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                            (505) 843-9494
FAX (505) 843-9492                                                                 FAX (505) 843-9492
                                                                                              1-800-669-9492
                                                                                  e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  But what are the consequences?
 2              MR. GREIM:  Well, the consequences are our
 3    fees, for one thing, under a 1983 claim, which have
 4    been substantial.  I mean --
 5              THE COURT:  But there is doctrines on
 6    that.  If something happens in the middle of a trial
 7    and it's a cessation of the allegedly unlawful
 8    activity, my memory is you can still make a claim
 9    for fees.
10              MR. GREIM:  And we might.  I mean, that's
11    what I'm getting to.  My May letter -- you know,
12    we've heard all these different reasons why it can't
13    be granted, and something I've said today sounds
14    better, but maybe it's not all the way there yet.  I
15    have no idea what that could be.
16              THE COURT:  Well, Ms. Schremmer is the one
17    to speak to this, but, you know, when you stand up
18    in federal court, and you're a national lawyer, you
19    go all around, and you make a representation, you
20    can kind of take that to the bank.
21              MR. GREIM:  Well, Your Honor, I mean, I
22    made that representation in May, and then I used it
23    as an exhibit in front of the Court.  Then I argued
24    it again at our stay hearing -- although I wasn't
25    present, you let us go through Zoom.  I've been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   saying it until I'm blue in the face, all through
 2   the briefing.  I mean, I take all that just as
 3   seriously as standing here --
 4           THE COURT:  Here's the thing that --
 5   again, Ms. Schremmer should be making her own
 6   arguments instead of me -- but here's the thing, I
 7   think, has really changed is the legislature has now
 8   prohibited you, and you've agreed that, unless I
 9   come up with a First Amendment right to publish this
10   stuff, you know, there is not a possibility of it
11   being published in New Mexico.
12           I'll have to decide those issues.  I can't
13   run away from those issues.  But I do think that has
14   changed somewhat, perhaps, the calculus of the State
15   in this case.
16           MR. GREIM:  Your Honor, I'll say this:  In
17   every case -- I mean, you have to say this in front
18   of a judge; right?  I mean it -- we are always
19   willing to entertain any sort of an offer.  But it
20   can't leave us being in exactly the same position we
21   would have been, had they complied with things a
22   year ago, and we've just incurred all these fees,
23   some of which were incurred on other theories.  I
24   mean, that's part of the issue, too.
25           So I think I'll leave it there, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Honor.

2            THE COURT:  Okay.  Well, I can't work all

3    this out.  That's going to depend -- you know, you

4    may never go away without a PI, and you may never be

5    willing to give them documents.  So that I can't --

6    that's just my job.  I'll have to decide those

7    issues.

8            The one thing, though, I really need is

9    that MVRA box.  You've got to really tell me:  Okay,

10   Judge, you're buying our argument, what's in that

11   box.  And be exhaustive.  Because that's the kind of

12   stuff they may ask for.  And, you know, your

13   representations here about this is the universe of

14   stuff we would produce under the MVRA.  Unless I'm

15   missing something, they can take that stuff, put it

16   all over the internet.  Because once it's produced

17   by the -- under the umbrella of the MVRA, that's

18   just how you go about your work.  And I'm putting

19   aside the voter list and things like that.  But I'll

20   need that.

21           All right.  Well, I will try to get this

22   as soon as possible.  Be patient with me.  There is

23   a lot of stuff here.  But I'll try to start work on

24   it and get it out to you.

25           Obviously, you know, I don't watch the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    Tenth Circuit stuff very much.  I've got enough
 2    problems watching what I have in front of me without
 3    watching the cases that have gone up to the Tenth
 4    Circuit.  Occasionally, I'll get a clerk that is
 5    interested in finding out what's happening.  But
 6    it's not something that I always do.  Obviously, if
 7    they come out with a big opinion, it will be on
 8    CM/ECF, and I'll know it that day.  But if there are
 9    some developments, you might keep me posted; it
10    might or might not --
11              When is our trial date?  I know it got
12    pushed forward.  Is it September?
13              MS. SCHREMMER:  Yes, Your Honor.
14              THE COURT:  Do you want to keep that on
15    and keep my feet to the fire?  Yes, that's what the
16    plaintiffs want to do.  So I've got a lot of stuff
17    to get out.  Is it like September 4th or --
18              MS. SCHREMMER:  The 11th.
19              THE COURT:  It's the following week.  So
20    it's the week after Labor Day.  It's going to be
21    tight.  It's going to be real tight, given what
22    else -- you know, how it works in federal court.  I
23    change clerks that Labor Day weekend.  So we've got
24    to get some stuff out of their head on paper in some
25    other cases, and it just may be tough.  So think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    about it.  But we'll keep it in place until y'all

 2    tell me otherwise.  And if need be, I'll -- as I

 3    often have to do -- just give you sort of a cheat

 4    sheet opinion, telling you:  Here's the rulings, and

 5    I'll follow it up with an opinion, and then here's

 6    the trial.  So I think it's probably good to keep it

 7    if place.

 8              All right.  Anything else we need to

 9    discuss while we're together?  Anything else I can

10    do for you, Mr. Greim?

11              MR. GREIM:  No, Your Honor.  Thank you for

12    all your time here.

13              THE COURT:  Mr. Harrison, you want to

14    enter an appearance?  You've been there for a while.

15    Do you want to formally enter an appearance?

16              MR. HARRISON:  Yes, Your Honor, Carter

17    Harrison.

18              THE COURT:  Mr. Harrison, good morning to

19    you.

20              Anything else from the defendant, Ms.

21    Schremmer?

22              MS. SCHREMMER:  No, Your Honor.

23              THE COURT:  All right.  Appreciate y'all's

24    presentations and hard work.  Be safe on your

25    travels.  And I'll try to get something out to you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   as soon as possible.

2           MR. GREIM:   Thank you.

3           MS. SCHREMMER:   Thank you.

4           (The Court was adjourned.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                         C-E-R-T-I-F-I-C-A-T-E

2

3        UNITED STATES OF AMERICA

4        DISTRICT OF NEW MEXICO

5

6

7                 I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8        Official Court Reporter for the State of New Mexico,

9        do hereby certify that the foregoing pages

10       constitute a true transcript of proceedings had

11       before the said Court, held in the District of New

12       Mexico, in the matter therein stated.

13            In testimony whereof, I have hereunto set my

14       hand on July 14, 2023.

15

16

17

18       _____
         Jennifer Bean, FAPR, RMR-RDR-CCR
19       Certified Realtime Reporter

20       NM CCR #94
         333 Lomas, Northwest
21       Albuquerque, New Mexico 87102
         Phone:   (505) 348-2283
22       Fax:     (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com