## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**VOTER REFERENCE FOUNDATION, LLC,**

      **Plaintiff,**

**v.**                                                  **Case No. 1:22-cv-00222-JB-KK**

**RAÚL TORREZ, in his official capacity as New Mexico Attorney General;**

**and**

**MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,**

      **Defendants.**

## DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Defendants, by and through undersigned counsel, hereby respond to Plaintiff Voter Reference Foundation, LLC's *Second Supplemental Brief On The Parties' Cross-Motions For Summary Judgment*.

Two questions get to the thrust of the present litigation: 1) Did Congress intend to preempt all state protections for the privacy of voters and protection of voter rolls by enacting a statute that merely references programs and activities surrounding those voter rolls? And 2) may a state condition its access to voter rolls upon a guarantee by the requester that the requester will not use the data for improper purposes, nor make it available to others who have not provided the state the same guarantee? Through its numerous requests and subsequent pleadings during the pendency of this litigation, Plaintiff has attempted to muddy the waters and perform "gotcha" litigation. Defendants' position throughout this case has remained consistent and abundantly clear: New

Mexico has the compelling interest of protecting the privacy of its citizens who choose to register to vote and the state Election Code is tailored to meet that objective while still providing access to voter rolls.  Further, this position reflects the interpretation of the National Voter Registration Act ("NVRA") that Defendants have taken throughout this litigation: That the NVRA does not create an unqualified right of access to state voter data in total.

## DEFENDANTS' RESPONSES TO PLAINTIFF'S SUPPLEMENTAL STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

SSS.   Controverted.  The cited material is incomplete and misleading and the citation is incorrect (49:9-13 should be 48:9-13).  The representations from Defendants' counsel made clear that the issue was Plaintiff's failure to comply with the Election Code by submitting an affidavit with impermissible qualifications attached thereto.  *See* Transcript of June 14, 2023 Hearing on Parties' Motion for Summary Judgment [Doc. 157] at 71:15-25.

TTT.   Uncontroverted.

UUU.   Uncontroverted.

VVV.   Uncontroverted, but immaterial.  Requests for records under the New Mexico Inspection of Public Records Act do not require affidavits.  *See* NMSA 1978, § 14-2-8 (2009).

WWW.   Uncontroverted, but immaterial.  Requests for records under the New Mexico Inspection of Public Records Act do not require attestations that a requestor of records will not publish the requested records.  *See id.*

XXX.   Uncontroverted.

YYY.   Uncontroverted.

ZZZ.   Controverted to the extent that Plaintiff characterizes Defendants' *Supplemental Briefing on National Voter Registration Act Records* ("Defendants' NVRA Brief")

as being limited to a listing of nine categories. The Court asked at the June 14, 2023 hearing that Defendants supply the Court with an "exhaustive" list of the types of records that are required to be produced by the NVRA. Defendants brief was organized to reflect nine categories of documents that could be interpreted "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (the inspection provision of the NVRA). Under these categories, Defendants included the specific records that would be available to an individual requesting to inspect such records. *See* [Doc. 133] at 2-6. This Court did not request the exact, individual records in the Secretary's possession responsive to the NVRA be individually identified.

AAAA.     Controverted. Plaintiff characterizes its May 27, 2022 request as strictly a request under the NVRA. However, the request was accompanied by an affidavit swearing to abide by restrictions placed upon use of voter data as a condition of receiving voter data. That Plaintiff characterizes the request as performed pursuant to the NVRA is immaterial because the request met the requirements for receiving voter data under New Mexico law. Thus, it is not inconsistent with Defendants' position in this litigation that Defendants' NVRA Brief did not identify the voter data produced pursuant to Plaintiff's May 27, 2022 request.

BBBB.     Uncontroverted, but immaterial.

CCCC.     Uncontroverted.

DDDD.     Uncontroverted.

EEEE.     Uncontroverted that Plaintiff filed a response to Defendants' NVRA Brief on July 7, 2023.

FFFF.     Uncontroverted.

GGGG.     Uncontroverted.

HHHH.        Uncontroverted.

IIII.        Uncontroverted.

JJJJ.        Uncontroverted.

KKKK.        Uncontroverted.

MMMM.        Controverted to the extent that Plaintiff implies the invoice was all that accompanied the letter cited at Plaintiff's Fact KKKK (styled as Ex. P40).  The email from Mr. Allen to Plaintiff's counsel additionally included a link to New Mexico Department of Information Technology Kiteworks website, used for sharing large files of data, as well as instructions for accessing data through Kiteworks.  That link contained spreadsheets responsive to Plaintiff's May 27, 2022 request.  Plaintiff has therefore had access to the data since August 30, 2023.

NNNN.        Uncontroverted that Plaintiff sent a responsive letter on September 5, 2023. Defendants controvert this fact to the extent that it implies that Defendants August 30, 2023 letter suggested new statements.  The statements made by Plaintiff's counsel—which provided greater assurances to Defendants by nature of making them in the presence of the Court—did retract qualifications placed upon language accompanying previous requests for data.  *See* [Doc. 157] at 121:10-14.

