# *VOTER REFERENCE FOUNDATION V. RAUL TORREZ AND MAGGIE TOULOUSE OLIVER*

## 1:12-CV-00222-JB-KK





THE NVRA'S PUBLIC INSPECTION PROVISION

- Requires states to make available "…all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters…"

  52 U.S.C. § 20507(i)(1)

- "The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made."

  52 U.S.C. § 20507(i)(2)

  Part 2 necessarily includes "voter data"



THE NVRA'S PUBLIC INSPECTION PROVISION

- Congress aimed both to expand voter registration and to protect the integrity of the electoral process. *See* 52 U.S.C. 20501(b).

- "Disclosure is necessary to determine whether those who are eligible to vote have been registered and remain on the rolls, but voter data must then be used and circulated to the broader public if voter registration is ever to be increased as a result."

  - *See* Voter Registration: Hearing Held Before the Subcomm. on Elections of the H. Comm. on Admin., 103rd Cong., 1st Sess. 111 (1993) (statement of Edward A. Hailes, Counsel, Wash. Bur., NAACP) (praising inclusion of Section 8(i) in draft NVRA because "[t]hese records could be used to identify and assist voters ensnared in a state of voting rights uncertainty").

- "It is self-evident that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012)



INDIVIDUALIZED VOTER DATA ARE NVRA "RECORDS"

- New Mexico's registration and list-maintenance efforts are "programs" or "activities" under the NVRA

- Both federal and state law require New Mexico to:
  - Make ongoing, continuous efforts to verify applicants' eligibility to vote
  - Register eligible voters in its central voter database
  - Revise its voter registration records
  - Remove ineligible voters from its voter rolls

- All of these efforts are memorialized in the voter list or database
  - Voter information
  - Voter history
  - Changes, deletions, etc.



- *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, (4th Cir. 2012)
    - Voter registration applications, including the voter data included in them

- *Judicial Watch, Inc. v. Lamone*, 399 F.Supp.3d 425 (D. Md. 2019)
    - Database, complete voter registration lists by county, including: name, home address, most recent voter activity, status (active or inactive)

- *Pub. Int. Legal Found., Inc. v. Bellows*, 588 F.Supp.3d 124 (D. Me. 2022)
    - Statewide voter registration list, including: name, residential and mailing address, date of birth, enrollment status, electoral district, voter status, date of registration, date of change of voter record (if applicable), voter participation history, voter record number and any applicable special designation)



COURTS
UNANIMOUSLY
AGREE
(CONTINUED)

- *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F.Supp.3d 932 (C.D. Ill. 2022)
  - Complete statewide voter registration list with the following redacted: telephone number, social security number, street number of home address, birthdate, identifiable portion of email address

- *Public Interest Legal Foundation, Inc., v. Griswold*, Slip Op., 2023 WL 6376706 (D. Colo. September 29, 2023) (Brimmer, J.)
  - On motion to dismiss, holding that NVRA PDP applies to lists of registrants removed from voter list, including "unique voter identification numbers, county or locality, full names, addresses, and dates of birth."



- **Notice of Supplemental Authority [ECF No. 137]**
  - "…the United States has an interest in ensuring that Section 8(i) is correctly construed and given its proper preemptive scope." Br. at 1

### THE NVRA REQUIRES THE SECRETARY TO DISCLOSE THE VOTER FILE

*A.*   *Section 8(i) Covers States' Voter Lists*

The district court correctly held that Section 8(i) applies to voter registration databases like the Voter File. The NVRA's language, structure, and purpose support this reading.

- Restrictions on publication of that data are preempted by the NVRA.



DEFENDANTS HAVE EVEN AGREED (AT TIMES)

- The Secretary would "have to provide voter list maintenance data when someone makes a request under the NVRA."
  - Vigil Depo., 30:15-19

- RFP 14 (JE29): "If the Secretary receives a request for information related to this data pursuant to the [NVRA], the Secretary's staff can run a response to that specific request from the raw data."

