IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VOTER REFERENCE FOUNDATION,
LLC,

      Plaintiff,

v.

RAÚL TORREZ, in his official capacity
as New Mexico Attorney General;

and

MAGGIE TOULOUSE OLIVER, in her
official capacity as Secretary of State of
New Mexico,

      Defendants.

Case No. 1:22-cv-00222-JB-KK

### DEFENDANTS' PROPOSED
### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to the Court's order from the Bench at trial, Defendants hereby submit their Proposed Findings of Fact and Conclusions of Law:

**I.    PROPOSED FINDINGS OF FACT**

A.    <u>Voter Reference Foundation and the New Mexico Secretary of State</u>

1.    Plaintiff Voter Reference Foundation, LLC, ("VRF") is a nonprofit organization which describes itself as "dedicated to increasing voter participation in elections while protecting election integrity." Joint Stipulation ("JS") ¶ 1.

2.    Gina Swoboda is VRF's Executive Director.  JS ¶ 2.

3. VRF aims to publish the voter rolls of every state on its website VoteRef.com for free forever. VRF's work in this regard is the first of its kind. Preliminary Injunction Hearing, May 17, 2022 ("PI Vol. 1") at 93:16–94:7.

4. Ms. Swoboda testified that she "want[s] to update [the voter data on VRF's website] every quarter going forward." She intends to do so by submitting "FOIAs." PI Vol. 1 at 54:21-55:4.

5. Defendant Maggie Toulouse Oliver is the duly elected Secretary of State for the state of New Mexico and, in that capacity, is the chief election officer of the state. She is responsible for ensuring the integrity of elections in New Mexico, protecting the privacy of voter data, furnishing voter data to requesters, and referring potential violations of the Election Code to the Attorney General for prosecution. JS ¶ 3. N.M. Stat. Ann. § 1-2-1(A); § 1-2-1.1(C).

6. Defendant Raúl Torrez is the duly elected Attorney General of New Mexico ("AG") and is empowered under state law to investigate and prosecute violations of the Election Code. JS ¶ 6.

7. Mandy Vigil is the Secretary of State Elections Director. JS ¶ 5.

8. As the State Elections Director, Ms. Vigil oversees the Bureau of Elections. Trial Tr., 82:20–83:5.

9. The Bureau of Elections staff process requests for voter data received by the Office of the Secretary of State. Trial Tr. 83:24–84:8.

10. In order to obtain voter data in New Mexico, a requester has to submit a properly completed Voter Information Authorization form, which includes an

affidavit required under the New Mexico Election Code. Trial Tr. 84:17–85:13. N.M. Stat. Ann. 1978, § 1-4-5.5.

11.    In order to obtain voter data in New Mexico, a requester must also pay the requisite statutory fee. Trial Tr., 85:6–16.

12.    The statutorily required affidavit requires a requestor to swear that they will not use the data for improper purposes. Trial Tr. 85:17–86:19.

13.    Publication on the internet is one of the prohibited uses within the Election Code. Trial Tr., 86:20–22.

B.    <u>Local Labs and Initial Data Release</u>

14.    On March 29, 2021, David Michael Lippert, an apparent employee or agent of Local Labs, LLC ("Local Labs"), submitted a Voter Information Authorization form to the New Mexico Secretary of State's Office ("SOS") requesting the name, physical address, mailing address, year of birth, party affiliation, precinct assignment, jurisdiction, registrant ID number, associated districts, voting history, and method of voting for each registered voter in the State of New Mexico ("Voter Data"). JS ¶ 16.

15.    Local Labs is a separate organization than Voter Reference Foundation. PI Vol 1 66:10–66:22.

16.    Local Labs is a commercial entity that provides public records requests and other services. *Id.*

17.    On the form Lippert used, the requester had the option to choose from one of three purposes for the request: Governmental Use, Campaign Use, and

Election Related Use. ECF No. 44-1. This comports with those uses permitted under N.M. Stat. Ann. § 1-4-5.5. Lippert selected "Election Related." ECF No. 44-1. He identified his name and that he was making the request on behalf of Local Labs. *Id*. The bottom of the form contains an attestation which states:

> Unlawful use of the information requested on this for shall consist of willful selling, loaning, providing access to or otherwise surrendering, duplication, or alteration of information as stated in the Voter Records System Act (N.M. Stat. Ann. 1978, §§ 1-5-1 through 1-5-31).
> I hereby swear that the requestor will not use or make available to others to use the requested material for purposes other than governmental, election, research and campaign purposes under penalty of law.

Id.

18.  Local Labs' March 29, 2021 request was submitted pursuant to a contract with VRF. PI Vol. 1, 73:18–25; 74:9–13.

19.  Prior to contracting with Local Labs, VRF's legal team reviewed relevant New Mexico statutes. PI Vol. 1, 73:18–25; 74:9–13.

