IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **VOTER REFERENCE FOUNDATION, LLC,** | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) CASE NO: 1:22-cv-00222-JB-KK <br> ) |
| **RAÚL TORREZ**, in his official capacity as New Mexico Attorney General, | ) <br> ) <br> ) **ORAL ARGUMENT REQUESTED** |
| and | ) <br> ) |
| **MAGGIE TOULOUSE OLIVER,** in her official capacity as New Mexico Secretary of State, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES (ECF NO. 192)**

Defendants do not contest VRF's prevailing party status or that VRF is entitled to its fees and costs. They do not dispute any particular billing entries. They do not claim that VRF's counsel spent excessive time on any stage of the case. Indeed, they completely avoid the arguments that defendants typically raise in fee litigation.[1] Instead, Defendants' "response" in opposition to VRF's fee motion begins with a plea to kick the can down the road: a countermotion to stay consideration the fee application until the Tenth Circuit resolves the merits appeals. Defendants' Response to Plaintiff's Motion for Attorney's Fees (ECF No. 199) ("Response"), p. 3. Yet Defendants simultaneously admit these appeals are collateral to the issues raised here. Not only is

---

[1] Defendants also do not oppose VRF's request for its expenses incurred in this case. The Court should consider the parts of VRF's motions seeking its expenses to be consented to by Defendants.

1

this an inappropriate way to raise their countermotion[2], but judicial resources are best served by resolving the fee issues now.

Defendants do briefly touch on the merits of the fee issue, seeking an unspecified discount for VRF's work on the early interlocutory appeal of the preliminary injunction, which was stayed. Defendants do not claim that the time VRF's counsel spent on this stage of the case was excessive or unwarranted, but instead contend this part of VRF's First Amendment claim was completely severable from the rest of its case, and was unsuccessful. But VRF's claims in this matter were inextricably intertwined, and VRF ultimately achieved all the relief it. To severely discount VRF's efforts by applying a vague reduction to its fee award would be unjust, particularly given that Defendants' own litigation tactics—and their viewpoint discrimination which gave rise to this litigation—substantially increased VRF's expenditures in vindicating its rights.

## I. The Court should decide VRF's fee motion now, particularly given that VRF has agreed to stay *execution* of any judgment pending appeal.

The Court and the parties are best served by resolving VRF's fee motion now. Though Defendants' counsel did not confer with VRF's counsel before seeking this stay, VRF's counsel has since informed them that VRF will agree to stay *execution* of any fee award pending the outcome of the cross-appeals in this matter.[3] If VRF loses on appeal, this Court can vacate its fee award without the cumbersome situation of VRF having to repay Defendants. If VRF prevails on appeal after the Court enters an order on this motion, then no harm, no foul. The only remaining issue will be to calculate how much interest is owed. But, if thisCourt delays its consideration and

---

[2] Requests for affirmative relief, like a stay, must be made in a separately filed motion, not a response to a motion. *See* Fed. R. Civ. P. 7(b); D.N.M.LR-Civ. 7.0.
[3] Though VRF is willing to stay execution if it is awarded a judgment against Defendants, VRF reserves all rights attendant to any judgment, including interest.

the Tenth Circuit affirms, the Court will have to revisit a stale discussion of fees perhaps years removed from the litigation of the case.

Aside from these practical considerations, Defendants neither address the standard for a stay pending appeal, nor articulate how they meet that standard. *See Avendano v. Smith*, No. CIV 11-0556 JB/CG, 2011 WL 5223041, at *4 (D.N.M. Oct. 6, 2011) (Browning, J.) (A motion to stay pending appeal "requires the applicant to address ...: (a) the likelihood of success on appeal; (b) the threat of irreparable harm if the stay or injunction is not granted; (c) the absence of harm to opposing parties if the stay or injunction is granted; and (d) any risk of harm to the public interest.") (citations omitted). Instead, Defendants cite a single case in which the Supreme Court held that an award of attorney's fees is collateral to the merits. *See* Response, p. 3 (citing *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 200 (1988)). But *Budinich* had nothing to do with whether a district court should resolve a fee application while an appeal is pending, the issue here. It merely resolved whether a judgment is final when a decision on fees remains pending. *Id.*