OOOO.        Controverted to the extent that Plaintiff implies voter data was not provided in conjunction with Defendants' August 30, 2023 letter.  Further controverted to the extent that Plaintiff implies the voter data was fulfilled pursuant to the NVRA.  Plaintiff's May 27, 2022 request was made pursuant to both the National Voter Registration Act, as well as the New Mexico Election Code.  The documents were produced pursuant to NMSA 1978, § 1-4-5.5. Uncontroverted that Defendants did not respond to Plaintiff's September 5, 2023 letter.

**DEFENDANTS' SUPPLEMENTAL STATEMENT OF ADDITIONAL MATERIAL**

**FACTS**

PPPP.        Plaintiff submitted a request for voter data on May 27, 2022 (the "May 2022 Request," attached as **Exhibit 1** hereto).

QQQQ.        Per the letter from Plaintiff's counsel outlining the May 2022 Request, the request was made under both the NVRA's public inspection provision, 52 U.S.C. § 20507(i), as well as the New Mexico Election Code, NMSA 1978, § 1-4-5.5.

RRRR.        Accompanying the May 2022 Request was the affidavit required by the Office of the Secretary of State for voter data requests.

SSSS.        Plaintiff submitted a request for voter data on October 18, 2022 (the "October 2022 Request," attached as **Exhibit 2** hereto).

TTTT.        Per the letter from Plaintiff outlining the October 2022 Request, the request was made under the NVRA's public inspection provision and the New Mexico Inspection of Public Records Act ("IPRA"), NMSA 1978, §§ 14-2-1 through -12.

UUUU.        No affidavit was provided accompanying the October 2022 Request.

VVVV.        Plaintiff submitted a request for records on June 15, 2023 (the "June 2023 Request," attached as **Exhibit 3** hereto).

WWWW.        The June 2023 Request did not contain a request for voter data.

XXXX.        Per the letter from Plaintiff's counsel outlining the June 2023 Request, the request was made under IPRA.

YYYY.        No affidavit was provided accompanying the June 2023 Request.

ZZZZ.        Plaintiff filed a request for voter data on October 11, 2023 (the "October 2023 Request," attached as **Exhibit 4** hereto).

AAAAA.        Per the letter from Plaintiff's counsel outlining the October 2023 Request, the request was made solely under the NVRA.

BBBBB.        No affidavit was provided accompanying the October 2023 Request.

For the purposes of this pleading, the above four requests are the requests that are legally relevant to the Court's decision on summary judgment.  Particular attention should be paid to the object of each request, the laws under which each request was nominally performed, and whether the request was accompanied by an affidavit.

**ARGUMENT**

**Defendant Toulouse Oliver's Responses to the Requests Consistently Apply the Same Positions Taken in this Litigation**

Contrary to Plaintiff's assertions, Defendant's responses to these requests do not create inconsistencies.  Rather, they reaffirm the positions that Defendants have consistently taken throughout this litigation: The NVRA does not create an unqualified right of access to voter data in total; New Mexico has lawfully conditioned its access to data based upon an agreement to refrain from sharing or publishing that data; and the NVRA provides access to records concerning the implementation of programs and activities relating to voter registration.

The May 2022 Request sought voter data concerning voters who had participated in the November 2020 general election and were subsequently "placed in an inactive canceled, deleted, removed (or any registration status other than active) status" between November 3, 2020 and April 13, 2021. **Exh. 1**.  Additionally, the request sought current voter registration for all active, inactive, suspended, and cancelled status voters.  **Id.** The May 2022 Request was made pursuant to both the NVRA and New Mexico Election Code.  Regardless of Plaintiff's characterization, the request

sought material that was squarely within the bounds of the New Mexico Election Code and thus unambiguously a nominally lawful request for data under state statutes.

Plaintiff is correct that, after the June 14, 2023 hearing before the Court on the parties' cross Motions for Summary Judgment, Defendants reconsidered their stance of declining to fulfill voter data requests during the pendency of the litigation.  The previous basis for leaving such requests unfulfilled during litigation was that Defendants believed Plaintiff would publish the data to which it had access.  The assurances from Plaintiff preceding the Summary Judgment Hearing did not preclude publication of any voter data absent a favorable final judgment.  Rather, Plaintiff stated that publication would occur merely if "VRF is granted relief in the federal litigation or in any other legal proceeding."  **Exh. 1**. This language was further reiterated in subsequent answers to discovery requests.  *See* **Plaintiff's Response to Request for Admission No. 4.**  Indeed, Defendants interpretation of that slippery phrasing proved prudent—not more than a week after the Court issued its preliminary injunction Order did Plaintiff have the New Mexico voter data live on its website again after claiming "victory" in a press release.  That Order did not provide final resolution that New Mexico's statutory structure was unlawful, nor that the state could not condition access to voter data upon agreement not to publish or share the data.  *See* [Doc. 51].  The Order merely prohibited prosecution against Plaintiff for publication of the data that it had in its possession from before the litigation was initiated.  *See id.*  Had Defendants provided data in answer to Plaintiff's requests at the time, there is little doubt that it would have been published as well, thereby stripping the privacy of the additional New Mexican voters who had registered in the intervening months.