- Produced data in response to VRF's IPRA Request that tracked the language of § 20507(i)(1)
  - Supplemental SJ Briefing, ECF No. 155

5      this.  It sounds to me like in your penultimate

6      answer, you said, well, there are some requests

7      that come in for voter data under our state

8      law.  Then there are other requests that come

9      in under NVRA; you're viewing those as two

10     separate groups.  Do I understand you

11     correctly?

12  A.  I don't think they're always two separate

13      groups, but we do receive separate requests,

14      yes.

15  Q.  Okay.  Okay.  And you would agree that under

16      the NVRA, I mean, you have to provide voter

17      list maintenance data when someone makes a

18      request under the NVRA, correct?

19  A.  I agree.

Vigil Depo., 30:15-19



**REQUEST FOR PRODUCTION NO. 14:** Produce documents sufficient to show each type

of report, list, database, or document the Secretary maintains that contain voter data, including but

not limited to each type of document the Secretary contends it will produce if it receives a request

under the National Voter Registration Act.

**Response:**

*Voter Reference Foundation et. al. v. Raul Torrez, et al.,* Case No. 1:22-cv-00222-JB-KK
*Response to VRF Third Set of Discovery*
Page 14 of 18

The Secretary states that the only database in the Secretary's possession is the voter file they

maintain pursuant to statute; all registration or other updates are done at the county level. If the

Secretary receives a request for information related to this data pursuant to the National Voter

Registration Act, the Secretary's staff can run a report in response to that specific request from the

raw data. The Secretary is not in possession of any specific documents responsive to this request.

JE29





**STATE OF NEW MEXICO**

**MAGGIE TOULOUSE OLIVER**

SECRETARY OF STATE

August 22, 2023

Edward D. Greim
Graves Garrett LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
(816) 256-3181

Email: edgreim@gravesgarrett.com

**Re:    Records Request**

Mr. Greim:

On June 16, 2023, our office received your request, to inspect the following business records:

*"1. All requests the Secretary of State has received from any person for records which are available, or which the requestor claims must be made available, under the National Voter Registration Act.*
*(Please See attachment: PDF Responsive Item #1)*

*2. Any non-privileged communications pertaining to the requests identified in paragraph 1 above, including but not limited to any communications between the Secretary's Office and the requestor.*
*(Please See attachment: PDF Responsive Item #2)*

*3. All documents the Secretary of State has produced in response to any of the requests identified in response to paragraph 1, above.*
*(Please See attachment: PDF Responsive Item #3)*

*4. All records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."*
*(Please See attachment: PDF Responsive Item #4)*

Our office has provided nine hundred and twenty-eight (928) pages of records responsive to your request in four (4) separate PDF's. By disclosing this information, the Secretary of State has complied with the Inspection of Public Records Act and now considers your request fulfilled for items 1-3 on your IPRA request.

Should you have additional questions or concerns, please do not hesitate to contact our office at (505) 827-3600, option 2 or by email at ipra.elections@sos.nm.gov.

Respectfully,

*Cassie Salazar*

Cassie Salazar
Paralegal

JE38

Purge Inactive Voters

Number of Records:258



| Voter ID | Voter Name | Party | Gender | Registration Date | Residence Address | City | Source of Registration | Inactive Date | Last Voted | BoR Notes |
|----------|-----------|-------|--------|-------------------|-------------------|------|------------------------|---------------|------------|-----------|

**JE42: Excerpts from SOS 8-22-23 Production in Response to Item 4 of VRF 6-16-23 IPRA**

**NVRA Cancellation List of Inactive Voters**
**Date: 3/8/2023 9:58:30 AM**
**Number of Records: 937**

| Voter ID | Voter Name | Party | Gender | Status | Status Reason | Age | Registration Date | Residence Address | City | Inactive Date | Last Voted | BoR Notes |
|----------|-----------|-------|--------|--------|---------------|-----|-------------------|-------------------|------|---------------|------------|-----------|

**October 11, 2023: Subsequent Production of Unredacted Purge Lists**





DEFENDANTS' SUPPLEMENTAL NVRA BRIEF JUNE 30, 2023 [ECF NO. 133]

- At SJ hearing, Court directed Defendants to file exhaustive list of documents made available under their interpretation of the NVRA

- Identifies categories of documents:
  - List maintenance procedures
  - SOS voter cancelation program
  - Same-day registration
  - Automatic voter registration
  - Online voter registration
  - ERIC
  - Felon registration restoration
  - Voter registration Agencies
  - Voter registration Agents

- Defendants' filing does not identify *any* voter data, not even that listed under (i)(2)



- Obstacle Preemption:
  - A challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"

    *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)

- Presumption against preemption does not apply to statutes enacted under the Elections Clause, like the NVRA, which grants Congress "paramount" authority to override State law.