20.  The Voter Data was provided to Local Labs by the Secretary on April 13, 2021. ECF No. 44-14.

21.  On April 14, 2021, Local Labs paid the Secretary's Office $5,378.12 for the Voter Data. ECF No. 44-2.

22.  VRF paid Local Labs $15,000 for its services, including the Voter Data. PI Vol. 1, 73:18–25; 74:9–13.

23.  The Secretary of State prescribes the form for the affidavit by which a person may request voter data. N.M. Stat. Ann. 1978, § 1-4-5.5(D); PI Vol. 1, 132:2.

24. The Voter Authorization Form itself was amended in January 2021 and again on February 10, 2021 to provide clarity to the requesters or anyone using the form. PI Vol. 1, 138:14–15; 136:14–23; 140:2–4.

25. Since 2011, the Voter Information Authorization form has been updated three times. During the first update in January 2021, "research" and "other" were removed as potential purposes for a voter data request. During the February 2022 updates, "research" was also removed from the Authorization section of the form, which is the statutory affidavit, and several line items were added for each requestor to initial. ECF Nos. 44-8, 44-9, 44-10; PI Vol. 1, 134:24–25, 138:6–15; 20–24, 139:1–4, 139:12–140:4; PI Hearing June 15, 2022 Tr. ("PI Vol 2") 80:2–20.

26. The affidavit in the form has been corrected to more strictly align to the statute. The updates were prompted by inquiries from an Secretary of State records custodian and a county clerk, and the goal of the updates was to better align the form to the current version of Section 1-4-5.5 of the Election Code. PI Vol 1., 132:20–23.

27. None of the three updates was related in any way to VRF or this lawsuit. PI Vol. 2, 80:25–81:3; 85:18–86:10.

C. ProPublica Article

28. On December 14, 2021, the Secretary of State received information from a reporter at news outlet ProPublica, Megan O'Matz, that VRF had a public website to which it was posting voter data from New Mexico (among other states). ECF No. 44-20, pp. 6–7.

29. The website, VoteRef.com, made available to the public voter information for every registered voter in New Mexico, including their name, address, birth year, registered party, and last election in which they voted. ECF No. 44-15 p. 2; PI Vol. 1, 54:17–25.

30. VRF claims the purpose of providing public access to the voter data is to allow "citizens [to] check their own voting status, voting history, and those of their neighbors, friends, and others, and are thereby able to "crowd-source" the process of rectifying any errors." Am. Comp., ECF No. 74, ¶ 57; PI Vol 1, 117:1–7.

31. ProPublica inquired with the SOS about VRF's allegation of a discrepancy between the number of ballots reported cast and the number of voters in the voter history. ECF No. 44-19.

32. ProPublica also stated it was looking into VRF and that it would publish a story about the organization during the week of February 28, 2022. ECF No. 44-20.

33. Before publishing the article, O'Matz exchanged emails over the course of nearly a month with Alex Curtas, Communications Director for Secretary Toulouse Oliver. ECF Nos. 44-19 and 44-20.

34. After some non-substantive exchanges, Curtas responded as follows to O'Matz's inquiry: "Simply put, VoteRef.com is misleading the public about New Mexico's voter rolls and are perpetuating misinformation. They reflect a lack of understanding about how the process of voter list maintenance works. These attempts by political operatives to cast doubt on the 2020 elections are an affront to our democracy and to the professionals who run our elections throughout the

country." The "discrepancy," Curtas charged, was simply VRF's own lack of understanding regarding how voter rolls are maintained. ECF No. 44-20, pp. 5-6.

35. Alex Curtas told ProPublica: "The issue relates to the transfer and publication of the voter data. This is the crux: 'We do not believe providing this personal voter data on a private website that intends to spread misinformation about the 2020 General Election meets the definition of appropriate use as either for a "governmental purpose," "election related," or "election campaign purposes."' ECF No. 44-27 pp. 18–19.

36. When it finally appeared in March 2022, the ProPublica article attributed several quotes to Secretary of State Maggie Toulouse Oliver. By state law, she said, the rolls can only be used for governmental or campaign purposes. … "Having voter registration data 'blasted out across the internet' violates state law limiting use of the voter rolls solely for campaign or government activities[.]"

E.   The Criminal Referrals

37. On December 20, 2021, Deputy Secretary of State Sharon Pino signed and submitted a criminal referral to the Attorney General on behalf of the Secretary of State's office for investigation and prosecution of both Local Labs and VRF, stating "[The Secretary's] office believes the transfer and publication of this voter data is in direct violation of the Election Code. We believe that both VoteRef.com and Local Labs have violated the prohibition against "providing" voter data by posting New Mexicans' private voting information online, or in Local Labs case, providing the voter data to VoteRef.com." ECF No. 44-3.