Defendants' argument boils down to a contention that it would be "premature for the Court to grant attorney's fees when the Appeal may very well affect the degree of Plaintiff's success in this matter." Response, p. 3. But this is true in every § 1983 case, or any case where fees are premised on prevailing party status. The appeal *may* affect the fee award if the fee-seeking party loses on appeal and is no longer a prevailing party. But district courts nevertheless routinely resolve fee motions to avoid piecemeal litigation; the fee issue can simply be appealed along with the merits. *See BIAX Corp. v. NVIDIA Corp.*, No. 09-CV-01257-PAB-MEH, 2012 WL 1949002, at *1 (D. Colo. May 30, 2012) (disagreeing with contention that courts "routinely" defer ruling on attorney fee application pending appeal). This provides this Court the added benefit of considering

3

the fee application while the relevant evidence and proceedings are fresh in the minds of the parties and the Court:

> Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind. It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.

Fed. R. Civ. P. 54, Advisory Committee Notes, 1993 Amendments.

> Moreover, "[p]olicy reasons favor pre-appeal fee petitions as well" because "'[p]rompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind.'" *Mazloum v. District of Columbia*, 2008 WL 4876156, at *1 (D.D.C. Nov.12, 2008) (quoting Fed.R.Civ.P. 54, adv. comm. notes to the 1993 Amendments).

*BIAX Corp*, 2012 WL 1949002, at *2. The Supreme Court shares this preference:

> And of course the district courts generally can avoid piecemeal appeals by promptly hearing and deciding claims to attorney's fees. Such practice normally will permit appeals from fee awards to be considered together with any appeal from a final judgment on the merits.

*White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 454 (1982).

Because Defendants have not met their burden for a stay and judicial economy is best served by resolving the fee application now, the Court should move forward with its consideration of VRF's motion.

## II.     VRF has satisfied its burden of demonstrating the reasonableness of its fees.

VRF met its burden to demonstrate the reasonableness of its fees via voluminous billing records, declarations from local and out-of-state counsel who litigated this case, ECF Nos. 193-1 and 193-2, and a declaration of attorney Robert Gorence, ECF No. 193-3, a well-respected local practitioner who was not involved in the underlying matter. Defendants state, without analysis, that VRF's fees are "excessive" and insist on vague reductions to VRF's fees. Such unreasoned and conclusory statements—if they aren't an outright waiver of the Defendants' position—provide

4

no basis for this Court to reduce VRF's fees. *See Thompson v. Saul*, 475 F. Supp. 3d 1257, 1260 (D. Kan. 2020) ("The objecting party has the burden to challenge, through affidavit or brief, with sufficient specificity to provide notice to the fee applicant the portion of the fee petition which must be defended.") (citation omitted); *Spurlock v. Complete Cash Holdings, LLC*, 540 F. Supp. 3d 1201, 1213 (N.D. Ga. 2021) ("A party opposing as fee application is obligated to identify the hours that should be excluded from the Court's lodestar calculation in specific and reasonably precise terms.") (quotations omitted); *Prison Legal News v. Inch*, 411 F. Supp. 3d 1198, 1213 (N.D. Fla. 2019) ("[A] party opposing a fee application should submit objections and proof that are specific and reasonably precise, and ... a failure to do so is generally fatal.") (quotations omitted). Defendants want the Court to do their work for them. But because VRF's fees are reasonable and supported by substantial evidence, the Court should reject Defendants' invitation.

Defendants' attack on VRF's fees is twofold. First, they generally argue that counsel's billing is excessive. Response, p. 1 ("Plaintiff's billing records are excessive…"); p. 5 ("The Requested Fees are Unreasonable and Excessive"). Next, they say that counsel's rates are too high for New Mexico. *Id.* at 5-7. It's unclear whether these are independent arguments, or if Defendants are asserting that the fees sought are "excessive" because the rates sought are too high, rather than a contention that VRF spent too much time on certain tasks. However framed, the arguments fail.