Following the Motion for Summary Judgment hearing, Defendants reversed this declination.  Based upon Plaintiff's counsel's assurances—and those being made in open court on

the record—Defendants felt more confident with providing voter data despite the qualifications Plaintiff appended to their requisite affidavit.  With respect to Plaintiff's other two requests for voter data—the October 2022 Request and the October 2023 Request—Defendants have not as of yet provided data in answer to these requests.  Similar to the May 2022 Request, Defendants are willing to provide data.  However, neither request was accompanied by the requisite affidavit foreswearing improper use.  At such point in time that Defendants receive the affidavits for both requests, the data will be provided to Plaintiff.

The final request—the June 2023 Request—sought records rather than voter data.  Specifically, among other line items, the request sought "[a]ll records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  The language of this request directly reflects that of the public inspection provision of the NVRA.  *See* 52 U.S.C. § 20507(i), though the request was made under IPRA.  In response to this extraordinarily broad request, the Secretary has produced over 1300 responsive pages worth of records.  Incidentally, some of those records, legitimately within the scope of both the NVRA and IPRA, contained discrete amounts of voter data.  Specifically, Plaintiff points to cancellation lists or "purge lists," as created under NMSA 1978, Sec. 1-4-28.  These "purge lists" are lists of voters that are no longer eligible to vote and are required to be created under the NVRA.  *See* NMSA 1978, § 1-4-28.  As a report of the county boards of registration, "purge lists" are specifically subject to IPRA.  *See* NMSA 1978, § 1-4-38(B) ("All reports and other records of the board of registration shall be open to public inspection pursuant to the Inspection of Public Records Act.").  Because neither IPRA nor the NVRA compel the Secretary to procure an affidavit prior to production, it is immaterial that the Secretary did not require an affidavit in order to obtain these records.  *Compare* NMSA 1978, § 14-2-8 *and* 52

U.S.C. § 20507(i) *with* NMSA 1978, § 1-4-5.5(C) (requiring a requester of voter data to sign an affidavit swearing that requested data will not be shared or made available for unlawful purposes). Here, the request was not a request for voter data. Rather, it was a request for records that incidentally included discrete amounts of voter data, such as purge lists. Because these records were responsive and governed by IPRA, no such affidavit could be interposed as a condition preceding their conveyance to Plaintiff.

The Secretary's responses to these requests constitute a consistent position and interpretation of law.

## I.      Plaintiff's Claim of Viewpoint Discrimination and First Amendment Retaliation Are Moot Under *Ex Parte Young*

Because the requested voter data has been conveyed to plaintiff, there exists no prospective relief that this Court could award to plaintiff with respect to its claims for viewpoint discrimination and First Amendment retaliation. Under the principle announced by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), claims against a state official may be brought that seek prospective relief for an ongoing violation of federal law. Because the requested data has been conveyed, Plaintiff has no additional prospective relief available.

"Under the Eleventh Amendment, States are generally immune from suits brought in federal court by their own citizens, by citizens of other states, by foreign sovereigns and by Indian tribes." *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010). However, "under *Ex Parte Young*, a plaintiff may bring a suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir.

2012).  "[T]he Eleventh Amendment does not apply to suits against a state officer in his official capacity seeking only prospective relief[.]"  *Chamber of Com. of U.S.*, 594 F.3d at 760.

Here, because Defendants have ultimately provided data in answer to Plaintiff's lone lawful request for voter data, Plaintiff has no prospective relief.  If the Court adopts Defendants' interpretation of the NVRA, Plaintiff has no claim that Defendants conduct is ongoing and subject to injunctive relief moving forward.  The other requests are insufficient under New Mexico law and may be properly declined until such point in time as Plaintiff provides affidavits.  While Defendants disagree with the characterization that they were engaged in viewpoint discrimination and retaliation based upon protected speech, *see* [Doc. 121] 121 at 33-45, absent the ongoing issue raised by Defendants withholding voter data, there is no prospective relief available to Plaintiff.

## CONCLUSION

For the foregoing reasons, and those reasons previously submitted to this Court, Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment and grant Defendants' Motion for Summary Judgment.  Defendants additionally request all such further relief as the Court deems just and proper.

Respectfully Submitted,

By:  */s/Jeff D. Herrera*
Mark W. Allen
Jeffrey D. Herrera
Assistant Attorneys General
Office of the New Mexico Attorney General
408 Galisteo St
Santa Fe, NM 87501
Tel.: (505) 490-4060
Fax: (505) 490-4881

mallen@nmag.gov
jherrera@nmag.gov

***Counsel for Defendants New Mexico Attorney
General Raúl Torrez and New Mexico Secretary of
State Maggie Toulouse Oliver***


## CERTIFICATE OF SERVICE

On October 13, 2023 I filed the foregoing document through the Court's CM/ECF

system, which caused all parties or counsel of record to be served by electronic means, as more

fully reflected on the Notice of Electronic Filing.

                                        */s/ Mark W. Allen*

                                        Mark W. Allen