  *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013)

a.  Section 8(i) requires States to "make" covered records "available for public inspection and, where available, photocopying." 52 U.S.C. 20507(i)(1). This language plainly contemplates uniform disclosure.  It gives every member of the public a right to view and copy the same information upon request—a right they may enforce through litigation. 52 U.S.C. 20510(b).  States may not "condition[] that right * * * upon compliance with a rule" that "is inconsistent in both purpose and effect with the remedial objectives of the federal" statute. *Felder v. Casey*, 487 U.S. 131, 153 (1988).

**DOJ Amicus Brief in *Bellows***

Should this Court decline to certify, then the NVRA would partially preempt both the Use and Dissemination Bans as the district court interpreted them.  The NVRA preempts any condition on Section 8(i)'s disclosure right—including restrictions on using and disseminating voter data—when it would interfere with

- 7 -

the statute's purposes.  For similar reasons, Section 8(i) can be viewed as creating implied federal rights to use or disseminate the records it requires to be disclosed, when needed to fulfill the NVRA's purposes.  As interpreted by the district court, Maine's broad bans pose obstacles to fulfilling the NVRA's purposes and are preempted as to applications that conflict with those purposes.





COUNT II:
NVRA VIOLATIONS

- **VRF made three valid requests for voter data under the NVRA:**
  - February 15, 2022 (JE9)
  - May 27, 2022 (JE18)
  - October 18, 2022 (JE20)

- **Secretary did not respond to any of the requests**
  - Except recent response to May 27 request

- **VRF sent valid notice of the Secretary's NVRA violation on May 27, 2022 (JE20)**

| | 2/15/22 NVRA | 5/27/22 NVRA | 10/18/22 NVRA | 6/18/23 IPRA | 10/11/23 IPRA |
|---|---|---|---|---|---|
| Request | -Total count of registered voters who cast a ballot in the November 3, 2020, election, who have been subsequently placed in an inactive, canceled, deleted, removed (or any registration status other than active) or any voter that has been removed or deleted from the voter rolls | -Same as 2/15/22 request plus:<br><br>-"Current voter registration data, including voter history, for all active, inactive, suspended, and cancelled status voters (including any registration status other than active)." | - Data for all voters<br><br>- Records of total ballots cast in 11/8/22 election<br><br>- Data for all removed/canceled voters between 9/24/22-12/15/22<br><br>- Voter history/credit data for each voter<br><br>- Unique voter ID number for each voter | - All requests made under NVRA<br><br>-**"All records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."** | - Voter file for every person registered to vote as of 10/11/23<br><br>- Records of NVRA notices |
| Response | No response JE9: "Per Dylan's contact with the AG, we are not fulfilling records requests from VoteRef." | 6/16/22 (JE19): refused to provide data<br><br>8/30/23 (P1): Defs claim to offer data subject to promise not to post | 11/17/22 (JE20): refused to produce because online publication + no affidavits | Produced, among other things, county purge lists *including voter data* | Refused to produce data under NVRA without signed affidavit |

**STATE OF NEW MEXICO**
OFFICE OF THE ATTORNEY GENERAL



**RAÚL TORREZ**
**ATTORNEY GENERAL**

August 30, 2023

August 30, 2023
Proffered Production in
Response to VRF
May 27, 2022 Request
Ex. P1

Eddie D. Greim
Graves Garrett
1100 Main Street, Ste. 2700
Kansas City, MO 64105
edgreim@gravesgarrett.com

   In Re: *Voter Reference Foundation v. Torrez, et al.*

Dear Mr. Greim:

Please find enclosed the New Mexico voter data requested in VRF's previously executed affidavits, along with an invoice for the statutory voter data fees.