38. Local Labs was referred because, as the voter data requestor, it potentially committed false swearing in violation of Sections 1-4-5.5 and 1-20-10, and potentially violated Section 1-4-5.6 by selling or otherwise surrendering the Voter Data to VRF. PI Vol. 2, 150:14–23, 151:3–8, 168:15-25; ECF No. 44-1.

39. VRF was referred because it made the voter data public by distributing it on VoteRef.com, thus making the data available to the general public. ECF No. 44-3; PI Vol. 1, 142:20–22; 146:22–24; 147:2–5.

40. The Secretary's concern was voter privacy as well as the fact that the data could be misread and also manipulated. PI Vol. 1, 146:22–24; 127:11–21.

41. The SOS's referral of VRF was not related to the alleged "discrepancy" between the number of people recorded as having voted and the number of ballots. ECF No. 44-3; PI Vol. 1, 142:20–22; 146:22–24; 147:2–5.

42. The Secretary did not believe VRF's conduct of analyzing the voter data and sharing that analysis (separate from the voter data itself) was unlawful. ECF No. 44-3; PI Vol. 1, 142:20–22; 146:22–24; 147:19–25.

43. The Office of the Attorney General sent a copy of the Secretary's criminal referral to the FBI. ECF No. 44-23.

44. Other companies, such as Catalyst and i360, have obtained voter data from the Secretary. PI Vol. 2, 100:13–101:20.

45. Similarly, other conservative or Republican entities or organizations have sought—and received—New Mexico voter data by filling out the prescribed affidavit. JS ¶ 64.

46. Defendants are not aware of any entity or organization other than VRF that makes voter data accessible to the general public by posting that data online. PI Vol 1, 93:5–10.

47. If the Secretary became aware that any other company was violating the Election Code, that company would be referred to the AGO for investigation and potential prosecution. PI Vol 2, 45:3–24; 180:12–21.

48. SOS has not received any complaints about any other entity potentially misusing voter data except the Otero County Voter Audit Task Force. ECF No. 44-12; PI Vol 1, 129:22–130:12; PI Vol. 2, 18:1–12.

49. In 2021, both Catalist and i360 submitted two Voter Information Authorization Forms each. Each form was filled out properly and signed and contained no information to suggest that voter data would be used unlawfully. Each request was processed just as any other. JS ¶ 63; PI Vol. 2, 100:13–101:20; ECF No. 44-29.

50. On May 27, 2022, VRF sent a letter in which it made additional requests for voter data, and attached completed and signed voter authorization request forms. ECF. No. 44-22.

51. In this letter, VRF requested voter data for two purposes: to publish the voter roll online has it had done before, and to use the voter roll data for its own analysis. JS ¶ 49

52. VRF also alluded to additional requests it had made for voter data under the National Voter Registration Act ("NVRA") and New Mexico's Inspection of Public Records Act ("IPRA"). ECF No. 44-22, p. 1-2.

53. In its May 27, 2022 letter, VRF stated that it will only publish the personal information of voters online if VRF is granted relief in this matter or in any other legal proceeding. ECF No. 44-22, p.4; Deposition of Mandy Vigil, 170:15–171:10.

54. At no point did VRF state that it would not, under any circumstances, post New Mexico voter data online. ECF No. 42-22.

55. While the New Mexico Secretary of State's office did not respond to VRF, their team decided internally it would not fulfill any requests from VRF. ECF. No. 44-16; PI Vol. 2, 49:7–52:9.

56. The Secretary made a determination that VRF's May 27, 2022 letter was neither a public records request nor a normal voter data request. The Secretary had already referred VRF to the Attorney General for investigation, and sought guidance from the AG about fulfilling this request. Ultimately, the Secretary did not provide the requested data to VRF. PI Vol. 2, 49:16–25.

57. The Secretary's decision not to provide voter data to VRF for either asserted reason was based on a concern that the data would be posted online. Vigil Dep., 165:15–168:20.

58. VRF has indicated it would like to post voter data again after the 2022 election, stating "VRF desires to access, post, distribute, and otherwise use publicly available New Mexico voter information on the Website in the future so that the

public may become and remain informed regarding New Mexico's elections and voter registration rolls. VRF has continued to seek the same data from the New Mexico Secretary of State as New Mexico's data files are updated over time and plans to continue to seek the same data from the New Mexico Secretary of State after the 2022 election this November." Am. Comp.,¶ 112.

59.     Asserting a fear of prosecution, VRF removed New Mexico voter data from its website after the release of the ProPublica Article. PI Vol 1, 69:11–18.

F.     Voter Data and New Legislation

60.     VRF published New Mexico's Voter Data on its website sometime before December 14, 2022. ECF No. 44-14.

61.     In an email to the Secretary of State on December 14, 2021, Ms. Swoboda stated, "It is our understanding that the [Voter Data] you provided does not include any voter who is in the Safe At Home program. If that is inaccurate, please let us know." ECF No. 44-14.