### A. Defendants fail to identify any excessive billing.

Defendants' entire argument accusing VRF of excessive billing consists of citations to a case saying that "excessive" fees should not be awarded. Response, p. 5 (citing *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)). Yet they nowhere identify specific entries or tasks in VRF's billings that should be reduced or removed. Without identifying any specific billings they contend are excessive, VRF has no way to respond to the allegation and the Court is equally left without direction. Because Defendants fail to identify any specific billings they think are

excessive, this point should be deemed waived. *See Thompson,* 475 F. Supp. 3d at 1260; *Spurlock*, 540 F. Supp. 3d at 1213; *Prison Legal News*, 411 F. Supp. 3d at 1213.

Nevertheless, VRF provided declarations from the attorneys involved in this case, including the declaration of Attorney Greim stating that as a partner at Graves Garrett Greim LLC and the responsible attorney on this case, he reviewed the bills for this matter each month to ensure VRF was not charged for excessive or redundant tasks. ECF No. 193-1, ¶¶7-10. Defendants' generic accusations of excessive billing are insufficient in the face of Plaintiff's evidence.

**B. VRF's counsels' hourly rates are reasonable for complex civil rights litigation in New Mexico.**

VRF generally agrees with the standards Defendants claim are applicable to determining whether the fees sought are reasonable. VRF has the burden to prove that its hourly rates are reasonable in the New Mexico market. *Lippoldt v. Cole*, 468 F.3d 1204, 1224–25 (10th Cir. 2006). VRF agrees that the reasonableness of its fees should be informed by the evidence it provides and the Court's own knowledge. *Id.* And VRF agrees that its attorneys' experience and the quality of their work is relevant. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010).

But, whereas VRF relies upon declarations from three attorneys, as well as caselaw considering the rising costs of legal services, Defendants purport to rebut VRF's showing with caselaw devoid of the context of the passage of time and a survey of New Mexico legal rates— *from 2017*. *See* Response, p. 6. In fact, Defendants urge the Court to apply a median hourly rate from this seven-year-old survey as a suitable substitute for the actual fees sought in this matter. *See id.* (arguing for use of median hourly rate of $227-250 per hour). The only New Mexico case to cite that survey since 2018 noted that the survey's "age and lack of information about rates for varying skill levels, experience, and reputation render the study insufficient" to serve as the sole arbiter of reasonableness. *See City of Las Cruces v. Lofts at Alameda, LLC*, No. CV 17-809

JCH/GBW, 2022 WL 2753994, at *3 (D.N.M. July 14, 2022).[4] This Court has questioned the utility of that very survey given the low 11% response rate. *See United States v. Gutierrez*, No. CR 15-3955 JB, 2018 WL 4184243, at *17 (D.N.M. Apr. 30, 2018) (Browning, J.)*, opinion amended and superseded*, 347 F. Supp. 3d 720 (D.N.M. 2018).[5] Defendants fail to explain why a seven-year-old survey is a superior measure of modern legal rates compared to the evidence proffered by VRF. Though New Mexico would surely like to see these low rates applied because it would significantly deter attorneys from undertaking civil rights litigation against it, that directly undermines the purpose of § 1988. *See Curtis v. Oliver*, 479 F. Supp. 3d 1039, 1097 (D.N.M. 2020) (Browning, J.) ("Section 1983 'and its fee-shifting provision, 42 U.S.C. § 1988, seek to encourage attorneys to litigate civil rights violations.'").

Additionally, a substantial portion of the work performed on VRF's behalf was done at lower hourly rates. Of the 2779.3 hours billed on this matter, 2,338.5 were billed by associates, paralegals, and interns at rates ranging from $300 to $370 per hour, compared to only 440.8 hours at the highest billable rate sought by Mr. Greim. The rates for the vast majority of the hours sought are substantially similar to the rates which Defendants concede are reasonable in the market. *See* Response, p. 6 (citing cases approving $400-450 hourly rates in New Mexico).