We are providing this data now because of statements made in Court at hearing on our respective Motions for Summary Judgment (*i.e.*, that VRF will not post New Mexico's voter data online except in the event of a final judgment stating that VRF has the right to do so and that New Mexico cannot lawfully prohibit it). We are satisfied that these statements retract the qualifications previously placed on VRF's use of voter data in its affidavits. The decision to provide this data was made by the Secretary's Office immediately following the Summary Judgment Hearing on June 14, 2023.  However, in the confusion occasioned by Kelsey Schremmer's departure, I failed to ensure this data was provided to you.

As the Secretary's Office has consistently maintained, it cannot provide voter data to VRF on conditions different than what New Mexico law requires of the Office and of all other requestors. This includes the requirement of an affidavit stating that the data will not be used in unlawful ways.  VRF's current stance— that it will not post the data unless a court says it can lawfully do so—is meaningfully different than its May 2022 stance—that it would not post the data unless a court said it wouldn't get in trouble when it did so. In light of the new statements, the Secretary's Office can lawfully provide the data requested in VRF's affidavits and is happy to do so.

If there is anything else you would like to discuss following the hearing, please don't hesitate to reach out.

          Sincerely,

          */s/ Mark W. Allen*
          Mark W. Allen





DEFENDANTS' RECENT PRODUCTION

## August 30, 2023 letter **does**:

- Finally proffer data responsive to VRF's May 27, 2022 request
- Misconstrue VRF's expressed position that it would not post voter data absent a court order
- Require VRF to agree to additional conditions no other requestor must agree to in order to get the Data

## August 30 letter **does not**:

- Grant access to all the data requested by VRF under the NVRA
- Concede VRF's right of access under the NVRA
- Moot or resolve NVRA claims

# DÉJÀ VU: "NEW PROMISES"
## JUNE 14, 2023 MSJ HEARING

11  THE COURT:  I think you got me probably a
12  lot of the way.  But on the fact that the Secretary
13  still refuses to give this organization the
14  documents they're giving to other people, it seems
15  to me that that request is still alive and well and
16  needs to be resolved.
17  MS. SCHREMMER:  And in those denials, Your
18  Honor, it did say:  We will abide by the outcome of
19  this litigation.  So those denials are tied up with
20  there being a live pending dispute that we expect
21  resolution on, and the lack of clarity that --
22  perhaps we got some more clarity and perhaps we can
23  get this worked out about whether VRF would, at some
24  intermediate point before final judgment and final
25  resolution of those issues, go live with New Mexico

130

1  voter data again.
2  This is not in any way a quote/unquote
3  forever ban on providing VRF information.  This is
4  wanting to make sure that New Mexico's
5  regulations --
6  THE COURT:  It feels like it's a permanent
7  ban on this one organization.  There doesn't seem to
8  be any daylight at the end of the tunnel saying:
9  You're going to get this information.  They're
0  always going to believe what they believe, and
1  you're always going to distrust them.  But the
2  bottom line is, if they're willing to sign that
3  affidavit like everybody else, arguably it's for the
4  fact finder; you make your arguments that it's
5  conditioned by the letter.  They make their
6  arguments that, no, it's not.  The fact finder has
7  to determine whether that distinction is one that
8  didn't constitute viewpoint or content
9  discrimination or it does.

# DÉJÀ VU: "NEW PROMISES"
## JUNE 15, 2022 PRELIMINARY INJUNCTION HEARING

```
 9      Q.    So we say, "VRF intends to publish the

10   requested information online" -- and I'm going to

11   keep reading, okay -- "for election-related purposes,

12   but it will only publish the personal information of

13   voters online if VRF is granted relief in" -- and

14   then you see this case is mentioned there -- "or in

15   any other legal proceeding"; right?  So the sentence

16   kept going.  Did I read that correctly?

17      A.    You did.

18      Q.    All right.  And so we say we will only

19   publish that if we're granted relief; right?

20      A.    Correct.

21      Q.    And you've just said that you will follow

22   any order of the Court; right?

23      A.    Yes.

24      Q.    Okay.  Now, if we're not going to publish

25   the information unless we prevail in a court
```