62.     Though Ms. Swoboda stated she always checked with the respective election official prior to publication, VRF had already published New Mexico voter data at the time this email was sent. ECF No. 44-27, p. 23-24; PI Vol. 1, 57:17–58:14.

63.     House Bill 4, signed by the Governor on March 30, 2023 and chaptered as 2023 New Mexico Laws Ch. 84, codifies the Defendants' interpretation of the law into N.M. Stat. Ann. 1978, Section 1-4-5.6(A). Effective July 1, 2023, this section now reads:

> Unlawful use of voter data, mailing labels or special voter lists consists of:
>
> (1) the knowing and willful selling, loaning, providing access to or otherwise surrendering of voter data, mailing labels or special voter lists by a person for purposes prohibited by the Election Code; or
>
> (2) causing voter data, mailing labels or special voter lists or any part of the voter data, mailing label or special voter lists that identifies, or that could be used to identify, a specific voter or the voter's name, mailing or residence address to be made publicly available on the internet or through other means.

64. On June 30, 2023, the Secretary filed her Supplemental Briefing, which detailed all of the "records concerning the implementation of programs and activities" under the National Voter Registration Act ("NVRA"). ECF 133.

65. That Supplemental Briefing provided an exhaustive list of all materials that the Secretary's office believed fell within the records disclosure provisions of the NVRA. Trial Tr. 68:11–69:11.

66. The list of documents set forth in the Supplemental Briefing represents tens of thousands of documents. Trial Tr. 75:11–14.

67. Although incidental Voter Data may be disclosed in response to an NVRA request, an NVRA request cannot be used to obtain the entire New Mexico Voter File. ECF 133; Trial Tr. 76:2–18.

## II. PROPOSED CONCLUSIONS OF LAW

1. The National Voter Registration Act was passed "(1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office; (2) to make it possible for Federal, State, and local governments to implement [the NVRA] in a manner that enhances the participation

of eligible citizens as voters in elections for Federal office; (3) to protect the integrity of the electoral process; and (4) to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(a).

2. Permitting the wholesale publication of voter data does not, on balance, serve the NVRA's purposes because it discourages voter registration participation.

3. The National Voter Registration Act does not create an unqualified right of access to state voter files; only to those that are related to the implementation of the programs set forth in the NVRA.

4. The NVRA does not require the Secretary to provide the entire New Mexico Voter File to requestors; such requests are instead governed by the New Mexico Election Code.

5. The NVRA does not preempt the Election Code provisions related to acquiring the Voter File in the New Mexico Election Code.

6. States may impose reasonable limitations on the publication and use of voter data as a precondition to obtaining that data.

7. The New Mexico Election Code's requirement that requestors submit an affidavit foreswearing publication and sharing of the voter file is a reasonable precondition.

8. Therefore, VRF's First Amendment rights are not violated by the restrictions on the use of Voter Data in the Election Code.

9. The State of New Mexico has a compelling governmental interest in maintaining the privacy and safety of voters.

10. The New Mexico Election Code restrictions on access are narrowly tailored to meet that governmental interest.

11. The NVRA does not preempt the New Mexico Election Code other than requiring the production of the documents set forth in ECF 133.

12. The Secretary's referral of VRF for prosecution was based on VRF's actual and threatened disclosure of Voter Data protected by the Election Code; it was not motivated by any speech, political or otherwise, or opinion expressed by VRF.

13. The Secretary's refusal to provide voter data to VRF was based on VRF's refusal to provide an unconditional promise not to disclose Voter Data; it was not motivated by any speech, political or otherwise, or opinion expressed by VRF.

14. The prohibitions in the Election Code restricting access to and use of Voter Data are sufficiently clear as to what conduct is prohibited, such that they do not deprive VRF of its due process rights under the Fourteenth Amendment.

15. The prohibitions in the Election Code restricting access to and use of Voter Data present neither real nor substantial overbreadth concerns because they do not present a realistic danger of significantly compromise recognized First Amendment protections of parties not before this Court.

Respectfully Submitted,

By: */s/Mark W. Allen*
Mark W. Allen
Jeffrey D. Herrera
Assistant Attorneys General
Office of the New Mexico Attorney General
408 Galisteo St
Santa Fe, NM 87501
Tel.: (505) 490-4060
Fax: (505) 490-4881
mallen@nmag.gov
jherrera@nmag.gov

***Counsel for Defendants New Mexico Attorney General Raúl Torrez and New Mexico Secretary of State Maggie Toulouse Oliver***

**CERTIFICATE OF SERVICE**

On November 9, 2023 I filed the foregoing document through the Court's CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/    Mark W. Allen*

Mark W. Allen