Finally, it is particularly persuasive that VRF's local counsel, Carter Harrison, was recently awarded fees at the exact rates he seeks here. ECF No. 193-2, ¶11. Defendants fail to explain why Chief Judge Johnson was wrong in determining that those rates were reasonable for a New Mexico practitioner, or to otherwise distinguish this case. Perhaps Defendants only take issue with out-of-

---

[4] In that case, Magistrate Judge Wormuth applied the Bureau of Labor Statistics measure of inflation to determine what the rates from the 2017 survey would look like in the market as it existed at the time of the litigation.
[5] The relevant portions of this opinion were unchanged.

state counsels' rates, though that is one of the many issues raised in Defendants' response that is not a model of clarity.

The Court has presided over these proceedings since their inception and has the benefit of firsthand knowledge and observation of VRF's attorneys' experience and ability. This, coupled with the evidence VRF provided, supplies substantial support that the fees VRF seeks are reasonable. Defendants' protestations to the contrary, which rely almost entirely on an outdated survey, are unconvincing.

**C. No reduction should be made for the related claims that VRF lost.**

Like two ships passing in the night, VRF's counsel is somewhat at a loss regarding Defendants' contention that VRF's fee motion does not adequately account for its partial success. *See* Response, pp. 3-5. VRF's motion spends several pages addressing this exact issue, including the relatedness of the claims and how counsels' efforts in advancing successful and unsuccessful claims led to its ultimate success. ECF No. 193 at 24-25.

The gist of VRF's claims was consistent throughout this litigation: it was entitled to the voter data it sought, and it has federal constitutional and/or statutory rights to publish that data online. The legal basis for its claims changed somewhat over time as new facts were uncovered and with the filing of the Amended Complaint, but the fact that VRF did not know that Defendants were discriminating against it until after it was able to engage in initial discovery is a poor reason to reduce its fee award now. Thus, the answers to the two questions Defendants' pose favor VRF's cause:

> First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis.

Response, pp. 3-4 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

> **i.    Did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?**

No. All of VRF's claims were related. *See Copar Pumice Co. v. Morris*, No. CIV 07-0079 JB/ACT, 2012 WL 2383667, at *14 (D.N.M. June 13, 2012) (Browning, J.) (citing *Hensley,* 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.")). Claims are related when they are either based on "a common core of facts" or based on "related legal theories." *Id.*

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 436.

Each of the federal statutory and First Amendment constitutional claims in this case were based on the same facts—VRF's attempts to access and publish the data, Defendants' refusal to provide that data (and the reason for that refusal), and Defendants' attempts to silence VRF's speech, including through threats of criminal prosecution. Those claims were also all collectively aimed at establishing one of two related rights: VRF's right to *access* the requested data or VRF's right to *publish* that data online (or both). The statutory NVRA claims and First Amendment viewpoint discrimination claim on which VRF prevailed ultimately established both rights, while also foreclosing the opportunity that VRF could be punished in a viewpoint discriminatory manner for its past publication. Counsels' efforts were not, and could not be, neatly ascribed to any individual claim—winning or not—given the interrelatedness of all the claims brought.

### ii. Did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

Resoundingly, yes. VRF ultimately won the game of cat and mouse that Defendants insisted it play. Defendants' meaningless NVRA filing (ECF No. 133), their attempts to amend the law to undermine VRF's claims, and their eleventh-hour efforts to produce the requested data to avoid losing on the merits, all required VRF to aim at a moving target at considerable time and cost. But VRF persisted and showed how Defendants' constantly shifting theories and explanations were meritless and further evidenced their viewpoint discriminatory nature. In the end, VRF prevailed on all of its NVRA claims and one of its First Amendment claims. It was awarded the relief it sought: access to the data, the ability to publish it, and protection from prosecution for its past publication. Defendants' wins on a few of VRF's constitutional claims did not undermine the relief VRF sought. Though VRF surely would have liked to establish its First Amendment right to publish the data which must be made available under the NVRA,[6] it nevertheless achieved a significant level of success justifying the requested fees.