SANTA FE OFFICE                                          MAIN O

```
 1   proceeding, how in the world does the Secretary of

 2   State's Office believe that's engaging in a criminal

 3   conspiracy to make the disclosure to us as required

 4   under the law?

 5          MS. SERAFIMOVA:  Objection; asked and

 6   answered.

 7          THE COURT:  Overruled.

 8      A.    Mr. Greim, given the conversation and the

 9   guidance of our attorney, that is the current

10   position.  Again, we have not formally responded to

11   this.  We are required to.  You have provided some

12   additional information that we will discuss with our

13   counsel, and we will make a formal response to this

14   request.

15      Q.    Okay.  Well, if you're still working on it,

16   that's one thing.  But to be clear, all I'm doing is

17   reading to you from the actual original request.  I

18   don't think I'm telling you anything new here today.

19   Are you learning something from reading the letter

20   with me?

21      A.    I think that there needs to be a follow-up

22   conversation.  That will occur.  We will review the

23   formal request.  That has not occurred yet.

24      Q.    Okay.  And it's due tomorrow, though;

25   right?
```





COUNT III: VIEWPOINT DISCRIMINATION / RETALIATION

- Labeled VRF's discrepancy analysis "misinformation" because they disagreed with it
  - Used as basis for criminal referral

- Pretextual Reasons for Denying Requests:
  - Manufactured confusion regarding VRF's promises not to post voter data
  - Unclear what "personal information of voters" means
  - Criminal conspiracy to provide data
  - Claimed records did not exist… but now admit that they do

- Refused to provide voter data even though VRF provided affidavit and made same promises as other requestors

Page 123

1  constant updates being made. And so it's a
2  point in time anytime somebody receives that
3  data.
4       And if we're doing comparisons, I think
5  anytime you're analyzing data, it's important
6  to be comparing the same type of data, right?
7  We can't take something from years ago and look
8  at it for a specific election.
9       So I think the concern is that outdated
10  data does present the potential for
11  misinformation.
12  Q.  Okay. Now, in this case, VRF posted data
13       online after winning a preliminary injunction
14       from the district court. Do you recall that?
15  A.  Uh-huh.
16  Q.  And the data that it posted at that time was
17       the only data that it was able to receive
18       through your office, right?
19  A.  Right.
20  Q.  Now, by that time, that was not the most recent
21       information that it had -- that was -- I'm
22       sorry. That was not the most recent version of
23       the voter file, was it?
24  A.  No.
25  Q.  Does the secretary contend that VRF was

Page 124

1  engaging in disinformation when it reposted
2  that data?
3  A.  I think it was not the data alone.
4  Q.  Okay. What else was it?
5  A.  I feel like there is information explaining the
6  data that was not accurate.
7  Q.  Okay. So when VRF reposted its data online, it
8  was not just the data but was the accompanying
9  explanation that made it disinformation?
10  A.  It was the comparison. As I said, I spoke to
11  you're comparing -- they were comparing
12  outdated data to election results that were --
13  it wasn't a correct accurate comparison. There
14  wasn't an understanding for the viewer as to
15  the details, very important details, to share
16  facts about the data.
17  Q.  Okay. So what you're referring to there is the
18  statement that was made about there being a
19  discrepancy between the voting credits shown in
20  the data file that VRF received and a separate
21  data source which was the number of ballots
22  cast in the election, right?
23  A.  Correct.
24  Q.  So -- and I think we all know what that
25  statement was. My question for you is a little



Page 125

1  bit different though, okay? And it may be
2  that -- it may be that you'll have a different
3  answer.
4       I'm asking about whether posting the data
5  online itself, with no other statement about a
6  discrepancy itself, is misinformation?
7  A.  I think it's important to note that's not what
8  happened. So our position on the
9  misinformation was tied to the data being
10  posted publicly, outdated data, with an
11  analysis about a discrepancy that was
12  inaccurate. So that was the misinformation
13  issue.