### D. VRF is entitled to its fees incurred in the interlocutory appeal in this matter.

The Court entered a preliminary injunction in July 2022 after it found that Defendants imposed a prior restraint on VRF *and* that Defendants engaged in viewpoint discrimination against VRF. ECF No. 51. An appeal to the Tenth Circuit followed, but the appeal was dismissed as moot after this Court's summary judgment order gave VRF the same relief it received from the PI order. ECF No. 174. VRF subsequently prevailed on the merits of its First Amendment viewpoint discrimination claim following the bench trial in this case. ECF No. 177.

---

[6] Indeed, VRF has filed a cross-appeal on this very point, ECF No. 188, given that a constitutional right to share the data at issue is arguably stronger medicine than the statutory right established by this Court's judgment.

Defendants' lamentations that they were "effectively denied the opportunity to get a favorable ruling from the Tenth Circuit" should fall on deaf ears. They were denied that opportunity not because "Plaintiff did not prevail on the legal grounds supporting [the PI]," Response, p. 4, but only because this Court entered a subsequent decision against them that awarded VRF the same relief it won at the PI stage. The appeal was then dismissed as moot because the basis for VRF's relief was the superseding summary judgment decision. *See Kansas Jud. Watch v. Stout*, No. 06-4056-JAR, 2012 WL 1033634, at *4 (D. Kan. Mar. 27, 2012) ("Unlike a reversal on the merits, when a preliminary injunction is vacated on mootness grounds, the plaintiff is not deprived of its prevailing party status.").

*Crumpacker v. Kansas, Dep't of Hum. Res.*, 474 F.3d 747, 756 (10th Cir. 2007) and its progeny authorize the District Court to award VRF its fees for the interlocutory appeal brought about by Defendants' refusal to provide VRF with, and allow VRF to post, the voter data here, the same facts and theories on which VRF ultimately prevailed. Defendants fail to wrestle with the authority raised in VRF's motion that courts award interlocutory appellate fees even where the fee seeking party lost the interlocutory appeal, so long as they ultimately prevailed on the merits. *See Perry v. Bartlett*, 231 F.3d 155, 163 (4th Cir. 2000) (awarding appellate fees to plaintiff that did not prevail on interlocutory appeal but prevailed on merits in district court); *Gerling v. Waite*, No. 4:17-CV-02702 JAR, 2022 WL 558083, at *4 (E.D. Mo. Feb. 24, 2022) (holding plaintiff was entitled to fees incurred for interlocutory appeal even where appeal was only partially successful). Defendants' quibbling about whether or to what extent VRF prevailed at the Tenth Circuit has no bearing on VRF's entitlement to its fees for those proceedings because VRF ultimately prevailed on the merits, including on the same viewpoint discrimination grounds the District Court found in its PI order, and achieved all the relief it sought.

## CONCLUSION

Defendants' litigation tactics and hide the ball strategies made this case more difficult and more expensive for VRF at every turn. The bill has come, and it is due in full.[7]

Dated: November 14, 2024

Respectfully submitted,
**GRAVES GARRETT GREIM LLC**
*/s/ Edward D. Greim*
Edward D. Greim*
Matthew R. Mueller*
Jackson Tyler*
**Admitted Pro Hac Vice*
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com
mmueller@gravesgarrett.com
jtyler@gravesgarrett.com

**HARRISON, HART & DAVIS, LLC**
Carter B. Harrison IV
924 Park Avenue SW, Suite E
Albuquerque, NM 87102
Tel: (505) 369-6599
Fax: (505) 341-9340
carter@harrisonhartlaw.com

*Counsel for Plaintiff*

---

[7] Subject to VRF's agreement to stay execution of any judgment pending the result of the Parties' cross-appeals.

## CERTIFICATE OF SERVICE

I, Edward D. Greim, certify that on November 14, 2024, a copy of foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notification to the following via email:

Jeff D. Herrera
Mark Allen
jherrera@nmag.gov
mallen@nmag.gov
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501

*/s/ Edward D. Greim*
Edward D. Greim
Counsel for Plaintiff