## REQUESTS FOR RECORDS

Finally, pursuant to your obligations under the NVRA, 52 U.S.C. § 20507(i) and New Mexico law, N.M. Stat. § 1-4-5.5, please make available to us the following records concerning "the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency" of New Mexico's official eligible voter lists:

1. A complete list, by county/precinct, of any registered voters who cast a ballot in the November 3, 2020 General Election, who have been subsequently placed in an inactive, canceled, deleted, removed (or any registration status other than active) status, or any voter that has been removed or deleted from the voter rolls between November 3, 2020 and April 13, 2021, including total count of same.

2. Current voter registration data, including voter history, for all active, inactive, suspended, and cancelled status voters (including any registration status other than active).

VRF's intended election use comprises two distinct projects. For its first project, just as VRF publishes voter data for many other states, and as it recently published voter data in New Mexico, VRF intends to publish the requested information online for election related purposes, but it will only publish the personal information of voters online if VRF is granted relief in *Voter Reference Foundation, et al. v. Balderas, et al.*, case number 1:22-CV-00222 in the United States District Court for the District of New Mexico (the "Federal Litigation") or in any other legal proceeding.

For its second project, VRF intends to analyze the records, information, and data provided in response to the above requests in order to engage in a discrepancy review of the New Mexico voter rolls. VRF intends to publish this analysis online without disclosing the personal information of any individual voter. VRF will comply with this non-public-disclosure promise for the data it uses on its second project regardless of whether it prevails in the Federal Litigation. And again, for the sake of clarity, no personal information of any individual voter will be published online unless VRF is granted relief in the Federal Litigation or in any other legal proceeding.

1100 Main Street, Suite 2700   Kansas City, MO 64105   **ph** 816.256.3181   www.gravesgarrett.com

JE 18

7    Q.   Okay.  And with respect to this particular

8  affidavit, which is the first and only that VRF has

9  submitted, and the first and only that your office

10 actually plans on denying, right, you're doing it

11 because I advised you that you would potentially be

12 committing a conspiracy; is that right?

13    A.   Correct.

14    Q.   So if the request is denied, it will be on

15 my advice not to violate the New Mexico Criminal

16 Code?

17    A.   It will be based on the advice, yes, and

18 the fact that we do not want to violate the law.

19    Q.   Okay.  So would you call this a unique

20 circumstance?

21    A.   Absolutely.



June 15, 2022 Preliminary Injunction Hearing (Q: Olga Serafimova; A: Mandy Vigil)



STATE OF NEW MEXICO
**MAGGIE TOULOUSE OLIVER**
SECRETARY OF STATE

June 16, 2022

*Via Electronic Mail Only*

Edward D. Greim
1100 Main St., Ste 2700
Kansas City, MO 64105
Email: EDGreim@gravesgarrett.com

**Re:     Response to Notice of Violation of NVRA**

Mr. Griem:

On May 27, 2022, our Office received your Notice of Violation of the National Voter Registration Act ("NVRA") ("Notice"). In the *Notice*, you allege a violation of 52 U.S.C. § 20507(i)(1). You allege that Voter Reference Foundation ("VRF") made a NVRA request for records via email on February 15, 2022. *See Exhibit. A of the Notice* Specifically, the email stated:

With respect to Item #2 and the Affidavit you submitted as required by New Mexico law, in the *Notice*, VRF states that it "intends to publish the requested information online for election related purposes, but it will only publish the personal information of voters if VRF is granted relief in *Voter Reference Foundation, et al. v. Balderas, et al.*, case number 1:22-CV-00222 in the United States District Court for the District of New Mexico (the "Federal Litigation") or in any other legal proceeding." *Notice* at 4. As you know from the Federal Litigation and otherwise, it is our position that publishing *any* New Mexico voter data on a website is a violation of the New Mexico Election Code that carries criminal liability. As such, we believe it prudent to delay production of this data at this time; we will either fulfill the request or formally deny it based on the outcome of the Federal Litigation, including any appeal. *See* NMSA 1978, § 1-20-15 ("Conspiracy to violate the Election Code consists of knowingly combining, uniting or agreeing with any other person to omit any duty or commit any act, the omission of which duty, or combination of such act, would by the provisions of the Election Code constitute a fourth degree felony.").

Respectfully,

*/s/ Dylan K. Lange*
Dylan K. Lange
General Counsel
The Office of The New
Mexico Secretary of State

June 16, 2022 Response (JE19)

of State could have responded to Voter Reference's February 15, 2022, request at the very least

to tell Voter Reference that the request does not comply with N.M.S.A. § 1-4-5.5, the Secretary of State's indication that it will not honor Voter Reference's May 27, 2022, request, despite Voter Reference's assurances that it will not publish voter's personal information without a Court order, constitutes impermissible viewpoint discrimination.

The Secretary of State notes that it will not honor Voter Reference's May 27, 2022, request for voter data. _See_ June 15 Tr. at 54:19-21 (Greim, Vigil). The Secretary of State believes that providing voters' personal information online would violate N.M.S.A. § 1-4-5.5. _See_ June 15 Tr. at 59:15-28 (Vigil). The Secretary of State's justification for not honoring Voter Reference's May 27, 2022, request is that Voter Reference plans to publish voter's personal information, in violation of N.M.S.A. § 1-4-5.5. _See_ June 15 Tr. at 55:20-56:9 (Greim, Vigil). The Secretary of State has no other justification. _See_ June 15 Tr. at 68:9-13 (Vigil, Greim). Voter Reference, however, maintains that, although it will publish current voter registration data for election-related purposes, it will not publish voters' personal information without a Court order saying that it can publish it. _See_ June 15 Tr. at 55:22-56:1 (Greim). The Secretary of State's decision not to take Voter Reference at its word that it will not use the data contrary to the Secretary of State's interpretation of N.M.S.A. § 1-4-5.5, therefore, causes impermissible viewpoint discrimination. Because the Secretary of State offers no other justification for the denial, the Secretary of State appears to draw a distinction between Voter Reference and any other requestor who alleges that they will not use the data contrary to the Secretary of State's interpretation of N.M.S.A. § 1-4-5.5. Absent any other reason to single out Voter Reference, the available evidence shows that the Secretary of State "acted with discriminatory purpose." _Ashcroft v. Iqbal_, 556 U.S. at 676. Voter Reference's "perspective" is the "rationale" for the Secretary of State's decision. _Rosenberger v. Rector &_

117.   The Secretary of State maintains on the advice of counsel, that providing voters' personal information online would violate N.M.S.A. § 1-4-5.6. _See_ June 15 Tr. at 59:15-28 (Vigil).

118.   The only reason that the Secretary of State states that she will deny Swoboda's May 27, 2022, request is because "the information is going to be published." June 15 Tr. at 68:9-13 (Vigil, Greim).

119.   The Secretary of State "has not followed up [with Voter Reference] to try to learn any details about [its] projects or share its concerns about publication with" Voter Reference. June 15 Tr. at 68:14-18 (Greim, Vigil).

120.   The Secretary of State will not grant Voter Reference's May 27, 2022, data request, because the Secretary of State believes that Voter Reference will publish the data, even when Voter Reference says it will not publish voters' personal information without a Court order. _See_ June 15 Tr. at 55:20-56:9 (Greim, Vigil).

Court's June 22, 2022 PI Order

Case 1:22-cv-00222-JB-KK   Document 70   Filed 09/14/22   Page 26 of 57
Case 1:22-cv-00222-JB-KK   Document 70   Filed 09/14/22   Page 27 of 57
Case 1:22-cv-00222-JB-KK   Document 165   Filed 10/18/23   Page 28 of 33
27

1  say, you might recall we questioned Ms. Vigil -- at
2  least Ms. Vigil, I can't remember who else now, at
3  our hearing -- because, if I recall correctly, the
4  written response from the Secretary of State to our
5  request for data was due a day or two after our
6  hearing, just by coincidence.
7       So I tried to ask: What's going to be the
8  response here? And, you know, in that testimony we
9  heard nothing about this parsing of personal
10 information versus voter data, and that being a
11 concern of the Office.
12      And then later, in our proposed findings
13 and our submissions we made to the Court afterwards,
14 this theory that somehow the real reason that we were
15 rejected was that we used the phrase personal
16 information, sort of threw them into a tizzy, and
17 they couldn't be sure anymore that we were really not
18 going to post voter data.
19      And Your Honor, I'll state for the record
20 here, to the extent it matters, you might recall that
21 there are two main activities that VRF is involved
22 in. One of the activities is we have the data up
23 there for the crowd sourcing and for people to find
24 errors and contact the Secretary of State, and make
25 the voter rolls more accurate.

1       The other one, though, is we do our own
2  analysis and we publish that analysis. That
3  analysis, though, doesn't have the personal data of
4  any person -- of any voter. It just says that, you
5  know, there is 2,000 more people that voted that
6  aren't on here, or vice versa. And it shows that
7  there are differences in the data that need an audit
8  trail. And there was a lot of testimony about that.
9       So our point was that, look, none of the
10 data that shows the name of a voter, their personal
11 information, is going to be up there without an order
12 of the Court. That's the simple thing. I can't
13 believe that not everyone understood that. But
14 regardless, the Secretary of State never tells you
15 what they think the differences are. In fact, they
16 are now somehow reading the letter to suggest that
17 we're going to put voter data on the website. But if
18 that's true, then I guess everybody who even talks
19 about the data, just from a numbers perspective, I
20 guess they're all violating the law as well. And
21 that would be an even crazier interpretation of the
22 law.
23      But my point is, Your Honor, that this post
24 hac rationale that they're apparently going to use in
25 the Tenth Circuit for why they denied it should not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com






COUNT V:
FIRST AMENDMENT
VIOLATION

- Strict Scrutiny:
  - Defendants admit that Data Sharing Ban restricts core political speech (Def.'s Response to Mtn. for Prel. Inj. [Dkt. 13] at p. 8)
  - Restrictions based on identity/viewpoint
  - Burden shifts to Defendants to demonstrate compelling state interest and narrow tailoring

- Asserted State Interests (Def.'s Response to Mtn. for Prel. Inj. [Dkt. 13] at p. 8)
  - "limiting access to those who are explicitly aware of the permissible uses of New Mexico voter data via the requisite affidavit"
    - But have provided without affidavit
  - Revenue generation
    - Court already rejected this as not compelling
  - Encouraging voter registration
    - NVRA contemplates that openness, not restriction, accomplishes this goal
  - Preventing misinformation
    - Asserted interest is itself viewpoint/content discrimination



- "[T]he government may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . Freedom of speech[.]"

  *United States v. American Library Assn., Inc.*, 539 U.S. 194, 210   (2003)

- SOS refuses to provide voter data to VRF unless it agrees to relinquish its rights to speak using the data



- Data Sharing Ban is an absolute prohibition on sharing voter data regardless of whether the sharing is for an otherwise permissible purpose

- Restricts more core political speech than is necessary to achieve any legitimate purpose

- Prohibits the publication of voter data, like the Purge Lists, that are even made available on request under state law (NMSA 1-4-38)



COUNT VII: VAGUENESS

- Relief Requested: enjoin prosecution under old statute for past posting of the data

- Pre-HB4 Data Sharing Ban is unconstitutionally vague
  - Posting for which Defendants seek to prosecute VRF occurred under old statute

- Prior to amendment, no NM statute or rule told requesters that voter data could not be shared with others

- 1-4-5.6/1-5-22 "incorporation by reference" theory already rejected by the Court

# RELIEF REQUESTED

**Declare:**
- Individualized voter data must be made available under NVRA
- NVRA preempts restrictions on sharing "records," including individual voter data
- Data Sharing Ban and Use Restrictions fail strict scrutiny
- Data Sharing Ban is overbroad
- Pre-HB4 Data Sharing Ban is void for vagueness

**Enjoin:**
- Prosecution of VRF for past posting of voter data
- State must provide data requested by VRF
- State must provide data to VRF on same terms as all others

**Award**
- Attorneys' Fees and Costs for NVRA Claims (52 U.S.C. 20510)
- Attorneys' Fees and Costs for First Amendment/1983 claims (42 U.S.C. 1988)